**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT**
**IN AND FOR CALHOUN COUNTY, FLORIDA**

**MARY WATSON,**

**Plaintiff,**

**v.** **CASE NO.: 20-CA-64**

**BLUE MANAGEMENT SERVICES, LLC.**
**D/B/A ALLIANT MANAGEMENT SERVICES;**
**ENVISION PHYSICIAN SERVICES, LLC.**
**F/K/A EMCARE PHYSICIANSERVICES, INC.;**
**and CALHOUN-LIBERTY HOSPITAL**
**ASSOCIATION, INC.,**

**Defendants.**
_______________________________________/

**PLAINTIFF'S NOTICE OF CANCELLATION OF TAKING DEPOSITIONS**
**VIA ZOOM VIDEO-CONFERENCE**

PLEASE TAKE NOTICE that the undersigned has cancelled the depositions of the following persons pursuant to Rule 1.310, Florida Rules of Civil Procedure, on **March 17 and 28, 2023.**

**March 17, 2023**

| **Deponent** | **Time** |
|---|---|
| Janet Kinney | 9:00 a.m. CT/10:00 a.m. ET |
| Janna Matautia | 10:00 a.m. CT/11:00 a.m. ET |
| Dr. Timothy Adamcryk | 11:00 a.m. CT/12:00 p.m. ET |
| Dr. Murray Baker | 1:00 p.m. CT/2:00 p.m. ET |
| Olevia McNally | 2:00 p.m. CT/3:00 p.m. ET |
| Michael Kozer | 3:00 p.m. CT/4:00 p.m. ET |

**Reporter: Apex VIA VIDEO-CONFERENCE ZOOM**

**March 28, 2023**

| **Deponent** | **Time** |
|---|---|
| Mark Plummer | 9:00 a.m. CT/10:00 a.m. ET |
| Dr. Lee Johnson | 10:00 a.m. CT/11:00 a.m. ET |

| | |
|---|---|
| Tammy Jarvis | 11:00 a.m. CT/12:00 p.m. ET |
| Mackenzie Dees | 1:00 p.m. CT/2:00 p.m. ET |
| Stan Whittaker | 2:00 p.m. CT/3:00 p.m. ET |
| Mary Sue Moore | 3:00 p.m. CT/4:00 p.m. ET |

**Reporter:** **Apex VIA VIDEO-CONFERENCE ZOOM**

Respectfully submitted,

/s/ Marie A. Mattox

Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P.A.
203 North Gadsden Street
Tallahassee, Florida 32301
Primary Email: marie@mattoxlaw.com
Secondary Email: michelle@mattoxlaw.com
(850) 383-4800 (telephone)
(850) 383-4801 (facsimile)

ATTORNEY FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with the Clerk via the Florida Courts e-Filing Portal only this 14th day of March 2022, which will send Notification of Electronic Filing to all counsel of record.

/s/ Marie A. Mattox
Marie A. Mattox

cc: Apex Reporting, Inc.

Case 5:23-cv-00202-MW-MJF Document 1-3 Filed 07/27/23 Page 3 of 455

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR CALHOUN COUNTY, FLORIDA**

**MARY WATSON,**

**Plaintiff,**

**v.** **CASE NO.: 20-CA-002064**

**BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,**

**Defendants.**

_______________________________________/

**AGREED MOTION TO EXTEND DISCOVERY AND PRE-TRIAL DEADLINES AND CONTINUE TRIAL**

Plaintiff, MARY WATSON, and Defendants, BLUE MANAGEMENT SERVICES, LLC D/B/A ALLIANT MANAGEMENT SERVICES ("Alliant"); ENVISION PHYSICIAN SERVICES, LLC ("Envision"); and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC. ("the Hospital"), by and through undersigned counsel, pursuant to Florida Rules of Civil Procedure 1.460, 1.280(c), hereby file this Agreed Motion to Extend Discovery and Pre-trial Deadlines and Continue Trial and in support thereof states as follows:

1. As set forth in her Amended Complaint, Plaintiff's claims include seven counts under the Public Whistleblower Act, Section 112.3187, Florida Statutes; the Private Whistleblower Act, Section 448.101, *et seq*.; Florida Statutes; the Florida Civil Rights Act, Chapter 760, Florida Statutes; and tortious interference with business relationships.

2. Pursuant to the Court's August 19, 2022, Uniform Order Setting Cause for Trial and Pre-Trial Conference, trial in this matter is currently scheduled for July 24, 2023. In addition, the current deadline for completing depositions is April 25, 2023. The dispositive motion deadline also falls on or around April 25, 2023.

3. The parties have exchanged written discovery and have made progress toward the completion of depositions, but require additional time to complete depositions due to unforeseen circumstances. More particularly, Plaintiff suffered a significant family medical emergency that required the parties to reschedule previously scheduled depositions.

4. Defendants were scheduled to complete the deposition of Plaintiff on March 3, 2023. Prior to this date, Defendant, Calhoun Liberty Hospital deposed Plaintiff, but was not able to complete the deposition due to the discovery of additional documents. Moreover, neither of the other two Defendants, Envision or Alliant, were able to complete their depositions of Plaintiff on the initial deposition date. Accordingly, the parties agreed to continue Plaintiff's deposition at a later date and further agreed that Plaintiff's deposition would be completed prior to Plaintiff conducting any depositions.

5. To this end, Defendants were scheduled to complete Plaintiff's deposition on March 3, 2023. Plaintiff was scheduled to take the depositions of twelve (12) witnesses on March 17, 2023, and March 28, 2023.

6. On March 2, 2023, however, Plaintiff's father suffered a serious medical emergency that required him to undergo emergency surgery. Plaintiff, therefore, could not appear for her March 3 deposition as planned.

7. Defendants now require additional time to complete the deposition of Plaintiff. In turn, Plaintiff requires additional time within which to reschedule its depositions. The Parties are actively working together to determine dates for the remaining depositions.

8. All witnesses will be available in the requested time frame of the continuance.

9. This Motion is made in good faith and not for purposes of undue delay. In light of the good cause shown, the parties respectfully request a ninety (90) day extension of the remaining discovery and pre-trial deadlines and a brief continuance of the trial to the October 2023 trial term.

10. The Parties have discussed the proposed continuance with their clients, who each consent to the requested continuance. Attached as **Exhibit 1** are the signed consents of Defendant Alliant, and Defendant Envision.

Respectfully submitted this 14th day of March 2023.

JACKSON LEWIS P.C.
501 Riverside Avenue, Suite 902
Jacksonville, FL 32202
Telephone: (904) 638-2655
Facsimile: (904) 638-2656

*/s/ Marie A. Mattox*
Marie Mattox, Esq.
Florida Bar No. 0739685
Marie Mattox, P.A.
203 North Gadsden Street
Tallahassee, FL 32303
Marie@mattoxlaw.com
Michelle@mattoxlaw.com
Marlene@mattoxlaw.com
Telephone: (850) 383-4800
*Counsel for Plaintiff*

*/s/ Lori K. Mans*
Richard N. Margulies
Florida Bar No. 607487
richard.margulies@jacksonlewis.com
Lori K. Mans
Florida Bar No. 0012024
lori.mans@jacksonlewis.com

*Attorneys for Defendant,*
*Envision Physician Services, LLC*

Michael B. Kelley
Cole, Scott & Kissane, PA
michael.kelly@csklegal.com
randall.rogers@csklegal.com
kassia.celeon@csklegal.com
*Attorneys for Defendant,*
*Calhoun-Liberty Hospital Association, Inc.*

Lisa B. Fountain
Robert J. Sniffen
Nicholas E. Monk
Sniffen & Spellman, P.a.
123 North Monroe Street
Tallahassee, FL 32301
lfountain@sniffenlaw.com
rsniffen@sniffenlaw.com
nmonk@sniffenlaw.com
*Attorneys for Blue Management Services, LLC d/b/a Alliant Management Services*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 14th day of March 2023, a true and correct copy of the foregoing has been filed electronically with the Clerk of the Court via the Florida Courts E-Filing Portal, which will provide an electronic copy to all counsel of record.

*/s/ Lori K. Mans*
Attorney

4872-0714-8375, v. 1

# Exhibit 1

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT
IN AND FOR CALHOUN COUNTY, FLORIDA**

**MARY WATSON,**

Plaintiff,

v. **Case No.: 2020 CA 64**

**BLUE MANAGEMENT SERVICES, LLC,
D/B/A ALLIANT MANAGEMENT SERVICES;
ENVISION PHYSICIAN SERVICES, LLC
F/K/A EMCARE PHYSICIAN SERVICES, INC.;
and CALHOUN-LIBERTY HOSPITAL
ASSOCIATION, INC.,**

Defendants.
_______________________________________/

**DEFENDANT BLUE MANAGEMENT SERVICES, LLC d/b/a ALLIANT MANAGEMENT SERVICES' CONSENT TO CONTINUANCE OF TRIAL AND ALL PRE-TRIAL RELATED DEADLINES**

Representative of Alliant Management Services, Michael Kozar, in his official capacity, has been notified of the need for a continuance of the jury trial and all related pre-trial deadlines in this case, and pursuant Florida Rule of Civil Procedure 1.460 hereby provides his signature as written consent to the continuance being granted.

_______________________________
Michael Kozar
Alliant Management Services

3-14-23
_______________
Date

DocuSign Envelope ID: DF072FAE-BDEB-4CC6-96AE-AC144C15AE12

Pursuant to Florida Rule of Civil Procedure 1.460, Mark Hirschberg, as Senior In-House Litigation Counsel for Envision Physician Services, hereby certifies that he has received and reviewed a copy of the Agreed Motion to Extend Discovery and Pretrial Deadlines and Continue Trial, and consents to the relief requested in the Agreed Motion to Extend Discovery and Pretrial Deadlines and Continue Trial, including, but not limited to, a continuance of the trial date currently set in this case.

DocuSigned by:

Mark Hirschberg

1C671EEE3A054DF...

Mark Hirschberg

4873-4189-8839, v. 1

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR CALHOUN COUNTY, FLORIDA**

**MARY WATSON,**

**Plaintiff,**

**v.** **CASE NO.: 2020-CA-0064**

**BLUE MANAGEMENT SERVICES, LLC d/b/a ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC f/k/a EMCARE PHYSICIAN SERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,**

**Defendant.**

**______________________________/**

## PLAINTIFF'S WITNESS LIST FOR TRIAL

Plaintiff, MARY WATSON, through counsel, identifies the following witnesses who may be called to testify during the trial of this cause:

**Plaintiff**
c/o Marie A. Mattox, P.A.

**Dr. Timothy Adamcryk**
1204 Cornell Drive
Panama City, FL 32405-3509
(850) 814-1815 or (850) 230-4977

**Garrett Heath Chumney, M.D.**
Former ER Medical Director
6369 Ox Bow Run

Tallahassee, FL 32312-7547
(904) 465-3413 or (850) 556-1550

**Tammy Lynn Jarvis**
13871 West Vernon Avenue
Goodyear, AZ 85395-2161
(480) 273-6001 or (480) 338-4998

**Dr. Lee A. Johnson**
Regional Medical Director
110 North Glenwood Avenue
Orlando, FL 32803-6033
(865) 671-3721 or (407) 998-4363

**Janet Howell Kinney**
Interim CEO
1521 Nearing Hills Circle, Apt. C
Chipley, FL 32428-6909
(850) 638-7612 or (850) 625-3001

**Michael A. Kozar**
Regional CEO Alliant Management Services
1204 Pine Bluff Drive
Chipley, FL 32428-8703
(850) 638-9317 or (706) 224-7067
- or –
1022 South Harper Street, #EX
Laurens, SC 29360-2816

**Janna Jernigan Matautia, CNO**
Chief Nursing Officer
20271 NE State Road #69
Blountstown, FL 32424-4551
(850) 674-7443 or (850) 643-7405

**Olivia Hope McNally**
Former Physician Coordinator
4681 Rio Poco Court
Naples, FL 34109-3366
(239) 963-7968 or (914) 522-5403

**Mary Sue Moore**
Advanced Practice RN
c/o Bay County Education Wellness Center
1515 June Avenue
Panama City, FL 32405
(850) 818-0025

**Mark Steven Plummer**
Chairman
16059 NW Lakeside Lane
Bristol, FL 32321-3933
(850) 643-2516 or (850) 228-5307

**Esther Yoder Stoltzfus**
Risk Manager
1700 Tulpehocken Road
Reading, PA 19610-1213
(850) 899-0882 or (850) 674-2902
- or –
253 NE Charles Pippin Road
Blountstown, FL 32424-4266

**Susan "Paige" Tolley**
Registered Nurse/ER Manager
20883 NW Annie Grantham Road
Altha, FL 32421-4803
(850) 899-1290 or (850) 447-3801

Records Custodian for all documents on Plaintiff 's Exhibit List

Rebuttal Witnesses as may be necessary

All witnesses listed on any witness list filed by Defendant except witnesses subject to objection by Plaintiff

Respectfully submitted,

/s/ Marie A. Mattox

Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P.A.
203 N. Gadsden Street
Tallahassee, Florida 32301
Primary Email: marie@mattoxlaw.com
Secondary Email: michelle2@mattoxlaw.com
(850) 383-4800 (telephone)
(850) 383-4801 (facsimile)
ATTORNEY FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been electronically filed with the Clerk via the Florida Courts e-Filing Portal on this 16th day of March 2023, which will send Notification of Electronic Filing to all counsel of record.

/s/ Marie A. Mattox
Marie A. Mattox

Case 5:23-cv-00202-MW-MJF Document 1-3 Filed 07/27/23 Page 14 of 455

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR CALHOUN COUNTY, FLORIDA**

**MARY WATSON,**

**Plaintiff,**

**CASE NO. 2020-CA-000064**

**v.**

**BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,**

**Defendant.**

______________________________________/

**DEFENDANT ENVISION PHYSICIAN SERVICES, LLC'S NOTICE OF FILING DEFENDANT CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.'S SIGNED CONSENT TO CONTINUANCE OF TRIAL AND ALL PRE-TRIAL RELATED DEADLINES**

PLEASE TAKE NOTICE that Defendant, ENVISION PHYSICIAN SERVICES, LLC ("Defendant"), has filed Defendant Calhoun-Liberty Hospital Association, Inc.'s Signed Consent to Continuance of Trial and All Pre-Trial Related Deadlines, in support of the previously filed Agreed Motion for Extension of Discovery and Pre-Trial Deadlines and Continuance of Trial. A copy of Defendant, Calhoun-Liberty Hospital Association, Inc.'s signed consent is attached hereto as **Exhibit "A."**

DATED this 16th day of March 2023.

Respectfully submitted,

JACKSON LEWIS P.C.
501 Riverside Avenue, Suite 902
Jacksonville, FL 32202
Telephone: (904) 638-2655
Facsimile: (904) 638-2656

*/s/ Lori K. Mans*
Richard N. Margulies
Florida Bar No. 607487
richard.margulies@jacksonlewis.com
Lori K. Mans
Florida Bar No. 0012024
lori.mans@jacksonlewis.com

Attorneys for Defendant,
Envision Physician Services, LLC

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of March 2023, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court by using Florida Courts E-filing Portal and will be furnished via electronic mail to the following:

Marie Mattox, Esq.
Marie Mattox, P.A.
203 N Gadsden St.
Tallahassee, FL 32301
marie@mattox.com
*Attorneys for Plaintiff*

Michael B. Kelley
Cole, Scott & Kissane, PA
michael.kelly@csklegal.com
randall.rogers@csklegal.com
kassia.celeon@csklegal.com
*Attorneys for Defendant,*
*Calhoun-Liberty Hospital Association, Inc.*

Lisa B. Fountain
Robert J. Sniffen
Nicholas E. Monk
Sniffen & Spellman, P.a.
123 North Monroe Street
Tallahassee, FL 32301
lfountain@sniffenlaw.com
rsniffen@sniffenlaw.com
nmonk@sniffenlaw.com
*Attorneys for Blue Management Services, LLC d/b/a Alliant Management Services*

*/s/ Lori K. Mans*
Attorney

# EXHIBIT A

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR CALHOUN COUNTY, FLORIDA

CASE NO.: 2020-CA-000064

MARY WATSON,

Plaintiff,

v.

BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,

Defendants.
_______________________________/

**DEFENDANT CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.'S CONSENT TO CONTINUANCE OF TRIAL AND ALL PRE-TRIAL RELATED DEADLINES**

Representative of Defendant, CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC. (hereinafter "CLH"), Christinia Jepsen, in her official capacity, has been notified of the need for a continuance of the jury trial and all related pre-trial deadlines in this case, and pursuant to Florida Rule of Civil Procedure 1.460 hereby provides her signature as written consent to the continuance being granted.

Christinia Jepsen
Christinia Jepsen
Calhoun-Liberty Hospital Association, Inc.

3/14/2023
Date

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of March, 2023, a true and correct copy of the foregoing was filed with the Clerk of Calhoun County by using the Florida Courts e-Filing Portal, which will send an automatic e-mail message to all parties registered with the e-Filing Portal system.

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant Calhoun-Liberty Hospital Association, Inc.*
890 South Palafox Street, Suite 200
Pensacola, Florida 32502
Telephone (850) 483-5909
Facsimile (850) 438-6969
E-mail: michael.kelly@csklegal.com
E-mail: zaray.avino@csklegal.com

By: s/ Michael B. Kelly
MICHAEL B. KELLY
Florida Bar No.: 115345

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT**
**IN AND FOR CALHOUN COUNTY, FLORIDA**

**MARY WATSON,**

Plaintiff,

v. **Case No.: 2020 CA 64**

**BLUE MANAGEMENT SERVICES, LLC,**
**D/B/A ALLIANT MANAGEMENT SERVICES;**
**ENVISION PHYSICIAN SERVICES, LLC**
**F/K/A EMCARE PHYSICIAN SERVICES, INC.;**
**and CALHOUN-LIBERTY HOSPITAL**
**ASSOCIATION, INC.,**

Defendants.
______________________________________/

**CROSS NOTICE OF TAKING DEPOSITION OF PLAINTIFF**

Defendant, **BLUE MANAGEMENT SERVICES, LLC., D/B/A ALLIANT MANAGEMENT SERVICES, LLC.,** by and through the undersigned counsel and pursuant to Rule 1.310, Florida Rules of Civil Procedure, will take the deposition of Plaintiff, **Mary Watson**, on **Tuesday, March 28th, 2023** at **9:00 a.m. (CST)/10:00 a.m. (EST)**, and continuing until such time as completed. Deposition will take place at **Phipps Reporting, Inc.**, at **2894-A Remington Green Lane, Tallahassee, Florida 32308**, before a court reporter or person authorized by law to take depositions in the State of Florida. This deposition is being taken for the purpose of discovery or for such other purposes as are permitted under the Florida Rules of Civil Procedure.

PLEASE GOVERN YOURSELF ACCORDINGLY.

**AMERICANS WITH DISABILITIES ACT**

In accordance with the Americans With Disabilities Act (ADA), persons in need of a special accommodation to participate in this proceeding, shall, within a reasonable time before any proceeding, contact the attorneys for Defendant.

Dated this 16th day of March, 2023.

Respectfully submitted,

*/s/ Lisa B. Fountain*______
**LISA B. FOUNTAIN**
Florida Bar No. 0948802
lfountain@sniffenlaw.com

**SNIFFEN & SPELLMAN, P.A.**
123 N. Monroe St.
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004

*Counsel for Defendant, Blue Management Services, LLC d/b/a Alliant Management Service*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of March, 2023, a true and exact copy of the foregoing was furnished via the Florida Court's E-Filing Portal to all counsel of record.

*/s/ Lisa B. Fountain*______
**LISA B. FOUNTAIN**

Filing # 168990628 E-Filed 03/17/2023 03:07:57 PM

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR CALHOUN COUNTY, FLORIDA**

**MARY WATSON,**

**Plaintiff,**

**CASE NO. 2020-CA-000064**

**v.**

**BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,**

**Defendant.**

**_______________________________________/**

**DEFENDANT ENVISION PHYSICIAN SERVICES, LLC'S NOTICE OF FILING COVER LETTER AND PROPOSED ORDER**

PLEASE TAKE NOTICE that Defendant, ENVISION PHYSICIAN SERVICES, LLC ("Defendant"), has filed a cover letter and proposed Order granting Parties' Agreed Motion to Extend Discovery and Pre-Trial Deadlines and Continue Trial. A copy of the cover letter is attached hereto as Exhibit A and a copy of the proposed Order is attached hereto as Exhibit B.

[Signature page follows]

DATED this 17th day of March 2023.

Respectfully submitted,

JACKSON LEWIS P.C.
501 Riverside Avenue, Suite 902
Jacksonville, FL 32202
Telephone: (904) 638-2655
Facsimile: (904) 638-2656

*/s/ Lori K. Mans*
Richard N. Margulies
Florida Bar No. 607487
richard.margulies@jacksonlewis.com
Lori K. Mans
Florida Bar No. 0012024
lori.mans@jacksonlewis.com

Attorneys for Defendant,
Envision Physician Services, LLC

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of March 2023, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court by using Florida Courts E-filing Portal which will send electronic notification to:

Marie Mattox, Esq.
Marie Mattox, P.A.
203 N Gadsden St.
Tallahassee, FL 32301
marie@mattox.com
*Attorneys for Plaintiff*

Michael B. Kelley
Cole, Scott & Kissane, PA
michael.kelly@csklegal.com
randall.rogers@csklegal.com
kassia.celeon@csklegal.com
*Attorneys for Defendant,*
*Calhoun-Liberty Hospital Association, Inc.*

Lisa B. Fountain
Robert J. Sniffen
Nicholas E. Monk
Sniffen & Spellman, P.a.
123 North Monroe Street
Tallahassee, FL 32301
lfountain@sniffenlaw.com
rsniffen@sniffenlaw.com
nmonk@sniffenlaw.com
*Attorneys for Blue Management Services, LLC d/b/a Alliant Management Services*

*/s/ Lori K. Mans*
Attorney

4891-7335-2023, v. 1

JacksonLewis

**Jackson Lewis P.C.**
501 Riverside Avenue, Suite 902
Jacksonville FL 32202
(904) 638-2655 Main
(904) 638-2656 Fax
jacksonlewis.com

March 17, 2023

Honorable Brandon J. Young
Calhoun County Courthouse
20859 Central Ave E
Blountstown, FL 32424
taylorh@jud14.flcourts.org

Re: *Mary Watson v. Blue Management Services, LLC d/b/a Alliant Management Services, et. al.*
Case No. 20-CA-000064

Judge Young,

Please find enclosed for consideration a proposed agreed Order on the Parties' Agreed Motion to Extend Discovery and Pre-Trial Deadlines and Continue Trial. All parties consent to the proposed order. Please do not hesitate to contact me if you have any questions.

Sincerely,

*/s/ Lori K. Mans*
Lori K. Mans
lori.mans@jacksonlewis.com

JACKSON LEWIS P.C.
501 Riverside Avenue, Suite 902
Jacksonville, FL 32202
Telephone: (904) 638-2655
Facsimile: (904) 638-2656

CC: marie@mattox.com
michelle@mattox.com
michael.kelly@csklegal.com
randall.rogers@csklegal.com
kassia.celeon@csklegal.com
lfountain@sniffenlaw.com
rsniffen@sniffenlaw.com
nmonk@sniffenlaw.com

Enclosure

4860-8280-1239, v. 2

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR CALHOUN COUNTY, FLORIDA**

**MARY WATSON,**

**Plaintiff,**

**v.** **CASE NO.: 20-CA-000064**

**BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,**

**Defendants.**

_______________________________________/

**ORDER**

**THIS CAUSE** came before the Court on the Parties' Agreed Motion to Extend Discovery and Pre-Trial Deadlines, and Continue Trial. This Court having reviewed the Motion and being otherwise fully advised in the premises, it is hereby:

**ORDERED AND ADJUDGED** that the Agreed Motion is GRANTED. All remaining pre-trial deadlines shall be extended by 90 days and this case shall be reset for the trial term beginning October __, 2023.

**DONE** and **ORDERED** in Chambers at Calhoun County, Florida on this __day of _____ ____________, 2023.

________________________________

THE HONORABLE BRANDON J. YOUNG
CIRCUIT COURT JUDGE

Copies furnished to all parties of record

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR CALHOUN COUNTY, FLORIDA

CASE NO.: 20000064CAAXMX

MARY WATSON,

Plaintiff,

v.

BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,

Defendants.
_________________________________/

**CROSS NOTICE OF TAKING DEPOSITION OF PLAINTIFF**

Defendant, CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC., by and through the undersigned counsel and pursuant to Rule 1.310, Florida Rules of Civil Procedure, will take the deposition of Plaintiff, Mary Watson, on Tuesday, March 28th, 2023 at 9:00 a.m. (CST)/10:00 a.m. (EST), and continuing until such time as completed. Deposition will take place at Phipps Reporting, Inc., at 2894-A Remington Green Lane, Tallahassee, Florida 32308, before a court reporter or person authorized by law to take depositions in the State of Florida. This deposition is being taken for the purpose of discovery or for such other purposes as are permitted under the Florida Rules of Civil Procedure.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of March, 2023, a true and correct copy of the foregoing was filed with the Clerk of Calhoun County by using the Florida Courts e-Filing Portal, which will send an automatic e-mail message to the all parties registered with the e-Filing Portal system.

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.*
890 South Palafox Street, Suite 200
Pensacola, Florida 32502
Telephone (850) 483-5909
Facsimile (850) 438-6969
Primary e-mail: michael.kelly@csklegal.com
Alternate e-mail: zaray.avino@csklegal.com

By: /s/ Michael B. Kelly
MICHAEL B. KELLY
Florida Bar No.: 115345

1085.0944-00

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR CALHOUN COUNTY, FLORIDA

CASE NO.: 20000064CAAXMX

MARY WATSON,

Plaintiff,

v.

BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.; AND CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,

Defendants.
_________________________________/

**DEFENDANT, CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.'S FACT WITNESS LIST**

Pursuant to this Court's August 19, 2022 Uniform Order Setting Cause of Trial and Pre-Trial Conference, Defendant, CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC. ("CLH") by and through its undersigned counsel, hereby files its list of witnesses expected to be called to testify in person in this cause at the July 24, 2023 Trial as follows:

1. Mary Watson
   c/o counsel for the Plaintiff

2. Janet H. Kinney
   1521 Nearing Hills Circle
   Chipley, FL

3. Corporate Designee for CLH
   c/o Cole, Scott & Kissane, P.A.
   890 South Palafox Street, Suite 200

Pensacola, FL 32502

4. Corporate Designee for BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES ("Alliant")
c/o counsel for Alliant

5. Corporate Designee for ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC. ("Emcare")
c/o counsel for Emcare

6. Stan Whittaker
c/o Counsel for CLH

7. Tammy Jarvis
13871 West Vernon Avenue
Goodyear, AZ 85395-2161

8. Jessie West
Address Unknown

9. Jake Shuler
Address Unknown

10. Gregory Tillery
c/o Emcare

11. Susan "Paige" Tolley
20883 NW Annie Grantham Road
Altha, FL 32421-4803

12. Casey Cater
Address Unknown

13. Bruce Davis
Address Unknown

14. James Cloud
Address Unknown

15. Dr. Lee Johnson
110 North Glenwood Avenue
Orlando, FL 32803-6033

16. Dr. Timothy Adamcryk
1204 Cornell Drive
Panama City, FL 32405-3509

17. Janna Matautia
20271 NE State Road #69
Blountstown, FL 32424-4551

18. Olevia McNally
c/o Emcare

19. Esther Yoder Stoltzfus
1700 Tulpehocken Road
Reading, PA 19610-1213

20. Mary Sue Moore
c/o Counsel for CLH

21. Michael Kozer
1204 Pine Bluff Drive
Chipley, FL 32428-8703

22. Mark Plummer
c/o counsel for CLH.

23. Any and all witnesses identified and/or called to testify by other parties to this litigation.

14. Any and all individuals identified in the Plaintiff's discovery responses.

15. Any and all individuals identified in any of the Defendants' discovery responses.

16. Defendant specifically reserves the right to identify and call rebuttal witnesses in accordance with the Florida Rules of Civil Procedure in response to testimony and/or evidence presented by the Plaintiff.

17. Any and all persons named in any and all hospital documents or obtained in discovery or otherwise appearing in the Court file.

18. All witnesses deposed in this matter.

19. Any records custodians of any documents used as exhibits in this matter.

20. Any and all witnesses providing rebuttal testimony to any of Plaintiff's claimed damages.

21. Any evidentiary or expert witness necessary for photo, diagram, video, or



**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 890 SOUTH PALAFOX STREET, SUITE 200 - PENSACOLA, FLORIDA 32502 - (850) 483-5900 (850) 438-6969 FAX

other evidentiary authentication, including, but not limited to investigators, journalists, or photographers.

22. Any other applicable witness necessary to authenticate any exhibit listed on the Defendant's exhibit list.

23. Defendant reserves the right to supplement and amend this disclosure.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 21st day of March, 2023, a true and correct copy of the foregoing was filed with the Clerk of Calhoun County by using the Florida Courts e-Filing Portal, which will send an automatic e-mail message to all parties registered with the e-Filing Portal system.

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant Calhoun-Liberty Hospital Association, Inc.*
890 South Palafox Street, Suite 200
Pensacola, Florida 32502
Telephone (850) 483-5909
Facsimile (850) 438-6969
e-mail: michael.kelly@csklegal.com
e-mail: zaray.avino@csklegal.com

By: /s/ Michael B. Kelly
MICHAEL B. KELLY
Florida Bar No.: 115345

1085.0944-00

Case 5:23-cv-00202-MW-MJF Document 1-3 Filed 07/27/23 Page 33 of 455

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR CALHOUN COUNTY, FLORIDA**

**MARY WATSON,**

**Plaintiff,**

**v.** **CASE NO.: 20-CA-000064**

**BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,**

**Defendants.**
**_______________________________________/**

**DEFENDANT, ENVISION PHYSICIAN SERVICES, INC.'S FACT WITNESS LIST**

Defendant, ENVISION PHYSICIAN SERVICES, LLC ("Envision"), by and through undersigned counsel, pursuant to the Court's Uniform Order Setting Cause for Trial, hereby files its list of fact witnesses expected to be called to testify at trial, as follows:

1. Plaintiff, Mary Watson
   c/o counsel for Plaintiff

2. Dr. Lee Johnson
   c/o counsel for Envision

3. Olevia McNally
   c/o counsel for Envision

4. Tammy Jarvis
   13871 West Vernon Avenue
   Goodyear, AZ 85395

5. Greg Tillery
   c/o counsel for Envision

6. Dr. Murray Baker
   c/o counsel for Envision

7. Kasey Burkhart
   c/o counsel for Envision

8. Candace Todd
   c/o counsel for Envision

9. Janet Kinney
   1521 Nearing Hills Circle, Apt. C
   Chipley, FL 32428

10. Janna Matautia
    20271 NE State Road, #69
    Blountstown, FL 32424

11. Jessie West
    Address Unknown

12. Jake Shuler
    Address Unknown

13. James Cloud
    Address Unknown

14. Casey Cater
    Address Unknown

15. Susan "Paige" Tolley
    20883 NW Annie Grantham Road
    Altha, FL 32421

16. Dr. Timothy Adamcryk
    1204 Cornell Drive
    Panama City, FL 32405

17. Michael Kozar
    1204 Pine Bluff Drive
    Chipley, FL 32428

18. Mark Plummer
    c/o counsel for Calhoun-Liberty Hospital

19. Esther Yoder Stotzfus
    1700 Tulpehocken Road
    Reading, PA 19610

20. Corporate Designee for Envision
    c/o counsel for Envision

21. Corporate Designee for Calhoun-Liberty Hospital
    c/o counsel for Calhoun-Liberty Hospital

22. Corporate Designee for Blue Management Services, LLC

23. Corporate Designee and/or Records Custodian, Archbold Medical Group
    Thomasville, GA 31792

24. Corporate Designee and/or Records Custodian, Pelham Parkway Nursing Home
    608 Dogwood Dr. NE
    Pellham, GA 31779

25. Corporate Designee and/or Records Custodian, SouthlandMD
    Thomasville, GA 31799

26. Records Custodian, Florida Commission on Human Relations

27. Records Custodian, Equal Employment Opportunity Commission

28. Records custodians for any documents used as exhibits in this matter.

29. Witnesses required to authenticate any exhibit used in this matter.

30. Rebuttal witnesses as provided by the Florida Rules of Civil Procedure.

31. Any and all witnesses identified or called to testify by any other party in this litigation.

32. Any and all witnesses identified in the course of discovery in this litigation.

Respectfully submitted this 21st day of March 2023.

JACKSON LEWIS P.C.
501 Riverside Avenue, Suite 902
Jacksonville, FL 32202
Telephone: (904) 638-2655
Facsimile: (904) 638-2656

*/s/ Lori K. Mans*
Richard N. Margulies
Florida Bar No. 607487
richard.margulies@jacksonlewis.com
Lori K. Mans
Florida Bar No. 0012024
lori.mans@jacksonlewis.com

*Attorneys for Defendant,*
*Envision Physician Services, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 21st day of March 2023, a true and correct copy of the foregoing has been filed electronically with the Clerk of the Court via the Florida Courts E-Filing Portal, which will provide an electronic copy to all counsel of record.

*/s/ Lori K. Mans*
Attorney

4864-8918-1272, v. 1

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT**
**IN AND FOR CALHOUN COUNTY, FLORIDA**

**MARY WATSON,**

Plaintiff,

v. **Case No.: 2020 CA 64**

**BLUE MANAGEMENT SERVICES, LLC,**
**D/B/A ALLIANT MANAGEMENT SERVICES;**
**ENVISION PHYSICIAN SERVICES, LLC**
**F/K/A EMCARE PHYSICIAN SERVICES, INC.;**
**and CALHOUN-LIBERTY HOSPITAL**
**ASSOCIATION, INC.,**

Defendants.
_____________________________/

**DEFENDANT'S WITNESS LIST**

Defendant, Blue Management Services, LLC., d/b/a Alliant Management Services, by and through undersigned counsel, pursuant to the Court's August 19, 2022, Uniform Order Scheduling Pretrial Conference and Jury Trial, hereby files its witness list as follows:

**1.** Plaintiff Mary Watson
c/o Marie A. Mattox
MARIE A. MATTOX, P.A.
203 North Gadsden Street
Tallahassee, FL 32301
850-383-4800

Knowledge of Plaintiff's claims and alleged damages.

**2.** Michael A. Kozar
Alliant Management Services
c/o Sniffen and Spellman, P.A.
123 North Monroe Street
Tallahassee, FL 32301
850-205-1996

Knowledge that Plaintiff was not an employee of Alliant Management Services and conversations with Plaintiff.

3. **All rebuttal witnesses as necessary.**

4. **All impeachment witnesses as necessary.**

5. **Any and all witnesses listed by Plaintiff and Co-Defendants.**

Defendant reserves the right to amend and supplement this list as discovery is ongoing.

Dated this 21st day of March 2023.

Respectfully submitted,

*/s/ Lisa B. Fountain*
**LISA B. FOUNTAIN**
Florida Bar Number: 0948802
lfountain@sniffenlaw.com

**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004

*Counsel for Defendant, Blue Management Services, LLC d/b/a Alliant Management Services*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of March, 2023, a true and exact copy of the foregoing was furnished via the Florida Court's E-Filing Portal to all counsel of record.

*/s/ Lisa B. Fountain*
**LISA B. FOUNTAIN**

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR CALHOUN COUNTY, FLORIDA

CASE NO.: 2020-CA-000064

MARY WATSON,

Plaintiff,

v.

BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,

Defendants.
_________________________________/

**DEFENDANT CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.'S CERTIFICATE OF SETTLEMENT AUTHORITY**

Defendant, CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC. (hereinafter "CLH" or "Defendant"), by and through the undersigned counsel, and pursuant to Florida Rule of Civil Procedure 1.720(e), gives notice of the individuals attending mediation in this matter scheduled for **April 20, 2023**, as follows:

1. **Michael B. Kelly, Esq.,** Attorney for CLH;

2. **Kyle Dunton,** Claims Adjuster**;**
   a. Appearing via Zoom on behalf of RSUI Group, Inc., insurer for CLH, and who has full authority to settle the claim at the mediation up to the policy limits without further consultation.

Each of the above individuals has the authority required under the provisions of *Florida Rule of Civil Procedure 1.720*. The parties and the insurance representative will have full authority to settle without further consultation and in an amount up to Plaintiff's

last demand or policy limits, whichever is less. This will confirm that Kyle Dunton's attendance will satisfy the appearance of a corporate representative for CLH at mediation.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 27th day of March, 2023, a true and correct copy of the foregoing was filed with the Clerk of Calhoun County by using the Florida Courts e-Filing Portal, which will send an automatic e-mail message to all parties registered with the e-Filing Portal system.

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant Calhoun-Liberty Hospital Association, Inc.*
890 South Palafox Street, Suite 200
Pensacola, Florida 32502
Telephone (850) 483-5909
Facsimile (850) 438-6969
E-mail: michael.kelly@csklegal.com
E-mail: zaray.avino@csklegal.com

By: s/ Michael B. Kelly
MICHAEL B. KELLY
Florida Bar No.: 115345

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR CALHOUN COUNTY, FLORIDA

CASE NO.: 20000064CAAXMX

MARY WATSON,

Plaintiff,

v.

BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,

Defendants.
_______________________________________/

**DEFENDANT CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.'S NOTICE OF PRODUCTION FROM NON-PARTIES**

**TO:** Marie A. Mattox, Esq.
203 North Gadsden Street
Tallahassee, FL 32301

**YOU ARE NOTIFIED** that after ten (10) days from the date of service of this Notice, if no objection is received from any party, the undersigned will issue or apply to the Clerk of this Court for issuance of the attached subpoenas for production from non-parties as listed below:

Tallahassee Memorial Hospital
1300 Miccosukee Road
Tallahassee, FL 32308

University of Florida
College of Medicine
1329 SW 16th St.
Gainesville, FL 32608

University of Florida
Department of Medicine
1600 SW Archer Road
Gainesville, FL 32610

University of Florida
Department of Neurology
1149 Newell Drive
Gainesville, FL 32610

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th day of March, 2023, a true and correct copy of the foregoing was filed with the Clerk of Calhoun County by using the Florida Courts e-Filing Portal, which will send an automatic e-mail message to all parties registered with the e-Filing Portal system.

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant,*
Calhoun-Liberty Hospital Association, Inc.
Cole, Scott & Kissane Building
715 South Palafox Street
Pensacola, Florida 32502
Telephone (850) 483-5930
Facsimile (850) 438-6969
Primary e-mail: michael.kelly@csklegal.com
Secondary e-mail: zaray.avino@csklegal.com
Alternate e-mail: donna.troedel@csklegal.com

By: /s/ Michael B. Kelly
MICHAEL B. KELLY
Florida Bar No.: 115345

1085.0944-00/-1

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR CALHOUN COUNTY, FLORIDA

CASE NO.: 20000064CAAXMX

MARY WATSON,

Plaintiff,

v.

BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,

Defendants.
_______________________________________/

**DEFENDANT CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.'S NOTICE OF PRODUCTION FROM NON-PARTIES**

**TO:** Marie A. Mattox, Esq.
203 North Gadsden Street
Tallahassee, FL 32301

**YOU ARE NOTIFIED** that after ten (10) days from the date of service of this Notice, if no objection is received from any party, the undersigned will issue or apply to the Clerk of this Court for issuance of the attached subpoenas for production from non-parties as listed below:

Tallahassee Memorial Hospital
1300 Miccosukee Road
Tallahassee, FL 32308

University of Florida
College of Medicine
1329 SW 16th St.
Gainesville, FL 32608

University of Florida
Department of Medicine
1600 SW Archer Road
Gainesville, FL 32610

University of Florida
Department of Neurology
1149 Newell Drive
Gainesville, FL 32610

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th day of March, 2023, a true and correct copy of the foregoing was filed with the Clerk of Calhoun County by using the Florida Courts e-Filing Portal, which will send an automatic e-mail message to all parties registered with the e-Filing Portal system.

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant,*
Calhoun-Liberty Hospital Association, Inc.
Cole, Scott & Kissane Building
715 South Palafox Street
Pensacola, Florida 32502
Telephone (850) 483-5930
Facsimile (850) 438-6969
Primary e-mail: michael.kelly@csklegal.com
Secondary e-mail: zaray.avino@csklegal.com
Alternate e-mail: donna.troedel@csklegal.com

By: /s/ Michael B. Kelly
MICHAEL B. KELLY
Florida Bar No.: 115345

1085.0944-00/-1

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT,
IN AND FOR CALHOUN COUNTY, FLORIDA**

**MARY WATSON,**

**Plaintiff,** **CASE NO.: 2022-CA-000714**

**v.**

**BLUE MANAGEMENT SERVICES, LLC
d/b/a ALLIANT MANAGEMET SERVICES;
ENVISION PHYSICIAN SERVICES, LLC
f/k/a EMCARE PHYSICIAN SERVICES
INC.; AND CALHOUN-LIBERTY
HOSPITAL ASSOCIATION, INC.,**

**Defendants.**
_______________________________________/

**NOTICE OF APPEARANCE OF THOMAS L. DICKENS, III
AND DESIGNATION OF EMAIL ADDRESSES**

Please take notice that Thomas L. Dickens, III now appears as additional counsel for Plaintiff and requests addition to the Florida E-filing Portal and other service lists. The undersigned requests that all future communications and correspondence be directed to him.

The undersigned designates the following email addresses, pursuant to Florida Rule of Judicial Administration 2.516, for service of all documents required to be served in this proceeding:

Primary E-Mail Addresses: thomas.dickens@mattoxlaw.com

Secondary E-Mail Address: linette.williams@mattoxlaw.com

michelle2@mattoxlaw.com (for scheduling matters)

Respectfully submitted,

/s/ Thomas L. Dickens, III
THOMAS L. DICKENS, III, ESQ.

Florida Bar No.: 063687
MARIE A. MATTOX, P.A.
203 N. Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
thomas.dickens@mattoxlaw.com
Secondary E-Mail:
linette.williams@mattoxlaw.com
michelle2@mattoxlaw.com (for scheduling matters)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been furnished this 5th day of April 2023 by Florida e-filing service only to all counsel of record.

/s/ Thomas L. Dickens, III
Thomas L. Dickens, III, Esq.

Filing # 170401765 E-Filed 04/05/2023 01:25:58 PM

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR CALHOUN COUNTY, FLORIDA

**MARY WATSON,**

**Plaintiff,**

**v.**

**CASE NO.: 20-CA-000064**

**BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,**

**Defendants.**

______________________________________/

**ORDER**

**THIS CAUSE** came before the Court on the Parties' Agreed Motion to Extend Discovery and Pre-Trial Deadlines, and Continue Trial. This Court having reviewed the Motion and being otherwise fully advised in the premises, it is hereby:

**ORDERED AND ADJUDGED** that the Agreed Motion is GRANTED. This case shall be rescheduled to the January 22, 2024, trial week.

**DONE** and **ORDERED** in Chambers at Calhoun County, Florida on this 5 day of April ____________, 2023.

THE HONORABLE BRANDON J. YOUNG
CIRCUIT COURT JUDGE

Copies furnished to all parties of record

4869-5227-9895, v. 1

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT
IN AND FOR CALHOUN COUNTY, FLORIDA**

**MARY WATSON,**

**Plaintiff,**

**vs.** **CASE NO: 20-CA-0064**

**BLUE MANAGEMENT SERVICES, LLC d/b/a ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC f/k/a EMCARE PHYSICIAN SERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,**

**Defendants.**

_____________________________________/

***AMENDED***
**UNIFORM ORDER SETTING CAUSE FOR TRIAL AND PRE-TRIAL CONFERENCE**

The Court finding that the parties have had adequate time to litigate this matter and the Court being otherwise fully advised in the premises, it is hereby

**ORDERED AND ADJUDGED** as follows:

**TRIAL**

1. The above-entitled cause is hereby set for a JURY TRIAL during the week of **January 22, 2024,** commencing at **8:30 A.M., CST**, or as soon thereafter as counsel may be heard. Jury trials are normally set for weekly periods. All counsel with trials set for a trial period shall be prepared to go to trial the first day of the week of the period and shall remain available for the entire week.

**PRETRIAL CONFERENCE**

2. A PRETRIAL CONFERENCE shall be held (in-person) in Chambers before the Honorable Brandon J. Young, Circuit Judge, at the **Calhoun County Courthouse,** pursuant to Rule 1.200, Florida Rules of Civil Procedure, to consider all matters suggested therein and to simplify the issues to expedite the trial of this cause. Said Pre-Trial Conference shall be scheduled by the parties with the Court for at least a one (1) hour time period, and shall not occur more than

forty-five (45) days or less than fifteen (15) days before the Jury Trial date as set forth, above. At the Pretrial Conference, parties and counsel *shall* confirm that they are prepared for trial. In order for the full purpose of the Pretrial Conference procedures to be accomplished, it is directed that each party (or corporate representative where appropriate) shall attend the Pretrial Conference. Furthermore, all attorneys that will be participating in the trial *shall* attend the Pretrial Conference. Unless this Court is in *Phase I* or *Phase II* of its COVID protocols, telephonic/Zoom appearance at the Pretrial Conference will not be allowed without good cause shown. The attorneys *shall* be prepared to present the following matters for consideration and discussion:

a. Compliance with the deadlines set forth in this Order.
b. Witnesses expected to be called for trial and the availability and location of those witnesses along with the proposed schedule for the trial, inclusive of picking a jury, noting the approximate amount of time counsel anticipates will be needed for the examination of each witness;
c. Any special arrangements for the presentation of witnesses and other evidence;
d. A confirmation that proposed jury instructions and verdict forms are prepared;
e. Any anticipated evidentiary issues at trial;
f. Any stipulations that may obviate the need for foundation witnesses;
g. Any stipulations that may obviate the need to prove facts that are uncontested;
h. Any stipulations that may obviate the need for certain exhibits;
i. Any last minute or emergency matters in preparation for jury selection; and
j. Any other matters that are important to the progress and resolution of the case.

**DEADLINES**

3. Parties' responsibility to calendar and comply with deadlines: The Court intends that all cases that are due to be resolved via a jury trial will be brought to a final disposition within approximately 540 days after the complaint is filed. The Court intends that all cases that are to be resolved via a non-jury trial will be brought to a final disposition within approximately 365 days after the complaint is filed. Based on the foregoing, the parties are hereby bound by the following discovery and trial related deadlines.

| **EVENT** | **REQUIRED DEADLINE** |
| --- | --- |
| Disclosure of Expert Witnesses: | Plaintiff: 150 days prior to trial date |
| | Defendant: 130 days prior to trial date |
| Disclosure of Fact Witnesses: | All Parties: 125 days prior to trial date |
| Final Discovery Requests: | All Parties: 125 days prior to trial date |
| Depositions: | All Parties: 90 days prior to trial date |
| Mediation: | All Parties: 90 days prior to trial date |
| Hearing on All Discovery Matters: | All Parties: 90 days prior to trial date |
| Exhibit List: | All Parties: 45 days prior to trial date |
| Hearing on all Daubert/Expert Motions: | All Parties: 45 days prior to trial date |
| Hearing on Summary Judgment: | All Parties: 45 days prior to trial date |
| Hearing on Motions in Limine: | All Parties: 45 days prior to trial date |
| Hearing on Motions to Strike: | All Parties: 45 days prior to trial date |
| Pretrial Conference Order: | All Parties: 3 days prior to Pretrial Conference |
| Proposed Jury Instructions: | All Parties: 3 days prior to Pretrial Conference |
| Proposed Verdict Form: | All Parties: 3 days prior to Pretrial Conference |
| Pre-Trial Conference: | All Parties: Set forth above in paragraph 2 |

4. Pretrial Motions: It is the responsibility of the attorney who files any motion to ensure that it is timely scheduled on the Court's calendar and there is sufficient and adequate notice provided to opposing counsel and any other witnesses required for the hearing in the matter. Counsel should expect to anticipate a delay of at least 45 days between the request for a hearing lasting longer than 25 minutes and the actual hearing. Thus, counsel should request appropriate hearing time in advance of the aforementioned deadlines.

a) Expert Witnesses. No later than 150 days prior to the trial date, Plaintiff(s) shall serve on all opposing counsel and file with the Court a Notice containing the following information regarding each expert witness who will testify at trial on behalf of Plaintiff(s): (a) the name and address of the witness; (b) the area(s) of expertise of the witness; (c) the subject matter of the expected testimony of the witness; (d) the substance of the facts and opinions about which the witness is expected to testify; and (e) a summary of the grounds on which each of the opinions of the witnesses will be based. Plaintiff(s) shall furnish opposing counsel with two (2) alternative dates of availability of all expert witnesses for the purpose of taking their deposition within one (1) day after disclosure of such

witnesses. No later than 130 days prior to the trial date, each Defendant shall serve on all other counsel and file with the Court a Notice containing the same information regarding each expert witness who will testify at trial on behalf of that defendant. Each Defendant shall furnish opposing counsel with two (2) alternative dates of availability of all expert witnesses for the purpose of taking their deposition within one (1) day after disclosure of such witnesses. No later than thirty (30) days after the Plaintiff(s) is served with the defendant's expert witness disclosure, the Plaintiff(s) may serve on all other counsel and file with the Court a notice containing the same information regarding rebuttal expert witnesses, if any, who will testify at trial on behalf of the Plaintiff(s). At the time of disclosure of each such rebuttal witness, Plaintiff(s) shall furnish opposing counsel with two (2) alternative dates of availability for the purpose of taking the witnesses' deposition. Any expert witness not included on the Notice as provided herein will not be allowed to testify without an order of the Court. All parties shall cooperate in the scheduling of expert depositions. Notwithstanding the foregoing, the Court expects the parties to truthfully and thoroughly answer interrogatories and other discovery. If interrogatories seeking information regarding expert witnesses have been served, the party answering such discovery shall do so in good faith and shall not delay furnishing the information regarding expert witnesses until the time such disclosure is required by this order.

b) Daubert/Issues. All Daubert related motions or objections, except those motions that may be directed at rebuttal testimony from Plaintiff's rebuttal experts, shall be filed and served at least 100 days prior to the trial date. A copy of all such motions shall be delivered to the Court at the same time they are filed and served. The party filing Daubert related motions or objections shall be responsible to do that which is necessary so that hearings regarding Daubert related evidence shall be noticed and heard or agreed to by the parties no later than 45 days prior to the trial date. Any Daubert related motions or objections related to testimony from Plaintiff's rebuttal experts shall be filed and served no later than 80 days prior to the trial date. The Defendant challenging the testimony of any rebuttal expert witness for the Plaintiff is responsible to do that which is necessary so that a hearing on such motion must be noticed and heard or agreed to by the parties no later than 45 days prior to the trial date. Any Daubert related motions or objections shall state with particularity the grounds upon which they are based and the substantial matters of law to be argued and shall identify any evidence or supporting material on which the movant relies. Any Daubert related motions or objections not filed or noticed for hearing within the time referenced in this paragraph are denied and such objections are overruled. The Court may summarily rule on any Daubert related motion not written with particularity as described above.

c) Motions in Limine. All case specific Motions in Limine shall be filed, served, noticed, and heard or agreed to by the parties no later than 45 days prior to the

trial date. A copy of all such motions shall be delivered to the Court at the same time they are filed and served. The Motion shall state with particularity the grounds upon which it is based and the substantial matters of law to be argued and shall identify any evidence or supporting material on which the movant relies. The Court may summarily rule on any Motions in Limine not written with particularity as described above or not filed and/or scheduled in a timely manner.

d) Rule 1.360 Examinations. Unless granted by specific order of the Court, all medical evaluations and other examinations pursuant to Rule 1.360 shall have been completed by the deadline for the requesting party to disclose their expert witness.

5. Mediation: Mediation is **REQUIRED** in all civil cases unless waived by the presiding Judge, and shall be completed by the deadline as set forth above. In all cases, mediation shall absolutely be completed no later than the Pre-Trial Conference. Plaintiff's counsel shall insure that all fees and costs of mediation have been paid before distribution of any settlement proceeds. The Mediator shall provide the Court with a Mediator Report at least 5 days before the Pre-Trial Conference, unless otherwise ordered by the Court.

6. Preparation for Pretrial Conference: The attorneys for all parties are directed to meet by agreement, initiated by counsel for the Plaintiff, no later than five (5) days before the Pretrial Conference, to:

a) Mark all exhibits for identification and prepare a chronological exhibit list for the use of Clerk and Court at trial (actual exhibits and documentation evidence shall be available for inspection at this time);

b) Admit or not admit as evidence and list specific objections, if any;

c) Stipulate as to any matter of fact and/or law about which there is no issue to avoid unnecessary proof;

d) Review all depositions which are to be offered for any purpose other than impeachment to resolve objections to the portions to be offered in evidence;

e) Discuss the possibility of settlement;

f) Submit an itemized statement of special damages plaintiff expects to prove if any;

g) Discuss and complete any other matters which may simplify the issues or aid in

the speedy disposition of this action, the Pretrial Conference and trial;

h) Draft one Pretrial Conference Order, signed by all participating counsel, which shall be submitted directly to the Court at least three (3) days prior to the pre-trial conference. In the event the parties are unable to agree on any matter in the Pretrial Conference Order, they shall leave the matter blank, and it will be resolved at the Pretrial Conference. An outline of a DRAFT pretrial order is attached hereto for the parties' convenience; and

i) Attempt to agree on jury instructions and verdict forms, should the matter be scheduled for a jury trial. No later than ten (10) days prior to the Pretrial Conference, each party shall submit to opposing counsel proposed written jury instructions and proposed verdict forms. At the meeting five (5) days before the Pretrial Conference the parties shall prepare a joint set of proposed jury instructions and verdict forms and submit the same to the Court at least three (3) days prior to the Pretrial Conference. Each proposed jury instruction shall be on a separate sheet of paper; shall be plainly marked with the name and number of the case; and shall be numbered in sequence. Each proposed jury instruction and verdict form shall reflect either that (a) the parties have agreed on the proposed jury instruction or verdict form, or (b) that the parties have not agreed on the proposed jury instruction or verdict form, and contain citations of supporting authorities, if any; and designate the party submitting the proposed instruction or verdict form. This paragraph shall not foreclose the right of each party to modify instructions up to and including the instruction conference at the close of evidence. Any party who intends to request that the Court provide a set of written jury instructions for the jury's consideration during deliberations shall be responsible for providing a clean copy of the full jury instructions to the Court.

**EXHIBITS**

7. Marking of Exhibits: All exhibits must be marked in advance of trial using consecutive numbers (for the Plaintiff) and letters (for the Defendant).

8. List of Exhibits: A list of proposed exhibits shall be submitted directly to chambers by each of the parties by the deadline established in the Court's Trial Order. Each party shall make available to the other party for inspection of all exhibits which that party will introduce at trial.

9. Objections to Exhibits: This Order shall not affect the right of a party to object at the trial to the introduction of an exhibit other than on the basis of authentication and foundation.

10. Preparing Exhibits for Jury Deliberation: Counsel shall confer and review all

exhibits prior to closing arguments. Originals of all exhibits admitted at trial should be ready to be turned over to the jury foreperson prior to closing jury instructions so that jury deliberations are not delayed.

11. Filing Exhibits: It is the responsibility of the parties to ensure that the record is complete. All trial exhibits, briefs, proposed jury instructions and proposed verdict forms are to be filed in the record within five (5) business days of the verdict.

12. Penalty: A party who does not abide by the provisions contained in this Order may be subject to sanctions, including, without limitation, the preclusion of the introduction of exhibits at trial by the offending party.

## MISCELLANEOUS INSTRUCTIONS

13. Jury Respect: All persons in the courtroom shall rise upon entry/exit of the jury panel or jurors.

14. Objections: All attorneys shall rise when objecting, state "objection," and the legal grounds for an objection. There will be no speaking objections allowed unless clarification to the objection is requested by the Court. If you agree with an opposing objection, state that you will rephrase before doing so. If further argument regarding an objection is desired, an attorney shall request a bench conference. The Court will provide an opportunity for counsel to supplement the record as needed. All objections, and related arguments, shall be addressed to the Court and not to opposing counsel.

15. Demonstrative Aids: In this ever-changing technological world, the Court recognizes that counsel may wish to use demonstrative aids during opening statement and/or closing argument. These demonstrative aids may include photographs, diagrams, visual aids, electronic media, and PowerPoint presentations, etc. At least five (5) days prior to trial, counsel shall confer with opposing counsel and show opposing counsel the demonstrative aid. If opposing counsel has an objection, the aid shall not be displayed and/or played before a jury until the Court has ruled on the objection. In order to have a clear record, counsel using a demonstrative aid shall be prepared to have the aid marked as an exhibit and entered into the record, regardless of whether or not the aid will be introduced into evidence.

16. Deposition Designations: No later than twenty (20) days prior to the trial date in this

matter, each party shall serve his, her or its designation of depositions, or portions of depositions, each intends to offer as testimony in his, her or its case in chief. No later than ten (10) days prior to the trial date in this matter, each opposing party shall serve his, her or its counter (or "fairness") designations to portions of depositions designated, together with objections to the depositions, or portions thereof, originally designated. No later than the trial date, each party shall serve his, her or its objections to counter designations served by an opposing party.

17. Conduct of Attorneys: Attorneys shall, at all times, strictly adhere to the requirements imposed upon them by the Florida Rules of Professional Conduct. Although all Rules are important and should be followed conscientiously, the Court particularly wishes to remind attorneys of the provisions of Rule 4-3.3 and 4-3.6.

18. Conduct of Parties: Attorneys shall caution their clients and witnesses against doing anything which might convey to the jury any feelings about the merit of truthfulness of testimony, other evidence, or arguments being offered before the jury. Said conduct includes but is not limited to: making facial expressions; nodding the head; or making audible sounds. Naturally, attorneys shall be governed by the same restrictions.

19. Witnesses: It is imperative that counsel plan for your witnesses to fill the entire court day. It is counsel's responsibility to advise your witness of any applicable orders in *limine*. Witness examination is limited to direct, cross, redirect and re-cross. Ask the Court before proceeding beyond re-cross. Counsel should not show, or ask your witness to show, anything to the jury unless it has been marked and admitted as an exhibit. The parties shall do all things reasonable and necessary to assure the availability of their witnesses for the entire trial period or to otherwise preserve their testimony for trial as provided by the Florida Rules of Civil Procedure.

20. Equipment: Counsel should expect that they will have to bring their own materials to fill their equipment needs. Please arrange with the Bailiff when and how to set up equipment in the Courtroom. While the Court's Bailiff and Courtroom Clerk are exceedingly accommodating, please do not rely on, or direct, Court staff to set up or to work your trial equipment.

21. Continuances: The Court applies Florida Rule of General Practice and Judicial Administration 2.545(e) and Florida Rule of Civil Procedure 1.460 concerning continuances. Unless good cause is shown, all motions for continuance must be in writing, signed by the requesting party, contain a Certificate of Good Faith, and specify all efforts made to move the case, and resolve discovery issues. Stipulations for continuance shall contain the same information as a

motion for continuance and will be reviewed by the court on a case-by-case basis. Subject to the aforementioned, continuances requested within seven days of trial will generally not be granted. Said policy includes requested continuances due to unavailability of witnesses and witnesses will be expected to be available when called.

22. Trial Schedule: Unless specifically noted otherwise by the Court, trial will be in session Monday-Friday, 8:30 A.M. (CT) through 12:00 P.M. (CT) and 1:30 P.M. (CT) through 4:30 P.M. (CT). At least one fifteen-minute break will occur in the morning and afternoon sessions.

23. Pretrial hearings: All hearings prior to the Pretrial Conference are subject to being heard by a Senior Judge or general magistrate appointed by this Court to hear such matters.

24. Settlement: All counsel shall immediately notify this Court in the event of settlement or dismissal and shall submit a stipulation for an order of dismissal. Counsel shall also notify the Court of any pending hearings that will be canceled as a result of the settlement by contacting the Court's Judicial Assistant by email. A copy of the mediation report is not sufficient to remove the case from the docket.

25. Technology Needs: No later than seven (7) days prior to the Pretrial Conference, the attorneys for all parties must notify the Court's Technology Department via email at: hagang@jud14.flcourts.org, as to any audio-visual equipment or other multi-media technology they intend to reserve for use at trial.

**SANCTIONS**

26. Sanctions: Failure to comply with the requirements of this Order shall subject counsel and parties to such sanctions as the Court shall determine just and proper under the circumstances.

**ALL PARAGRAPHS OF THIS ORDER ARE SUBJECT TO MODIFICATION WITH PRIOR MOTION MADE TO THE COURT AND FOR GOOD CAUSE SHOWN.**

**DONE AND ORDERED** in chambers at Blountstown, Calhoun County, Florida, this 5th day of April, 2022.

Hon. Brandon J. Young,
Circuit Judge

Copies to:

Marie Mattox, Esq.
marie@mattoxlaw.com
michelle@mattoxlaw.com
marlene@mattoxlaw.com

Karen Barger, Esq.
kbarger@sniffenlaw.com

Michael Brian Kelly, Esq.
michael.kelly@csklegal.com
zaray.avino@csklegal.com

Robert J. Sniffen, Esq.
rsniffen@sniffenlaw.com
sanders@sniffenlaw.com

Lori K. Mans, Esq.
lori.mans@jacksonlewis.com
richard.margulies@jacksonlewsi.com
jacksonvilledocketing@jacksonlewsi.com

John M. Barr, Esq.
john.barr@jmblawoffice.com

Lisa Barclay Fountain, Esq.
lfountain@sniffenlaw.com
lschnetzler@sniffenlaw.com

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator by mail at Post Office Box 1089, Panama City, FL 32402 or by phone at (850) 767-3550 at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days. If you are hearing or voice impaired, please call 711 or email ADARequest@jud14.flcourts.org.**

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT IN AND FOR CALHOUN COUNTY, FLORIDA**

______________________________,

**Plaintiff(s),**

**vs.**

**Case No: _____- CA-________**

______________________________,

**Defendant(s).**

__________________________________________/

**UNIFORM PRE-TRIAL CONFERENCE ORDER (JURY TRIAL)**

Present:

______________________________________________________________

for Plaintiff.

______________________________________________________________

for Defendant.

1. Statement of case:

______________________________________________________________

______________________________________________________________

______________________________________________________________

2. Amendments to pleadings:

______________________________________________________________

______________________________________________________________

______________________________________________________________

3. Issues:

______________________________________________________________

______________________________________________________________

4. Number of peremptory challenges:

______________________________________________________________

5. Admissions to avoid unnecessary proof:

______________________________________________________________

___

6. List of witnesses with addresses attached.

7. Any problems with attendance of witnesses:

___
___
___

8. Limitations on the number of witnesses (e.g. expert witness, "before and after" witnesses, etc., to prevent cumulative testimony):

___
___
___

9. List of special damages attached with stipulations as to the relevance, materiality, reasonableness and/or necessity.

10. Other and routine matters of law, evidence or procedures that may arise, with attached memoranda when anticipated to be necessary:

___
___
___

11. Time allowed for each opening statement:

___

12. Time allowed for each closing argument:

___

13. Stipulations (checked):

a) Less than 6 jurors if one becomes incapacitated ___
b) Use of expert testimony anytime ___
c) Waive x-ray technicians ___
d) Waive records custodians ___
e) Waive photographers ___
f) Copies of ordinances or foreign laws ___
g) Other: ___ ___

14. Necessity of taking judicial notice:

______________________________________________

15. Estimated length of trial:

______________________________________________

16. Resolution of any objections to depositions to be read into evidence:

______________________________________________
______________________________________________
______________________________________________

17. View of scene necessary:

______________________________________________

18. Any elements of surprise or surveillance:

______________________________________________
______________________________________________
______________________________________________

19. All discovery complete:

______________________________________________

20. List of pending motions:

______________________________________________
______________________________________________

21. Settlement possibilities:

______________________________________________
______________________________________________
______________________________________________

22. Each party shall anticipate having 1.75 hours for purposes of jury selection (3.5 hours total). Please provide information as to why any additional time shall be needed or set aside:

______________________________________________
______________________________________________

23. Instructions and verdict forms shall be submitted as set forth in this Court's Uniform Order Setting Trial. Each instruction shall be on a separate sheet of paper. Counsel shall confer prior to trial as to any agreement they can reach on the instructions and verdict forms and advise the court.

24. List of all photographs, documents, and exhibits attached (Counsel shall confer prior to trial and initial ones agreed to shall be admitted into evidence). Said information shall be in accord with this Court's Uniform Order Setting Trial.

25. Failure to comply with the requirements of this Order will subject the party and/or counsel to appropriate sanctions.

DONE AND ORDERED in chambers at Blountstown, Calhoun County, Florida, DDDD

JJJJ

Copies to:
CCCC

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR CALHOUN COUNTY, FLORIDA**

**MARY WATSON,**

**Plaintiff,** **CASE NO.: 2020-CA-000064**

**v.**

**BLUE MANAGEMENT SERVICES, LLC d/b/a ALLIANT MANAGEMET SERVICES; ENVISION PHYSICIAN SERVICES, LLC f/k/a EMCARE PHYSICIAN SERVICES INC.; AND CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,**

**Defendants.**

_____________________________________/

**AMENDED NOTICE OF APPEARANCE OF THOMAS L. DICKENS, III AND DESIGNATION OF EMAIL ADDRESSES**

Please take notice that Thomas L. Dickens, III now appears as additional counsel for Plaintiff and requests addition to the Florida E-filing Portal and other service lists. The undersigned requests that all future communications and correspondence be directed to him.

The undersigned designates the following email addresses, pursuant to Florida Rule of Judicial Administration 2.516, for service of all documents required to be served in this proceeding:

Primary E-Mail Addresses: thomas.dickens@mattoxlaw.com

Secondary E-Mail Address: linette.williams@mattoxlaw.com

michelle2@mattoxlaw.com (for scheduling matters)

Respectfully submitted,

/s/ Thomas L. Dickens, III
THOMAS L. DICKENS, III, ESQ.

Florida Bar No.: 063687
MARIE A. MATTOX, P.A.
203 N. Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
thomas.dickens@mattoxlaw.com
Secondary E-Mail:
linette.williams@mattoxlaw.com
michelle2@mattoxlaw.com (for scheduling matters)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been furnished this 5th day of April 2023 by Florida e-filing service only to all counsel of record.

/s/ Thomas L. Dickens, III
Thomas L. Dickens, III, Esq.

IN THE CIRCUIT COURT OF THE
FOURTEENTH JUDICIAL CIRCUIT, IN
AND FOR CALHOUN COUNTY, FLORIDA

MARY WATSON,

Plaintiff,

v.

Case No.: 2020-CA-000064

BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,

Defendants.
_______________________________________/

**PLAINTIFF'S NOTICE OF OBJECTION TO SUBPOENA**

PLEASE TAKE NOTICE, the Plaintiff, **MARY WATSON,** hereby gives notice of her Objection to Defendant's Notice of Production of Non-Parties, served on March 28, 2023, and intent to serve a subpoena, as well as the Authorizations forwarded on the same date, upon the following:

1. Tallahassee Memorial Hospital
   1300 Miccosukee Road
   Tallahassee, FL 32308

2. University of Florida
   College of Medicine
   1329 SW 16th Street
   Gainesville, FL 32608

3. University of Florida
   Department of Medicine
   1600 SW Archer Road
   Gainesville, FL 32610

4. University of Florida
Department of Neurology
1149 Newell Drive
Gainesville, Fl 32610

5. Archbold Medical Group
Gordon Avenue at Mimosa Drive
Thomasville, GA 31792
Attn: Human Resources

6. Cerebral Online Psychiatry
340 South Lemon Avenue, Suite 9892
Walnut, California 91789
Attn: Records Custodian

7. Memorial Hospital and Manon
1500 E. Shotwell Street
Bainbridge, GA 39819
Attn.: Human Resources

8. Pelham Parkway Nursing Home
608 Dogwood Dr., NE
Pelham, GA 31779
Attn: Human Resources

9. Southland MD
P.O. Box 1276
Thomasville, GA 31799
Attn: Human Resources

Plaintiff objects to the Defendant issuing subpoenas to any of the above entities on the basis of relevancy and invasion of privacy. The records sought to be obtained are not proportionate to the needs of this case and, are not likely to lead to the discovery of relevant or admissible evidence. Further, Defendant's subpoenas seek personal information about Plaintiff's private medical issues and her past and current employment which oppresses and harasses Plaintiff by invading her privacy. For these reasons Plaintiff respectfully objects to the issuance of all subpoenas to the above listed entities.

Respectfully submitted,

/s/ Thomas L. Dickens, III
THOMAS L. DICKENS, III, ESQ.
Florida Bar No.: 063687
MARIE A. MATTOX, P.A.
203 N. Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
thomas.dickens@mattoxlaw.com
Secondary E-Mail:
linette.williams@mattoxlaw.com
michelle2@mattoxlaw.com (for scheduling matters)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been furnished this 5th day of April 2023 by Florida e-filing service only to all counsel of record.

/s/ Thomas L. Dickens, III
Thomas L. Dickens, III, Esq.

Filing # 170470408 E-Filed 04/06/2023 10:42:01 AM

att

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR CALHOUN COUNTY, FLORIDA

CASE NO.: 2020 CA 000064

MARY WATSON,

Plaintiff,

v.

BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,

Defendants.
_________________________________/

**DEFENDANT, CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.'S MOTION TO OVERRULE PLAINTIFFS' OBJECTION TO NON-PARTY SUBPOENAS, COMPEL PLAINTIFF TO EXECUTE THE REQUESTED AUTHORIZATIONS, AND INCORPORATED MEMORANDUM OF LAW**

Defendant, Calhoun-Liberty Hospital Association, Inc. (hereinafter "CLH" or Defendant), by and through its undersigned counsel, and pursuant to Rule 1.351(d), Fla. R. Civ. P., hereby files this Motion to Overrule Plaintiff's Notice of Objection to Subpoenas from Non-Parties, allow Defendant to issue its proposed subpoenas duces tecum to four (4) non-parties, and compel Plaintiff to executed the five (5) authorizations requested by Defendant, for the reasons stated below:

**BACKGROUND AND PROCEDURAL HISTORY**

1. This is a discrimination lawsuit filed by Plaintiff, Mary Watson, wherein she is seeking damages for whistleblower retaliation, discrimination, retaliation, and tortious

interference based on her time as an employee with the Defendants since September of 2016.[1]

2. On November 1, 2021, Plaintiff provided Defendant with her verified answers to Defendant's First Set of Interrogatories (hereinafter "Interrogatory Answers").[2] These answers provided a number of detail into Plaintiff's allegations and damages, including the following:

- A list of all employers she could recall for the past 10 years.[3]
- An allegations that her efforts to secure future employment were undermined.[4]
- Specific allegations as to how she was discriminated against.[5]
- Specific allegations as to how tortious interference with future employers occurred.[6]
- Plaintiff's allegations and amounts for monetary losses, lost wages, and other economic damages, including damages for "emotional pain."[7]
- Every source of income Plaintiff received from January 1, 2020 through November 1, 2021.[8]

3. On October 18, 2022, Plaintiff was deposed and testified to additional medical facilities where she has sought damages for "emotional pain" as well as additional facilities where she has worked since her employment with Defendants ended.

4. On March 28, 2023, Defendant filed a Notice of Production from Non-Parties, requesting to subpoena four (4) entities:

a. Tallahassee Memorial Hospital (requesting records pertaining to her prior employment);
b. University of Florida College of Medicine (requesting records pertaining

---

[1] *See* Amended Complaint, ¶ 8.
[2] *See* Plaintiff's Verified Answers to Defendant's First Set of Interrogatories, attached as Exhibit A.
[3] *Id*. at #1.
[4] *Id*. at #5.
[5] *Id*. at #6.
[6] *Id*. at #7.
[7] *Id*. at #11.
[8] *See* Plaintiff's Verified Answers to Defendant's First Set of Interrogatories, at #19.

to her prior employment);

c. University of Florida Department of Medicine (requesting records pertaining to her prior employment); and
d. University of Florida Department of Neurology (requesting records pertaining to her prior employment).[9]

5. That same day, Defendant served the Notice of Production from Non-Parties on the Parties, attaching the four (4) proposed subpoenas referenced above and also seeking authorizations for out of state records for the below five (5) entities from Plaintiff:

a. Memorial Hospital and Manor (requesting records pertaining to her prior employment);
b. Archbhold Medical Group (requesting records pertaining to her prior employment);
c. Pelham Parkway Nursing Home (requesting records pertaining to her prior employment);
d. SouthlandMD (requesting records pertaining to her prior employment); and
e. Cerebral Online Psychiatry (requesting records pertaining to Plaintiff's medical treatment, medical history, billing, and patient questionnaires).[10]

6. However, on April 5, 2023, Plaintiff filed her Notice of Objection to Defendant's Notice of Production from Non-Parties, and specifically objected to Defendant's proposed subpoenas/authorizations to all nine (9) non-parties laid out above.[11]

7. Plaintiff objected to the above proposed subpoenas on the basis that they required production of specified documents from these entities.

8. Plaintiff's continued refusal to comply with reasonable discovery requests is

---

[9] *See* Defendant's March 28, 2023 Notice of Production from Non-Parties, previously filed with the Court.
[10] *See* Defendant's March 28, 2023 Service Email that Includes Subpoenas and Authorizations, attached as Exhibit B.
[11] *See* Plaintiff's April 5, 2023 Objections to Notice of Production from Non-Parties, attached as Exhibit C.

a disregard for the rules of discovery and impedes Defendant's efforts to prepare their case in a timely fashion.

9. As explained below, Defendant requests that Plaintiff's objection be overruled, the subpoenas issued to the non-parties, and Plaintiff compelled to provide written authorizations to Defendant.

10. Granting the relief sought herein will serve the dual interest of justice and fair dealing. The undersigned certifies that this Motion has not been brought for the purposes of delay.

WHEREFORE, Defendant, Calhoun-Liberty Hospital Association, Inc., respectfully requests this Court enter an Order: (1) overruling Plaintiff's objection to Defendant's proposed subpoenas and allow Defendant to issue same; (2) require Plaintiff produce those authorizations which are determined to be relevant to Defendant within seven (7) days of this Court's order; and (3) for any other relief it deems proper.

**Memorandum of Law**

**I. Legal Standard for Record Subpoenas to Non-Parties**

"The rule authorizing a subpoena duces tecum requires some degree of specificity, and the documents or papers sought should be designated with sufficient particularity to suggest their existence and materiality."[12] The information sought via subpoena under Rule 1.351 is limited to the scope of Rule 1.280(b), Fla. R. Civ. P. Specifically, Rule 1.280(b)(1) states that "[p]arties may obtain discovery regarding any matter … that is relevant to the subject matter of the pending action, whether it relates to the claim or

[12] *Walter v. Page*, 638 So.2d 1030, 1031 (Fla. 2d DCA 1994) (*citing* Fla. R. Civ. P. 1.350(a); *Palmer v. Servis*, 393 So.2d 653 (Fla. 5th DCA 1981)).

*defense of the party seeking discovery* or the claim or defense of any other party ...."[13]

## II. Plaintiff's Objections are Improper

For starters, Plaintiff failed to file their objections with the Court and it was not until Defendant informed them that Plaintiff simply filed Defendant's Notice of Production that the objections were first raised.

In addition, the objections raised by Plaintiff provide no rational basis and fail to specify the issue with how the subpoenas in question are not in compliance with form 1.922. All Plaintiff did was provide a broad and generic objection that the subpoenas are irrelevant, and invasion of privacy by seeking personal information about Plaintiff's private medical issues and her past and current employment that oppresses and harasses her.[14] Contrary to Plaintiff's position, the requested subpoenas/authorizations are clearly relevant to the facts in this case and Defendants would be prejudiced by not obtaining this information.

Plaintiff takes issue with Defendant seeking medical information related to Plaintiff's damages being sought. However, the Amended Complaint, Plaintiff's answers to interrogatories, and also Plaintiff's deposition testimony provided a number of detail into Plaintiff's allegations and damages, including her seeking treatment for "emotional distress," "emotional pain," and other issues surrounding mental suffering.[15] Because Plaintiff is seeking damages for emotional pain, Defendants are entitled to the information pertaining to Plaintiff's prior and current treatment (as well as any medical issues with her

---

[13] Emphasis added.
[14] *See* Plaintiff's April 4, 2023 Objections to Notice of Production from Non-Parties.
[15] *See* Plaintiff's Verified Answers to Defendant's First Set of Interrogatories, at #11; see also Amended Complaint, ¶¶'s 63, 70, 77, 87, 94, 104, 111, 121, 128, and 135.

emotional pain while at work). These subpoenas/authorizations are relevant, not unduly burdensome, and do not implicate any privacy concerns.

Plaintiff also takes issue with Defendant seeking information about her "past and current employment which oppresses and harasses Plaintiff by invading her privacy."[16] However, the Amended Complaint, Plaintiff's answers to interrogatories, and also Plaintiff's deposition testimony clearly establish that Plaintiff is also seeking damages for lost wages, loss of insurance benefits, potential promotions, damage to Plaintiff's reputation, and retirement investment account gains.[17] Because Plaintiff is seeking damages that are directly related to her current and former employers (including salary, benefits, etc.), Defendants are entitled to the information pertaining to Plaintiff's prior and current employment. These subpoenas/authorizations are also relevant, not unduly burdensome, and do not implicate any privacy concerns.

## III. Conclusion

Defendant's proposed subpoenas/authorizations seek relevant, discoverable information and have been narrowly-tailored to the best of its ability. Accordingly, Plaintiff's objections should be overruled, and the Court should enter an Order allowing Defendant to issue their proposed subpoenas.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of April, 2023, a true and correct copy of the foregoing was filed with the Clerk of Calhoun County by using the Florida Courts e-

[16] *See* Plaintiff's April 4, 2023 Objections to Notice of Production from Non-Parties.
[17] *See* Plaintiff's Verified Answers to Defendant's First Set of Interrogatories, at #11; see also Amended Complaint, ¶¶'s 56, 87, 94, 104, 111, 121, 128, and 135.

Filing Portal, which will send an automatic e-mail message to all parties registered with the e-Filing Portal system.

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant Calhoun-Liberty Hospital Association, Inc.*
890 South Palafox Street, Suite 200
Pensacola, Florida 32502
Telephone: (850) 483-5909
Facsimile: (850) 438-6969
E-mail: michael.kelly@csklegal.com
E-mail: zaray.avino@csklegal.com

By: s/ Michael B. Kelly
MICHAEL B. KELLY
Florida Bar No.: 115345

1085.0944-00/28159638

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR CALHOUN COUNTY, FLORIDA**

**MARY WATSON,**

**Plaintiff,**

**v.** **Case No.: 2020-CA-000064**

**BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,**

**Defendants.**

**______________________________________/**

**PLAINTIFF'S VERIFIED ANSWERS TO DEFENDANT CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.'S FIRST SET OF INTERROGATORIES**

1. What is the name and address of the person answering these interrogatories, and, if applicable, the person's official position or relationship with the party to whom the interrogatories are directed?

**ANSWER:**

Name: Mary C. Watson
Address: 3361 Shadowmoss Dr., Tallahassee, FL 32308

2. List the names of all employers, including self-employment, for whom you have worked in the past 10 years. Please include the name and address of the employer, phone numbers, dates of employment, rates of pay, job title, and reason for leaving.

**ANSWER:**

The following is information, that I can recall, pertaining to employers for whom I have worked in the past 10 years:

Employer: **University of Florida** – Department of Medicine
Address: 1500 SW Archer Road, Gainesville, FL 32610
Phone No.: (352) 265-0111

Date(s): 2011 – January 2013
Pay Rate(s): $12.00 - $15.00 hourly
Job Title(s): Resident Physician – Internal Medicine residency training
Separation: Began a medical leave of absence in January 2013.

Employer: **University of Florida** – Department of Neurology
Address: 1149 Newell Drive, Gainesville, FL 32610
Phone No.: (352) 273-5550
Date(s): January 2014 – January 2015
Pay Rate(s): $20.00 hourly
Job Title(s): Research Investigator
Separation: Left to start Family Medicine residency training.

Employer: **Tallahassee Memorial Hospital**
Address: 1300 Miccosukee Road, Tallahassee 32308
Phone No.: (850) 431-1155
Date(s): February 2015 – August 2017
Pay Rate(s): $18.00 hourly
Job Title(s): Resident Physician – Family Medicine residency training
Separation: Completed post graduate training residency program.

Employer: **Calhoun Liberty Hospital**
Address: 20370 Burns Ave, Blountstown, FL 32424
Phone No.: (850) 674-5411
Date(s): August 2016 – August 2017
Pay Rate(s): $120.00 hourly – part-time employment
Job Title(s): Hospitalist Physician
Separation: N/A; transitioned to full-time employment.

Employer: **Calhoun Liberty Hospital**
Address: 20370 Burns Ave, Blountstown, FL 32424
Phone No.: (850) 674-5411
Date(s): August 2017 – May 2019
Pay Rate(s): $150.00 hourly
Job Title(s): Attending ER/Hospitalist Physician
Separation: N/A; became employed by Envision working at Calhoun Liberty Hospital.

Employer: **Envision Physician Services** – assigned at Calhoun Liberty Hospital
Address: 7700 West Sunrise Boulevard, Plantation, FL 33322
Phone No.: (615) 665.1283
Date(s): June 2019 – January 20, 2020
Pay Rate(s): $170.00 hourly
Job Title(s): ER/Hospitalist Physician
Separation: Terminated.

Employer: **Calhoun Liberty Hospital** – Emergency Department
Address: 20370 Burns Ave, Blountstown, FL 32424
Phone No.: (850) 674-5411
Date(s): July 2019 – January 20, 2020
Pay Rate(s): $60,000.00 annually w/ $2,000 business expense stipend
Job Title(s): Site Medical Director
Separation: Terminated.

Employer: **Archbold Medical Group**
Address: Gordon Ave. at, Mimosa Dr, Thomasville, GA 31792
Phone No.: (229) 228-2000
Date(s): June 1, 2020 – present
Pay Rate(s): $100.00 hourly
Job Title(s): Outpatient Primary Care Physician
Separation: N/A; currently employed.

Employer: **Pelham Parkway Nursing Home**
Address: 608 Dogwood Dr NE, Pelham, GA 31779
Phone No.: (229) 294-8602
Date(s): July 1, 2020 – present
Pay Rate(s): $18,000.00 annually
Job Title(s): Medical Director
Separation: N/A; currently employed.

3. List all former names and when you were known by those names. State all addresses where you have lived for the past 10 years, the dates you lived at each address, your Social Security number, your date of birth, and, if you are or have ever been married, the name of your spouse or spouses.

**ANSWER:**

Name(s): Mary Carl
SSN: ***-**-6045
DOB: February 17, 1979
Spouse(s): Robert M. Nauss, IV [ex-husband]

Address(es): 2105 NW 101st Street, Gainesville, FL 323606
- June 2011 to January 2015

3361 Shadowmoss Drive, Tallahassee, FL 32308
- January 2015 to *present*

4. Describe in detail the specifics of Plaintiff reporting or objecting to violations of law, rules, and/or regulations to other employees or to investigators, including who these conversations were with, when these investigations took place, what was said, dates of these conversations, and where these conversations took place.

**<u>ANSWER</u>:**

The following is information, that I can recall, pertaining to instances of reporting or objecting to violations:

Reporting: **I verbally reported that Dr. Timothy Adamcryk was carrying around alcohol and sexually harassing nurses.**
Participant(s): Olevia McNally received this report.
Date(s): August 2019; *do not recall exact date*
Location(s): Calhoun Liberty Hospital

Reporting: **I verbally objected to the differential treatment of female physicians, as Dr. Timothy Adamcryk was not subjected to disciplinary action for workplace violations.**
Participant(s): Olevia McNally received this report.
Date(s): August 2019; *do not recall exact date*
Location(s): Calhoun Liberty Hospital

Reporting: **In writing, I again reported incidents involving Dr. Timothy Adamcryk drinking alcohol on hospital property and being inappropriate with nurses.**
Participant(s): Olevia McNally received this report via text message.
Date(s): October 24, 2019
Location(s): N/A

Reporting: **I again verbally reported incidents involving Dr. Timothy Adamcryk drinking alcohol on hospital property and being inappropriate with nurses.**
Participant(s): I spoke to Janet Kinney over the phone.
Date(s): October 24, 2019
Location(s): N/A

Reporting: **In writing, I reported depleted medical supplies and nursing staff shortages.**
Participant(s): I emailed Mark Plummer.
Date(s): November 2019; *do not recall exact date*
Location(s): N/A

Reporting: **I verbally reported the improper managing practices of Janet Kinney and Janna Matautia.**
Participant(s): I spoke to Mark Plummer over the phone.
Date(s): November 2019; *do not recall exact date*
Location(s): N/A

Reporting: **I verbally reported the improper managing practices of Janet Kinney and Janna Matautia, the differential treatment of female physicians, and the unprofessional behavior of Dr. Timothy Adamcryk.**
Participant(s): Michael Kozar received this report.
Date(s): November 25, 2019.
Location(s): McDonald's restaurant.

Reporting: **I reported, verbally and in writing, an incident in which Janna Matautia falsely alleged, in front of staff, that I failed to see a patient.**
Participant(s): I spoke to Dr. Lee Johnson over the phone and communicated with Mark Plummer, Michael Kozar, and Olevia McNally via text message.
Date(s): December 9, 2019
Location(s): N/A

Reporting: **I reported medicine requests errors committed by a nurse.**
Participant(s): Paige Tolley and Janna Matautia received this report.
Date(s): December 2019; *do not recall exact date*
Location(s): Calhoun Liberty Hospital

Responsive to the above reports and objections, no actions were taken to properly address my complaints and I was retaliated against. Ultimately, I was falsely accused of unprofessional conduct and terminated on January 20, 2020.

I am unable to recall or provide, with absolute certainty, additional details responsive to this interrogatory.

5. Describe with as much specificity as possible, how you were retaliated against by any Defendant or by Defendant's employees or agents, including what occurred, the date on which it occurred, who was involved, and why you believe you were retaliated against. List each and every example with specificity as Defendant will rely on this answer as a complete description.

**ANSWER:**

The following is information, that I can recall, pertaining to instances of retaliation that I was subjected to:

Retaliation: **I was terminated.**
Participant(s): Janet Kinney, Tammy Jarvis, and Dr. Lee Johnson were involved in the decision to terminate me.
Date(s): January 20, 2020
Reason(s): I was retaliated against for reporting health and employment violations, along with discriminatory management practices.

Retaliation: **My efforts to secure employment were undermined**.
Participant(s): Dr. Timothy Adamcryk and Janna Matautia were involved.
Date(s): January 2020 – present
Reason(s): I was retaliated against for reporting health and employment violations, along with discriminatory management practices.

I am unable to recall or provide, with absolute certainty, additional details responsive to this interrogatory.

6. Describe with as much specificity as possible, how you were discriminated against by the Defendant or by Defendant's employees or agents, including what occurred, the date on which it occurred, who was involved, and why you believe you were discriminated against. List each and every example with specificity as Defendant will rely on this answer as a complete description.

**ANSWER:**

The following is information, that I can recall, pertaining to instances of discrimination that I was subjected to during my employment.

Discrimination: **I was subjected to disparate treatment and disciplinary measures.**
Participant(s): Olevia McNally, Timothy Adamcryk, Janet Kinney, Janna Matautia, Michael Kozer, and Mark Plummer.
Date(s): July 2019 – January 20, 2020.
Reason(s): As the only full-time female physician on staff, during my employment, I was treated less preferably than male physicians. Whereas a male physician was allowed to bring and consume open containers of alcohol on hospital property, I was ultimately terminated for reporting such violations.

Please also see my answers to responsive to interrogatories 4 and 5 above.

I am unable to recall or provide, with absolute certainty, additional details responsive to this interrogatory.

7. Describe with as much specificity as possible, how your current and/or prospective business relationships with third parties were tortuously interfered with by any Defendant or by Defendant's employees or agents, including what occurred, the date on which it occurred, who was involved, and why you believe you were tortuously interfered with. List each and every example with specificity as Defendant will rely on this answer as a complete description.

**ANSWER:**

The following is information, that I can recall, pertaining to instances in which my efforts to secure employment were undermined:

| | |
|---|---|
| Occurrence: | **An offered outpatient position was withdrawn by TMH the same day, due to "conflicting information from former employer."** |
| Date(s): | January 22, 2020 |
| Participant(s): | Dr. Timothy Adamcryk and Janna Matautia |
| Reason(s): | I was retaliated against for reporting health and employment violations, along with discriminatory management practices. |

| | |
|---|---|
| Occurrence: | **An offered employment position was withdrawn by Schumacher Health, following "concerning comments made by a Dr. Adamcryk when [they] called Calhoun Liberty Hospital to verify [my] employment and were transferred to his extension."** |
| Date(s): | February 10, 2020 – February 17, 2020 |
| Participant(s): | Dr. Timothy Adamcryk and Janna Matautia |
| Reason(s): | I was retaliated against for reporting health and employment violations, along with discriminatory management practices. |

| | |
|---|---|
| Occurrence: | **An offered outpatient position was withdrawn by CRMC, and I was told there were employment concerns after contacting Calhoun Liberty Hospital for employment verification.** |
| Date(s): | March 17, 2020 – March 24, 2020 |
| Participant(s): | Dr. Timothy Adamcryk and Janna Matautia |
| Reason(s): | I was retaliated against for reporting health and employment violations, along with discriminatory management practices. |

| | |
|---|---|
| Occurrence: | **An employment opportunity with Archbold Medical Group was jeopardized, after Dr. Adamcryk made "unflattering statements" about my employment with Calhoun Liberty Hospital.** |
| Date(s): | May 2020 |
| Participant(s): | Dr. Timothy Adamcryk and Janna Matautia |
| Reason(s): | I was retaliated against for reporting health and employment violations, along with discriminatory management practices. |

Please also see my answer responsive to interrogatory 5 above.

I am unable to recall or provide, with absolute certainty, additional details responsive to this interrogatory.

8. Describe with as much specificity as possible, each and every adverse action you have been subjected to during your time of employment with CLH, and which you attribute to retaliation as laid out in the Amended Complaint. Please include the date of the action, who committed the action, and identify any witnesses to the actions; and explain why you believe these actions were taken against you.

**ANSWER:**

Please see my answers responsive to interrogatories 4, 5, 6, and 7 above.

I am unable to recall or provide, with absolute certainty, additional details responsive to this interrogatory.

9. Describe with as much specificity as possible, each and every adverse action you have been subjected to which you attribute to tortious interference as laid out in the Amended Complaint. Please include the date of the action, who committed the action, and identify any witnesses to the actions; and explain what the outcome of said actions were.

**ANSWER:**

Please see my answers responsive to interrogatories 4, 5, 6, and 7 above.

I am unable to recall or provide, with absolute certainty, additional details responsive to this interrogatory.

10. List all facts that you intend to rely upon to support your claim(s) against each Defendant. List each and every example with specificity as Defendant will rely on this answer as a complete list.

**ANSWER:**

Objection –this interrogatory seeks information protected by attorney-client privilege and possibly attorney work product. Subject to and without waiving this objection, please see answers provided responsive to other interrogatories herein.

11. State the total amount of monetary losses, lost wages, and other economic damages you claim to have suffered due to the actions of each Defendant, and please describe, identify, and itemize each and every item of damages claimed by you in this lawsuit, and for each item, state the factual basis for the claim and the amount claimed. List each and every example with specificity as Defendant will rely on this answer as a complete list.

**ANSWER:**

I claim lost wages. The following are details relating to these damages based on information that I am aware of and can recall at this time:

I maintained gainful employment with Defendants as acting Medical Director until my termination on January 20, 2020. While working for Defendants, I earned **total monthly wages of about $39,000.00** or, alternatively, **total weekly wages of about $9,000.00**. Had I not been terminated, been allowed to continue working for Defendants, maintained employment up to the present date, and given the fact that approximately **92 weeks** have elapsed since the date of my termination, I estimate that I would have made about **$828,000.00** in gross wages.

My financial damages, solely relating to loss of wages thus far, equate to approximately **$828,000.00**. This calculation excludes potential overtime, differential pay, and projection of pay raises.

Additionally, I am claiming damages relating to the loss of insurance benefits, potential promotion, and retirement investment account gains. I am currently unable to provide an exact estimate of these damages.

Moreover, financial hardship caused me to fall behind on numerous installments accounts, which in turn negatively impacted my credit standing. This has and will continue to affect my financial capabilities involving credit.

I am also claiming damages for emotional pain and attorney's fees and costs. I have not placed an amount on these damages as I am seeking the maximum allowed by law and as a jury may see fit.

12. Has anything been paid or is anything payable from any third party for the damages listed in your answers to these interrogatories? If so, state the amounts paid or payable, the name and business address of the person or entity who paid or owes said amounts, and which of those third parties have or claim a right of subrogation.

**ANSWER**:

I received $262.00 in food benefits, for the months of April and May 2020, from the State of Florida.

13. List the names and addresses of all persons who are believed or known by you, your agents, or your attorneys to have any knowledge concerning any of the issues in this lawsuit; and specify the subject matter about which the witness has knowledge.

**ANSWER**:

The following is information, that I can recall, pertaining to individuals possessing knowledge relevant to my claims:

Name: **Dr. Timothy Adamcryk**
Address: *Unknown*
- Has knowledge that I reported incidents involving him drinking alcohol on hospital property and being inappropriate with nurses.
- Has knowledge of the circumstances surrounding and leading up to my termination.
- Has knowledge of his efforts, following my termination, to undermine my attempts to secure employment.
- May have knowledge of other relevant facts or events, which I am presently unaware of.

Name: **Olevia McNally**
Address: *Unknown*
- Has knowledge of receiving my report of Dr. Timothy Adamcryk drinking alcohol on hospital property and being inappropriate with nurses.
- Has knowledge of receiving my report that I was falsely accused, by Janna Matautia, of failing to see a patient in my care.

- Has knowledge of the circumstances surrounding and leading up to my termination.
- May have knowledge of other relevant facts or events, which I am presently unaware of.

Name: **Janet Kinney**
Address: *Unknown*
- Has knowledge of receiving my report of Dr. Timothy Adamcryk drinking alcohol on hospital property and being inappropriate with nurses.
- Has knowledge of the circumstances surrounding and leading up to my termination.
- Has knowledge of making the decision to terminate me.
- May have knowledge of other relevant facts or events, which I am presently unaware of.

Name: **Mark Plummer**
Address: *Unknown*
- Has knowledge of receiving my report of depleted medical supplies and nursing staff shortages.
- Has knowledge of receiving my report of Janet Kinney's and Janna Matautia's improper managing practices.
- May have knowledge of other relevant facts or events, which I am presently unaware of.

Name: **Janna Matautia**
Address: *Unknown*
- Has knowledge of falsely accusing me of failing to see patients.
- Has knowledge of receiving my report of medicine requests errors committed by a nurse.
- Has knowledge of the circumstances surrounding and leading up to my termination.
- Has knowledge of his participation in efforts to undermine my attempts to secure employment.
- May have knowledge of other relevant facts or events, which I am presently unaware of.

Name: **Michael Kozar**
Address: *Unknown*
- Has knowledge of receiving my report of the improper managing practices of Janet Kinney and Janna Matautia, the differential treatment of female physicians, and the unprofessional behavior of Dr. Timothy Adamcryk.
- Has knowledge of receiving my report that I was falsely accused, by Janna Matautia, of failing to see a patient in my care.
- Has knowledge of that, along with other employment, I feared retaliation for reporting violations.
- May have knowledge of other relevant facts or events, which I am presently unaware of.

Name: **Dr. Lee Johnson**
Address: *Unknown*
- Has knowledge of receiving my report that I was falsely accused, by Janna Matautia, of failing to see a patient in my care.
- May have knowledge of other relevant facts or events, which I am presently unaware of.

Name: **Paige Tolley**
Address: *Unknown*

- Has knowledge of receiving my report of medicine requests errors committed by a nurse.
- Has knowledge of the circumstances surrounding and leading up to my termination.
- May have knowledge of other relevant facts or events, which I am presently unaware of.

Name: **Tammy Jarvis**
Address: *Unknown*

- Has knowledge of informing me of my termination.
- Has knowledge of instructing me not to communicate with any employee of Calhoun Liberty Hospital.
- Has knowledge that the decision to terminate me was made by Janet Kinney.
- Has knowledge of the circumstances surrounding and leading up to my termination.
- May have knowledge of other relevant facts or events, which I am presently unaware of.

Name: **Dr. Lee Johnson**
Address: *Unknown*

- Has knowledge of informing me of my termination.
- Has knowledge of instructing me not to communicate with any employee of Calhoun Liberty Hospital.
- Has knowledge that the decision to terminate me was made by Janet Kinney.
- Has knowledge of the circumstances surrounding and leading up to my termination.
- May have knowledge of other relevant facts or events, which I am presently unaware of.

14. Have you heard or do you know about any statement or remark made by or on behalf of any party to this lawsuit, other than yourself, concerning any issue in this lawsuit? If so, state the name and address of each person who made the statement or statements, the name and address of each person who heard it, and the date, time, place, and substance of each statement.

**ANSWER:**

None other than the statements and remarks referenced within my answers to interrogatories 4 and 7 above.

I am unable to recall or provide, with absolute certainty, additional details responsive to this interrogatory.

15. Please state whether or not you have ever been a party to a civil lawsuit other than this one, or been a party to any legal or administrative claim against any employer (including but not limited to any administrative charge of discrimination), and if so, list the state and city in which each claim or lawsuit was filed, the date the lawsuit or claim was filed, the nature of each such claim or lawsuit, whether the proceeding was filed in federal or state court, the case number, and the outcome of each such claim or lawsuit.

**ANSWER:**

I have not been a party to another civil lawsuit.

16. Do you currently or have you ever had a Facebook, Myspace, Instagram, Periscope, LinkedIn, Google + (Plus), Twitter, Tumblr, or any other social networking account? If so, please identify the names of the social media accounts you have and use as well as your username(s) and/or handle(s) for each account you have and/or use.

**ANSWER:**

I have the following social networking accounts:

**Facebook**: Marycarolynwatson
**Instagram**: finnsmommd
**LinkedIn**: Mary Watson MD

17. Describe all documents that you contend support your claims of discrimination, retaliation, and tortious interference, including a description of what the document is, what information is contained in the document, who wrote it, when it was created, and who has custody of it at the present time. List each and every document as Defendant will rely on this answer as a complete list.

**ANSWER:**

| | |
|---|---|
| Document(s): | **My personnel file.** |
| Date(s): | September 2016 to January 20, 2020 |
| Creators(s): | *Unknown* |
| Custodian(s): | *Unknown* |
| Contention: | My personnel file may include documents reflecting or supporting the decision to terminate me. |

| | |
|---|---|
| Document(s): | **Human Resources records.** |
| Date(s): | September 2016 to January 20, 2020 |
| Creator(s): | *Unknown* |
| Custodian(s): | *Unknown* |
| Contention: | HR records may include documents relating to disciplinary efforts made to address reported violations, and records relating to employers (with whom I applied) seeking a reference. |

18. Please state whether you have ever, at any time through the present, filed a claim or complaint, either formally or informally, internally or externally, against any employer for any work-related matter, including but not limited to claims of discrimination, retaliation, sexual harassment, FMLA benefits, unemployment benefits, breach of contract, and/or worker's compensation. If so, please identify the employer against whom the claim was made, the date of the claim, the agency with whom the claim was filed, and the disposition of the claim.

**ANSWER:**

I have not filed a complaint or claim against any other employer.

19. Identify each and every source of income Plaintiff has received from January 1, 2020 through the present, including from unemployment, jobs Plaintiff may have held with an employer, employment agency, or by self-employment, and all income Plaintiff received from the CLH, specifying the amounts received, dates of receipt, and the sources of such income, and identify all documents which support, tend to support, or tend to refute Plaintiff's response to this interrogatory.

**ANSWER:**

The following is information, that I can recall, pertaining to income that I have received since January 1, 2020:

1/15/2020: deposit from Sheridan Health – $11,736.00 and $5,260.60

1/31/2020: deposit from Sheridan Health – $7,742.50

2/14/2020: deposit from Sheridan Health – $2,106.86 and $1956.00

Please also see my answers responsive to interrogatories 2 and 12 above.

20. Identify each person who has been interviewed by, contacted by, or has communicated with Plaintiff, or any representative or agent of Plaintiff (including investigators) or someone acting on Plaintiff's behalf, or from whom statements have been obtained by Plaintiff, any representative or agent of Plaintiff (including investigators) or someone acting on Plaintiff's behalf regarding the allegations in the Amended Complaint.

**ANSWER:**

Objection –this interrogatory seeks information protected by attorney-client privilege and attorney work product.

# VERIFICATION AFFIDAVIT

MARY WATSON

STATE OF: ~~Florida~~ XXXXXXX Virginia

COUNTY OF: ~~Leon~~ XXXXX Hanover

The foregoing instrument was acknowledged before me, by means of ☐ physical presence or ☑ online notarization, this 28th day of October, 2021 by MARY WATSON, who states that they have read the foregoing answers to interrogatories and that the answers are true and correct.

Notary Public, State of Virginia

Sherica Pleasants Ford
REGISTRATION NUMBER
7911784
COMMISSION EXPIRES
July 31, 2025
COMMONWEALTH OF VIRGINIA • ELECTRONIC NOTARY PUBLIC

Printed Name: Sherica Pleasants Ford

Commission Expiration Date: 07/31/2025

Personally Known: ☐

OR Produced Identification: ☑

Type of Identification Produced: Florida Driver's Liscense

Notarized online using audio-video communication

EXHIBIT "B"

## Zaray R. Aviñó

**From:** Zaray R. Aviñó
**Sent:** Tuesday, March 28, 2023 4:40 PM
**To:** 'Marie Mattox'; michelle@mattoxlaw.com
**Cc:** Lisa Fountain; lkiser@sniffenlaw.com; Natalie Jones; Karen J. Barger; Lori.Mans@jacksonlewis.com; Rundell, Shelly (Orlando); jacksonvilledocketing@jacksonlewis.com; 'John.Barr@jmblawoffice.com'; 'nmonk@sniffenlaw.com'; 'rsniffen@sniffenlaw.com'; sanders@sniffenlaw.com; Karen J. Barger; Michael B. Kelly; Donna M. Troedel
**Subject:** NPNP. Proposed Subpoenas and Authorizations - Claim No. 7030143738 (Mary Watson vs. Alliant Management Services and Calhoun Liberty Hospital CLH) CSK File: 1085.0944-00
**Attachments:** 169836330 Notice.pdf; Subpoena - Duces Tecum without Deposition to Tallahassee Memorial Hospital.pdf; Subpoena - Duces Tecum without Deposition to University of Florida College of Medicine.pdf; Subpoena - Duces Tecum without Deposition to University of Florida Department of Medicine.pdf; Subpoena - Duces Tecum without Deposition to University of Florida Department of Neurology.pdf; AUTHORIZATION - Memorial Hospital Employment records.pdf; AUTHORIZATION - Archbold Medical Group Employment records.pdf; AUTHORIZATION - Pelham Parkway Nursing Home Employment records.pdf; AUTHORIZATION - Southland, MD Employment records.pdf; AUTHORIZATION - Cerebral Online Psychiatry Medical records.pdf

**Importance:** High

Good afternoon Ms. Mattox,

Attached please find a Notice of Production from Non-Parties along with proposed subpoenas. Also attached please find five authorizations to be executed by your client. Kindly, please have your client sign the authorizations and return same to us at your earliest convenience.

Thank you.

The Florida Law Firm
www.csklegal.com

**Zaray R. Aviñó**
*Legal Assistant to Attorney:*
*Michael B. Kelly*
Tel: 850-483-5922 | Fax: 850-438-6969
**Email: Zaray.Avino@csklegal.com**

**Cole, Scott & Kissane P.A.**
890 South Palafox Street. Suite 200
Pensacola, FL, 32502

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR CALHOUN COUNTY, FLORIDA

CASE NO.: 20000064CAAXMX

MARY WATSON,

Plaintiff,

v.

BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,

Defendants.

_______________________________________/

**DEFENDANT CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.'S NOTICE OF PRODUCTION FROM NON-PARTIES**

**TO:** Marie A. Mattox, Esq.
203 North Gadsden Street
Tallahassee, FL 32301

**YOU ARE NOTIFIED** that after ten (10) days from the date of service of this Notice, if no objection is received from any party, the undersigned will issue or apply to the Clerk of this Court for issuance of the attached subpoenas for production from non-parties as listed below:

Tallahassee Memorial Hospital
1300 Miccosukee Road
Tallahassee, FL 32308

University of Florida
College of Medicine
1329 SW 16th St.
Gainesville, FL 32608

University of Florida
Department of Medicine
1600 SW Archer Road
Gainesville, FL 32610

University of Florida
Department of Neurology
1149 Newell Drive
Gainesville, FL 32610

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th day of March, 2023, a true and correct copy of the foregoing was filed with the Clerk of Calhoun County by using the Florida Courts e-Filing Portal, which will send an automatic e-mail message to all parties registered with the e-Filing Portal system.

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant,*
Calhoun-Liberty Hospital Association, Inc.
Cole, Scott & Kissane Building
715 South Palafox Street
Pensacola, Florida 32502
Telephone (850) 483-5930
Facsimile (850) 438-6969
Primary e-mail: michael.kelly@csklegal.com
Secondary e-mail: zaray.avino@csklegal.com
Alternate e-mail: donna.troedel@csklegal.com

By: /s/ Michael B. Kelly
MICHAEL B. KELLY
Florida Bar No.: 115345

1085.0944-00/-1

**AUTHORIZATION TO USE OR DISCLOSE PROTECTED EMPLOYMENT INFORMATION**

TO: Archbold Medical Group
Gordon Avenue at Mimosa Drive
Thomasville, GA 31792
Attn: Human Resources

**IN COMPLIANCE WITH HIPAA REQUIREMENTS FOR JUDICIAL AND ADMINISTRATIVE PROCEEDINGS, I, PATIENT'S NAME: Mary C. Watson**

**DOB: 2/17/1979**
**SSN: xxx-xx-6045**

I, , do hereby authorize you to release my records to any representative of Cole, Scott & Kissane, P.A., 890 South Palafox Street, Suite 200, Pensacola, Florida 32502; and for Cole, Scott & Kissane to use and to disclose the following information from my employment records for use at trial and for other purposes as are permitted under the applicable Florida Statues and Florida Rules of Civil Procedure for purposes of litigation:

Any and all documents related to **Mary C. Watson, SS#:xxx-xx-6045, DATE OF BIRTH:2/17/1979,** including:

- work records;
- applications for employment and resume;
- complete job description;
- resignation and/or termination letters;
- Payroll documents, wage reports, timesheets, records of payment, U.S. Government withholding forms, W-2 forms, attendance forms charts;
- health forms, including reports from examining physicians/labs with respect to any medical or mental examinations;
- applications for Group Health Insurance (including claims forms);
- workers' compensation claims;
- Unemployment compensation records;
- Any documents regarding medical disability applications or FMLA records;
- performance evaluations, evaluations, reprimands, and/or commendations; and
- all other information in your possession or control pertaining to the employment of the above individual from the first day of employment to day of termination, or, if still employed, to present.

I release all records relating to HIV testing and treatment; STD testing and treatment; alcohol and drug treatment; and mental health treatment. Redisclosure of this information may be made in accordance with Florida Statues and Florida Rules of Civil Procedure for purposes of this litigation only.

I understand that the information described above may be redisclosed by COLE, SCOTT & KISSANE and I release you and your agents from all liability arising from the disclosure of my employment information pursuant to this agreement. I understand that if the organization authorized to receive the information is not a health plan or healthcare provider; the released information may no longer be protected by Federal privacy regulations.

I understand that I need not sign this authorization to ensure treatment.

I understand that I may inspect or request copies of any information disclosed by this authorization.

I understand that I have a right to revoke this authorization at any time. I understand that if I revoke this authorization I must do so in writing and present my written revocation to the department or facility listed on the authorization. I understand that the revocation will not apply to information that has already been released in response to this authorization. I understand that the revocation will not apply to my insurance company when the law provides my insurer with the right to contest a claim under my policy.

This authorization shall remain valid for six months from the date signed below.

______________ ______________________________________________
**DATE** **PATIENT OR AUTHORIZED PERSON**
**PARENT ( ); LEGAL GUARDIAN ( ); EXECUTOR ( );**

POWER OF ATTORNEY ( )

DATE

WITNESS

# AUTHORIZATION TO USE OR DISCLOSE PROTECTED HEALTH INFORMATION

TO: Cerebral Online Psychiatry
340 South Lemon Avenue, Suite 9892
Walnut, CA 91789
Attn: Records Custodian

**IN COMPLIANCE WITH HIPAA REQUIREMENTS FOR JUDICIAL AND ADMINISTRATIVE PROCEEDINGS, I, PATIENT'S NAME: Mary C. Watson**

**DOB: 2/17/1979**
**SSN: xxx-xx-6045**

I, , do hereby authorize you to release my records to any representative of Cole, Scott & Kissane, P.A., 890 South Palafox Street, Suite 200, Pensacola, Florida 32502; and for Cole, Scott & Kissane to use and to disclose the following information from my health records for use at trial and for other purposes as are permitted under the applicable Florida Statues and Florida Rules of Civil Procedure for purposes of litigation:

**your complete records, from cover-to-cover, including but not limited to patient registrations; patient information forms or questionnaires; admission reports; consents; clinic notes; office notes; chart notes; medical reports; laboratory reports; blood work; specimen analysis or urinalysis; radiology reports, radiology films; medical history; in-patient records; out-patient records; physician orders; physician notes; nurses notes; intake/outtake; clinical tests; medication sheets; operative reports; surgical notes; anesthetic reports; rhythm strips; transfer forms; pathology reports; hyperbaric reports; life-flight records; ER information, correspondence; workers compensation authorizations; itemized bill; UB-92 information, physical history, discharge, physical therapy notes; rehabilitation notes; social therapy notes; occupational therapy notes; speech therapy notes; labor/delivery summary, postpartum flow sheet, cardio-pulmonary reports, consultation reports, itemized bill; UB-92 and any and all documents and or records pertaining to any treatment, examination, and diagnosis made**.

I release all records relating to HIV testing and treatment; STD testing and treatment; alcohol and drug treatment; and mental health treatment. Redisclosure of this information may be made in accordance with Florida Statues and Florida Rules of Civil Procedure for purposes of this litigation only.

I understand that the information described above may be redisclosed by COLE, SCOTT & KISSANE and I release you and your agents from all liability arising from the disclosure of my health information pursuant to this agreement. I understand that if the organization authorized to receive the information is not a health plan or healthcare provider; the released information may no longer be protected by Federal privacy regulations.

I understand that I need not sign this authorization to ensure treatment.

I understand that I may inspect or request copies of any information disclosed by this authorization.

I understand that I have a right to revoke this authorization at any time. I understand that if I revoke this authorization, I must do so in writing and present my written revocation to the department or facility listed on the authorization. I understand that the revocation will not apply to information that has already been released in response to this authorization. I understand that the revocation will not apply to my insurance company when the law provides my insurer with the right to contest a claim under my policy.

This authorization shall remain valid for six months from the date signed below.

**DATE**

**PATIENT OR AUTHORIZED PERSON**
**PARENT ( ); LEGAL GUARDIAN ( ); EXECUTOR ( );**
**POWER OF ATTORNEY ( )**

**DATE**

**WITNESS**

**AUTHORIZATION TO USE OR DISCLOSE PROTECTED EMPLOYMENT INFORMATION**

TO: Memorial Hospital and Manor
1500 E. Shotwell Street
Bainbridge, GA 39819
Attn: Human Resources

**IN COMPLIANCE WITH HIPAA REQUIREMENTS FOR JUDICIAL AND ADMINISTRATIVE PROCEEDINGS, I, PATIENT'S NAME: Mary C. Watson**

**DOB: 2/17/1979**
**SSN: xxx-xx-6045**

I, , do hereby authorize you to release my records to any representative of Cole, Scott & Kissane, P.A., 890 South Palafox Street, Suite 200, Pensacola, Florida 32502; and for Cole, Scott & Kissane to use and to disclose the following information from my employment records for use at trial and for other purposes as are permitted under the applicable Florida Statues and Florida Rules of Civil Procedure for purposes of litigation:

Any and all documents related to **Mary C. Watson, SS#:xxx-xx-6045, DATE OF BIRTH:2/17/1979,** including:

- work records;
- applications for employment and resume;
- complete job description;
- resignation and/or termination letters;
- Payroll documents, wage reports, timesheets, records of payment, U.S. Government withholding forms, W-2 forms, attendance forms charts;
- health forms, including reports from examining physicians/labs with respect to any medical or mental examinations;
- applications for Group Health Insurance (including claims forms);
- workers' compensation claims;
- Unemployment compensation records;
- Any documents regarding medical disability applications or FMLA records;
- performance evaluations, evaluations, reprimands, and/or commendations; and
- all other information in your possession or control pertaining to the employment of the above individual from the first day of employment to day of termination, or, if still employed, to present.

I release all records relating to HIV testing and treatment; STD testing and treatment; alcohol and drug treatment; and mental health treatment. Redisclosure of this information may be made in accordance with Florida Statues and Florida Rules of Civil Procedure for purposes of this litigation only.

I understand that the information described above may be redisclosed by COLE, SCOTT & KISSANE and I release you and your agents from all liability arising from the disclosure of my employment information pursuant to this agreement. I understand that if the organization authorized to receive the information is not a health plan or healthcare provider; the released information may no longer be protected by Federal privacy regulations.

I understand that I need not sign this authorization to ensure treatment.

I understand that I may inspect or request copies of any information disclosed by this authorization.

I understand that I have a right to revoke this authorization at any time. I understand that if I revoke this authorization I must do so in writing and present my written revocation to the department or facility listed on the authorization. I understand that the revocation will not apply to information that has already been released in response to this authorization. I understand that the revocation will not apply to my insurance company when the law provides my insurer with the right to contest a claim under my policy.

This authorization shall remain valid for six months from the date signed below.

| | |
|---|---|
| **DATE** | **PATIENT OR AUTHORIZED PERSON** |

**PARENT ( ); LEGAL GUARDIAN ( ); EXECUTOR ( ); POWER OF ATTORNEY ( )**

**DATE** **WITNESS**


**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 890 SOUTH PALAFOX STREET, SUITE 200 - PENSACOLA, FLORIDA 32502 - (850) 483-5900 (850) 438-6969 FAX

**AUTHORIZATION TO USE OR DISCLOSE PROTECTED EMPLOYMENT INFORMATION**

TO: Pelham Parkway Nursing Home
608 Dogwood Dr., NE
Pelham, GA 31779
Attn: Human Resources

**IN COMPLIANCE WITH HIPAA REQUIREMENTS FOR JUDICIAL AND ADMINISTRATIVE PROCEEDINGS, I, PATIENT'S NAME: Mary C. Watson**

**DOB: 2/17/1979**
**SSN: xxx-xx-6045**

I, , do hereby authorize you to release my records to any representative of Cole, Scott & Kissane, P.A., 890 South Palafox Street, Suite 200, Pensacola, Florida 32502; and for Cole, Scott & Kissane to use and to disclose the following information from my employment records for use at trial and for other purposes as are permitted under the applicable Florida Statues and Florida Rules of Civil Procedure for purposes of litigation:

Any and all documents related to **Mary C. Watson, SS#:xxx-xx-6045, DATE OF BIRTH:2/17/1979,** including:

- work records;
- applications for employment and resume;
- complete job description;
- resignation and/or termination letters;
- Payroll documents, wage reports, timesheets, records of payment, U.S. Government withholding forms, W-2 forms, attendance forms charts;
- health forms, including reports from examining physicians/labs with respect to any medical or mental examinations;
- applications for Group Health Insurance (including claims forms);
- workers' compensation claims;
- Unemployment compensation records;
- Any documents regarding medical disability applications or FMLA records;
- performance evaluations, evaluations, reprimands, and/or commendations; and
- all other information in your possession or control pertaining to the employment of the above individual from the first day of employment to day of termination, or, if still employed, to present.

I release all records relating to HIV testing and treatment; STD testing and treatment; alcohol and drug treatment; and mental health treatment. Redisclosure of this information may be made in accordance with Florida Statues and Florida Rules of Civil Procedure for purposes of this litigation only.

I understand that the information described above may be redisclosed by COLE, SCOTT & KISSANE and I release you and your agents from all liability arising from the disclosure of my employment information pursuant to this agreement. I understand that if the organization authorized to receive the information is not a health plan or healthcare provider; the released information may no longer be protected by Federal privacy regulations.

I understand that I need not sign this authorization to ensure treatment.

I understand that I may inspect or request copies of any information disclosed by this authorization.

I understand that I have a right to revoke this authorization at any time. I understand that if I revoke this authorization I must do so in writing and present my written revocation to the department or facility listed on the authorization. I understand that the revocation will not apply to information that has already been released in response to this authorization. I understand that the revocation will not apply to my insurance company when the law provides my insurer with the right to contest a claim under my policy.

This authorization shall remain valid for six months from the date signed below.

**DATE**

**PATIENT OR AUTHORIZED PERSON**
**PARENT ( ); LEGAL GUARDIAN ( ); EXECUTOR ( );**

POWER OF ATTORNEY ( )

DATE

WITNESS



COLE, SCOTT & KISSANE, P.A.
COLE, SCOTT & KISSANE BUILDING - 890 SOUTH PALAFOX STREET, SUITE 200 - PENSACOLA, FLORIDA 32502 - (850) 483-5900 (850) 438-6969 FAX

**AUTHORIZATION TO USE OR DISCLOSE PROTECTED EMPLOYMENT INFORMATION**

TO: Southland, MD
P.O. Box 1276
Thomasville, GA 31799
Attn: Human Resources

**IN COMPLIANCE WITH HIPAA REQUIREMENTS FOR JUDICIAL AND ADMINISTRATIVE PROCEEDINGS, I, PATIENT'S NAME: Mary C. Watson**

**DOB: 2/17/1979**
**SSN: xxx-xx-6045**

I, , do hereby authorize you to release my records to any representative of Cole, Scott & Kissane, P.A., 890 South Palafox Street, Suite 200, Pensacola, Florida 32502; and for Cole, Scott & Kissane to use and to disclose the following information from my employment records for use at trial and for other purposes as are permitted under the applicable Florida Statues and Florida Rules of Civil Procedure for purposes of litigation:

Any and all documents related to **Mary C. Watson, SS#:xxx-xx-6045, DATE OF BIRTH:2/17/1979,** including:

- work records;
- applications for employment and resume;
- complete job description;
- resignation and/or termination letters;
- Payroll documents, wage reports, timesheets, records of payment, U.S. Government withholding forms, W-2 forms, attendance forms charts;
- health forms, including reports from examining physicians/labs with respect to any medical or mental examinations;
- applications for Group Health Insurance (including claims forms);
- workers' compensation claims;
- Unemployment compensation records;
- Any documents regarding medical disability applications or FMLA records;
- performance evaluations, evaluations, reprimands, and/or commendations; and
- all other information in your possession or control pertaining to the employment of the above individual from the first day of employment to day of termination, or, if still employed, to present.

I release all records relating to HIV testing and treatment; STD testing and treatment; alcohol and drug treatment; and mental health treatment. Redisclosure of this information may be made in accordance with Florida Statues and Florida Rules of Civil Procedure for purposes of this litigation only.

I understand that the information described above may be redisclosed by COLE, SCOTT & KISSANE and I release you and your agents from all liability arising from the disclosure of my employment information pursuant to this agreement. I understand that if the organization authorized to receive the information is not a health plan or healthcare provider; the released information may no longer be protected by Federal privacy regulations.

I understand that I need not sign this authorization to ensure treatment.

I understand that I may inspect or request copies of any information disclosed by this authorization.

I understand that I have a right to revoke this authorization at any time. I understand that if I revoke this authorization I must do so in writing and present my written revocation to the department or facility listed on the authorization. I understand that the revocation will not apply to information that has already been released in response to this authorization. I understand that the revocation will not apply to my insurance company when the law provides my insurer with the right to contest a claim under my policy.

This authorization shall remain valid for six months from the date signed below.

_______________ **DATE**

_______________________________ **PATIENT OR AUTHORIZED PERSON**
**PARENT ( ); LEGAL GUARDIAN ( ); EXECUTOR ( );**

**POWER OF ATTORNEY ( )**

**DATE** **WITNESS**


**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 890 SOUTH PALAFOX STREET, SUITE 200 - PENSACOLA, FLORIDA 32502 - (850) 483-5900 (850) 438-6969 FAX

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR CALHOUN COUNTY, FLORIDA

CASE NO.: 20000064CAAXMX

MARY WATSON,

Plaintiff,

v.

BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,

Defendants.
________________________________/

**SUBPOENA DUCES TECUM WITHOUT DEPOSITION**
**(HIPAA Compliant)**

THE STATE OF FLORIDA:

TO: Tallahassee Memorial Hospital
1300 Miccosukee Road
Tallahassee, FL 32308
Attn: Human Resources

YOU ARE HEREBY COMMANDED to produce without deposition and deliver the following items, no later than ten (10) days within receipt of this subpoena duces tecum, to Cole, Scott & Kissane, P.A., 890 South Palafox Street, Suite 200, Pensacola, Florida 32502:

Any and all documents related to:

**NAME:** **Mary C. Watson**
**DOB:** **02/17/1979**
**SSN:** **XXX-XX-6045**

**including work records, residency medical training records, applications for employment, resignation and/or termination letters, attendance charts, health forms, including reports from examining physicians/labs with respect to any medical or mental examinations; applications for Group Health Insurance (including claims forms), workers' compensation claims, performance evaluations, records of payment, U.S. Government withholding forms, and all other information in your possession or control pertaining to the employment of the above individual from the first day of employment to day of termination, or, if still employed, to present.**

These items will be inspected and may be copied at that time. You will not be required to surrender the original items. You may comply with this subpoena by providing legible copies of the items to be produced to the attorney whose name appears on this subpoena on or before the scheduled date of production. You may condition the preparation of the copies upon payment in advance of reasonable cost of preparation. You may mail or deliver the copies to the attorney whose name appears on this subpoena and thereby eliminate your appearance at the time and place specified above. You have the right to object to the production pursuant to this subpoena at any time before production by giving written notice to the attorney whose name appears on this subpoena. **THIS WILL NOT BE A DEPOSITION. NO TESTIMONY WILL BE TAKEN.**

If you fail to:

1. Appear as specified; or
2. Furnish the records instead of appearing as provided above; or
3. Object to this subpoena;

you may be in contempt of court. You are subpoenaed by the attorneys whose names appear on this subpoena and unless excused by them or the court, you shall respond to this subpoena as directed.

**In compliance with HIPAA regulations contained in 45 C.F.R. §164.512(e)(1), please be advised that:**

1. **Undersigned counsel has made a good faith attempt to provide written notice to the plaintiff;**
2. **The notice was sufficient to permit the individual to object;**
3. **The time for the individual to object expired; and**
4. **No objections were filed or all objections were resolved in favor of disclosure in compliance with 45 C.F.R. §164.512(e)(1).**



**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 890 SOUTH PALAFOX STREET, SUITE 200 - PENSACOLA, FLORIDA 32502 - (850) 483-5900 (850) 438-6969 FAX

WITNESS my hand and the seal this day of April, 2023.

If you have any questions or require prepayment, please contact
Zaray Avino at (850) 483-5922 or via email at zaray.avino@csklegal.com

IF THE COPY CHARGE IS EXPECTED TO EXCEED $500.00,
PLEASE CALL BEFORE MAKING COPIES.

**CERTIFICATE OF COMPLIANCE WITH RULE 1.351**

I HEREBY CERTIFY that no objections to this production under Rule 1.351, Fla. R. Civ. P., has been served by any party, including the Plaintiff's attorney, upon the undersigned within ten (10) days of service of the notice given to all parties of the intent to serve this Subpoena upon a non-party, directing the production of documents or things without deposition.

By: ______________________________
Michael B. Kelly
For the Court

Attorneys for Defendant
Calhoun-Liberty Hospital Association, Inc.
Michael B. Kelly, Esq.
Cole, Scott & Kissane, P.A.
890 South Palafox Street, Suite 200
Pensacola, Florida 32502
Telephone (850) 483-5930
Facsimile (850) 438-6969

1085.0944-00/-1

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR CALHOUN COUNTY, FLORIDA

CASE NO.: 20000064CAAXMX

MARY WATSON,

Plaintiff,

v.

BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,

Defendants.
_________________________________/

**SUBPOENA DUCES TECUM WITHOUT DEPOSITION**
**(HIPAA Compliant)**

THE STATE OF FLORIDA:

TO: University of Florida
College of Medicine
1329 SW 16th St.
Gainesville, FL 32608
Attn: Human Resources

YOU ARE HEREBY COMMANDED to produce without deposition and deliver the following items, no later than ten (10) days within receipt of this subpoena duces tecum, to Cole, Scott & Kissane, P.A., 890 South Palafox Street, Suite 200, Pensacola, Florida 32502:

Any and all documents related to:

**NAME:** **Mary C. Watson**
**DOB:** **02/17/1979**
**SSN:** **XXX-XX-6045**

**including work records, residency medical training records, applications for employment, resignation and/or termination letters, attendance charts, health forms, including reports from examining physicians/labs with respect to any medical or mental examinations; applications for Group Health Insurance (including claims forms), workers' compensation claims, performance evaluations, records of payment, U.S. Government withholding forms, and all other information in your possession or control pertaining to the employment of the above individual from the first day of employment to day of termination, or, if still employed, to present.**

These items will be inspected and may be copied at that time. You will not be required to surrender the original items. You may comply with this subpoena by providing legible copies of the items to be produced to the attorney whose name appears on this subpoena on or before the scheduled date of production. You may condition the preparation of the copies upon payment in advance of reasonable cost of preparation. You may mail or deliver the copies to the attorney whose name appears on this subpoena and thereby eliminate your appearance at the time and place specified above. You have the right to object to the production pursuant to this subpoena at any time before production by giving written notice to the attorney whose name appears on this subpoena. **THIS WILL NOT BE A DEPOSITION. NO TESTIMONY WILL BE TAKEN.**

If you fail to:

1. Appear as specified; or
2. Furnish the records instead of appearing as provided above; or
3. Object to this subpoena;

you may be in contempt of court. You are subpoenaed by the attorneys whose names appear on this subpoena and unless excused by them or the court, you shall respond to this subpoena as directed.

**In compliance with HIPAA regulations contained in 45 C.F.R. §164.512(e)(1), please be advised that:**

1. **Undersigned counsel has made a good faith attempt to provide written notice to the plaintiff;**
2. **The notice was sufficient to permit the individual to object;**
3. **The time for the individual to object expired; and**
4. **No objections were filed or all objections were resolved in favor of disclosure in compliance with 45 C.F.R. §164.512(e)(1).**


**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 890 SOUTH PALAFOX STREET, SUITE 200 - PENSACOLA, FLORIDA 32502 - (850) 483-5900 (850) 438-6969 FAX

WITNESS my hand and the seal this day of April, 2023.

If you have any questions or require prepayment, please contact
Zaray Avino at (850) 483-5922 or via email at zaray.avino@csklegal.com

IF THE COPY CHARGE IS EXPECTED TO EXCEED $500.00,
PLEASE CALL BEFORE MAKING COPIES.

**CERTIFICATE OF COMPLIANCE WITH RULE 1.351**

I HEREBY CERTIFY that no objections to this production under Rule 1.351, Fla. R. Civ. P., has been served by any party, including the Plaintiff's attorney, upon the undersigned within ten (10) days of service of the notice given to all parties of the intent to serve this Subpoena upon a non-party, directing the production of documents or things without deposition.

By: ____________________________
Michael B. Kelly
For the Court

Attorneys for Defendant
Calhoun-Liberty Hospital Association, Inc.
Michael B. Kelly, Esq.
Cole, Scott & Kissane, P.A.
890 South Palafox Street, Suite 200
Pensacola, Florida 32502
Telephone (850) 483-5930
Facsimile (850) 438-6969

1085.0944-00/-1

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR CALHOUN COUNTY, FLORIDA

CASE NO.: 20000064CAAXMX

MARY WATSON,

Plaintiff,

v.

BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,

Defendants.
_________________________________/

**SUBPOENA DUCES TECUM WITHOUT DEPOSITION**
**(HIPAA Compliant)**

THE STATE OF FLORIDA:

TO: University of Florida
Department of Medicine
1600 SW Archer Road
Gainesville, FL 32610
Attn: Human Resources

YOU ARE HEREBY COMMANDED to produce without deposition and deliver the following items, no later than ten (10) days within receipt of this subpoena duces tecum, to Cole, Scott & Kissane, P.A., 890 South Palafox Street, Suite 200, Pensacola, Florida 32502:

Any and all documents related to:

**NAME:** **Mary C. Watson**
**DOB:** **02/17/1979**
**SSN:** **XXX-XX-6045**

**including work records, residency medical training records, applications for employment, resignation and/or termination letters, attendance charts, health forms, including reports from examining physicians/labs with respect to any medical or mental examinations; applications for Group Health Insurance (including claims forms), workers' compensation claims, performance evaluations, records of payment, U.S. Government withholding forms, and all other information in your possession or control pertaining to the employment of the above individual from the first day of employment to day of termination, or, if still employed, to present.**

These items will be inspected and may be copied at that time. You will not be required to surrender the original items. You may comply with this subpoena by providing legible copies of the items to be produced to the attorney whose name appears on this subpoena on or before the scheduled date of production. You may condition the preparation of the copies upon payment in advance of reasonable cost of preparation. You may mail or deliver the copies to the attorney whose name appears on this subpoena and thereby eliminate your appearance at the time and place specified above. You have the right to object to the production pursuant to this subpoena at any time before production by giving written notice to the attorney whose name appears on this subpoena. **THIS WILL NOT BE A DEPOSITION. NO TESTIMONY WILL BE TAKEN.**

If you fail to:

1. Appear as specified; or
2. Furnish the records instead of appearing as provided above; or
3. Object to this subpoena;

you may be in contempt of court. You are subpoenaed by the attorneys whose names appear on this subpoena and unless excused by them or the court, you shall respond to this subpoena as directed.

**In compliance with HIPAA regulations contained in 45 C.F.R. §164.512(e)(1), please be advised that:**

1. **Undersigned counsel has made a good faith attempt to provide written notice to the plaintiff;**
2. **The notice was sufficient to permit the individual to object;**
3. **The time for the individual to object expired; and**
4. **No objections were filed or all objections were resolved in favor of disclosure in compliance with 45 C.F.R. §164.512(e)(1).**


**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 890 SOUTH PALAFOX STREET, SUITE 200 - PENSACOLA, FLORIDA 32502 - (850) 483-5900 (850) 438-6969 FAX

WITNESS my hand and the seal this day of April, 2023.

If you have any questions or require prepayment, please contact
Zaray Avino at (850) 483-5922 or via email at zaray.avino@csklegal.com

IF THE COPY CHARGE IS EXPECTED TO EXCEED $500.00,
PLEASE CALL BEFORE MAKING COPIES.

**CERTIFICATE OF COMPLIANCE WITH RULE 1.351**

I HEREBY CERTIFY that no objections to this production under Rule 1.351, Fla. R. Civ. P., has been served by any party, including the Plaintiff's attorney, upon the undersigned within ten (10) days of service of the notice given to all parties of the intent to serve this Subpoena upon a non-party, directing the production of documents or things without deposition.

By: ___________________________
Michael B. Kelly
For the Court

Attorneys for Defendant
Calhoun-Liberty Hospital Association, Inc.
Michael B. Kelly, Esq.
Cole, Scott & Kissane, P.A.
890 South Palafox Street, Suite 200
Pensacola, Florida 32502
Telephone (850) 483-5930
Facsimile (850) 438-6969

1085.0944-00/-1

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR CALHOUN COUNTY, FLORIDA

CASE NO.: 20000064CAAXMX

MARY WATSON,

Plaintiff,

v.

BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,

Defendants.
_________________________________/

**SUBPOENA DUCES TECUM WITHOUT DEPOSITION**
**(HIPAA Compliant)**

THE STATE OF FLORIDA:

TO: University of Florida
Department of Neurology
1149 Newell Drive
Gainesville, FL 32610
Attn: Human Resources

YOU ARE HEREBY COMMANDED to produce without deposition and deliver the following items, no later than ten (10) days within receipt of this subpoena duces tecum, to Cole, Scott & Kissane, P.A., 890 South Palafox Street, Suite 200, Pensacola, Florida 32502:

Any and all documents related to:

**NAME:** **Mary C. Watson**
**DOB:** **02/17/1979**
**SSN:** **XXX-XX-6045**

**including work records, residency medical training records, applications for employment, resignation and/or termination letters, attendance charts, health forms, including reports from examining physicians/labs with respect to any medical or mental examinations; applications for Group Health Insurance (including claims forms), workers' compensation claims, performance evaluations, records of payment, U.S. Government withholding forms, and all other information in your possession or control pertaining to the employment of the above individual from the first day of employment to day of termination, or, if still employed, to present.**

These items will be inspected and may be copied at that time. You will not be required to surrender the original items. You may comply with this subpoena by providing legible copies of the items to be produced to the attorney whose name appears on this subpoena on or before the scheduled date of production. You may condition the preparation of the copies upon payment in advance of reasonable cost of preparation. You may mail or deliver the copies to the attorney whose name appears on this subpoena and thereby eliminate your appearance at the time and place specified above. You have the right to object to the production pursuant to this subpoena at any time before production by giving written notice to the attorney whose name appears on this subpoena. **THIS WILL NOT BE A DEPOSITION. NO TESTIMONY WILL BE TAKEN.**

If you fail to:

1. Appear as specified; or
2. Furnish the records instead of appearing as provided above; or
3. Object to this subpoena;

you may be in contempt of court. You are subpoenaed by the attorneys whose names appear on this subpoena and unless excused by them or the court, you shall respond to this subpoena as directed.

**In compliance with HIPAA regulations contained in 45 C.F.R. §164.512(e)(1), please be advised that:**

1. **Undersigned counsel has made a good faith attempt to provide written notice to the plaintiff;**
2. **The notice was sufficient to permit the individual to object;**
3. **The time for the individual to object expired; and**
4. **No objections were filed or all objections were resolved in favor of disclosure in compliance with 45 C.F.R. §164.512(e)(1).**


**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 890 SOUTH PALAFOX STREET, SUITE 200 - PENSACOLA, FLORIDA 32502 - (850) 483-5900 (850) 438-6969 FAX

WITNESS my hand and the seal this day of April, 2023.

If you have any questions or require prepayment, please contact
Zaray Avino at (850) 483-5922 or via email at zaray.avino@csklegal.com

IF THE COPY CHARGE IS EXPECTED TO EXCEED $500.00,
PLEASE CALL BEFORE MAKING COPIES.

**CERTIFICATE OF COMPLIANCE WITH RULE 1.351**

I HEREBY CERTIFY that no objections to this production under Rule 1.351, Fla. R. Civ. P., has been served by any party, including the Plaintiff's attorney, upon the undersigned within ten (10) days of service of the notice given to all parties of the intent to serve this Subpoena upon a non-party, directing the production of documents or things without deposition.

By: ______________________________
Michael B. Kelly
For the Court

Attorneys for Defendant
Calhoun-Liberty Hospital Association, Inc.
Michael B. Kelly, Esq.
Cole, Scott & Kissane, P.A.
890 South Palafox Street, Suite 200
Pensacola, Florida 32502
Telephone (850) 483-5930
Facsimile (850) 438-6969

1085.0944-00/-1

EXHIBIT "C"

IN THE CIRCUIT COURT OF THE
FOURTEENTH JUDICIAL CIRCUIT, IN
AND FOR CALHOUN COUNTY, FLORIDA

MARY WATSON,

Plaintiff,

v.

Case No.: 2020-CA-000064

BLUE MANAGEMENT SERVICES, LLC,
D/B/A ALLIANT MANAGEMENT
SERVICES; ENVISION PHYSICIAN
SERVICES, LLC F/K/A EMCARE
PHYSICIAN SERVICES, INC.; and
CALHOUN-LIBERTY HOSPITAL
ASSOCIATION, INC.,

Defendants.
_______________________________________/

**PLAINTIFF'S NOTICE OF OBJECTION TO SUBPOENA**

PLEASE TAKE NOTICE, the Plaintiff, **MARY WATSON,** hereby gives notice of her Objection to Defendant's Notice of Production of Non-Parties, served on March 28, 2023, and intent to serve a subpoenas, as well as the Authorizations forwarded on the same date, upon the following:

1. Tallahassee Memorial Hospital
   1300 Miccosukee Road
   Tallahassee, FL 32308

2. University of Florida
   College of Medicine
   1329 SW 16th Street
   Gainesville, FL 32608

3. University of Florida
   Department of Medicine
   1600 SW Archer Road
   Gainesville, FL 32610

4. University of Florida
Department of Neurogology
1149 Newell Drive
Gainesville, Fl 32610

5. Archbold Medical Group
Gordon Avenue at Mimosa Drive
Thomasville, GA 31792
Attn: Human Resources

6. Cerebral Online Psychiatry
340 South Lemon Avenue, Suite 9892
Walnut, California 91789
Attn: Records Custodian

7. Memorial Hospital and Manon
1500 E. Shotwell Street
Bainbridge, GA 39819
Attn.: Human Resources

8. Pelham Parkway Nursing Home
608 Dogwood Dr., NE
Pelham, GA 31779
Attn: Human Resources

9. Southland MD
P.O. Box 1276
Thomasville, GA 31799
Attn: Human Resources

Plaintiff objects to the Defendant issuing subpoenas to any of the above entities on the basis of relevancy and invasion of privacy. The records sought to be obtained are not proportionate to the needs of this case and, are not likely to lead to the discovery of relevant or admissible evidence. Further, Defendant's subpoenas seek personal information about Plaintiff's private medical issues and her past and current employment which oppresses and harasses Plaintiff by invading her privacy. For these reasons Plaintiff respectfully objects to the issuance of all subpoenas to the above listed entities.

Respectfully submitted,

Isl Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street Tallahassee,
FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
marie@mattoxlaw.com
marlene@mattoxlaw.com
marianne.bryant@mattoxlaw.com
michelle2@mattoxlaw.com [scheduling]

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been furnished by electronic service only to all counsel of record this 30th day of March 2023.

Isl Marie A. Mattox
Marie A. Mattox

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR CALHOUN COUNTY, FLORIDA**

**MARY WATSON,**

**Plaintiff,**

**v.** **CASE NO.: 20-CA-000064**

**BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,**

**Defendants.**

______________________________________/

**DEFENDANT, ENVISION PHYSICIAN SERVICES, LLC'S CERTIFICATE OF SETTLEMENT AUTHORITY**

Defendant, ENVISION PHYSICIAN SERVICES, LLC ("Envision" and/or "Defendant"), by and through its undersigned counsel, and pursuant to Florida Rule of Civil Procedure 1.720(e), gives notice of the individuals attending the virtual mediation in this matter scheduled for **April 20, 2023**, as follows:

1. Lori K. Mans, Esq., Counsel for Envision will appear via Zoom.
2. Mark Hirschberg, Senior Litigation Counsel, will appear via Zoom as the party representative for Envision. Mr. Hirschberg has full authority to settle the claim at the mediation required under the provisions of the Florida Rule of Civil Procedure 1.720.

DATED this 10th day of April, 2023.

Respectfully submitted,

JACKSON LEWIS P.C.
501 Riverside Avenue, Suite 902
Jacksonville, FL 32202
Telephone: (904) 638-2655
Facsimile: (904) 638-2656

*/s/ Lori K. Mans*
Richard N. Margulies
Florida Bar No. 607487
richard.margulies@jacksonlewis.com
Lori K. Mans
Florida Bar No. 0012024
lori.mans@jacksonlewis.com

Attorneys for Defendant,
Envision Physician Services, LLC

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10th day of April, 2023, a true and correct copy of the foregoing was filed with the Clerk of Calhoun County using the Florida Courts e-Filing Portal, which will send an automatic e-mail message to all parties registered with the e-Filing Portal system.

*/s/ Lori K. Mans*
Attorney

4873-4401-1356, v. 1

Case 5:23-cv-00202-MW-MJF Document 1-3 Filed 07/27/23 Page 118 of 455

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT**
**IN AND FOR CALHOUN COUNTY, FLORIDA**

**MARY WATSON,**

Plaintiff,

v. **Case No.: 2020 CA 64**

**BLUE MANAGEMENT SERVICES, LLC,**
**D/B/A ALLIANT MANAGEMENT SERVICES;**
**ENVISION PHYSICIAN SERVICES, LLC**
**F/K/A EMCARE PHYSICIAN SERVICES, INC.;**
**and CALHOUN-LIBERTY HOSPITAL**
**ASSOCIATION, INC.,**

Defendants.
_______________________________________/

**DEFENDANT, BLUE MANAGEMENT SERVICES, LLC D/B/A ALLIANT MANAGEMENT SERVICES' CERTIFICATE OF SETTLEMENT AUTHORITY**

Defendant, BLUE MANAGEMENT SERVICES, LLC D/B/A ALLIANT MANAGEMENT SERVICES ("Alliant"), by and through undersigned counsel, and pursuant to Florida Rule of Civil Procedure 1.720(e), hereby gives notice of the individuals attending mediation in this matter scheduled for April 20, 2023 as follows:

1. Lisa B. Fountain, Counsel for Alliant
2. Gregory Mantych, Insurance Representative with Huntersure
3. Michael Kozar, Chief Executive Officer of Alliant

Dated this 12th day of April 2023.

Respectfully submitted,

*/s/ Lisa B. Fountain*

**LISA B. FOUNTAIN**
Florida Bar Number: 948802
lfountain@sniffenlaw.com

**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004

*Counsel for Defendant, Blue Management Services, LLC d/b/a Alliant Management Services*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this this 12th day of April 2023, a true and exact copy of the foregoing was furnished via the Florida Court's E-Filing Portal to all counsel of record.

*/s/ Lisa B. Fountain*
**LISA B. FOUNTAIN**

Filing # 171651582 E-Filed 04/24/2023 02:59:59 PM

IN THE CIRCUIT COURT OF THE
FOURTEENTH JUDICIAL CIRCUIT
IN AND FOR CALHOUN COUNTY,
FLORIDA

MARY WATSON,

Plaintiff,

vs. CASE NO.: 20-CA-64

BLUE MANAGEMENT SERVICES, LLC.
D/B/A ALLIANT MANAGEMENT SERVICES;
ENVISION PHYSICIAN SERVICES, LLC.
F/K/A EMCARE PHYSICIANSERVICES, INC.;
AND CALHOUN-LIBERTY HOSPITAL
ASSOCIATION, INC.

Defendants.

_______________________________/

**MEDIATION REPORT**

The parties to the above cause submitted their issues to mediation on April 20, 2023. All issues have been resolved.

/s/ Laura Beth Faragasso
LAURA BETH FARAGASSO
Florida Bar No. 654604
**O'STEEN & O'STEEN, P.L.**
2900 East Park Ave.
Tallahassee, Florida 32301
Email: lb@osteenosteen.com
(850) 877-1028
*Mediator*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served by electronic email via the Florida Courts e-filing Portal to all counsel of record on this 24th day of April, 2023.

/s/ Laura Beth Faragasso
Attorney

Case 5:23-cv-00202-MW-MJF Document 1-3 Filed 07/27/23 Page 121 of 455

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR CALHOUN COUNTY, FLORIDA**

**MARY WATSON,**

**Plaintiff,**

**v.** **CASE NO.: 20-CA-000064**

**BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,**

**Defendants.**

_______________________________________/

**NOTICE OF SUGGESTION OF BANKRUPTCY FOR *ENVISION HEALTHCARE CORPORATION* AND CERTAIN OF ITS AFFILIATES AND AUTOMATIC STAY OF PROCEEDINGS**

**PLEASE TAKE NOTICE** that, on May 15, 2023, Envision Healthcare Corporation and certain of its affiliates (collectively, the "Debtors")[1] filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101—1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court"). A copy of the voluntary petition of the lead Debtor, Envision Healthcare Corporation [Docket No. 1], is attached hereto as **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that the Debtors' chapter 11 cases are pending before the Honorable U.S. Bankruptcy Judge Christopher Lopez and are being jointly administered

[1] A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/Envision. The Debtors' service address is 1A Burton Hills Boulevard, Nashville, Tennessee 37215.

under the lead case *In re Envision Healthcare Corporation.*, *et al.*, Case No. 23-90342 (CML) (the "Chapter 11 Cases"). A copy of the order entered on May 15, 2023, directing joint administration of these Chapter 11 Cases [Docket No. 61] is attached hereto as **Exhibit B**.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to section 362(a) of the Bankruptcy Code, the Debtors' filing of their respective voluntary petitions gives rise to a stay, applicable to all entities, of, among other things: (a) the commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtors (i) that was or could have been commenced before the commencement of the Chapter 11 Cases, or (ii) to recover a claim against the Debtors that arose before the commencement of the Chapter 11 Cases; (b) the enforcement against any of the Debtors or against any property of each of the Debtors' bankruptcy estates of a judgment obtained prior to the commencement of the Chapter 11 Cases; and (c) any act to obtain possession of property of or from any of the Debtors' bankruptcy estates, or to exercise control over property of any of the Debtors' bankruptcy estates.[2] No order has been entered in the Chapter 11 Cases granting relief from the automatic stay.

**PLEASE TAKE FURTHER NOTICE** that additional information regarding the Chapter 11 Cases may be obtained free of charge by: (i) reviewing, free of charge, the docket of the Debtors' Chapter 11 Cases on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/Envision or by calling (833) 477-3499 (Toll free from US / Canada) or +1 (646) 440-4804 (International); (ii) visiting the Court's website at https://ecf.txsb.uscourts.gov/ (PACER login and password required) in accordance with the

---

2 Nothing herein shall constitute a waiver of the Debtors' rights to assert any claims, counterclaims, defenses, rights of setoff or recoupment, or any other claims against any party to the above-captioned case. The Debtors expressly reserve all rights to contest any claims that may be asserted against the Debtors.

procedures and fees set forth therein; or (iii) contacting any of the following proposed co-counsel for the Debtors: (i) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Joshua A. Sussberg, P.C., and Anne G. Wallice, and Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn.: John R. Luze and Annie L. Dreisbach; (ii) Jackson Walker LLP, 1401 McKinney Street, Suite 1900, Houston, Texas 77010, Attn.: Matthew D. Cavenaugh, Rebecca Blake Chaikin, Vienna Anaya, and Javier Gonzalez.

DATED this 18th day of May, 2023.

Respectfully submitted,

JACKSON LEWIS P.C.
501 Riverside Avenue, Suite 902
Jacksonville, FL 32202
Telephone: (904) 638-2655
Facsimile: (904) 638-2656

*/s/ Lori K. Mans*
Richard N. Margulies
Florida Bar No. 607487
richard.margulies@jacksonlewis.com
Lori K. Mans
Florida Bar No. 0012024
lori.mans@jacksonlewis.com

Attorneys for Defendant,
Envision Physician Services, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of May, 2023, a true and correct copy of the foregoing was filed with the Clerk of Calhoun County using the Florida Courts e-Filing Portal, which will send an automatic e-mail message to all parties registered with the e-Filing Portal system.

*/s/ Lori K. Mans*
Attorney

# EXHIBIT A

**Voluntary Petition of**
**Envision Healthcare Corporation**
**Under Chapter 11 of the Bankruptcy Code**

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

**Southern District of Texas**
(State)

Case number *(if known)*: ____________ Chapter **11**

☐ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

06/22

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.**

| | | |
|---|---|---|
| **1. Debtor's Name** | **Envision Healthcare Corporation** | |
| **2. All other names debtor used in the last 8 years**<br>Include any assumed names, trade names, and *doing business as* names | **N/A** | |
| **3. Debtor's federal Employer Identification Number** (EIN) | **62-1493316** | |
| **4. Debtor's address** | **Principal place of business**<br>**1A Burton Hills Boulevard**<br>Number Street<br><br>**Nashville** **TN** **37215**<br>City State Zip Code<br><br>**Davidson**<br>County | **Mailing address, if different from principal place of business**<br><br>Number Street<br><br>P.O. Box<br><br>City State Zip Code<br><br>**Location of principal assets, if different from principal place of business**<br>6363 Fiddlers Green Circle<br>Number Street<br><br>Greenwood Village CO 80111<br>City State Zip Code |
| **5. Debtor's website** (URL) | **https://www.envisionhealth.com/** | |
| **6. Type of debtor** | ☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))<br>☐ Partnership (excluding LLP)<br>☐ Other. Specify: | |

Debtor **Envision Healthcare Corporation** Case number *(if known)* ____________
Name

**7. Describe debtor's business**

A. *Check One:*

☒ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☐ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes.

6211 - Offices of Physicians

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub- box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check One:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11. *Check all that apply:*

- ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).
- ☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1). Its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000 **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).
- ☐ A plan is being filed with this petition.
- ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).
- ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.
- ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No
☐ Yes. District ________ When ________ (MM/DD/YYYY) Case number ________
District ________ When ________ (MM/DD/YYYY) Case number ________

Debtor **Envision Healthcare Corporation** Case number *(if known)*
Name

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No
☒ Yes.

Debtor **See Rider 1** Relationship **Affiliate**

District **Southern District of Texas** When **05/14/2023**
MM / DD / YYYY

Case number, if known

**11. Why is the case filed in *this* district?**

*Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☒ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No
☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard?

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other

**Where is the property?**

Number Street

City State Zip Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency

Contact name

Phone

## Statistical and administrative information

**13. Debtor's estimation of available funds**

*Check one:*

☒ Funds will be available for distribution to unsecured creditors.
☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors (on a consolidated basis)**

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☒ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

Debtor **Envision Healthcare Corporation** Case number *(if known)* ______
Name

| | | | |
|---|---|---|---|
| **15. Estimated assets (on a consolidated basis)** | ☐ $0-$50,000<br>☐ $50,001-$100,000<br>☐ $100,001-$500,000<br>☐ $500,001-$1 million | ☐ $1,000,001-$10 million<br>☐ $10,000,001-$50 million<br>☐ $50,000,001-$100 million<br>☐ $100,000,001-$500 million | ☐ $500,000,001-$1 billion<br>☒ $1,000,000,001-$10 billion<br>☐ $10,000,000,001-$50 billion<br>☐ More than $50 billion |
| **16. Estimated liabilities (on a consolidated basis)** | ☐ $0-$50,000<br>☐ $50,001-$100,000<br>☐ $100,001-$500,000<br>☐ $500,001-$1 million | ☐ $1,000,001-$10 million<br>☐ $10,000,001-$50 million<br>☐ $50,000,001-$100 million<br>☐ $100,000,001-$500 million | ☐ $500,000,001-$1 billion<br>☒ $1,000,000,001-$10 billion<br>☐ $10,000,000,001-$50 billion<br>☐ More than $50 billion |

## Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **05/14/2023**
MM/ DD / YYYY

✘ ***/s/ Paul Keglevic***
Signature of authorized representative of debtor

**Paul Keglevic**
Printed name

Title **Chief Restructuring Officer**

**18. Signature of attorney**

✘ ***/s/ Rebecca Blake Chaikin***
Signature of attorney for debtor

Date **05/14/2023**
MM/DD/YYYY

**Rebecca Blake Chaikin**

**Jackson Walker LLP**
Firm name

**1401 McKinney Street, Suite 1900**
Number Street

**Houston** **Texas** **77010**
City State ZIP Code

**713-752-4200** **rchaikin@jw.com**
Contact phone Email address

**24133055** **Texas**
Bar number State

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

**Southern District of Texas**
(State)

Case number (*if known*): ____________ Chapter **11**

☐ Check if this is an amended filing

**Rider 1**
**Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor**

On the date hereof, each of the entities listed below (collectively, the "Debtors") filed a petition in the United States Bankruptcy Court for the Southern District of Texas for relief under chapter 11 of title 11 of the United States Code. The Debtors have moved for joint administration of these cases under the case number assigned to the chapter 11 case of Envision Healthcare Corporation.

Envision Healthcare Corporation
Acute Management, LLC
Affilion, Inc.
All Women's Healthcare Holdings, Inc.
All Women's Healthcare of Dade, Inc.
All Women's Healthcare of Sawgrass, Inc.
All Women's Healthcare of West Broward, Inc.
All Women's Healthcare Services, Inc.
All Women's Healthcare, Inc.
AllegiantMD, Inc.
Alpha Physician Resources, L.L.C.
American Emergency Physicians Management, Inc.
AmSurg Abilene Eye, Inc.
AmSurg Abilene, Inc.
AmSurg Altamonte Springs FL, Inc.
AmSurg Anesthesia Management Services, LLC
AmSurg Arcadia CA, Inc.
AmSurg Burbank, Inc.
AmSurg Colton CA, Inc.
AmSurg Crystal River, Inc.
AmSurg EC Beaumont, Inc.
AmSurg EC Centennial, Inc.
AmSurg EC Santa Fe, Inc.
AmSurg EC St. Thomas, Inc.
AmSurg EC Topeka, Inc.
AmSurg EC Washington, Inc.
AmSurg El Paso, Inc.
AmSurg Escondido CA, Inc.
AmSurg Finance, Inc.
AmSurg Fresno Endoscopy, Inc.
AmSurg Glendale, Inc.
AmSurg Glendora CA, Inc.
AmSurg Hillmont, Inc.
AmSurg Holdco, LLC
AmSurg Holdings, LLC
AmSurg Inglewood, Inc.
AmSurg KEC, Inc.
AmSurg Kissimmee FL, Inc.
AmSurg La Jolla, Inc.
AmSurg Lancaster PA, LLC
AmSurg Main Line PA, LLC
AmSurg Maryville, Inc.
AmSurg Melbourne, Inc.
AmSurg Miami, Inc.
AmSurg Naples, Inc.
AmSurg New Port Richey FL, Inc.
AmSurg Northwest Florida, Inc.
AmSurg Oakland CA, Inc.
AmSurg Ocala, Inc.
AmSurg Palmetto, Inc.
AmSurg Physicians Arizona, LLC
AmSurg Physicians HoldCo, LLC
AmSurg Pottsville PA, LLC
AmSurg San Antonio TX, Inc.
AmSurg San Luis Obispo CA, Inc.
AmSurg Scranton PA, Inc.
AmSurg Suncoast, Inc.
AmSurg Temecula CA, Inc.
AmSurg Temecula II, Inc.
AmSurg Torrance, Inc.
AmSurg, LLC
Anesthesiologists of Greater Orlando, Inc.
Anesthesiology Associates of Tallahassee, Inc.
Apex Acquisition LLC
APH Laboratory Services, Inc.
Arizona Perinatal Care Centers, LLC
ASDH I, LLC
ASDH II, LLC
Austin NSC, LLC
Austin NSC, LP
Bay Area Anesthesia, L.L.C.
BestPractices, Inc.
Bethesda Anesthesia Associates, Inc.
Boca Anesthesia Service, Inc.
Bravo Reimbursement Specialist, L.L.C.
Broad Midwest Anesthesia, LLC
Centennial Emergency Physicians, LLC
Chandler Emergency Medical Group, L.L.C.

Children's Anesthesia Associates, Inc.
Clinical Partners Management Company, LLC
CMORx, LLC
Coastal Anesthesiology Consultants, LLC
Coral Springs NSC, LLC
Davis NSC, LLC
Desert Mountain Consultants in Anesthesia, Inc.
Discovery Clinical Research, Inc.
Doctors Billing Service, Inc.
Drs. Ellis, Rojas, Ross & Debs, Inc.
ED Solutions, LLC
EDIMS, L.L.C.
EHR Management Co.
EmCare Anesthesia Providers, Inc.
EmCare HoldCo, LLC
EmCare Holdings, LLC
EmCare of California, Inc.
EmCare Physician Providers, Inc.
EmCare Physician Services, Inc.
EmCare, LLC
Emergency Medical Services LLC
Emergency Medicine Education Systems, Inc.
EMS Management LLC
EMSC ServicesCo, LLC
Enterprise Intermediate Holdings Inc.
Enterprise Parent Holdings, Inc.
Envision Anesthesia Services of Delaware, Inc.
Envision Anesthesia Services of Sierra Vista, Inc.
Envision Children's Healthcare Services of North Mississippi, Inc.
Envision Healthcare Clinical Research, Inc.
Envision Healthcare Scientific Intelligence, Inc.
Envision Physician Services, LLC
Evolution Mobile Imaging, LLC
Flamingo Anesthesia Associates, Inc.
FM Healthcare Services, Inc.
FMO Healthcare Holdings, LLC
FO Investments II, Inc.
FO Investments III, Inc.
FO Investments, Inc.
Fullerton NSC, LLC
Global Surgical Partners, Inc.
Greater Florida Anesthesiologists, LLC
Gynecologic Oncology Associates, Inc.
Hawkeye Holdco LLC
Healthcare Administrative Services, Inc.
Holiday Acquisition Company, Inc.
Illinois NSC, Inc.
Imaging Advantage LLC
Infinity Healthcare, Inc.
iSelect Healthcare LLC
Jacksonville Beaches Anesthesia Associates, Inc.
Jupiter Anesthesia Associates, L.L.C.
Jupiter Healthcare, LLC
Kenwood NSC, LLC
KMAC, Inc.
Long Beach NSC, LLC
MedAssociates, LLC
Medi-Bill of North Florida, Inc.
Medical Information Management Solutions, LLC
Millennium Vision Surgical, LLC
MSO Newco, LLC
NAC Properties, LLC
New Generations Babee Bag, Inc.
North Florida Anesthesia Consultants, Inc.
North Florida Perinatal Associates, Inc.
Northwood Anesthesia Associates, L.L.C.
NSC Healthcare, Inc.
NSC RBO East, LLC
NSC West Palm, LLC
Parity Healthcare, Inc.
Partners in Medical Billing, Inc.
Phoenix Business Systems, LLC
Phoenix Physicians, LLC
Physician Account Management, Inc.
Physician Office Partners, Inc.
Pinnacle Consultants Mid-Atlantic, L.L.C.
Practice Account Management Services, LLC
Proven Healthcare Solutions of New Jersey, LLC
Provider Account Management, Inc.
QRx Medical Management, LLC
Radiology Staffing Solutions, Inc.
Radstaffing Management Solutions, Inc.
Reimbursement Technologies, Inc.
Rose Radiology, LLC
San Antonio NSC, LLC
Sentinel Healthcare Services, LLC
Sheridan Anesthesia Services of Alabama, Inc.
Sheridan Anesthesia Services of Louisiana, Inc.
Sheridan Anesthesia Services of Virginia, Inc.
Sheridan CADR Solutions, Inc.
Sheridan Children's Healthcare Services of Arizona, Inc.
Sheridan Children's Healthcare Services of Kentucky, Inc.
Sheridan Children's Healthcare Services of Louisiana, Inc.
Sheridan Children's Healthcare Services of New Mexico, Inc.
Sheridan Children's Healthcare Services of Ohio, Inc.
Sheridan Children's Healthcare Services of Virginia, Inc.
Sheridan Children's Healthcare Services, Inc.
Sheridan Children's Services of Alabama, Inc.
Sheridan Emergency Physician Services of Missouri, Inc.
Sheridan Emergency Physician Services of North Missouri, Inc.
Sheridan Emergency Physician Services of South Florida, Inc.
Sheridan Emergency Physician Services, Inc.
Sheridan Healthcare of Louisiana, Inc.
Sheridan Healthcare of Missouri, Inc.
Sheridan Healthcare of Vermont, Inc.
Sheridan Healthcare of Virginia, Inc.
Sheridan Healthcare of West Virginia, Inc.

Sheridan Healthcare, LLC
Sheridan Healthcorp of California, Inc.
Sheridan Healthcorp, Inc.
Sheridan Healthy Hearing Services, Inc.
Sheridan Holdings, Inc.
Sheridan Hospitalist Services of Florida, Inc.
Sheridan InvestCo, LLC
Sheridan Leadership Academy, Inc.
Sheridan Radiology Management Services, Inc.
Sheridan Radiology Services, Inc.
Sheridan ROP Services of Alabama, Inc.
Sheridan ROP Services of Florida, Inc.
Sheridan ROP Services of Virginia, Inc.
SHI II, LLC
Southeast Perinatal Associates, Inc.
Spotlight Holdco LLC
St. Lucie Anesthesia Associates, LLC
Streamlined Medical Solutions LLC
Sun Devil Acquisition LLC
Sunbeam Asset LLC
Tampa Bay NSC, LLC
Templeton Readings, LLC
Tennessee Valley Neonatology, Inc.
Tiva Healthcare, Inc.
Torrance NSC, LLC
Towson NSC, LLC
Twin Falls NSC, LLC
Valley Anesthesiology Consultants, Inc.
Valley Clinical Research, Inc.
West Fairview Emergency Physicians, LLC
Weston NSC, LLC
Wilton NSC, LLC

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| ENVISION HEALTHCARE CORPORATION, | ) | Case No. 23-[_____] (___) |
| Debtor. | ) | |

**<u>LIST OF EQUITY SECURITY HOLDERS</u>**[1]

| Debtor | Equity Holders | Address of Equity Holder | Percentage of Equity Held |
|---|---|---|---|
| Envision Healthcare Corporation | Enterprise Intermediate Holdings Inc. | 1A Burton Hills Boulevard Nashville, Tennessee 37215 | 100% |

[1] This list serves as the disclosure required to be made by the debtor pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure. All equity positions listed indicate the record holder of such equity as of the date of commencement of the chapter 11 case.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| ENVISION HEALTHCARE CORPORATION, | ) | Case No. 23-[______] (___) |
| Debtor. | ) | |

**CORPORATE OWNERSHIP STATEMENT**

Pursuant to Rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the following are corporations, other than a government unit, that directly or indirectly own 10% or more of any class of the debtor's equity interest:

| Shareholder | Approximate Percentage of Shares Held |
|---|---|
| Enterprise Intermediate Holdings Inc. | 100% |

| Fill in this information to identify the case: |
|---|
| Debtor name: Envision Healthcare Corporation, et al. |
| United States Bankruptcy Court for the: Southern District of Texas |
| Case number (If known): ______________ |

☐ Check if this is an amended filing

Official Form 204

# Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

12/15

**A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.**

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim<br>if the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Wilmington Trust National Association<br>246 Goose Lane<br>Suite 1205<br>Guilford, CT 06437<br>United States | Envision Healthcare Administrator<br>FAX - 203-453-1183 | 8.750% Senior Notes Due 2026 | | | | $ 979,975,831 |
| 2 | Shyanne Trammel and Tel Trammel, Individually and as Parents and Next Friends of Tripp Trammel<br>10370 Richmond Ave<br>Suite 1300<br>Houston, TX 77042<br>United States | Jack E. McGehee<br>Plaintiff's Counsel<br>EMAIL - jmcgehee@lawtx.com<br>PHONE - 713-864-4000 | Litigation | | | | $ 4,000,000 |
| 3 | Salesforce Com Inc.<br>Salesforce Tower 415 Mission Street, 3rd Floor<br>San Francisco, CA 94105<br>United States | Marc Benioff<br>Chair & Chief Executive Officer<br>EMAIL - marc_benioff@salesforce.com<br>PHONE - 800-720-0371<br>FAX - 415-901-7040 | Trade Payable | | | | $ 1,854,910 |
| 4 | Kforce Inc.<br>1150 Assembly Drive, Suite 500<br>Tampa, FL 33607<br>United States | Kye Mitchell<br>Chief Operating Officer<br>EMAIL - kmitchell@kforce.com<br>PHONE - 877-453-6723 | Trade Payable | | | | $ 1,194,978 |
| 5 | Zotec Partners LLC<br>1 Zotec Way<br>Carmel, IN 46032<br>United States | T. Scott Law<br>Founder & Chief Executive Officer<br>EMAIL - slaw@zotecpartners.com<br>PHONE - 317-705-5050 | Trade Payable | | | | $ 1,177,072 |
| 6 | Accolite Digital LLC<br>16479 Dallas Parkway<br>Suite 350<br>Addision, TX 75001<br>United States | Leela Kaza<br>Founder & Chief Executive Officer<br>PHONE - 972-586-7778<br>FAX - 972-200-7063 | Trade Payable | | | | $ 755,846 |
| 7 | Presidio Networked Solutions<br>PENN 1<br>1 Pennsylvania Plaza Suite 2501<br>New York, NY 10119<br>United States | Bob Cagnazzi<br>Chief Executive Officer<br>EMAIL - bcagnazzi@presidio.com<br>PHONE - 631-220-4395 | Trade Payable | | | | $ 718,193 |
| 8 | Data Core Systems Inc.<br>111 Sinclair Rd.<br>Bristol, PA 19007<br>United States | Shyamal Choudhury<br>Chief Executive Officer<br>EMAIL - dcs@datacoresystems.com<br>PHONE - 215-243-4838<br>FAX - 215-243-1978 | Trade Payable | | | | $ 581,527 |
| 9 | Aidoc Inc.<br>142 W. 57th St.<br>New York, NY 10019<br>United States | Elad Walach<br>Chief Executive Officer<br>EMAIL - elad@aidoc.com<br>PHONE - 212-203-0095 | Trade Payable | | | | $ 507,000 |
| 10 | Softtek Integration Systems Inc.<br>15303 Dallas Parkway Suite 200<br>Addison, TX 75001<br>United States | Blanca Trevino<br>President & Chief Executive Officer<br>EMAIL - btrevino@softtek.com<br>PHONE - 469-283-2506 | Trade Payable | | | | $ 463,058 |
| 11 | Velocity Managed Services Inc.<br>6936 Spring Valley Drive<br>Holland, OH 43528<br>United States | Mark Walker<br>President and Chief Operations Officer<br>EMAIL - mwalker@velocity.org<br>PHONE - 856-667-7817 | Trade Payable | | | | $ 392,745 |
| 12 | Jiyo Inc.<br>2821 S Parker Road Suite 111<br>Aurora, CO 80014<br>United States | Poonacha Machaiah<br>Founder<br>EMAIL - poonacha@seva.love<br>PHONE - 650-963-0964 | Trade Payable | | | | $ 331,260 |
| 13 | CSC Corporation Service Co<br>251 Little Falls Drive<br>Wilmington, DE 19808<br>United States | Rodman Ward III<br>President & Chief Executive Officer<br>EMAIL - rward@cscinfo.com<br>PHONE - 302-764-7100<br>FAX - 302-636-5454 | Trade Payable | | | | $ 312,860 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim<br>if the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 14 | Baptist Memorial Hospital - North Mississippi<br>1100 Belk Boulevard<br>Oxford, MS 38655<br>United States | William C. Henning<br>Chief Executive Officer<br>EMAIL - bill.henning@bmhcc.org<br>PHONE - 662-636-1061<br>FAX - 662-636-1676 | Credit Balance Payable | | | | $ 257,903 |
| 15 | WNS North America Inc.<br>15 Exchange Pl suite 310<br>Jersey City, NJ 07302<br>United States | Jason Wolfson<br>Chief Executive Officer<br>EMAIL - wolfsonj@aimspecialtyhealth.com<br>PHONE - 847-267-7153 | Trade Payable | | | | $ 236,412 |
| 16 | VVC Holding LLC<br>311 Arsenal Street<br>Suite 600<br>Watertown, MA 02472<br>United States | Robert E. Segert<br>Chief Executive Officer<br>EMAIL - bsegert@athenahealth.com<br>PHONE - 978-952-0317 | Trade Payable | | | | $ 220,888 |
| 17 | IT Convergence<br>320 Decker Dr Ste 100<br>Irvington, TX 75062<br>United States | Arvind Sharma<br>Chief Executive Officer<br>EMAIL - asharma@itconvergence.com<br>PHONE - 415-675-7935 | Trade Payable | | | | $ 219,298 |
| 18 | Trilliant Health Inc.<br>2 Maryland Farms, Ste 200<br>Brentwood, TN 37027<br>United States | Hal Andrews<br>President & Chief Executive Officer<br>EMAIL - hal.andrews@trillianthealth.com<br>PHONE - 615-665-4288 | Trade Payable | | | | $ 198,465 |
| 19 | Trinisys, LLC<br>750 Old Hickory Blvd Bldg 1 Ste 268<br>Brentwood, TN 37027<br>United States | William Bartholomew<br>Chief Executive Officer<br>EMAIL - wbartholomew@trinisys.com<br>PHONE - 615-497-0708 | Trade Payable | | | | $ 189,631 |
| 20 | Individual name on file<br>Address on file | Contact information on file | Severance | | | | $ 171,910 |
| 21 | Michigan Professional Insurance Exchange<br>333 Bridge St NW<br>Grand Rapids, MI 49504<br>United States | Katie Peterson<br>Executive Vice President and Chief Financial Officer<br>EMAIL - kpeterson@mpie.org<br>PHONE - 616-391-7988<br>FAX - 616-741-1999 | Trade Payable | | | | $ 159,878 |
| 22 | Iron Mountain Inc.<br>1 Federal Street<br>Boston, MA 02110<br>United States | Barry Hytinen<br>Chief Financial Officer and Executive Vice President<br>EMAIL - barry.hytinen@ironmountain.com<br>PHONE - 859-227-0585 | Trade Payable | | | | $ 153,784 |
| 23 | Epromos Promotional Products LLC<br>113 5Th Avenue S.<br>St Cloud, MN 56301<br>United States | Jason Robbins<br>Founder & Chief Executive Officer<br>EMAIL - jason.robbins@epromos.com<br>PHONE - 877-377-6667 | Trade Payable | | | | $ 152,277 |
| 24 | Oracle America Inc.<br>2300 Oracle Way<br>Austin , TX 78741<br>United States | Safra A. Catz<br>Chief Executive Officer<br>EMAIL - safra.catz@oracle.com<br>PHONE - 415-307-3469 | Trade Payable | | | | $ 152,209 |
| 25 | Staff Care Inc.<br>8840 Cypress Waters Blvd<br>Dallas , TX 75019<br>United States | Cary Grace<br>President & Chief Executive Officer<br>EMAIL - cary.grace@amnhealthcare.com<br>PHONE - 416-868-5500 | Trade Payable | | | | $ 143,012 |
| 26 | Icon Medical Network LLC<br>8100 Sw Nyberg Street Suite 400<br>Tualatin, OR 97062<br>United States | Janet Elkin<br>President & Chief Executive Officer<br>EMAIL - amy@iconmn.com<br>PHONE - 888-777-5973 | Trade Payable | | | | $ 138,633 |
| 27 | Individual name on file<br>Address on file | Contact information on file | Severance | | | | $ 134,632 |
| 28 | Staples Inc.<br>500 Staples Drive<br>Framingham, MA 01702<br>United States | John A. Lederer<br>Chief Executive Officer<br>EMAIL - john.lederer@staples.com<br>PHONE - 508–253–5000 | Trade Payable | | | | $ 121,832 |
| 29 | Harris, Gordon J PhD and Massachusetts General Physicians Organization, Inc.<br>C/O Landay Leblang Stern LLP<br>156 State Street, 5th Floor<br>Boston, MA 02109 | Dale C. Kerester, Esq.<br>Plaintiff's Counsel<br>EMAIL - dale@llslex.com<br>PHONE - 617-742-1500 x104<br>FAX - 617-507-8400 | Litigation | Contingent, Unliquidated, Disputed | | | Undetermined |
| 30 | Rave, Timothy<br>156 State Street, 5th Floor Boston, MA 02109<br>933 North Mayfair Road<br>Suite 311<br>Milwaukee, WI 53226<br>United States | Robert J. Welcenbach<br>Plaintiff's Counsel<br>EMAIL - robert@welcenbachlaw.com<br>PHONE - 414-441-6766 | Litigation | Contingent, Unliquidated | | | Undetermined |

Top 30 unsecured creditors list excludes individuals in the Company’s deferred compensation program.

| Fill in this information to identify the case and this filing: | |
|---|---|
| Debtor Name | **Envision Healthcare Corporation** |
| United States Bankruptcy Court for the: | **Southern District of Texas** (State) |
| Case number (If known): | |

# Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors 12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☐ *Schedule A/B: Assets-Real and Personal Property (Official Form 206A/B)*
- ☐ *Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)*
- ☐ *Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)*
- ☐ *Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)*
- ☐ *Schedule H: Codebtors (Official Form 206H)*
- ☐ *Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)*
- ☐ Amended Schedule
- ☒ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders (Official Form 204)*
- ☒ Other document that requires a declaration **List of Equity Security Holders and Corporate Ownership Statement**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **05/14/2023**
MM/ DD/YYYY

☒ */s/ Paul Keglevic*
Signature of individual signing on behalf of debtor

**Paul Keglevic**
Printed name

**Chief Restructuring Officer**
Position or relationship to debtor

**OMNIBUS WRITTEN CONSENT**
**OF THE BOARD OF DIRECTORS, MANAGERS,**
**OR OTHER SIMILAR GOVERNING BODY, AS APPLICABLE,**
**OF ENTERPRISE PARENT HOLDINGS INC. AND EACH OF**
**THE COMPANIES SET FORTH ON EXHIBIT A ATTACHED HERETO**

**MAY 14, 2023**

We, the undersigned, are the requisite members of the board of directors, managers, or similar governing body (each, an "**Authorizing Body**," and, collectively, the "**Authorizing Bodies**") of Enterprise Parent Holdings Inc. and certain of the Enterprise Parent Holdings Inc. subsidiaries set forth on **Exhibit A** attached hereto (together with Enterprise Parent Holdings Inc., each a "**Company**," and, collectively, the "**Companies**"), and each organized and existing under the internal laws of the state of incorporation or formation, as applicable, as set forth in each Company's charter of incorporation or applicable organizational documents. Each Authorizing Body, in such capacity on behalf of the applicable Company, hereby takes the following actions and adopts the following resolutions by unanimous written consent pursuant to each Company's bylaws, limited liability company agreement, or such similar operating document and the applicable laws of the state of incorporation or formation of each Company, as applicable.

**WHEREAS**, the Authorizing Bodies, have reviewed and considered (i) the filing of voluntary petitions for relief for the Companies under the provisions of chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (as amended, the "**Bankruptcy Code**") pursuant to applicable law and in accordance with the requirements of each Company's governing documents and applicable law (the "**Restructuring Matters**"); and (ii) authorizing entry into and performance under the Restructuring Support Agreements and all exhibits and attachments thereto (the "**RSAs**"), as defined herein;

**WHEREAS**, the Authorizing Bodies have reviewed and considered the materials presented by the management of the Companies, the CRO (as defined herein), and the Companies' financial and legal advisors, and have had adequate opportunity to consult such persons regarding the materials presented, obtain additional information, and to fully consider each of the strategic alternatives available to the Companies;

**WHEREAS**, the Authorizing Bodies have reviewed and considered presentations by the Companies' financial and legal advisors regarding the transactions contemplated under the RSAs, each dated as of the date set forth above, and any chapter 11 plans of reorganization contemplated by the RSAs (the "**Plans**") as well as disclosure statements with all related exhibits thereto (as amended or restated from time to time, the "**Disclosure Statements**"), the advantages and disadvantages to the Companies for implementing the restructuring transactions contemplated under the Plans pursuant to a chapter 11 process, feedback from the Companies' stakeholders and counterparties to the RSAs regarding implementation of the transactions contemplated thereunder, and the present facts and circumstances in relation to the transactions contemplated under the RSAs;

**WHEREAS**, the Authorizing Bodies have determined, in their business judgement, that the following resolutions are advisable and in the best interest of the Companies, their creditors, other stakeholders, and other parties in interest;

**NOW, THEREFORE, IT IS HEREBY RESOLVED**, that, pursuant to the applicable governing documents of each Company, the undersigned do hereby adopt the following resolutions:

***Appointment of Chief Restructuring Officer***

**RESOLVED**, that the Authorizing Bodies hereby create the office of the Chief Restructuring Officer (the "**CRO**") for each Company;

**RESOLVED**, that Mr. Paul Keglevic be, and hereby is, appointed as the CRO for the purpose of performing the duties and responsibilities of a CRO and such other duties and responsibilities as may be determined by the Authorizing Bodies to be reasonably related thereto;

F**URTHER RESOLVED**, that Mr. Keglevic shall be authorized from time to time to make decisions with respect to certain aspects of the management and operation of each Company's business as it specifically relates to the Companies' restructuring initiatives (the "**Restructuring Decisions**"), subject to the direction of the Authorizing Bodies;

**FURTHER RESOLVED**, that all Restructuring Decisions of Mr. Keglevic shall be discussed with the member or members of the Company's management that Mr. Keglevic determines to be appropriate prior to the implementation of such decisions, and any dispute between such management and Mr. Keglevic regarding the implementation of such decisions shall be resolved by the Authorizing Bodies; and

**FURTHER RESOLVED**, that the Companies will: (a) indemnify the CRO, to the fullest extent permitted by law, and to the same extent as the most favorable indemnification it extends to each Company's officers or directors and (b) the CRO shall be covered as an officer under any and all of the Companies' existing director and officer liability insurance policies.

***Chapter 11 Filing***

**RESOLVED**, in the business judgment of the Authorizing Bodies, it is desirable and in the best interests of the Companies, the creditors, other stakeholders, and other parties in interest, that each Company files or causes to be filed voluntary petitions for relief (the "**Bankruptcy Petitions**") under the provisions of chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, and any other petition for relief or recognition or other order that may be desirable under applicable law in the United States, and, in accordance with the requirements in each Company's governing documents and applicable law, hereby consents to, authorizes and approves, the filing of the Bankruptcy Petitions;

**FURTHER RESOLVED**, any director or other duly appointed officer of the Companies (collectively, the "**Authorized Persons**"), which shall include the CRO, the Chief Executive Officer, Chief Financial Officer, or General Counsel, and any successor thereto or any person

holding any similar position, shall be, and each of them individually hereby is, authorized and directed for and on behalf of each Company to take all actions (including, without limitation, to negotiate and execute any documents, certificates, supplemental agreements, and instruments) to act as signatory and attorney on behalf of each Company in respect of the Restructuring Matters and/or any persons to whom such Authorized Persons and/or officers delegate certain responsibilities, be, and hereby are, authorized to execute and file on behalf of each Company all petitions, schedules, lists, and other motions, papers, or documents, and to take any and all action that they deem necessary or proper to obtain such relief, including, but not limited to, any action necessary or proper to maintain the ordinary course operations of each Company's or any of its subsidiary's businesses;

**FURTHER RESOLVED** that each Authorized Person be, and hereby is, authorized, empowered, and directed, together with the financial and legal advisors to the Companies, to take all actions or to not take any action in the name of Enterprise Parent Holdings Inc. and its direct and indirect subsidiaries with respect to the transactions contemplated by the RSA and these resolutions, as such Authorized Persons shall deem necessary or desirable in such Authorized Persons' reasonable business judgment;

**FURTHER RESOLVED**, that in the business judgment of the Authorizing Bodies, it is desirable and in the best interests of each Company, its creditors, and other stakeholders that the Authorized Persons file or cause to be filed the Plans, the Disclosure Statements, and all other papers or documents (including any amendments) related thereto, and to take any and all actions that the Authorizing Bodies deem necessary or appropriate to pursue confirmation and consummation of a plan of reorganization materially consistent with the Plans;

**FURTHER RESOLVED**, that each Authorized Person be, and hereby is, authorized, empowered, and directed, together with the financial and legal advisors of the Companies, to file all other documents as each, in his or her discretion, may deem necessary or advisable to confirm plans of reorganization materially consistent with the Plans, including, but not limited to, any amendments to, and modifications of, the Plans and the Disclosure Statements;

**FURTHER RESOLVED**, that each Authorized Person be, and hereby is, authorized, empowered, and directed to take or cause to be taken any and all such other and further action, and to execute, acknowledge, deliver, and file any and all such instruments as each, in his or her discretion, may deem necessary or advisable in order to consummate the Plans if confirmed by the Bankruptcy Court; and

**FURTHER RESOLVED**, that each Authorized Person be, and hereby is, authorized, empowered, and directed to execute and file on behalf of each Company all other petitions, schedules, lists, and other motions, papers, or documents, and to take any and all action that they deem necessary or proper to obtain such relief, including, without limitation, any action necessary to maintain the ordinary course operation of the Companies' businesses.

***Retention of Professionals***

**RESOLVED**, each of the Authorized Persons, be, and hereby are, authorized, empowered, and directed to retain on behalf of each Company: (i) the law firm of Kirkland & Ellis LLP and

Kirkland & Ellis International LLP as bankruptcy counsel; (ii) the law firm of Jackson Walker LLP as local bankruptcy counsel; (iii) PJT Partners as investment banker; (iv) Alvarez & Marsal North America, LLC as restructuring advisor; (v) Kroll Restructuring Administration LLC as claims and noticing agent; (vi) KPMG LLC as tax advisor; (vii) Katten Muchin Rosenman, LLP, as legal counsel; and (viii) any other legal counsel, accountants, financial advisors, restructuring advisors or other professionals the Authorized Persons deem necessary, appropriate or advisable; each to represent and assist the Companies in carrying out its duties and responsibilities and exercising its rights under the Bankruptcy Code and any applicable law (including, but not limited to, the law firms filing any pleadings or responses); and in connection therewith, the Authorized Persons, be, and hereby are authorized, empowered and directed, in accordance with the terms and conditions hereof, to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed appropriate applications for authority to retain such services; and

**FURTHER RESOLVED**, each of the Authorized Persons, be, and hereby are, authorized, empowered and directed to execute and file all petitions, schedules, motions, lists, applications, pleadings, and other papers, and to perform such further actions and execute such further documentation that the Authorized Persons in their absolute discretion deem necessary, appropriate or desirable in accordance with these resolutions.

***Use of Cash Collateral and Adequate Protection***

**RESOLVED**, that each Company will obtain benefits from the use of collateral, including cash collateral, as that term is defined in section 363(a) of the Bankruptcy Code (the "**Cash Collateral**"), which is security for certain of the Companies' prepetition secured lenders under certain credit facilities by and among certain of the Companies, and the guarantors party thereto, the lenders party thereto (the "**Prepetition Secured Lenders**");

**FURTHER RESOLVED**, each of the Authorized Persons be, and hereby are, authorized, directed and empowered in the name of, and on behalf of, each Company to seek approval of the use of cash collateral pursuant to a cash collateral order in interim and final form (a "**Cash Collateral Order**"), and, to the extent applicable to the Company, any Authorized Person be, and hereby is, authorized, empowered, and directed to negotiate, execute, and deliver any and all agreements, instruments, or documents, by or on behalf of the Company, necessary or advisable to implement the Cash Collateral Order, including providing for adequate protection to the Prepetition Secured Lenders in accordance with section 363 of the Bankruptcy Code (the "**Adequate Protection Obligations**"), as well as any additional or further agreements for the use of cash collateral in connection with the chapter 11 cases, which agreement(s) may require the Companies to grant adequate protection and security interests to the Prepetition Secured Lenders and each other agreement, instrument, or document to be executed and delivered in connection therewith, by or on behalf of the Companies pursuant thereto or in connection therewith, all with such changes therein and additions thereto as any Authorized Person, such approval to be conclusively evidenced by the taking of such action or by the execution and delivery thereof;

**FURTHER RESOLVED**, that each Company, as debtors and debtors in possession under the Bankruptcy Code be, and hereby is, authorized to incur the Adequate Protection Obligations.

*Further and Prior Actions*

**RESOLVED**, the Companies are hereby authorized to authorize (and each Company hereby authorizes) any direct or indirect subsidiary of each Company or any entity of which such Company or any subsidiary of such Company is the sole member, general partner, managing member, or equivalent manager, as applicable, to take each of the actions described in these resolutions or any of the actions authorized in these resolutions, and none of the resolutions contained herein, or action taken in furtherance hereto, shall have or cause an adverse effect on any such subsidiary or such Company's interest therein (including without limitation, any automatic dissolution, divestiture, dissociation, or like event under applicable law).

**FURTHER RESOLVED**, in addition to the specific authorizations heretofore conferred upon such Authorized Persons, the Authorized Persons, either individually or as otherwise required by each Company's governing documents and applicable law, be, and each of them hereby is, authorized to execute, acknowledge, deliver, and file any and all agreements, certificates, instruments, powers of attorney, letters, forms, transfer, deeds and other documents on behalf of each Company relating to the Restructuring Matters.

**FURTHER RESOLVED**, each of the Authorized Persons (and their designees and delegates) be, and hereby is, authorized and empowered, in the name of and on behalf of each Company, to take or cause to be taken any all such other and further action, and to execute, acknowledge, deliver, and file any and all such agreements, certificates, instruments, and other documents and to pay all expenses, including but not limited to filing fees, in each case as in such Authorized Person's or Authorized Persons' absolute discretion, shall be necessary, appropriate, or desirable in order to fully carry out the intent and accomplish the purposes of the resolution adopted herein.

**FURTHER RESOLVED**, the Authorizing Bodies have received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as may be required by the governing documents of each Company, or hereby waives any right to have received such notice.

**FURTHER RESOLVED**, all acts, actions, and transactions relating to the matters contemplated by the foregoing resolutions done in the name of and on behalf of each Company, which acts would have been approved by the foregoing resolutions except that such acts were taken before the adoption of these resolutions, are hereby in all respects approved, confirmed and ratified as the true acts and deeds of each Company with the same force and effect as if each such act, transaction, agreement, or certificate had been specifically authorized in advance by resolution of the Authorizing Bodies.

**FURTHER RESOLVED**, any Authorized Person be, and each of them hereby is, authorized to do all such other acts, deeds and other things as each Company itself may lawfully do, in accordance with its governing documents and applicable law, howsoever arising in connection with the matters above, or in furtherance of the intentions expressed in the foregoing resolutions, including, but not limited to, the negotiation, finalization, execution and delivery of any other agreements, certificates, instruments, powers of attorney, letters, forms, transfer, deeds and other documents whatsoever as the individual acting may in his/her absolute and unfettered

discretion approve, deem or determine necessary, appropriate or advisable, such approval, deeming or determination to be conclusively evidenced by said individual taking such action or the execution thereof.

* * * * *

**IN WITNESS WHEREOF**, the undersigned have executed this written consent as of the date first set forth above. This unanimous written consent may be signed by facsimile or other electronic means, with any such signature being of the same force and effect as an original signature, and in multiple counterparts, all of which will constitute one document.

Board of Directors of the TopCo listed on Schedule 1

DocuSigned by:
A9F450804A1849E...
**Max Lin**

DocuSigned by:
C05187293E9D43E...
**Vishal Patel**

DocuSigned by:
8189E1F2DC6B4D5...
**Lauren Krueger**

DocuSigned by:
75439DB92A614D2...
**James Rechtin**

DocuSigned by:
3104077A872C47F...
**Paul Keglevic**

**Jill Frizzley**

DocuSigned by:
4AF7403DD7CA45D...
**Gary Begeman**

[*Signature Page to Omnibus Written Consent*]

**IN WITNESS WHEREOF**, the undersigned have executed this written consent as of the date first set forth above. This unanimous written consent may be signed by facsimile or other electronic means, with any such signature being of the same force and effect as an original signature, and in multiple counterparts, all of which will constitute one document.

Board of Directors of the Subsidiary listed on
Schedule 2

DocuSigned by:
Max Lin
A9F450804A1849E...
**Max Lin**

DocuSigned by:
C05187293E9D43E...
**Vishal Patel**

**IN WITNESS WHEREOF**, the undersigned have executed this written consent as of the date first set forth above. This unanimous written consent may be signed by facsimile or other electronic means, with any such signature being of the same force and effect as an original signature, and in multiple counterparts, all of which will constitute one document.

Board of Directors of the Subsidiary listed on Schedule 3

-and-

ENVISION HEALTHCARE CORPORATION, being the Sole Member of each Subsidiary listed on Schedule 4

DocuSigned by:
A9F450804A1849E...
**Max Lin**

DocuSigned by:
C05187293E9D43E...
**Vishal Patel**

DocuSigned by:
75439DB92A614D2...
**James Rechtin**

DocuSigned by:
3104077A872C47F...
**Paul Keglevic**

**Jill Frizzley**

DocuSigned by:
8189E1F2DC6B4D5...
**Lauren Krueger**

DocuSigned by:
4AF7403DD7CA45D...
**Gary Begeman**

[*Signature Page to Omnibus Written Consent*]

**IN WITNESS WHEREOF**, the undersigned have executed this written consent as of the date first set forth above. This unanimous written consent may be signed by facsimile or other electronic means, with any such signature being of the same force and effect as an original signature, and in multiple counterparts, all of which will constitute one document.

Board of Directors of the Subsidiaries listed on Schedule 7

DocuSigned by:
Jeff Snodgrass
33F6122AA7A3417...

**Jeff Snodgrass**

DocuSigned by:
Pamela Corrie
F0897890FA8F41A...

**Pamela Corrie**

DocuSigned by:
Harvey Tepner
23378E63C6EA4DA...

**Harvey Tepner**

**IN WITNESS WHEREOF**, the undersigned have executed this written consent as of the date first set forth above. This unanimous written consent may be signed by facsimile or other electronic means, with any such signature being of the same force and effect as an original signature, and in multiple counterparts, all of which will constitute one document.

EMERGENCY MEDICAL SERVICES LLC
being the Sole Member of the Subsidiary listed on Schedule 6

IMAGING ADVANTAGE LLC, being the Sole Member of each Subsidiary listed on Schedule 8

SHERIDAN HEALTHCORP, INC., being the Sole Member of each Subsidiary listed on Schedule 9

EMCARE, LLC being the Sole Member of each Subsidiary listed on Schedule 10

HAWKEYE HOLDCO, INC. being the Sole Member of the Subsidiary listed on Schedule 11

ALPHA PHYSICIAN RESOURCES, being the Sole Member of each Subsidiary listed on Schedule 12

CMORx, II, Inc., being the Sole Member of the Subsidiary listed on Schedule 13

SUNBEAM ASSET L.L.C., being the Sole Member of the Subsidiary listed on Schedule 14

APEX ACQUISTION LLC, being the Sole Member of each Subsidiary listed on Schedule 15

SPOTLIGHT HOLDCO LLC being the Sole Member of each Subsidiary listed on Schedule 16

-and-

Sole Member / Director of the Subsidiaries listed on Schedule 17

DocuSigned by:
Chan Chuang
By: FF834662474840C...
Name: **Chan-Chou Chuang, M.D.**
Title: Director / Manager / President

**IN WITNESS WHEREOF**, the undersigned have executed this written consent as of the date first set forth above. This unanimous written consent may be signed by facsimile or other electronic means, with any such signature being of the same force and effect as an original signature, and in multiple counterparts, all of which will constitute one document.

AMSURG PHYSICIANS ARIZONA, LLC
being the Sole Member of the Subsidiary listed on Schedule 5

AMSURG HOLDINGS, LLC, being the Sole Member of the Subsidiary listed on Schedule 18

AMSURG PHYSICIANS HOLDCO, LLC being the Sole Member of the Subsidiary listed on Schedule 19

AUSTIN NSC, LLC being the General Partner of the Subsidiary listed on Schedule 20

-and-

Sole Member / Director of the Subsidiaries listed on Schedule 21

DocuSigned by:

By: Jeff Snodgrass
33F6122AA7A3417...

Name: **Jeff Snodgrass**
Title: Member / Director / President / Executive Vice President

## Schedule 1

**Board of Directors: Max Lin, Vishal Patel, Lauren Krueger, James Rechtin, Paul Keglevic, Jill Frizzley, and Gary Begeman**

| TopCo | Jurisdiction |
|---|---|
| Enterprise Parent Holdings, Inc. | Delaware |

## Schedule 2

**Board of Directors: Max Lin, Vishal Patel**

| Subsidiary | Jurisdiction |
|---|---|
| Enterprise Intermediate Holdings, Inc. | Delaware |

## Schedule 3

**Board of Directors: Max Lin, Vishal Patel, James Rechtin, Paul Keglevic, Jill Frizzley, Lauren Krueger, and Gary Begeman**

| Subsidiary | Jurisdiction |
|---|---|
| Envision Healthcare Corporation | Delaware |

## Schedule 4

**Sole Member: Envision Healthcare Corporation**

| Subsidiary | Jurisdiction |
|---|---|
| Envision Physician Services, LLC | Delaware |
| EMSC ServicesCo LLC | Delaware |

## Schedule 5

**Sole Member: AmSurg Physicians Arizona, LLC**

| Subsidiary | Jurisdiction |
|---|---|
| Millennium Vision Surgical, LLC | Delaware |

## Schedule 6

**Sole Member: Emergency Medical Services LLC**

| Subsidiary | Jurisdiction |
|---|---|
| Evolution Mobile Imaging, LLC | Delaware |

**Schedule 7**

**Board of Managers: Jeff Snodgrass, Pamela Corrie, and Harvey Tepner**

| Subsidiary | Jurisdiction |
|---|---|
| AmSurg, LLC | Delaware |
| AmSurg Holdco, LLC | Delaware |

**Schedule 8**

**Sole Member: Imaging Advantage LLC**

| Subsidiary | Jurisdiction |
|---|---|
| iSelect Healthcare LLC | Delaware |

**Schedule 9**

**Sole Member: Sheridan Healthcorp, Inc.**

| Subsidiary | Jurisdiction |
|---|---|
| NAC Properties, LLC | Georgia |
| Sentinel Healthcare Services, LLC | Georgia |
| Bay Area Anesthesia, L.L.C. | Florida |
| Broad Midwest Anesthesia, LLC | Missouri |
| Jupiter Healthcare, LLC | Florida |
| Sheridan InvestCo, LLC | Delaware |
| St. Lucie Anesthesia Associates, LLC | Florida |

**Schedule 10**

**Sole Member: Emcare, LLC**

| Subsidiary | Jurisdiction |
|---|---|
| Apex Acquisition LLC | Delaware |
| Alpha Physician Resources, L.L.C. | New Jersey |
| Hawkeye Holdco LLC | Delaware |
| Phoenix Business Systems, LLC | Missouri |
| Practice Account Management Services, LLC | Missouri |
| Spotlight Holdco LLC | Delaware |
| QRx Medical Management, LLC | Delaware |
| Streamlined Medical Solutions LLC | Texas |
| Sun Devil Acquisition LLC | Delaware |
| Sunbeam Asset LLC | Delaware |

**Schedule 11**

**Sole Member: Hawkeye Holdco, Inc.**

| Subsidiary | Jurisdiction |
|---|---|
| Acute Management, LLC | Texas |

**Schedule 12**

**Sole Member: Alpha Physician Resources, L.L.C.**

| Subsidiary | Jurisdiction |
|---|---|
| Bravo Reimbursement Specialist, L.L.C. | New Jersey |
| ED Solutions, LLC | New Jersey |
| EDIMS, L.L.C. | New Jersey |
| Proven Healthcare Solutions of New Jersey, LLC | New Jersey |

**Schedule 13**

**Sole Member: CMORx II, Inc.**

| Subsidiary | Jurisdiction |
|---|---|
| CMORx, LLC | Texas |

**Schedule 14**

**Sole Member: Sunbeam Asset L.L.C.**

| Subsidiary | Jurisdiction |
|---|---|
| Jupiter Anesthesia Associates, L.L.C. | Florida |

**Schedule 15**

**Sole Member: Apex Acquisition LLC**

| Subsidiary | Jurisdiction |
|---|---|
| MSO Newco, LLC | Delaware |

**Schedule 16**

**Sole Member: Spotlight Holdco LLC**

| Subsidiary | Jurisdiction |
|---|---|
| Rose Radiology, LLC | Texas |

**Schedule 17**

**Sole Manager / Director: Chan-Chou Chuang, M.D.**

| Subsidiary | Jurisdiction |
|---|---|
| Affilion, Inc. | Delaware |
| All Women's Healthcare Holdings, Inc. | Delaware |
| All Women's Healthcare of Dade, Inc. | Florida |
| All Women's Healthcare of Sawgrass, Inc. | Florida |
| All Women's Healthcare of West Broward, Inc. | Florida |
| All Women's Healthcare Services, Inc. | Florida |
| All Women's Healthcare, Inc. | Florida |
| AllegiantMD, Inc. | Florida |
| American Emergency Physicians Management, Inc. | California |
| Anesthesiologists of Greater Orlando, Inc. | Florida |
| Anesthesiology Associates of Tallahassee, Inc. | Florida |
| APH Laboratory Services, Inc. | Texas |
| Arizona Perinatal Care Centers, LLC | Florida |
| BestPractices, Inc. | Virginia |
| Bethesda Anesthesia Associates, Inc. | Florida |
| Boca Anesthesia Service, Inc. | Florida |
| Centennial Emergency Physicians, LLC | Missouri |
| Chandler Emergency Medical Group, L.L.C. | Arizona |
| Children's Anesthesia Associates, Inc. | Florida |
| Clinical Partners Management Company, LLC | Texas |
| Coastal Anesthesiology Consultants, LLC | Florida |
| Desert Mountain Consultants in Anesthesia, Inc. | Arizona |
| Discovery Clinical Research, Inc. | Florida |
| Doctors Billing Service, Inc. | California |
| Drs. Ellis, Rojas, Ross & Debs, Inc. | Florida |
| EmCare, LLC | Delaware |
| EmCare Anesthesia Providers, Inc. | Delaware |
| EmCare HoldCo, LLC | Delaware |
| EmCare Holdings, LLC | Delaware |
| EmCare of California, Inc. | California |
| EmCare Physician Providers, Inc. | Missouri |

| | |
|---|---|
| EmCare Physician Services, Inc. | Delaware |
| EHR Management Co. | Delaware |
| Emergency Medicine Education Systems, Inc. (EMEDS) | Texas |
| Emergency Medical Services LLC | Delaware |
| EMS Management LLC | Delaware |
| Envision Anesthesia Services of Delaware, Inc. | Florida |
| Envision Anesthesia Services of Sierra Vista, Inc. | Florida |
| Envision Children's Healthcare Services of North Mississippi, Inc. | Florida |
| Envision Healthcare Clinical Research, Inc. | Florida |
| Envision Healthcare Scientific Intelligence, Inc. | Florida |
| Flamingo Anesthesia Associates, Inc. | Florida |
| FM Healthcare Services, Inc. | Florida |
| FMO Healthcare Holdings, LLC | Delaware |
| FO Investments II, Inc. | Florida |
| FO Investments III, Inc. | Florida |
| FO Investments, Inc. | Florida |
| Global Surgical Partners, Inc. | Florida |
| Greater Florida Anesthesiologists, LLC | Florida |
| Gynecologic Oncology Associates, Inc. | Florida |
| Healthcare Administrative Services, Inc. | Delaware |
| Holiday Acquisition Company, Inc. | Colorado |
| Imaging Advantage LLC | Delaware |
| Infinity Healthcare, Inc. | Illinois |
| Jacksonville Beaches Anesthesia Associates, Inc. | Florida |
| KMAC, Inc. | Texas |
| MedAssociates, LLC | Texas |
| Medi-Bill of North Florida, Inc. | Florida |
| New Generations Babee Bag, Inc. | Florida |
| North Florida Anesthesia Consultants, Inc. | Florida |
| North Florida Perinatal Associates, Inc. | Florida |
| Northwood Anesthesia Associates, L.L.C | Florida |
| Parity Healthcare, Inc. | Florida |
| Partners in Medical Billing, Inc. | Florida |
| Phoenix Physicians, LLC | Florida |
| Physician Account Management, Inc. | Florida |
| Physician Office Partners, Inc. | Kansas |

| | |
|---|---|
| Pinnacle Consultants Mid-Atlantic, L.L.C. | Delaware |
| Provider Account Management, Inc. | Delaware |
| Reimbursement Technologies, Inc. | Pennsylvania |
| Radstaffing Management Solutions, Inc. | Delaware |
| Radiology Staffing Solutions, Inc. | Delaware |
| Rose Radiology, LLC | Texas |
| Sheridan Anesthesia Services of Alabama, Inc. | Florida |
| Sheridan Anesthesia Services of Louisiana, Inc. | Florida |
| Sheridan Anesthesia Services of Virginia, Inc. | Florida |
| Sheridan CADR Solutions, Inc. | Florida |
| Sheridan Children's Healthcare Services of Arizona, Inc. | Florida |
| Sheridan Children's Healthcare Services of Kentucky, Inc. | Florida |
| Sheridan Children's Healthcare Services of Louisiana, Inc. | Florida |
| Sheridan Children's Healthcare Services of New Mexico, Inc. | Florida |
| Sheridan Children's Healthcare Services of Ohio, Inc. | Florida |
| Sheridan Children's Healthcare Services of Virginia, Inc. | Florida |
| Sheridan Children's Healthcare Services, Inc. | Florida |
| Sheridan Children's Services of Alabama, Inc. | Florida |
| Sheridan Emergency Physician Services of Missouri, Inc. | Florida |
| Sheridan Emergency Physician Services of North Missouri, Inc. | Florida |
| Sheridan Emergency Physician Services of South Florida, Inc. | Florida |
| Sheridan Emergency Physician Services, Inc. | Florida |
| Sheridan Healthcare of Louisiana, Inc. | Florida |
| Sheridan Healthcare of Missouri, Inc. | Florida |
| Sheridan Healthcare of Vermont, Inc. | Florida |
| Sheridan Healthcare of Virginia, Inc. | Florida |
| Sheridan Healthcare of West Virginia, Inc. | West Virginia |
| Sheridan Healthcare, LLC | Delaware |
| Sheridan Healthcorp of California, Inc. | California |
| Sheridan Healthcorp, Inc. | Florida |
| Sheridan Healthy Hearing Services, Inc. | Florida |

| | |
|---|---|
| Sheridan Holdings, Inc. | Delaware |
| Sheridan Hospitalist Services of Florida, Inc. | Florida |
| Sheridan Leadership Academy, Inc. | Florida |
| Sheridan Radiology Management Services, Inc. | Delaware |
| Sheridan Radiology Services, Inc. | Delaware |
| Sheridan ROP Services of Alabama, Inc. | Florida |
| Sheridan ROP Services of Florida, Inc. | Florida |
| Sheridan ROP Services of Virginia, Inc. | Florida |
| Southeast Perinatal Associates, Inc. | Florida |
| Templeton Readings, LLC | Maryland |
| Tennessee Valley Neonatology, Inc. | Florida |
| Tiva Healthcare, Inc. | Florida |
| Valley Anesthesiology Consultants, Inc. | Arizona |
| Valley Clinical Research, Inc. | Florida |
| West Fairview Emergency Physicians, LLC | Kentucky |

**Schedule 18**

**Sole Member: AmSurg Holdings, LLC**

| **Subsidiary** | **Jurisdiction** |
|---|---|
| AmSurg Physicians HoldCo, LLC | Delaware |

**Schedule 19**

**Sole Member: AmSurg Physicians HoldCo, LLC**

| **Subsidiary** | **Jurisdiction** |
|---|---|
| AmSurg Physicians Arizona, LLC | Delaware |

**Schedule 20**

**General Partner: Austin NSC, LLC**

| **Subsidiary** | **Jurisdiction** |
|---|---|
| Austin NSC, LP | Texas |

**Schedule 21**

**Sole Manager / Director: Jeff Snodgrass**

| **Subsidiary** | **Jurisdiction** |
|---|---|
| AmSurg Abilene Eye, Inc. | Tennessee |

| | |
|---|---|
| AmSurg Abilene, Inc. | Tennessee |
| AmSurg Altamonte Springs FL, Inc. | Tennessee |
| AmSurg Anesthesia Management Services, LLC | Tennessee |
| AmSurg Arcadia CA, Inc. | Tennessee |
| AmSurg Burbank, Inc. | Tennessee |
| AmSurg Colton CA, Inc. | Tennessee |
| AmSurg Crystal River, Inc. | Tennessee |
| AmSurg EC Beaumont, Inc. | Tennessee |
| AmSurg EC Centennial, Inc. | Tennessee |
| AmSurg EC Santa Fe, Inc. | Tennessee |
| AmSurg EC St. Thomas, Inc. | Tennessee |
| AmSurg EC Topeka, Inc. | Tennessee |
| AmSurg EC Washington, Inc. | Tennessee |
| AmSurg El Paso, Inc. | Tennessee |
| AmSurg Escondido CA, Inc. | Tennessee |
| AmSurg Finance, Inc. | Tennessee |
| AmSurg Fresno Endoscopy, Inc. | Tennessee |
| AmSurg Glendale, Inc. | Tennessee |
| AmSurg Glendora CA, Inc. | Tennessee |
| AmSurg Hillmont, Inc. | Tennessee |
| AmSurg Holdings, LLC | Delaware |
| AmSurg Inglewood, Inc. | Tennessee |
| AmSurg KEC, Inc. | Tennessee |
| AmSurg Kissimmee FL, Inc. | Tennessee |
| AmSurg La Jolla, Inc. | Tennessee |
| AmSurg Lancaster PA, LLC | Tennessee |
| AmSurg Main Line PA, LLC | Tennessee |
| AmSurg Maryville, Inc. | Tennessee |
| AmSurg Melbourne, Inc. | Tennessee |
| AmSurg Miami, Inc. | Tennessee |
| AmSurg Naples, Inc. | Tennessee |
| AmSurg New Port Richey FL, Inc. | Tennessee |
| AmSurg Northwest Florida, Inc. | Tennessee |
| AmSurg Oakland CA, Inc. | Tennessee |
| AmSurg Ocala, Inc. | Tennessee |
| AmSurg Palmetto, Inc. | Tennessee |
| AmSurg Pottsville PA, LLC | Tennessee |
| AmSurg San Antonio TX, Inc. | Tennessee |
| AmSurg San Luis Obispo CA, Inc. | Tennessee |
| AmSurg Scranton PA, Inc. | Tennessee |
| AmSurg Suncoast, Inc. | Tennessee |

| | |
|---|---|
| AmSurg Temecula CA, Inc. | Tennessee |
| AmSurg Temecula II, Inc. | Tennessee |
| AmSurg Torrance, Inc. | Tennessee |
| ASDH I, LLC | Tennessee |
| ASDH II, LLC | Tennessee |
| Austin NSC, LLC | Tennessee |
| Coral Springs NSC, LLC | Tennessee |
| Davis NSC, LLC | Tennessee |
| Fullerton NSC, LLC | Tennessee |
| Kenwood NSC, LLC | Tennessee |
| Long Beach NSC, LLC | Tennessee |
| Illinois NSC, Inc. | Tennessee |
| NSC Healthcare, Inc. | Tennessee |
| NSC RBO East, LLC | Tennessee |
| NSC West Palm, LLC | Tennessee |
| San Antonio NSC, LLC | Tennessee |
| SHI II, LLC | Tennessee |
| Tampa Bay NSC, LLC | Tennessee |
| Torrance NSC, LLC | Tennessee |
| Towson NSC, LLC | Tennessee |
| Twin Falls NSC, LLC | Tennessee |
| Weston NSC, LLC | Tennessee |
| Wilton NSC, LLC | Tennessee |

# EXHIBIT A

Acute Management, LLC
Affilion, Inc.
All Women's Healthcare Holdings, Inc.
All Women's Healthcare of Dade, Inc.
All Women's Healthcare of Sawgrass, Inc.
All Women's Healthcare of West Broward, Inc.
All Women's Healthcare Services, Inc.
All Women's Healthcare, Inc.
AllegiantMD, Inc.
Alpha Physician Resources, L.L.C.
American Emergency Physicians Management, Inc.
AmSurg Abilene Eye, Inc.
AmSurg Abilene, Inc.
AmSurg Altamonte Springs FL, Inc.
AmSurg Anesthesia Management Services, LLC
AmSurg Arcadia CA, Inc.
AmSurg Burbank, Inc.
AmSurg Colton CA, Inc.
AmSurg Crystal River, Inc.
AmSurg EC Beaumont, Inc.
AmSurg EC Centennial, Inc.
AmSurg EC Santa Fe, Inc.
AmSurg EC St. Thomas, Inc.
AmSurg EC Topeka, Inc.
AmSurg EC Washington, Inc.
AmSurg El Paso, Inc.
AmSurg Escondido CA, Inc.
AmSurg Finance, Inc.
AmSurg Fresno Endoscopy, Inc.
AmSurg Glendale, Inc.
AmSurg Glendora CA, Inc.
AmSurg Hillmont, Inc.
AmSurg Holdco, LLC
AmSurg Holdings, LLC
AmSurg Inglewood, Inc.
AmSurg KEC, Inc.
AmSurg Kissimmee FL, Inc.
AmSurg La Jolla, Inc.
AmSurg Lancaster PA, LLC
AmSurg Main Line PA, LLC
AmSurg Maryville, Inc.
AmSurg Melbourne, Inc.
AmSurg Miami, Inc.
AmSurg Naples, Inc.

AmSurg New Port Richey FL, Inc.
AmSurg Northwest Florida, Inc.
AmSurg Oakland CA, Inc.
AmSurg Ocala, Inc.
AmSurg Palmetto, Inc.
AmSurg Physicians Arizona, LLC
AmSurg Physicians HoldCo, LLC
AmSurg Pottsville PA, LLC
AmSurg San Antonio TX, Inc.
AmSurg San Luis Obispo CA, Inc.
AmSurg Scranton PA, Inc.
AmSurg Suncoast, Inc.
AmSurg Temecula CA, Inc.
AmSurg Temecula II, Inc.
AmSurg Torrance, Inc.
AmSurg, LLC
Anesthesiologists of Greater Orlando, Inc.
Anesthesiology Associates of Tallahassee, Inc.
Apex Acquisition LLC
Arizona Perinatal Care Centers, LLC
ASDH I, LLC
ASDH II, LLC
Austin NSC, LLC
Austin NSC, LP
Bay Area Anesthesia, L.L.C.
BestPractices, Inc.
Bethesda Anesthesia Associates, Inc.
Boca Anesthesia Service, Inc.
Bravo Reimbursement Specialist, L.L.C.
Broad Midwest Anesthesia, LLC
Centennial Emergency Physicians, LLC
Chandler Emergency Medical Group, L.L.C.
Children's Anesthesia Associates, Inc.
Clinical Partners Management Company, LLC
CMORx, LLC
Coastal Anesthesiology Consultants, LLC
Coral Springs NSC, LLC
Davis NSC, LLC
Desert Mountain Consultants in Anesthesia, Inc.
Discovery Clinical Research, Inc.
Doctors Billing Service, Inc.
Drs. Ellis, Rojas, Ross & Debs, Inc.
ED Solutions, LLC
EDIMS, L.L.C.
EHR Management Co.
EmCare Anesthesia Providers, Inc.

EmCare HoldCo, LLC
EmCare Holdings, LLC
EmCare of California, Inc.
EmCare Physician Providers, Inc.
EmCare Physician Services, Inc.
EmCare, LLC
Emergency Medical Services LLC
Emergency Medicine Education Systems, Inc. (EMEDS)
EMS Management LLC
EMSC ServicesCo, LLC
Enterprise Intermediate Holdings Inc.
Enterprise Parent Holdings, Inc.
Envision Anesthesia Services of Delaware, Inc.
Envision Anesthesia Services of Sierra Vista, Inc.
Envision Children's Healthcare Services of North Mississippi, Inc.
Envision Healthcare Clinical Research, Inc.
Envision Healthcare Corporation
Envision Healthcare Scientific Intelligence, Inc.
Envision Physician Services, LLC
Flamingo Anesthesia Associates, Inc.
FM Healthcare Services, Inc.
FMO Healthcare Holdings, LLC
FO Investments II, Inc.
FO Investments III, Inc.
FO Investments, Inc.
Fullerton NSC, LLC
Global Surgical Partners, Inc.
Greater Florida Anesthesiologists, LLC
Hawkeye Holdco LLC
Healthcare Administrative Services, Inc.
Holiday Acquisition Company, Inc.
Illinois NSC, Inc.
Imaging Advantage LLC
Infinity Healthcare, Inc.
iSelect Healthcare LLC
Jacksonville Beaches Anesthesia Associates, Inc.
Jupiter Anesthesia Associates, L.L.C.
Jupiter Healthcare, LLC
Kenwood NSC, LLC
Long Beach NSC, LLC
MedAssociates, LLC
Medi-Bill of North Florida, Inc.
Medical Information Management Solutions, LLC
Millennium Vision Surgical, LLC
MSO Newco, LLC
NAC Properties, LLC

New Generations Babee Bag, Inc.
North Florida Anesthesia Consultants, Inc.
North Florida Perinatal Associates, Inc.
Northwood Anesthesia Associates, L.L.C
NSC Healthcare, Inc.
NSC RBO East, LLC
NSC West Palm, LLC
Parity Healthcare, Inc.
Partners in Medical Billing, Inc.
Phoenix Business Systems, LLC
Phoenix Physicians, LLC
Physician Account Management, Inc.
Physician Office Partners, Inc.
Pinnacle Consultants Mid-Atlantic, L.L.C.
Practice Account Management Services, LLC
Proven Healthcare Solutions of New Jersey, LLC
Provider Account Management, Inc.
QRx Medical Management, LLC
Reimbursement Technologies, Inc.
San Antonio NSC, LLC
Sentinel Healthcare Services, LLC
Sheridan Anesthesia Services of Alabama, Inc.
Sheridan Anesthesia Services of Louisiana, Inc.
Sheridan Anesthesia Services of Virginia, Inc.
APH Laboratory Services, Inc.
Sheridan CADR Solutions, Inc.
Sheridan Children's Healthcare Services of Arizona, Inc.
Sheridan Children's Healthcare Services of Kentucky, Inc.
Sheridan Children's Healthcare Services of Louisiana, Inc.
Sheridan Children's Healthcare Services of New Mexico, Inc.
Sheridan Children's Healthcare Services of Ohio, Inc.
Sheridan Children's Healthcare Services of Virginia, Inc.
Sheridan Children's Healthcare Services, Inc.
Sheridan Children's Services of Alabama, Inc.
Sheridan Emergency Physician Services of Missouri, Inc.
Sheridan Emergency Physician Services of North Missouri, Inc.
Sheridan Emergency Physician Services of South Florida, Inc.
Sheridan Emergency Physician Services, Inc.
Sheridan Healthcare of Louisiana, Inc.
Sheridan Healthcare of Missouri, Inc.
Sheridan Healthcare of Vermont, Inc.
Sheridan Healthcare of Virginia, Inc.
Sheridan Healthcare of West Virginia, Inc.
Sheridan Healthcare, LLC
Sheridan Healthcorp of California, Inc.
Sheridan Healthcorp, Inc.

Case 23-90342 Document 1 Filed in TXSB on 05/15/23 Page 38 of 628

Sheridan Healthy Hearing Services, Inc.
Sheridan Holdings, LLC
Sheridan Hospitalist Services of Florida, Inc.
Sheridan InvestCo, LLC
Sheridan Leadership Academy, Inc.
Sheridan Radiology Management Services, Inc.
Sheridan Radiology Services, Inc.
Sheridan ROP Services of Alabama, Inc.
Sheridan ROP Services of Florida, Inc.
Sheridan ROP Services of Virginia, Inc.
SHI II, LLC
Southeast Perinatal Associates, Inc.
Spotlight Holdco LLC
St. Lucie Anesthesia Associates, LLC
Streamlined Medical Solutions LLC
Sun Devil Acquisition LLC
Sunbeam Asset LLC
Tampa Bay NSC, LLC
Templeton Readings, LLC
Tennessee Valley Neonatology, Inc.
Tiva Healthcare, Inc.
Torrance NSC, LLC
Towson NSC, LLC
Twin Falls NSC, LLC
Valley Anesthesiology Consultants, Inc.
Valley Clinical Research, Inc.
West Fairview Emergency Physicians, LLC
Weston NSC, LLC
Wilton NSC, LLC
Evolution Mobile Imaging, LLC
Gynecologic Oncology Associates, Inc.
KMAC, Inc.
Radiology Staffing Solutions, Inc.
Radstaffing Management Solutions, Inc.
Rose Radiology, LLC

# EXHIBIT B

**Joint Administration Order for**
**Envision Healthcare Corporation and Certain of its Affiliates**
**Under Chapter 11 of the Bankruptcy Code**

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
May 15, 2023
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| ENVISION HEALTHCARE CORPORATION, | ) | Case No. 23-90342 |
| Debtor. | ) | |
| Tax I.D. No. 62-1493316 | ) | |
| In re: | ) | Chapter 11 |
| ACUTE MANAGEMENT, LLC, | ) | Case No. 23-90341 |
| Debtor. | ) | |
| Tax I.D. No. 20-4049691 | ) | |
| In re: | ) | Chapter 11 |
| AFFILION, INC., | ) | Case No. 23-90538 |
| Debtor. | ) | |
| Tax I.D. No. 27-2937476 | ) | |
| In re: | ) | Chapter 11 |
| ALL WOMEN'S HEALTHCARE HOLDINGS, INC., | ) | Case No. 23-90540 |
| Debtor. | ) | |
| Tax I.D. No. 13-4271816 | ) | |
| In re: | ) | Chapter 11 |
| ALL WOMEN'S HEALTHCARE OF DADE, INC., | ) | Case No. 23-90542 |
| Debtor. | ) | |
| Tax I.D. No. 45-0530994 | ) | |

| | |
|---|---|
| In re:<br><br>ALL WOMEN'S HEALTHCARE OF SAWGRASS, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 42-1612467 | Chapter 11<br><br>Case No. 23-90543 |
| In re:<br><br>ALL WOMEN'S HEALTHCARE OF WEST BROWARD, INC.,<br><br>Debtor.<br><br>Tax I.D. 42-1612462 | Chapter 11<br><br>Case No. 23-90544 |
| In re:<br><br>ALL WOMEN'S HEALTHCARE SERVICES, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 45-0530996 | Chapter 11<br><br>Case No. 23-90547 |
| In re:<br><br>ALL WOMEN'S HEALTHCARE, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 42-1612456 | Chapter 11<br><br>Case No. 23-90549 |
| In re:<br><br>ALLEGIANTMD, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 27-2123818 | Chapter 11<br><br>Case No. 23-90550 |

| | |
|---|---|
| In re: | Chapter 11 |
| ALPHA PHYSICIAN RESOURCES, L.L.C., | Case No. 23-90551 |
| Debtor. | |
| Tax I.D. No. 22-3780465 | |

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN EMERGENCY PHYSICIANS MANAGEMENT, INC., | Case No. 23-90552 |
| Debtor. | |
| Tax I.D. No. 95-4194045 | |

| | |
|---|---|
| In re: | Chapter 11 |
| AMSURG ABILENE EYE, INC., | Case No. 23-90553 |
| Debtor. | |
| Tax I.D. No. 62-1692556 | |

| | |
|---|---|
| In re: | Chapter 11 |
| AMSURG ABILENE, INC., | Case No. 23-90554 |
| Debtor. | |
| Tax I.D. No. 62-1555413 | |

| | |
|---|---|
| In re: | Chapter 11 |
| AMSURG ALTAMONTE SPRINGS FL, INC., | Case No. 23-90555 |
| Debtor. | |
| Tax I.D. No. 62-1626021 | |

| | |
|---|---|
| In re:<br><br>AMSURG ANESTHESIA MANAGEMENT SERVICES, LLC,<br><br>Debtor.<br><br>Tax I.D. No. 27-1174941 | Chapter 11<br><br>Case No. 23-90556 |
| In re:<br><br>AMSURG ARCADIA CA, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 20-4483684 | Chapter 11<br><br>Case No. 23-90348 |
| In re:<br><br>AMSURG BURBANK, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 62-1619548 | Chapter 11<br><br>Case No. 23-90355 |
| In re:<br><br>AMSURG COLTON CA, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 46-1462856 | Chapter 11<br><br>Case No. 23-90362 |
| In re:<br><br>AMSURG CRYSTAL RIVER, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 62-1666189 | Chapter 11<br><br>Case No. 23-90369 |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| AMSURG EC BEAUMONT, INC., | ) | Case No. 23-90378 |
| Debtor. | ) | |
| Tax I.D. No. 62-1524208 | ) | |
| In re: | ) | Chapter 11 |
| AMSURG EC CENTENNIAL, INC., | ) | Case No. 23-90385 |
| Debtor. | ) | |
| Tax I.D. No. 62-1511980 | ) | |
| In re: | ) | Chapter 11 |
| AMSURG EC SANTA FE, INC., | ) | Case No. 23-90394 |
| Debtor. | ) | |
| Tax I.D. No. 65-1523398 | ) | |
| In re: | ) | Chapter 11 |
| AMSURG EC ST. THOMAS, INC., | ) | Case No. 23-90401 |
| Debtor. | ) | |
| Tax I.D. No. 62-1511996 | ) | |
| In re: | ) | Chapter 11 |
| AMSURG EC TOPEKA, INC., | ) | Case No. 23-90409 |
| Debtor. | ) | |
| Tax I.D. No. 62-1512093 | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| AMSURG EC WASHINGTON, INC., | ) | Case No. 23-90419 |
| Debtor. | ) | |
| Tax I.D. No. 62-1506354 | ) | |
| In re: | ) | Chapter 11 |
| AMSURG EL PASO, INC., | ) | Case No. 23-90429 |
| Debtor. | ) | |
| Tax I.D. No. 62-1711537 | ) | |
| In re: | ) | Chapter 11 |
| AMSURG ESCONDIDO CA, INC., | ) | Case No. 23-90439 |
| Debtor. | ) | |
| Tax I.D. No. 20-1626979 | ) | |
| In re: | ) | Chapter 11 |
| AMSURG FINANCE, INC., | ) | Case No. 23-90446 |
| Debtor. | ) | |
| Tax I.D. No. 47-2039667 | ) | |
| In re: | ) | Chapter 11 |
| AMSURG FRESNO ENDOSCOPY, INC., | ) | Case No. 23-90454 |
| Debtor. | ) | |
| Tax I.D. No. 46-4319557 | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| AMSURG GLENDALE, INC., | ) | Case No. 23-90386 |
| Debtor. | ) | |
| Tax I.D. No. 62-1807967 | ) | |
| In re: | ) | Chapter 11 |
| AMSURG GLENDORA CA, INC., | ) | Case No. 23-90416 |
| Debtor. | ) | |
| Tax I.D. No. 20-5732564 | ) | |
| In re: | ) | Chapter 11 |
| AMSURG HILLMONT, INC., | ) | Case No. 23-90433 |
| Debtor. | ) | |
| Tax I.D. No. 62-1632685 | ) | |
| In re: | ) | Chapter 11 |
| AMSURG HOLDCO, LLC, | ) | Case No. 23-90450 |
| Debtor. | ) | |
| Tax I.D. No. 82-2995040 | ) | |
| In re: | ) | Chapter 11 |
| AMSURG HOLDINGS, INC., | ) | Case No. 23-90464 |
| Debtor. | ) | |
| Tax I.D. No. 62-1595888 | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| AMSURG INGLEWOOD, INC., | ) | Case No. 23-90482 |
| Debtor. | ) | |
| Tax I.D. No. 62-1814134 | ) | |
| In re: | ) | Chapter 11 |
| AMSURG KEC, INC., | ) | Case No. 23-90491 |
| Debtor. | ) | |
| Tax I.D. No. 62-1510489 | ) | |
| In re: | ) | Chapter 11 |
| AMSURG KISSIMMEE FL, INC., | ) | Case No. 23-90497 |
| Debtor. | ) | |
| Tax I.D. No. 62-1567628 | ) | |
| In re: | ) | Chapter 11 |
| AMSURG LA JOLLA, INC., | ) | Case No. 23-90500 |
| Debtor. | ) | |
| Tax I.D. No. 62-1625304 | ) | |
| In re: | ) | Chapter 11 |
| AMSURG LANCASTER PA, LLC, | ) | Case No. 23-90504 |
| Debtor. | ) | |
| Tax I.D. No. 20-5988960 | ) | |

| | | |
|---|---|---|
| In re:<br><br>AMSURG MAIN LINE PA, LLC,<br><br>Debtor.<br><br>Tax I.D. No. 20-5408469 | ) | Chapter 11<br><br>Case No. 23-90510 |
| In re:<br><br>AMSURG MARYVILLE, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 62-1586143 | ) | Chapter 11<br><br>Case No. 23-90512 |
| In re:<br><br>AMSURG MELBOURNE, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 62-1625312 | ) | Chapter 11<br><br>Case No. 23-90517 |
| In re:<br><br>AMSURG MIAMI, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 62-1598504 | ) | Chapter 11<br><br>Case No. 23-90519 |
| In re:<br><br>AMSURG NAPLES, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 62-1659906 | ) | Chapter 11<br><br>Case No. 23-90372 |

| | |
|---|---|
| In re: | Chapter 11 |
| AMSURG NEW PORT RICHEY FL, INC., | Case No. 23-90391 |
| Debtor. | |
| Tax I.D. No. 62-1666190 | |
| In re: | Chapter 11 |
| AMSURG NORTHWEST FLORIDA, INC., | Case No. 23-90415 |
| Debtor. | |
| Tax I.D. No. 62-1519549 | |
| In re: | Chapter 11 |
| AMSURG OAKLAND CA, INC., | Case No. 23-90432 |
| Debtor. | |
| Tax I.D. No. 20-5645841 | |
| In re: | Chapter 11 |
| AMSURG OCALA, INC., | Case No. 23-90456 |
| Debtor. | |
| Tax I.D. No. 62-1650493 | |
| In re: | Chapter 11 |
| AMSURG PALMETTO, INC., | Case No. 23-90480 |
| Debtor. | |
| Tax I.D. No. 62-1647404 | |

| | |
|---|---|
| In re: | Chapter 11 |
| AMSURG PHYSICIANS ARIZONA, LLC, | Case No. 23-90494 |
| Debtor. | |
| Tax I.D. No. 82-4623602 | |
| In re: | Chapter 11 |
| AMSURG PHYSICIANS HOLDCO, LLC, | Case No. 23-90501 |
| Debtor. | |
| Tax I.D. No. 82-4615705 | |
| In re: | Chapter 11 |
| AMSURG POTTSVILLE PA, LLC, | Case No. 23-90506 |
| Debtor. | |
| Tax I.D. No. 26-0303835 | |
| In re: | Chapter 11 |
| AMSURG SAN ANTONIO TX, INC., | Case No. 23-90514 |
| Debtor. | |
| Tax I.D. No. 20-0075736 | |
| In re: | Chapter 11 |
| AMSURG SAN LUIS OBISPO CA, INC., | Case No. 23-90545 |
| Debtor. | |
| Tax I.D. No. 20-1965555 | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| AMSURG SCRANTON PA, INC., | ) | Case No. 23-90525 |
| Debtor. | ) | |
| Tax I.D. No. 20-2853308 | ) | |
| In re: | ) | Chapter 11 |
| AMSURG SUNCOAST, INC., | ) | Case No. 23-90528 |
| Debtor. | ) | |
| Tax I.D. No. 62-1555677 | ) | |
| In re: | ) | Chapter 11 |
| AMSURG TEMECULA CA, INC., | ) | Case No. 23-90531 |
| Debtor. | ) | |
| Tax I.D. No. 20-0095263 | ) | |
| In re: | ) | Chapter 11 |
| AMSURG TEMECULA II, INC., | ) | Case No. 23-90345 |
| Debtor. | ) | |
| Tax I.D. No. 46-4137624 | ) | |
| In re: | ) | Chapter 11 |
| AMSURG TORRANCE, INC., | ) | Case No. 23-90353 |
| Debtor. | ) | |
| Tax I.D. No. 62-1545685 | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| AMSURG, LLC, | ) | Case No. 23-90343 |
| Debtor. | ) | |
| Tax I.D. No. 82-2995615 | ) | |
| In re: | ) | Chapter 11 |
| ANESTHESIOLOGISTS OF GREATER ORLANDO, INC., | ) | Case No. 23-90364 |
| Debtor. | ) | |
| Tax I.D. No. 59-3542796 | ) | |
| In re:<br>F | ) | Chapter 11 |
| ANESTHESIOLOGY ASSOCIATES OF TALLAHASSEE, INC., | ) | Case No. 23-90373 |
| Debtor. | ) | |
| Tax I.D. No. 59-2970442 | ) | |
| In re: | ) | Chapter 11 |
| APEX ACQUISITION LLC, | ) | Case No. 23-90381 |
| Debtor. | ) | |
| Tax I.D. No. 27-1321358 | ) | |
| In re: | ) | Chapter 11 |
| APH LABORATORY SERVICES, INC., | ) | Case No. 23-90396 |
| Debtor. | ) | |
| Tax I.D. No. 26-2253054 | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| ARIZONA PERINATAL CARE CENTERS, LLC, | ) | Case No. 23-90407 |
| Debtor. | ) | |
| Tax I.D. No. 01-0813678 | ) | |
| In re: | ) | Chapter 11 |
| ASDH I, LLC, | ) | Case No. 23-90417 |
| Debtor. | ) | |
| Tax I.D. No. 81-0955572 | ) | |
| In re: | ) | Chapter 11 |
| ASDH II, LLC, | ) | Case No. 23-90425 |
| Debtor. | ) | |
| Tax I.D. No. 81-4727588 | ) | |
| In re: | ) | Chapter 11 |
| AUSTIN NSC, LLC, | ) | Case No. 23-90431 |
| Debtor. | ) | |
| Tax I.D. No. 20-4942934 | ) | |
| In re: | ) | Chapter 11 |
| AUSTIN NSC, LP, | ) | Case No. 23-90442 |
| Debtor. | ) | |
| Tax I.D. No. 74-2934461 | ) | |

| | |
|---|---|
| In re: | Chapter 11 |
| BAY AREA ANESTHESIA, L.L.C., | Case No. 23-90452 |
| Debtor. | |
| Tax I.D. No. 59-3552855 | |
| In re: | Chapter 11 |
| BESTPRACTICES, INC., | Case No. 23-90463 |
| Debtor. | |
| Tax I.D. No. 54-1489944 | |
| In re: | Chapter 11 |
| BETHESDA ANESTHESIA ASSOCIATES, INC., | Case No. 23-90475 |
| Debtor. | |
| Tax I.D. No. 26-2588869 | |
| In re: | Chapter 11 |
| BOCA ANESTHESIA SERVICE, INC., | Case No. 23-90349 |
| Debtor. | |
| Tax I.D. No. 65-0126861 | |
| In re: | Chapter 11 |
| BRAVO REIMBURSEMENT SPECIALIST, L.L.C., | Case No. 23-90358 |
| Debtor. | |
| Tax I.D. No. 22-3780460 | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| BROAD MIDWEST ANESTHESIA, LLC, | ) | Case No. 23-90366 |
| Debtor. | ) | |
| Tax I.D. No. 26-2833703 | ) | |
| In re: | ) | Chapter 11 |
| CENTENNIAL EMERGENCY PHYSICIANS, LLC, | ) | Case No. 23-90374 |
| Debtor. | ) | |
| Tax I.D. No. 82-4119519 | ) | |
| In re: | ) | Chapter 11 |
| CHANDLER EMERGENCY MEDICAL GROUP, L.L.C., | ) | Case No. 23-90383 |
| Debtor. | ) | |
| Tax I.D. No. 46-0508979 | ) | |
| In re: | ) | Chapter 11 |
| CHILDREN'S ANESTHESIA ASSOCIATES, INC., | ) | Case No. 23-90395 |
| Debtor. | ) | |
| Tax I.D. No. 65-0017781 | ) | |

| | |
|---|---|
| In re: | Chapter 11 |
| CLINICAL PARTNERS MANAGEMENT COMPANY, LLC, | Case No. 23-90404 |
| Debtor. | |
| Tax I.D. No. 26-2299844 | |
| In re: | Chapter 11 |
| CMORX, LLC, | Case No. 23-90411 |
| Debtor. | |
| Tax I.D. No. 74-2857658 | |
| In re: | Chapter 11 |
| COASTAL ANESTHESIOLOGY CONSULTANTS, LLC, | Case No. 23-90421 |
| Debtor. | |
| Tax I.D. No. 26-3056682 | |
| In re: | Chapter 11 |
| CORAL SPRINGS NSC, LLC, | Case No. 23-90428 |
| Debtor. | |
| Tax I.D. No. 26-1649639 | |
| In re: | Chapter 11 |
| DAVIS NSC, LLC, | Case No. 23-90438 |
| Debtor. | |
| Tax I.D. No. 20-5451784 | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| DESERT MOUNTAIN CONSULTANTS IN ANESTHESIA, INC., | ) | Case No. 23-90449 |
| Debtor. | ) | |
| Tax I.D. No. 86-0956336 | ) | |
| In re: | ) | Chapter 11 |
| DISCOVERY CLINICAL RESEARCH, INC., | ) | Case No. 23-90459 |
| Debtor. | ) | |
| Tax I.D. No. 20-1105922 | ) | |
| In re: | ) | Chapter 11 |
| DOCTORS BILLING SERVICE, INC., | ) | Case No. 23-90469 |
| Debtor. | ) | |
| Tax I.D. No. 20-8297205 | ) | |
| In re: | ) | Chapter 11 |
| DRS. ELLIS, ROJAS, ROSS & DEBS, INC., | ) | Case No. 23-90359 |
| Debtor. | ) | |
| Tax I.D. No. 59-1205165 | ) | |
| In re: | ) | Chapter 11 |
| ED SOLUTIONS, LLC, | ) | Case No. 23-90367 |
| Debtor. | ) | |
| Tax I.D. No. 27-0376514 | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| EDIMS, L.L.C., | ) | Case No. 23-90380 |
| Debtor. | ) | |
| Tax I.D. No. 20-3218337 | ) | |
| In re: | ) | Chapter 11 |
| EHR MANAGEMENT CO., | ) | Case No. 23-90392 |
| Debtor. | ) | |
| Tax I.D. No. 20-3940407 | ) | |
| In re: | ) | Chapter 11 |
| EMCARE ANESTHESIA PROVIDERS, INC., | ) | Case No. 23-90406 |
| Debtor. | ) | |
| Tax I.D. No. 27-1937828 | ) | |
| In re: | ) | Chapter 11 |
| EMCARE HOLDCO, LLC, | ) | Case No. 23-90448 |
| Debtor. | ) | |
| Tax I.D. No. 20-2076495 | ) | |
| In re: | ) | Chapter 11 |
| EMCARE HOLDINGS, LLC, | ) | Case No. 23-90470 |
| Debtor. | ) | |
| Tax I.D. No. 13-3645287 | ) | |

| | |
|---|---|
| In re: | Chapter 11 |
| EMCARE OF CALIFORNIA, INC., | Case No. 23-90493 |
| Debtor. | |
| Tax I.D. No. 94-2246075 | |
| In re: | Chapter 11 |
| EMCARE PHYSICIAN PROVIDERS, INC., | Case No. 23-90516 |
| Debtor. | |
| Tax I.D. No. 43-0972570 | |
| In re: | Chapter 11 |
| EMCARE PHYSICIAN SERVICES, INC., | Case No. 23-90534 |
| Debtor. | |
| Tax I.D. No. 51-0345538 | |
| In re: | Chapter 11 |
| EMCARE, LLC, | Case No. 23-90523 |
| Debtor. | |
| Tax I.D. No. 75-1732351 | |
| In re: | Chapter 11 |
| EMERGENCY MEDICAL SERVICES, LLC, | Case No. 23-90526 |
| Debtor. | |
| Tax I.D. No. 20-2076535 | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| EMERGENCY MEDICINE EDUCATION SYSTEMS, INC. (EMEDS), | ) | Case No. 23-90529 |
| Debtor. | ) | |
| Tax I.D. No. 75-2706238 | ) | |
| In re: | ) | Chapter 11 |
| EMS MANAGEMENT LLC, | ) | Case No. 23-90530 |
| Debtor. | ) | |
| Tax I.D. No. 20-2076564 | ) | |
| In re: | ) | Chapter 11 |
| EMSC SERVICESCO, LLC, | ) | Case No. 23-90377 |
| Debtor. | ) | |
| Tax I.D. No. 46-0826288 | ) | |
| In re: | ) | Chapter 11 |
| ENTERPRISE INTERMEDIATE HOLDINGS INC., | ) | Case No. 23-90389 |
| Debtor. | ) | |
| Tax I.D. No. 83-0929932 | ) | |
| In re: | ) | |
| ENTERPRISE PARENT HOLDINGS, INC. | ) | Case No. 23-90402 |
| Debtor. | ) | |
| Tax I.D. No. 83-0893659 | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| ENVISION ANESTHESIA SERVICES OF DELAWARE, INC., | ) | Case No. 23-90414 |
| Debtor. | ) | |
| Tax I.D. No. 82-3115955 | ) | |
| In re: | ) | Chapter 11 |
| ENVISION ANESTHESIA SERVICES OF SIERRA VISTA, INC., | ) | Case No. 23-90426 |
| Debtor. | ) | |
| Tax I.D. No. 82-1916223 | ) | |
| In re: | ) | Chapter 11 |
| ENVISION CHILDREN'S HEALTHCARE SERVICES OF NORTH MISSISSIPPI, INC., | ) | Case No. 23-90455 |
| Debtor. | ) | |
| Tax I.D. No. 82-3135231 | ) | |
| In re: | ) | Chapter 11 |
| ENVISION HEALTHCARE CLINICAL RESEARCH, INC., | ) | Case No. 23-90471 |
| Debtor. | ) | |
| Tax I.D. No. 65-1096710 | ) | |
| In re: | ) | Chapter 11 |
| ENVISION HEALTHCARE SCIENTIFIC INTELLIGENCE, INC., | ) | Case No. 23-90489 |
| Debtor. | ) | |
| Tax I.D. No. 47-5312545 | ) | |

| | | |
|---|---|---|
| In re:<br><br>ENVISION PHYSICIAN SERVICES, LLC,<br><br>Debtor.<br><br>Tax I.D. No. 82-3024963 | ) | Chapter 11<br><br>Case No. 23-90498 |
| In re:<br><br>EVOLUTION MOBILE IMAGING, LLC,<br><br>Debtor.<br><br>Tax I.D. No. 80-0901255 | ) | Chapter 11<br><br>Case No. 23-90502 |
| In re:<br><br>FLAMINGO ANESTHESIA ASSOCIATES, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 26-2804804 | ) | Chapter 11<br><br>Case No. 23-90505 |
| In re:<br><br>FM HEALTHCARE SERVICES, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 27-3515257 | ) | Chapter 11<br><br>Case No. 23-90509 |
| In re:<br><br>FMO HEALTHCARE HOLDINGS, LLC,<br><br>Debtor.<br><br>Tax I.D. No. 27-3515065 | ) | Chapter 11<br><br>Case No. 23-90511 |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| FO INVESTMENTS II, INC., | ) | Case No. 23-90515 |
| Debtor. | ) | |
| Tax I.D. No. 45-2641534 | ) | |
| In re: | ) | Chapter 11 |
| FO INVESTMENTS III, INC., | ) | Case No. 23-90507 |
| Debtor. | ) | |
| Tax I.D. No. 35-2438641 | ) | |
| In re: | ) | Chapter 11 |
| FO INVESTMENTS, INC., | ) | Case No. 23-90520 |
| Debtor. | ) | |
| Tax I.D. No. 27-3515505 | ) | |
| In re: | ) | Chapter 11 |
| FULLERTON NSC, LLC, | ) | Case No. 23-90524 |
| Debtor. | ) | |
| Tax I.D. No. 26-3435683 | ) | |
| In re: | ) | Chapter 11 |
| GLOBAL SURGICAL PARTNERS, INC., | ) | Case No. 23-90527 |
| Debtor. | ) | |
| Tax I.D. No. 65-0903559 | ) | |

| | | |
|---|---|---|
| In re:<br><br>GREATER FLORIDA ANESTHESIOLOGISTS, LLC,<br><br>Debtor.<br><br>Tax I.D. No. 27-0602251 | ) | Chapter 11<br><br>Case No. 23-90532 |
| In re:<br><br>GYNECOLOGIC ONCOLOGY ASSOCIATES, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 59-2026996 | ) | Chapter 11<br><br>Case No. 23-90533 |
| In re:<br><br>HAWKEYE HOLDCO LLC,<br><br>Debtor.<br><br>Tax I.D. No. 45-3142930 | ) | Chapter 11<br><br>Case No. 23-90535 |
| In re:<br><br>HEALTHCARE ADMINISTRATIVE SERVICES, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 43-1787964 | ) | Chapter 11<br><br>Case No. 23-90536 |
| In re:<br><br>HOLIDAY ACQUISITION COMPANY, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 45-1289504 | ) | Chapter 11<br><br>Case No. 23-90537 |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| ILLINOIS NSC, INC., | ) | Case No. 23-90539 |
| Debtor. | ) | |
| Tax I.D. No. 20-2393903 | ) | |
| In re: | ) | Chapter 11 |
| IMAGING ADVANTAGE LLC, | ) | Case No. 23-90541 |
| Debtor. | ) | |
| Tax I.D. No. 20-8263908 | ) | |
| In re: | ) | Chapter 11 |
| INFINITY HEALTHCARE, INC., | ) | Case No. 23-90557 |
| Debtor. | ) | |
| Tax I.D. No. 36-3203414 | ) | |
| In re: | ) | Chapter 11 |
| ISELECT HEALTHCARE LLC, | ) | Case No. 23-90546 |
| Debtor. | ) | |
| Tax I.D. No. N/A | ) | |
| In re: | ) | Chapter 11 |
| JACKSONVILLE BEACHES ANESTHESIA ASSOCIATES, INC., | ) | Case No. 23-90548 |
| Debtor. | ) | |
| Tax I.D. No. 26-2664313 | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| JUPITER ANESTHESIA ASSOCIATES, L.L.C., | ) | Case No. 23-90347 |
| Debtor. | ) | |
| Tax I.D. No. 26-1150385 | ) | |
| In re: | ) | Chapter 11 |
| JUPITER HEALTHCARE, LLC, | ) | Case No. 23-90352 |
| Debtor. | ) | |
| Tax I.D. No. 90-0997040 | ) | |
| In re: | ) | Chapter 11 |
| KENWOOD NSC, LLC, | ) | Case No. 23-90361 |
| Debtor. | ) | |
| Tax I.D. No. 26-3055899 | ) | |
| In re: | ) | Chapter 11 |
| KMAC, INC., | ) | Case No. 23-90368 |
| Debtor. | ) | |
| Tax I.D. No. 74-3013130 | ) | |
| In re: | ) | Chapter 11 |
| LONG BEACH NSC, LLC, | ) | Case No. 23-90379 |
| Debtor. | ) | |
| Tax I.D. No. 20-1048768 | ) | |

| | |
|---|---|
| In re: | Chapter 11 |
| MEDASSOCIATES, LLC, | Case No. 23-90390 |
| Debtor. | |
| Tax I.D. No. 20-5044320 | |
| In re: | Chapter 11 |
| MEDI-BILL OF NORTH FLORIDA, INC., | Case No. 23-90398 |
| Debtor. | |
| Tax I.D. No. 59-3274637 | |
| In re: | Chapter 11 |
| MEDICAL INFORMATION MANAGEMENT SOLUTIONS, LLC, | Case No. 23-90413 |
| Debtor. | |
| Tax I.D. No. 86-0971572 | |
| In re: | Chapter 11 |
| MILLENNIUM VISION SURGICAL, LLC, | Case No. 23-90427 |
| Debtor. | |
| Tax I.D. No. N/A | |
| In re: | Chapter 11 |
| MSO NEWCO, LLC, | Case No. 23-90437 |
| Debtor. | |
| Tax I.D. No. 27-1285928 | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| NAC PROPERTIES, LLC, | ) | Case No. 23-90445 |
| Debtor. | ) | |
| Tax I.D. No. N/A | ) | |
| In re: | ) | Chapter 11 |
| NEW GENERATIONS BABEE BAG, INC., | ) | Case No. 23-90458 |
| Debtor. | ) | |
| Tax I.D. No. 65-0878152 | ) | |
| In re: | ) | Chapter 11 |
| NORTH FLORIDA ANESTHESIA CONSULTANTS, INC., | ) | Case No. 23-90468 |
| Debtor. | ) | |
| Tax I.D. No. 59-3012384 | ) | |
| In re: | ) | Chapter 11 |
| NORTH FLORIDA PERINATAL ASSOCIATES, INC., | ) | Case No. 23-90478 |
| Debtor. | ) | |
| Tax I.D. No. 46-3234701 | ) | |
| In re: | ) | Chapter 11 |
| NORTHWOOD ANESTHESIA ASSOCIATES, LLC, | ) | Case No. 23-90351 |
| Debtor. | ) | |
| Tax I.D. No. 65-0909229 | ) | |

| | | |
|---|---|---|
| In re:<br><br>NSC HEALTHCARE, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 84-1209756 | ) | Chapter 11<br><br>Case No. 23-90356 |
| In re:<br><br>NSC RBO EAST, LLC,<br><br>Debtor.<br><br>Tax I.D. No. 27-3205481 | ) | Chapter 11<br><br>Case No. 23-90363 |
| In re:<br><br>NSC WEST PALM, LLC,<br><br>Debtor.<br><br>Tax I.D. No. 76-0740666 | ) | Chapter 11<br><br>Case No. 23-90370 |
| In re:<br><br>PARITY HEALTHCARE, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 65-0360536 | ) | Chapter 11<br><br>Case No. 23-90382 |
| In re:<br><br>PARTNERS IN MEDICAL BILLING, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 46-0638530 | ) | Chapter 11<br><br>Case No. 23-90393 |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| PHOENIX BUSINESS SYSTEMS, LLC, | ) | Case No. 23-90405 |
| Debtor. | ) | |
| Tax I.D. No. 43-1928994 | ) | |
| In re: | ) | Chapter 11 |
| PHOENIX PHYSICIANS, LLC, | ) | Case No. 23-90418 |
| Debtor. | ) | |
| Tax I.D. No. 20-0492167 | ) | |
| In re: | ) | Chapter 11 |
| PHYSICIAN ACCOUNT MANAGEMENT, INC., | ) | Case No. 23-90434 |
| Debtor. | ) | |
| Tax I.D. No. 03-0373713 | ) | |
| In re: | ) | Chapter 11 |
| PHYSICIAN OFFICE PARTNERS, INC., | ) | Case No. 23-90443 |
| Debtor. | ) | |
| Tax I.D. No. 74-3050016 | ) | |
| In re: | ) | Chapter 11 |
| PINNACLE CONSULTANTS MID-ATLANTIC, L.L.C., | ) | Case No. 23-90453 |
| Debtor. | ) | |
| Tax I.D. No. 26-2201105 | ) | |

| | |
|---|---|
| In re: | Chapter 11 |
| PRACTICE ACCOUNT MANAGEMENT SERVICES, LLC, | Case No. 23-90466 |
| Debtor. | |
| Tax I.D. No. 20-1314925 | |

| | |
|---|---|
| In re: | Chapter 11 |
| PROVEN HEALTHCARE SOLUTIONS OF NEW JERSEY, LLC, | Case No. 23-90479 |
| Debtor. | |
| Tax I.D. No. 27-1625135 | |

| | |
|---|---|
| In re: | Chapter 11 |
| PROVIDER ACCOUNT MANAGEMENT, INC., | Case No. 23-90486 |
| Debtor. | |
| Tax I.D. No. 75-2964700 | |

| | |
|---|---|
| In re: | Chapter 11 |
| QRX MEDICAL MANAGEMENT, LLC, | Case No. 23-90346 |
| Debtor. | |
| Tax I.D. No. 26-0816177 | |

| | |
|---|---|
| In re: | Chapter 11 |
| RADIOLOGY STAFFING SOLUTIONS, INC., | Case No. 23-90354 |
| Debtor. | |
| Tax I.D. No. 26-2138636 | |

| | |
|---|---|
| In re: | Chapter 11 |
| RADSTAFFING MANAGEMENT SOLUTIONS, INC., | Case No. 23-90365 |
| Debtor. | |
| Tax I.D. No. 26-2137767 | |
| In re: | Chapter 11 |
| REIMBURSEMENT TECHNOLOGIES, INC., | Case No. 23-90375 |
| Debtor. | |
| Tax I.D. No. 23-2634599 | |
| In re: | Chapter 11 |
| ROSE RADIOLOGY, LLC, | Case No. 23-90387 |
| Debtor. | |
| Tax I.D. No. 20-2487215 | |
| In re: | Chapter 11 |
| SAN ANTONIO NSC, LLC, | Case No. 23-90400 |
| Debtor. | |
| Tax I.D. No. 20-0322582 | |
| In re: | Chapter 11 |
| SENTINEL HEALTHCARE SERVICES, LLC, | Case No. 23-90412 |
| Debtor. | |
| Tax I.D. No. 58-2391627 | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SHERIDAN ANESTHESIA SERVICES OF ALABAMA, INC., | ) | Case No. 23-90424 |
| Debtor. | ) | |
| Tax I.D. No. 46-1476545 | ) | |
| In re: | ) | Chapter 11 |
| SHERIDAN ANESTHESIA SERVICES OF LOUISIANA, INC., | ) | Case No. 23-90436 |
| Debtor. | ) | |
| Tax I.D. No. 27-0983154 | ) | |
| In re: | ) | Chapter 11 |
| SHERIDAN ANESTHESIA SERVICES OF VIRGINIA, INC., | ) | Case No. 23-90447 |
| Debtor. | ) | |
| Tax I.D. No. 27-1895603 | ) | |
| In re: | ) | Chapter 11 |
| SHERIDAN CADR SOLUTIONS, INC., | ) | Case No. 23-90461 |
| Debtor. | ) | |
| Tax I.D. No. 81-2115237 | ) | |
| In re: | ) | Chapter 11 |
| SHERIDAN CHILDREN'S HEALTHCARE SERVICES OF ARIZONA, INC., | ) | Case No. 23-90474 |
| Debtor. | ) | |
| Tax I.D. No. 47-1934541 | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SHERIDAN CHILDREN'S HEALTHCARE SERVICES OF KENTUCKY, INC., | ) | Case No. 23-90485 |
| Debtor. | ) | |
| Tax I.D. No. 47-4497915 | ) | |
| In re: | ) | Chapter 11 |
| SHERIDAN CHILDREN'S HEALTHCARE SERVICES OF LOUISIANA, INC., | ) | Case No. 23-90492 |
| Debtor. | ) | |
| Tax I.D. No. 46-2773044 | ) | |
| In re: | ) | Chapter 11 |
| SHERIDAN CHILDREN'S HEALTHCARE SERVICES OF NEW MEXICO, INC., | ) | Case No. 23-90344 |
| Debtor. | ) | |
| Tax I.D. No. 83-0401457 | ) | |
| In re: | ) | Chapter 11 |
| SHERIDAN CHILDREN'S HEALTHCARE SERVICES OF OHIO, INC., | ) | Case No. 23-90350 |
| Debtor. | ) | |
| Tax I.D. No. 47-4191957 | ) | |
| In re: | ) | Chapter 11 |
| SHERIDAN CHILDREN'S HEALTHCARE SERVICES OF VIRGINIA, INC., | ) | Case No. 23-90360 |
| Debtor. | ) | |
| Tax I.D. No. 01-0622481 | ) | |

| | | |
|---|---|---|
| In re:<br><br>SHERIDAN CHILDREN'S HEALTHCARE SERVICES, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 59-2347217 | ) | Chapter 11<br><br>Case No. 23-90376 |
| In re:<br><br>SHERIDAN CHILDREN'S SERVICES OF ALABAMA, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 47-5142866 | ) | Chapter 11<br><br>Case No. 23-90388 |
| In re:<br><br>SHERIDAN EMERGENCY PHYSICIAN SERVICES OF MISSOURI, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 46-0617801 | ) | Chapter 11<br><br>Case No. 23-90399 |
| In re:<br><br>SHERIDAN EMERGENCY PHYSICIAN SERVICES OF NORTH MISSOURI, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 46-5538742 | ) | Chapter 11<br><br>Case No. 23-90408 |
| In re:<br><br>SHERIDAN EMERGENCY PHYSICIAN SERVICES OF SOUTH FLORIDA, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 46-2743595 | ) | Chapter 11<br><br>Case No. 23-90420 |

| | | |
|---|---|---|
| In re:<br><br>SHERIDAN EMERGENCY PHYSICIAN SERVICES, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 65-1057394 | ) | Chapter 11<br><br>Case No. 23-90435 |
| In re:<br><br>SHERIDAN HEALTHCARE OF LOUISIANA, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 90-0196583 | ) | Chapter 11<br><br>Case No. 23-90444 |
| In re:<br><br>SHERIDAN HEALTHCARE OF MISSOURI, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 20-3109582 | ) | Chapter 11<br><br>Case No. 23-90457 |
| In re:<br><br>SHERIDAN HEALTHCARE OF VERMONT, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 20-4063600 | ) | Chapter 11<br><br>Case No. 23-90467 |
| In re:<br><br>SHERIDAN HEALTHCARE OF VIRGINIA, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 27-1931953 | ) | Chapter 11<br><br>Case No. 23-90477 |

| | |
|---|---|
| In re: | Chapter 11 |
| SHERIDAN HEALTHCARE OF WEST VIRGINIA, INC., | Case No. 23-90484 |
| Debtor. | |
| Tax I.D. No. 65-1028803 | |
| In re: | Chapter 11 |
| SHERIDAN HEALTHCARE, LLC, | Case No. 23-90357 |
| Debtor. | |
| Tax I.D. No. 04-3252967 | |
| In re: | Chapter 11 |
| SHERIDAN HEALTHCORP OF CALIFORNIA, INC., | Case No. 23-90371 |
| Debtor. | |
| Tax I.D. No. 46-4126626 | |
| In re: | Chapter 11 |
| SHERIDAN HEALTHCORP, INC., | Case No. 23-90384 |
| Debtor. | |
| Tax I.D. No. 59-0971075 | |
| In re: | Chapter 11 |
| SHERIDAN HEALTHY HEARING SERVICES, INC., | Case No. 23-90397 |
| Debtor. | |
| Tax I.D. No. 27-0417898 | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SHERIDAN HOLDINGS, INC, | ) | Case No. 23-90410 |
| Debtor. | ) | |
| Tax I.D. No. 13-4056438 | ) | |
| In re: | ) | Chapter 11 |
| SHERIDAN HOSPITALIST SERVICES OF FLORIDA, INC., | ) | Case No. 23-90422 |
| Debtor. | ) | |
| Tax I.D. No. 81-1212712 | ) | |
| In re: | ) | Chapter 11 |
| SHERIDAN INVESTCO, LLC, | ) | Case No. 23-90430 |
| Debtor. | ) | |
| Tax I.D. No. 46-3274828 | ) | |
| In re: | ) | Chapter 11 |
| SHERIDAN LEADERSHIP ACADEMY, INC., | ) | Case No. 23-90440 |
| Debtor. | ) | |
| Tax I.D. No. 26-4789149 | ) | |
| In re: | ) | Chapter 11 |
| SHERIDAN RADIOLOGY MANAGEMENT SERVICES, INC., | ) | Case No. 23-90451 |
| Debtor. | ) | |
| Tax I.D. No. 35-2521918 | ) | |

| | |
|---|---|
| In re: | Chapter 11 |
| SHERIDAN RADIOLOGY SERVICES, INC., | Case No. 23-90462 |
| Debtor. | |
| Tax I.D. No. 20-8211626 | |
| In re: | Chapter 11 |
| SHERIDAN ROP SERVICES OF ALABAMA, INC., | Case No. 23-90472 |
| Debtor. | |
| Tax I.D. No. 81-4394600 | |
| In re: | Chapter 11 |
| SHERIDAN ROP SERVICES OF FLORIDA, INC., | Case No. 23-90483 |
| Debtor. | |
| Tax I.D. No. 47-4676138 | |
| In re: | Chapter 11 |
| SHERIDAN ROP SERVICES OF VIRGINIA, INC., | Case No. 23-90490 |
| Debtor. | |
| Tax I.D. No. 47-4688176 | |
| In re: | Chapter 11 |
| SHI II, LLC, | Case No. 23-90495 |
| Debtor. | |
| Tax I.D. No. 47-2039767 | |

| | |
|---|---|
| In re: | Chapter 11 |
| SOUTHEAST PERINATAL ASSOCIATES, INC., | Case No. 23-90403 |
| Debtor. | |
| Tax I.D. No. 65-0363303 | |
| In re: | Chapter 11 |
| SPOTLIGHT HOLDCO LLC, | Case No. 23-90423 |
| Debtor. | |
| Tax I.D. No. 80-0850163 | |
| In re: | Chapter 11 |
| ST. LUCIE ANESTHESIA ASSOCIATES, LLC, | Case No. 23-90441 |
| Debtor. | |
| Tax I.D. No. 26-1822664 | |
| In re: | Chapter 11 |
| STREAMLINED MEDICAL SOLUTIONS LLC, | Case No. 23-90460 |
| Debtor. | |
| Tax I.D. No. 45-2706374 | |
| In re: | Chapter 11 |
| SUN DEVIL ACQUISITION LLC, | Case No. 23-90476 |
| Debtor. | |
| Tax I.D. No. 27-2929691 | |

Case 23-90342 Document 1-3 Filed in TXSB on 05/14/23 Page 205 of 455

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SUNBEAM ASSET LLC, | ) | Case No. 23-90488 |
| Debtor. | ) | |
| Tax I.D. No. 26-0312608 | ) | |
| In re: | ) | Chapter 11 |
| TAMPA BAY NSC, LLC, | ) | Case No. 23-90496 |
| Debtor. | ) | |
| Tax I.D. No. 20-3447384 | ) | |
| In re: | ) | Chapter 11 |
| TEMPLETON READINGS, LLC, | ) | Case No. 23-90499 |
| Debtor. | ) | |
| Tax I.D. No. 04-3731678 | ) | |
| In re: | ) | Chapter 11 |
| TENNESSEE VALLEY NEONATOLOGY, INC., | ) | Case No. 23-90503 |
| Debtor. | ) | |
| Tax I.D. No. 27-5404223 | ) | |
| In re: | ) | Chapter 11 |
| TIVA HEALTHCARE, INC., | ) | Case No. 23-90508 |
| Debtor. | ) | |
| Tax I.D. No. 04-3721686 | ) | |

| | | |
|---|---|---|
| In re:<br><br>TORRANCE NSC, LLC,<br><br>Debtor.<br><br>Tax I.D. No. 20-1048801 | ) | Chapter 11<br><br>Case No. 23-90513 |
| In re:<br><br>TOWSON NSC, LLC,<br><br>Debtor.<br><br>Tax I.D. No. 20-0314129 | ) | Chapter 11<br><br>Case No. 23-90518 |
| In re:<br><br>TWIN FALLS NSC, LLC,<br><br>Debtor.<br><br>Tax I.D. No. 20-8086602 | ) | Chapter 11<br><br>Case No. 23-90521 |
| In re:<br><br>VALLEY ANESTHESIOLOGY CONSULTANTS, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 86-0621497 | ) | Chapter 11<br><br>Case No. 23-90522 |
| In re:<br><br>VALLEY CLINICAL RESEARCH, INC.,<br><br>Debtor.<br><br>Tax I.D. No. 81-4453577 | ) | Chapter 11<br><br>Case No. 23-90465 |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| WEST FAIRVIEW EMERGENCY PHYSICIANS, LLC, | ) | Case No. 23-90473 |
| Debtor. | ) | |
| Tax I.D. No. 82-5068549 | ) | |
| In re: | ) | Chapter 11 |
| WESTON NSC, LLC, | ) | Case No. 23-90481 |
| Debtor. | ) | |
| Tax I.D. No. 26-3435641 | ) | |
| In re: | ) | Chapter 11 |
| WILTON NSC, LLC, | ) | Case No. 23-90487 |
| Debtor. | ) | |
| Tax I.D. No. 26-1653853 | ) | |

**ORDER (I) DIRECTING JOINT ADMINISTRATION OF THE DEBTORS' CHAPTER 11 CASES AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[1] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) directing the joint administration of the Debtors' chapter 11 cases for procedural purposes only and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found

[1] Capitalized terms used and not defined herein have the meanings ascribed to them in the Motion.

that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is permissible pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The above-captioned chapter 11 cases are consolidated for procedural purposes only and shall be jointly administered under case number Case No. 23-90342 (CML).

2. Additionally, the following checked items are ordered:

☒ One disclosure statement and plan of reorganization may be filed for all cases by any plan proponent.

☒ Parties may request joint hearings on matters pending in any of the jointly administered cases.

☒ Other: See below.

3. The caption of the jointly administered cases should read as follows:

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| ENVISION HEALTHCARE CORPORATION, *et al.*,[1] | ) | Case No. 23-90342 (CML) |
| Debtors. | ) | (Jointly Administered) |

1 A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/Envision. The Debtors' service address is 1A Burton Hills Boulevard, Nashville, Tennessee 37215.

4. The foregoing caption satisfies the requirements set forth in section 342(c)(1) of the Bankruptcy Code.

5. A docket entry, substantially similar to the following, shall be entered on the docket of each of the Debtors other than Envision Healthcare Corporation to reflect the joint administration of these chapter 11 cases:

> An order has been entered in accordance with Bankruptcy Rule 1015(b) and Local Rule 1015-1 for the United States Bankruptcy Court for the Southern District of Texas directing joint administration for procedural purposes only of the chapter 11 cases of each of the following: Envision Healthcare Corporation, Case No. 23-90342; Acute Management, LLC, Case No. 23-90341; Affilion, Inc. Case No. 23-90538; All Women's Healthcare Holdings, Inc. Case No. 23-90540; All Women's Healthcare of Dade, Inc., Case No. 23-90542; All Women's Healthcare of Sawgrass, Inc., Case No. 23-90543; All Women's Healthcare of West Broward, Inc., Case No. 23-90544; All Women's Healthcare Services, Inc., Case No. 23-90547; All Women's Healthcare, Inc. Case No. 23-90549; AllegiantMD, Inc., Case No. 23-90550; Alpha Physician Resources, L.L.C., Case No. 23-90551; American Emergency Physicians Management, Inc., Case No. 23-90552; AmSurg Abilene Eye, Inc., Case No. 23-90553; AmSurg Abilene, Inc., Case No. 23-90554; AmSurg Altamonte Springs FL, Inc., Case

No. 23-90555; AmSurg Anesthesia Management Services, LLC, Case No. 23-90556; AmSurg Arcadia CA, Inc., Case No. 23-90347; AmSurg Burbank, Inc., Case No. 23-90355; AmSurg Colton CA, Inc., Case No. 23-90362; AmSurg Crystal River, Inc., Case No. 23-90369; AmSurg EC Beaumont, Inc., Case No. 23-90378; AmSurg EC Centennial, Inc., Case No. 23-90385; AmSurg EC Santa Fe, Inc., Case No. 23-90394; AmSurg EC St. Thomas, Inc., Case No. 23-90401; AmSurg EC Topeka, Inc., Case No. 23-90490; AmSurg EC Washington, Inc., Case No. 23-90419; AmSurg El Paso, Inc., Case No. 23-90429; AmSurg Escondido CA, Inc., Case No. 23-90439; AmSurg Finance, Inc., Case No. 23-90446; AmSurg Fresno Endoscopy, Inc., Case No. 23-90454; AmSurg Glendale, Inc., Case No. 23-90386; AmSurg Glendora CA, Inc., Case No. 23-90416; AmSurg Hillmont, Inc., Case No. 23-90433; AmSurg Holdco, LLC, Case No. 23-90450; AmSurg Holdings, LLC, Case No. 23-90464; AmSurg Inglewood, Inc., Case No. 23-90482; AmSurg KEC, Inc., Case No. 23-90491; AmSurg Kissimmee FL, Inc., Case No. 23-90497; AmSurg La Jolla, Inc., Case No. 23-90500; AmSurg Lancaster PA, LLC, Case No. 23-90504, AmSurg Main Line PA, LLC, Case No. 23-90510, AmSurg Maryville, Inc., Case No. 23-90512, AmSurg Melbourne, Inc., Case No. 23-90517; AmSurg Miami, Inc., Case No. 23-90519; AmSurg Naples, Inc., Case No. 23-90372; AmSurg New Port Richey FL, Inc., Case No. 23-90391; AmSurg Northwest Florida, Inc., Case No. 23-90415; AmSurg Oakland CA, Inc., Case No. 23-90432; AmSurg Ocala, Inc., Case No. 23-90456; AmSurg Palmetto, Inc., Case No. 23-90480; AmSurg Physicians Arizona, LLC, Case No. 23-90494; AmSurg Physicians HoldCo, LLC, Case No. 23-90501; AmSurg Pottsville PA, LLC, Case No. 23-90506; AmSurg San Antonio TX, Inc., Case No. 23-90514; AmSurg San Luis Obispo CA, Inc., Case No. 23-90545; AmSurg Scranton PA, Inc., Case No. 23-90525; AmSurg Suncoast, Inc., Case No. 23-90528; AmSurg Temecula CA, Inc., Case No. 23-90531; AmSurg Temecula II, Inc., Case No. 23-90345; AmSurg Torrance, Inc., Case No. 23-90353; AmSurg, LLC, Case No. 23-90343; Anesthesiologists of Greater Orlando, Inc., Case No. 23-90364; Anesthesiology Associates of Tallahassee, Inc., Case No. 23-90373; Apex Acquisition LLC, Case No. 23-90381; APH Laboratory Services, Inc., Case No. 23-90396; Arizona Perinatal Care Centers, LLC, Case No. 23-90407; ASDH I, LLC, Case No. 23-90417; ASDH II, LLC, Case No. 23-90425; Austin NSC, LLC, Case No. 23-90431; Austin NSC, LP, Case No. 23-90442; Bay Area Anesthesia, L.L.C., Case No. 23-90452; BestPractices, Inc., Case No. 23-90463; Bethesda Anesthesia Associates, Inc., Case No. 23-90475; Boca Anesthesia Service, Inc., Case No. 2390349; Bravo Reimbursement Specialist, L.L.C., Case No. 23-90358; Broad Midwest Anesthesia, LLC, Case No. 23-90366; Centennial

Emergency Physicians, LLC, Case No. 23-90374; Chandler Emergency Medical Group, L.L.C., Case No. 23-90383; Children's Anesthesia Associates, Inc., Case No. 23-90395; Clinical Partners Management Company, LLC, Case No. 23-90404; CMORx, LLC, Case No. 23-90411; Coastal Anesthesiology Consultants, LLC, Case No. 23-90421; Coral Springs NSC, LLC, Case No. 23-90428; Davis NSC, LLC, Case No. 23-90438; Desert Mountain Consultants in Anesthesia, Inc., Case No. 23-90449; Discovery Clinical Research, Inc., Case No. 23-90459; Doctors Billing Service, Inc., Case No. 23-90469; Drs. Ellis, Rojas, Ross & Debs, Inc., Case No. 23-90359; ED Solutions, LLC, Case No. 23-90367; EDIMS, L.L.C., Case No. 23-90380; EHR Management Co., Case No. 23-90382; EmCare Anesthesia Providers, Inc., Case No. 23-90406; EmCare HoldCo., LLC, Case No. 23-90448; EmCare Holdings, LLC, Case No. 23-90470; EmCare of California, Inc., Case No. 23-90493; EmCare Physician Providers, Inc., Case No. 23-90516; EmCare Physician Services, Inc., Case No. 23-90534; EmCare, LLC, Case No. 23-90523; Emergency Medical Services LLC, Case No. 23-90526; Emergency Medicine Education Systems, Inc. (EMEDS), Case No. 23-90529; EMS Management LLC, Case No. 23-90530; EMSC ServicesCo, LLC, Case No. 23-90377; Enterprise Intermediate Holdings Inc., Case No. 23-90389; Enterprise Parent Holdings, Inc., Case No. 23-90402; Envision Anesthesia Services of Delaware, Inc., Case No. 23-90414; Envision Anesthesia Services of Sierra Vista, Inc., Case No. 23-90426; Envision Children's Healthcare Services of North Mississippi, Inc., Case No. 23-90455; Envision Healthcare Clinical Research, Inc., Case No. 23-90471; Envision Healthcare Scientific Intelligence, Inc., Case No. 23-90489; Envision Physician Services, LLC, Case No. 23-90498; Evolution Mobile Imaging, LLC, Case No. 23-90502; Flamingo Anesthesia Associates, Inc., Case No. 23-90505; FM Healthcare Services, Inc., Case No. 23-90509; FMO Healthcare Holdings, LLC, Case No. 23-90511; FO Investments II, Inc., Case No. 23-90515; FO Investments III, Inc., Case No. 23-90507; FO Investments, Inc., Case No. 23-90520; Fullerton NSC, LLC, Case No. 23-90524; Global Surgical Partners, Inc., Case No. 23-90527; Greater Florida Anesthesiologists, LLC, Case No. 23-90532; Gynecologic Oncology Associates, Inc., Case No. 23-90533; Hawkeye Holdco LLC, Case No. 23-90535; Healthcare Administrative Services, Inc., Case No. 23-90536; Holiday Acquisition Company, Inc., Case No. 23-90537; Illinois NSC, Inc., Case No. 23-90539; Imaging Advantage LLC, Case No. 23-90541; Infinity Healthcare, Inc., Case No. 23-90557; iSelect Healthcare LLC, Case No. 23-90546; Jacksonville Beaches Anesthesia Associates, Inc., Case No. 23-90548; Jupiter Anesthesia Associates, L.L.C., Case No. 23-90347; Jupiter Healthcare, LLC, Case No. 23-90352; Kenwood NSC, LLC,

Case No. 23-90361; KMAC, Inc., Case No. 23-90368; Long Beach NSC, LLC, Case No. 23-90379; MedAssociates, LLC, Case No. 23-90390; Medi-Bill of North Florida, Inc., Case No. 23-90398; Medical Information Management Solutions, LLC, Case No. 23-90413; Millennium Vision Surgical, LLC, Case No. 23-90427; MSO Newco, LLC, Case No. 23-90437; NAC Properties, LLC, Case No. 23-90445; New Generations Babee Bag, Inc., Case No. 23-90458; North Florida Anesthesia Consultants, Inc., Case No. 23-90468; North Florida Perinatal Associates, Inc., Case No. 23-90478; Northwood Anesthesia Associates, LLC, Case No. 23-90351; NSC Healthcare, Inc., Case No. 23-90356; NSC RBO East, LLC, Case No. 23-90363; NSC West Palm, LLC, Case No. 23-90370; Parity Healthcare, Inc., Case No. 23-90382; Partners in Medical Billing, Inc., Case No. 23-90393; Phoenix Business Systems, LLC, Case No. 23-90405; Phoenix Physicians, LLC, Case No. 23-90418; Physician Account Management, Inc., Case No. 23-90434; Physician Office Partners, Inc., Case No. 23-90443; Pinnacle Consultants Mid-Atlantic, L.L.C., Case No. 23-90453; Practice Account Management Services, LLC, Case No. 23-90466; Proven Healthcare Solutions of New Jersey, LLC, Case No. 23-90479; Provider Account Management, Inc., Case No. 23-90486; QRx Medical Management, LLC, Case No. 23-90346; Radiology Staffing Solutions, Inc., Case No. 23-90354; Radstaffing Management Solutions, Inc., Case No. 23-90365; Reimbursement Technologies, Inc., Case No. 23-90375; Rose Radiology, LLC, Case No. 23-90387; San Antonio NSC, LLC, Case No. 23-90400; Sentinel Healthcare Services, LLC, Case No. 23-90412; Sheridan Anesthesia Services of Alabama, Inc., Case No. 23-90424; Sheridan Anesthesia Services of Louisiana, Inc., Case No. 23-90436; Sheridan Anesthesia Services of Virginia, Inc., Case No. 23-90447; Sheridan CADR Solutions, Inc., Case No. 23-90461; Sheridan Children's Healthcare Services of Arizona, Inc., Case No. 23-90474; Sheridan Children's Healthcare Services of Kentucky, Inc., Case No. 23-90485; Sheridan Children's Healthcare Services of Louisiana, Inc., Case No. 23-90492; Sheridan Children's Healthcare Services of New Mexico, Inc., Case No. 23-90344; Sheridan Children's Healthcare Services of Ohio, Inc., Case No. 23-90350; Sheridan Children's Healthcare Services of Virginia, Inc., Case No. 23-90360; Sheridan Children's Healthcare Services, Inc., Case No. 23-90376; Sheridan Children's Services of Alabama, Inc., Case No. 23-90388; Sheridan Emergency Physician Services of Missouri, Inc., Case No. 23-90399; Sheridan Emergency Physician Services of North Missouri, Inc., Case No. 23-90408; Sheridan Emergency Physician Services of South Florida, Inc., Case No. 23-90420; Sheridan Emergency Physician Services, Inc., Case No. 23-90435; Sheridan Healthcare of Louisiana, Inc., Case No. 23-90444;

Sheridan Healthcare of Missouri, Inc., Case No. 23-90457; Sheridan Healthcare of Vermont, Inc., Case No. 23-90467; Sheridan Healthcare of Virginia, Inc., Case No. 23-90477; Sheridan Healthcare of West Virginia, Inc., Case No. 23-90484; Sheridan Healthcare, LLC, Case No. 23-90357; Sheridan Healthcorp of California, Inc., Case No. 23-90371; Sheridan Healthcorp, Inc., Case No. 23-90384; Sheridan Healthy Hearing Services, Inc., Case No. 23-90397; Sheridan Holdings, Inc., Case No. 23-90410; Sheridan Hospitalist Services of Florida, Inc., Case No. 23-90422; Sheridan InvestCo, LLC, Case No. 23-90430; Sheridan Leadership Academy, Inc., Case No. 23-90440; Sheridan Radiology Management Services, Inc., Case No. 23-90451; Sheridan Radiology Services, Inc., Case No. 23-90462; Sheridan ROP Services of Alabama, Inc., Case No. 23-90472; Sheridan ROP Services of Florida, Inc., Case No. 23-90483; Sheridan ROP Services of Virginia, Inc., Case No. 23-90490; SHI II, LLC, Case No. 23-90495; Southeast Perinatal Associates, Inc., Case No. 23-90403; Spotlight Holdco LLC, Case No. 23-90423; St. Lucie Anesthesia Associates, LLC, Case No. 23-90441; Streamlined Medical Solutions LLC, Case No. 23-90460; Sun Devil Acquisition LLC, Case No. 23-90476; Sunbeam Asset LLC, Case No. 23-90488; Tampa Bay NSC, LLC, Case No. 23-90496; Templeton Readings, LLC, Case No. 23-90499; Tennessee Valley Neonatology, Inc., Case No. 23-90503; Tiva Healthcare, Inc., Case No. 23-90508; Torrance NSC, LLC, Case No. 23-90513; Towson NSC, LLC, Case No. 23-90518; Twin Falls NSC, LLC, Case No. 23-90512; Valley Anesthesiology Consultants, Inc., Case No. 23-90522; Valley Clinical Research, Inc., Case No. 23-90465; West Fairview Emergency Physicians, LLC, Case No. 23-90473; Weston NSC, LLC, Case No. 23-90481; Wilton NSC, LLC, Case No. 23-90487.

6. The Debtors shall maintain, and the Clerk of the United States Bankruptcy Court for the Southern District of Texas shall keep, one consolidated docket, one file, and one consolidated service list for these chapter 11 cases.

7. Nothing contained in the Motion or this Order shall be deemed or construed as directing or otherwise effecting a substantive consolidation of these chapter 11 cases, and this Order shall be without prejudice to the rights of the Debtors to seek entry of an Order substantively consolidating their respective cases.

8. A separate claims registry shall be maintained for each Debtor.

9. The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

10. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

11. Notice of the Motion as provided therein shall be deemed good and sufficient and satisfies the requirements of the Bankruptcy Rules and the Local Rules.

12. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

13. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Signed: May 15, 2023

Christopher Lopez
United States Bankruptcy Judge

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT**
**IN AND FOR CALHOUN COUNTY, FLORIDA**

**MARY WATSON,**

**Plaintiff,**

**v.** **CASE NO.: 2020-CA-000064**

**BLUE MANAGEMENT SERVICES, LLC d/b/a ALLIANT MANAGEMET SERVICES; ENVISION PHYSICIAN SERVICES, LLC f/k/a EMCARE PHYSICIAN SERVICES INC.; AND CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,**

**Defendants.**
_______________________________________/

**NOTICE OF HEARING**

YOU ARE HEREBY NOTIFIED that the undersigned has set a *Case Management Conference,* before the Honorable Brandon J. Young, at the Calhoun County Courthouse via Zoom on **Monday, July 10, 2023, at 10:15 am. CT/11:15 am. ET.**

**Fifteen (15) minutes** have been set aside for this hearing.

**VIDEO APPEARANCE:**
**To appear at the hearing via video follow the link below (or type it into your browser):**

**Join Zoom Meeting**
**https://zoom.us/j/5865139458**

**The meeting ID is: 586 513 9458.**

PLEASE BE GOVERNED ACCORDINGLY.

Respectfully submitted,

/s/ Thomas L. Dickens, III
THOMAS L. DICKENS, III, ESQ.
Florida Bar No.: 063687
MARIE A. MATTOX, ESQ.
Florida Bar No.:0739685
**MARIE A. MATTOX, P.A.**
203 North Gadsden Street
Tallahassee, FL 32301
(850) 383-4800 (telephone)
marie@mattoxlaw.com
michelle2@mattoxlaw.com

*ATTORNEYS FOR PLAINTIFF*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to counsel of record listed below via the Florida Courts e-Filing Portal this 16TH day of June 2023:

Michael B. Kelly, Esq.
Florida Bar No.: 115345
**COLE, SCOTT & KISSANE, P.A.**
890 South Palafox Street, Suite 200
Pensacola, Florida 32502
e-mail: michael.kelly@csklegal.com
e-mail: zaray.avino@csklegal.com
*Attorneys for Defendant Calhoun-Liberty Hospital Association, Inc.*

Richard N. Margulies, Esq.
Lori K. Mans, Esq.
**JACKSON LEWIS P.C.**
501 Riverside Avenue, Suite 902
Jacksonville, FL 32202
richard.margulies@jacksonlewis.com
lori.mans@jacksonlewis.com
*Attorneys for Defendant,
Envision Physician Services, LLC*

Lisa B. Fountain
Robert J. Sniffen
Nicholas E. Monk
**Sniffen & Spellman, P.A.**
123 North Monroe Street
Tallahassee, FL 32301
rsniffen@sniffenlaw.com
nmonk@sniffenlaw.com
*Attorneys for Blue Management Services, LLC d/b/a Alliant Management Services*

/s/ Thomas L. Dickens, III
Thomas L. Dickens, III

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator by mail at P. O. Box 1089, Panama City, FL 32402 or by phone at (850) 767-3550 at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days. If you are hearing or voice impaired, please call 711 or email ADARequest@jud14.flcourts.org.**

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR CALHOUN COUNTY, FLORIDA

CASE NO.: 2020-CA-000064

MARY WATSON,

Plaintiff,

v.

BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,

Defendants.
_________________________________/

**DEFENDANT CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.'S NOTICE OF SETTLEMENT**

Defendant, CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC. (hereinafter "CLH" or "Defendant"), hereby advises the Court that the parties resolved their claims at a mediation that took place on April 20, 2023 and that this case has settled.[1] Each side is to bear its own attorney's fees and costs. Defendant further requests this Court: (1) reserve jurisdiction to enforce the settlement terms; and (2) cancel all pending deadlines and hearings for the Parties, including the upcoming Jury Trial commencing the week of January 22, 2024. A joint stipulation for dismissal will be filed once the terms of settlement have been complied with.

[1] *See* April 24, 2023 Mediation Report previously filed with the Court.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of July, 2023, a true and correct copy of the foregoing was filed with the Clerk of Calhoun County by using the Florida Courts e-Filing Portal, which will send an automatic e-mail message to all parties registered with the e-Filing Portal system.

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant Calhoun-Liberty Hospital Association, Inc.*
890 South Palafox Street, Suite 200
Pensacola, Florida 32502
Telephone (850) 483-5909
Facsimile (850) 438-6969
E-mail: michael.kelly@csklegal.com
E-mail: zaray.avino@csklegal.com

By: s/ Michael B. Kelly
MICHAEL B. KELLY
Florida Bar No.: 115345

Filing # 177288096 E-Filed 07/12/2023 05:01:05 PM

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR CALHOUN COUNTY, FLORIDA**

**MARY WATSON,**

**CASE NO.: 20-CA-64**
**FLA BAR NO.: 0739685**

**Plaintiff,**

**v.**

**BLUE MANAGEMENT SERVICES, LLC. D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC. F/K/A EMCARE PHYSICIANSERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,**

**Defendants.**

_______________________________________/

**SUBPOENA FOR HEARING VIA VIDEO-CONFERENCE ZOOM**

TO: **Mark Hirschberg**
**c/o Lori K. Mans, Esq.**
**JACKSON LEWIS, P.C.**
**501 Riverside Avenue, Suite 902**
**Jacksonville, FL 32202**

YOU ARE HEREBY COMMANDED to appear at the **Calhoun County Courthouse,** via Zoom before the **Honorable Brandon J. Young**, at **12:00 p.m. CT/1:00 p.m. ET on July 27, 2023**, for the purpose of giving sworn testimony in the above styled case.

Please note that you may not be called for testimony at precisely this time. However, this subpoena requires you to appear at the stated date and time and to remain at the courthouse from day to day until you are called as a witness or released by the undersigned or the court.

You are subpoenaed to appear by the following attorneys and unless excused from this subpoena by these attorneys or the Court, you shall respond to this subpoena as directed. If you fail to appear, you may be held in contempt of court.

DATED this 12th day of July 2023.

_/s/ Thomas L. Dickens __________
Thomas L. Dickens, III [FBN 063687]
MARIE A. MATTOX, P.A.
203 North Gadsden Street
Tallahassee, Florida 32301
(850) 383-4800 (telephone)
*ATTORNEY FOR PLAINTIFF*

If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact:

THE OFFICES OF
Marie A. Mattox
203 N Gadsden St
Tallahassee, FL 32301
850-383-4800

at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days.

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT IN AND FOR CALHOUN COUNTY, FLORIDA**

**MARY WATSON,**

**Plaintiff,**

**v.** **CASE NO.: 2020-CA-000064**

**BLUE MANAGEMENT SERVICES, LLC d/b/a ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC f/k/a EMCARE PHYSICIAN SERVICES INC.; AND CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,**

**Defendants.**
_______________________________________/

**PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT OR ALTERNATIVELY PLAINTIFF'S MOTION TO STRIKE MEDIATION AGREEMENT**

Plaintiff, MARY WATSON, through her counsel, files this Motion to Enforce Settlement Or Altenatively Motion to Strike Mediation Agreement, as follows:

**PROCEDURAL BACKGROUND**

1. Plaintiff filed the instant action on July 14, 2020, therein pleading the three named Defendants as a joint employer [D.E. 2]. On May 12, 2021, Plaintiff filed her Amended Complaint wherein she alleged further actions by the Defendants as a joint employer [D.E. 29].
2. After conducting some discovery, to include two separate depositions of Plaintiff [D.E. 43, 56], the parties proceeded to mediation on April 20, 2023. The mediation completed with the parties executing a Mediation Agreement. Ex. 1.
3. The Mediation Agreement requires the joint employer to remit payment in the amount of

$142,500.00 to settle all claims. Ex. 1 at ¶1. The Mediation Agreement requires Plaintiff to "execute complete releases" which would be prepared by Defendants' counsel. Ex. 1 at ¶2. The Mediation Agreement requires payment be made to the Plaintiff prior to Plaintiff dismissing the action with prejudice. Ex. 1 at ¶7.

4. On April 26, 2023, Defendants' counsel, Michael Kelly forwarded a copy of the proposed Mutual Release Agreement for, inter alia, the undersigned to "make any redline changes" for consideration. Ex. 2, Ex. 3. On May 12, 2023, Mr. Kelly sent a message to the undersigned inquiring about the progress on the Mutual Release Agreement. Ex. 3. On May 16, 2023, the undersigned responded to Mr. Kelly's message requesting a time to talk about the terms of the Mutual Release Agreement. Ex. 3. On May 18, 2023, Defendant Envision Healthcare Corporation filed its Notice of Suggestion of Bankruptcy [D.E. 86]. On May 24, 2023, Mr. Kelly responded to the undersigned's request regarding the opportunity to speak on the telephone about the settlement in this matter. Ex. 3.
5. To date, Plaintiff has not been paid and cannot dismiss the claim.

## **MEMORANDUM OF LAW**

**Joint Employer**

Plaintiff properly pled the joint employer status of the named Defendants in this case.[1] *Roundtree v. Tegna, Inc.*, 2020 WL 4582741, at *3 (M.D. Fla. Aug. 10, 2020) (citing *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1359–61 (11th Cir. 1994) (citing *Nat'l Labor Relations Bd. v. Browning-Ferris Indus.*, 691 F.2d 1117, 1122 (3d Cir. 1982))("[T]he joint employer concept recognizes that the business entities involved are in fact separate but that they share or co-

[1] See Ex. 4 recapitulating the communication between Plaintiff's counsel and Defendants' counsel, Lisa Fountain, and noting that Defendant did not object to Plaintiff's assertion of the joint employer status through proper motion, but instead "denie(d) that it employed Plaintiff" in its answer.

determine those matters governing the essential terms and conditions of employment"). Here, prior to proceeding to mediation, Plaintiff alerted the Defendants of her intent to conduct the deposition of the corporate representative(s) in order to discern facts relating to joint employer. Ex. 4. The parties entered the Mediation Agreement soon thereafter and prior to that discovery matter was completed. Ex. 1.

**Motion to Enforce the Settlement Agreement**

Settlement agreements are to be interpreted and governed by the law of contracts. *See Tullis and Associates v. Benge*, 473 So.2d 1384, 1386 (Fla. 1st DCA 1985), relying on *Gaines v. Nortrust Realty*, 422 So.2d 1037 (Fla. 3rd DCA 1982) ("settlement agreements are to be interpreted and governed by the law of contracts"). Under Florida law applicable to the enforcement of settlement agreements, "'[t]he making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs–not on the parties having meant the same thing but on their having said the same thing.'" *Robbie v. City of Miami*, 469 So.2d 1384, 1385 (Fla. 1985), excerpting and following *Blackhawk Heating v. Data Lease*, 302 So.2d 404 (Fla. 1974).

Further, Florida law is clear that a writing signed by the party against whom enforcement is sought is not required in order for a settlement agreement to be held enforceable. In *Robbie*, in which the Florida Supreme Court reversed the District Court of Appeal and reinstated the decision of the trial court holding a settlement agreement enforceable, as at bar, the settlement agreement was memorialized only in "a proposed settlement." Id. at 1386. Here, there is more than a mere proposed settlement—the parties did, in fact, settle for an amount plainly articulated in the terms of the contract. See Ex. 1 at ¶1.

Most importantly, based on a finding that a settlement agreement was reached as of the parties' attendance at mediation in which the joint employer Defendants accepted the terms of the agreement, under Florida law there is "no legal bar to its enforcement by specific performance." *Tullis*, 473 So.2d at 1386-1387. The Plaintiff simply requires the full complement of the settlement amount and cannot dismiss the action until such payment is made.

The above does not purport to assume there are no issues for this Honorable Court to consider. To be sure, the two key issues facing the court are the formation of an enforceable agreement, and the terms thereof. As to the former, the law is clear that "[t]o compel enforcement of a settlement agreement, its terms must be sufficiently specific and mutually agreed upon as to every essential element." *U.S. v. Navolio*, 2008 WL 3200217, *3 (M.D.Fla. 2008), relying on *BP products of North America v. Oakridge*, 469 F.Supp.2d 1128 (M.D.Fla. 2007), in turn citing *Tullis*, *supra*. There can be no question that the parties legally remaining in this action agree that a settlement has been made as the Defendants filed their Notice of Settlement [D.E. 88] thereby admitting as much. The disagreement, however, lies in determining from whom remuneration is to be derived and resolution of such issue involves consideration of the essential elements of the agreement.

In considering agreement "as to every essential element" in its 1985 decision in *Tullis*, the appellate court had before it an agreement in which "Tullis says that the definition of 'prudent operating expenses' is an essential element and its being undefined is fatal to the agreement's enforceability." *Tullis*, 473 So.2d at 1386. The court disagreed, affirming "the trial judge's construction of the agreement." Id.

That same year, the Florida Supreme Court addressed the "essential terms" issue at some length in *Robbie*, applying a commonsense approach to the required agreement thereto, as follows:

> Due to the professional football players' strike in 1982, the Miami Dolphins did not play the contracted number of games in the city-owned Orange Bowl. The City of Miami sued to collect rent for the games not played and received a summary judgment on the issue of liability. Trial was set to determine the amount of damages, but prior to trial the parties reached a proposed settlement, and the trial was cancelled. Documents were prepared, but a discord arose between the parties as to a provision in the settlement. The parties agreed, basically, that the Dolphins will play an extra game in both 1985 and 1986, but, if either extra game is not played "for any reason" the Dolphins will pay $30,000 per game. The original contract excuses the Dolphins from the rent obligation if any of the nine scheduled games are not played due to an "Act of God."
>
> ***
>
> Settlements, of course, are governed by the rules for interpretation of contracts... Additionally, settlements are highly favored and will be enforced whenever possible...
>
> In the case sub judice the disagreement over the application of the Act of God provision to the tenth game was a mere contingency. It was not, as the district court below determined, an essential element of the contract. The essential terms of the settlement are, as Judge Jorgenson correctly states in his dissent to the district court's decision, that two extra games will be played or $30,000 per unplayed game will be due; the Dolphins will increase their public liability insurance; and the Dolphins will defend certain third party claims against the city. As to these terms there was no disagreement. All the documents prepared and the transcripts of the city commission meeting are in accord on the essential elements. Therefore, under *Blackhawk*, the parties have said the same thing as to the essential elements, and the settlement should be enforced.

*Robbie*, 469 So.2d at 1385-1386. Likewise, at bar, the parties reached agreement as to all essential terms of the settlement prior to the Envision bankruptcy notice which was after the parties had already solidified their agreement. If the parties had determined that an essential element of the agreement related to delineation of who pays what, most assuredly that would have made it into the agreement prior to execution. It did not and therefore, the remaining parties are required to pay the amount articulated at the conclusion of mediation.

Turning to non-essential terms, once again basic Florida contract law governs. The Eleventh Circuit applied such law in *Schwartz*, opining as follows:

> Nor is the court to add to a settlement terms that were not contemplated by the parties... The court's role is to determine the intention of the parties from the language of the agreement, the apparent objects to be accomplished, other provisions in the agreement that cast light on the question, and the circumstances prevailing at the time of the agreement.
>
> Schwartz challenged the district court's finding that in his settlement with defendants, Schwartz "agreed he no longer suffered from any disparity in pay." He argues that the agreement was only a compromise to settle *past* claims and that in no way did he agree that it established salary parity or that, by signing it, he agreed to waive his rank, years in rank or any other benefits of employment...
>
> The intent of the parties in entering the settlement agreement was clearly to end the litigation with regard to the issues then in dispute and to preclude any further suits on those issues or any matters related to Schwartz' employment at FSU *prior* to July 1, 1980. The settlement agreement says nothing, however, about waiving claims of discrimination arising after July 1, 1980... It is not for a court to read terms into the settlement agreement that are not explicitly stated... Schwartz is correct that the settlement agreement did not constitute a waiver of his future Equal Pay Act or Title VII claims.
>
> There was no specific statement in the settlement agreement that at the time of the agreement Schwartz' salary had been made equal or was equal. . ..

*Schwartz*, 807 F.2d at 905-906, relying on *Florida Education Association v. Atkinson*, 481 F.2d 662 (5th Cir. 1973), authoritative in the Eleventh Circuit, and *J&S Coin v. Gottlieb*, 362 So.2d 38 (Fla. 3rd DCA 1978), italics in original; *see Atkinson*, 481 F.2d at 663, relying on *Southwest E&T v. American Enka*, 463 F.2d 1165 (5th Cir. 1972), authoritative in the Eleventh Circuit ("A court may not add terms to a settlement which were not in the contemplation of the parties"); *J&S Coin*, 362 So.2d at 39-40, relying on *Bornstein v. Somerson*, 341 So.2d 1043 (Fla. 2nd DCA 1977) and *Bal Harbour v. Greenleaf*, 274 So.2d 13 (Fla. 3rd DCA 1973) ("As a general rule, it is

the duty of the court to determine the intention of the parties from the language used, apparent objects to be accomplished, other provisions in the agreement which might shed light on the question, and the surrounding circumstances at the time the agreement was entered into").

Likewise, at bar, in enforcing the Agreement, terms not addressed by the parties cannot be added after the fact.

In *Carpaneda v. Quayside*, 2010 WL 2881383, *2 (S.D. Fla 2010), the exact same issue raised herein was addressed by the Court which held:

> "The parties mutually assented to the terms set forth in the Mediation Settlement Agreement... They agreed that the terms of the settlement would remain confidential and the plaintiffs would execute a general release in favor of the defendant. "If an offer is accepted without conditions, and without varying its terms, and the acceptance is communicated to the other party without unreasonable delay, a contract arises, from which neither party "can withdraw at its pleasure." *Am. Appraisal Assoc., Inc. v. Am. Appraisals, Inc.,* 531 F.Supp.2d 1353, 1358 (S.D.Fla.2008) (citing *Kendel v. Pontious,* 261 So.2d 167, 169 (Fla.1972) (citing Restatement of Contracts, § 64)). The Mediation Settlement Agreement incorporated all of the essential terms for enforcement of the settlement.
>
> "The defendants characterize the Mediation Settlement Agreement as a 'term sheet' and argue that there were two material terms of the parties' proposed settlement that remained outstanding, namely the covenant not to sue and the confidentiality provisions. Although the defendants now contend that liquidated damages for violations of the covenant not to sue and the confidentiality provisions are essential, missing contract terms, <u>the proposed provisions are ancillary to the settlement agreement</u>. *See Sands,* 2009 WL 2730469 at *4 (finding the proposed confidentiality provision is not an essential term of the settlement agreement because it is directed to the manner in which the agreement would be implemented and its exclusion does not bar enforcement of the agreement); *Miles v. Nw. Mut. Life Ins. Co.,* 2009 WL 5213874 at *3 (M.D.Fla. Dec.21, 2009) (holding that the fact that 'the confidentiality and non-disparagement terms of the agreement were not fully expounded is immaterial' because these terms only speak to how the agreement will be implemented); *Stempel v. Stempel,* 633 So.2d 26, 26–27 (Fla. 4th DCA 1994) (finding that a mediation agreement was enforceable even though it was a mere bare-bones agreement and one party urged that other terms should have been included). If the parties wanted to agree to include liquidated damages for violations of the general release and confidentiality provisions, they could have. The Mediation Settlement Agreement, however, is silent on the issue of damages in the event of breach.

> "The undersigned finds that the parties entered into a full and final settlement agreement as to definite and essential terms. The settlement agreement requires the parties to keep the terms of the settlement confidential and requires the plaintiffs to execute general releases in favor of the defendant. Under Florida law, settlement agreements are highly favored and will be enforced whenever possible. *See Robbie,* 469 So.2d at 1385. The **liquidated damages** provisions that the defendant attempted to include after the fact in the covenant not to sue and confidentiality provisions of the **Mediation** Settlement **Agreement** are additional, non-essential terms that cannot undermine the validity and enforcement of the **Mediation** Settlement **Agreement**. The undersigned RECOMMENDS that the Plaintiff's Motion to Compel enforcement of the settlement agreement... should be GRANTED."

[Emphasis added].

The parties reached agreement and the remaining Defendants cannot recant the agreement at this late date, regardless of the legal inability of one of the Defendants to pay. The Court should order the remaining Defendants, Calhoun Liberty Hospital and Alliant Management Services, to remit payment in full as considered under the terms of the Mediation Agreement. Most assuredly, had the Mediation Agreement in question actually contained a term delineating who pays what, those remaining Defendants not subject to a bankruptcy stay would be moving this Honorable Court to enforce the terms therein. They are not so moving, nor will they so move. This Honorable Court must enforce the contract terms against those entities still legally obliged to comply with the terms.

**<u>Motion to Strike</u>**

Plaintiff has subpoenaed the testimony of Envision's corporate representative [D.E. 89] to determine if he knew at the time of mediation that Envision would file for bankruptcy prior to compliance with the agreement terms. Only in that instance could there fail to be a meeting of the minds and this Honorable Court may strike the Mediation Agreement.

Respectfully submitted,

/s/ Thomas L. Dickens, III
Thomas L. Dickens, III [FBN 063867]
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P.A.
203 N. Gadsden Street
Tallahassee, Florida 32301
(850) 383-4800 (telephone)
(850) 383-4801 (facsimile)

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with the Clerk via the Florida Courts e-Filing Portal only this 17th day of July 2023, which will send Notification of Electronic Filing to all counsel of record.

/s/ Thomas L. Dickens, III
Thomas L. Dickens, III

# EXHIBIT 1

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT IN AND FOR CALHOUN COUNTY, FLORIDA

MARY WATSON,

Plaintiff,

vs. CASE NO.: 20-CA-64

BLUE MANAGEMENT SERVICES, LLC. D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC. F/K/A EMCARE PHYSICIANSERVICES, INC.; AND CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.

Defendants.

_______________________________/

## MEDIATION AGREEMENT

The parties to the above referenced cause submitted their issues to mediation and agree as follows:

1. Defendants, BLUE MANAGEMENT SERVICES, LLC. D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC. F/K/A EMCARE PHYSICIANSERVICES, INC.; AND CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC., agree to pay to Plaintiff, MARY WATSON, ONE HUNDRED FORTY- TWO THOUSAND FIVE HUNDRED DOLLARS ($142,500.00) for a full and complete settlement of all matters.

2. Plaintiff shall execute complete releases to be prepared by counsel for Defendants and approved by counsel for Plaintiff.

3. Plaintiff agrees that she shall not, in the future, apply for employment with Defendant Alliant. This does not preclude Plaintiff from seeking employment as a medical doctor with a hospital for which Alliant provides management services, and in such event, Alliant will maintain a neutral position regarding Plaintiff's employment.

4. Defendant Calhoun-Liberty Hospital shall change Plaintiff's termination to a voluntary resignation dated January 19, 2020, and shall provide a neutral job reference to any inquiring, prospective employers consisting of rate of pay and dates worked only. Plaintiff shall not be precluded from communication with current or former CLH employees, except as prohibited by the mediation privilege of confidentiality.

5. Plaintiff agrees that she shall not, in the future, apply for employment with Defendant Calhoun-Liberty Hospital.

6. Plaintiff is eligible for rehire with Defendant Envision, and Defendant Envision will provide a neutral job reference to any inquiring, prospective employers.

7. Upon payment in paragraph 1. above, Plaintiff shall dismiss this action with prejudice.

8. Defendants CLH and Envision shall equally divide the Plaintiff's portion of mediator's fees.

9. Each party shall be responsible for their own costs and attorney's fees. Defendants will execute a mutual general release between and among the co-defendants.

10. The parties fully understand the terms of this Mediation Agreement, and they are freely and voluntarily entering into it with the full participation of their counsel.

DATED this 20th day of April, 2023.

BLUE MANAGEMENT SERVICES, LLC. D/B/A ALLIANT MANAGEMENT SERVICES; Defendant

DocuSigned by:
By: Michael Kozar
Michael Kozar
As its CEO

DocuSigned by:
MARY WATSON, MD, Plaintiff

DocuSigned by:
Thomas L. Dickens, III
THOMAS L. DICKENS, III, Esquire
Attorney for Plaintiff

DocuSigned by:
Lisa Fountain
LISA FOUNTAIN, Esquire
Attorney for Defendant

ENVISION PHYSICIAN SERVICES, LLC. F/K/A EMCARE PHYSICIANSERVICES, INC.; Defendant

DocuSigned by:
By: Mark Hirschberg
Mark Hirschberg
As its Authorized Representative

DocuSigned by:
Lori K. Mans
LORI MANS, Esquire
Attorney for Envision Physician Services, LLC

CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC., Defendant

DocuSigned by:
By: Chris Jepsen
Chris Jepsen
As its CEO

DocuSigned by:
Michael Kelly
MICHAEL KELLY, Esquire
Attorney for Calhoun-Liberty Hospital

# EXHIBIT 2

MUTUAL SETTLEMENT AND RELEASE AGREEMENT

This Mutual Settlement and Release Agreement ("AGREEMENT") is made and entered into as the Effective Date (defined herein), by and between **MARY WATSON** (hereinafter referred to as "Claimant") and **BLUE MANAGEMENT SERVICES, LLC D/B/A ALLIANT MANAGEMENT SERVICES** (hereinafter "Alliant"), **ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.** (hereinafter "Envision"), **CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.** (hereinafter "CLH"). The "Released Parties" include Claimant, Alliant, Envision, CLH, and any of their past, present and future parent companies, owners, managers, subsidiaries, franchisers, affiliates, related companies, partnerships, officers, directors, employees, agents, attorneys, representatives, successors, assigns, insurers, reinsurers, and insureds, whomsoever, in any capacity (hereinafter referred to jointly or severally as the "Released Parties"). The parties to this AGREEMENT are collectively referred to as the "PARTIES."

**1. Background**

**A.** CLAIMANT alleges she was formerly employed by Alliant, Envision, and CLH (hereinafter collectively referred to as "DEFENDANTS"). CLAIMANT has alleged the following against DEFENDANTS: (1) CLH engaged in public whistleblower retaliation under Fla. Stat. §112.3187, et seq.; (2) DEFENDANTS all engaged in private whistleblower retaliation under Fla. Stat. §448.101, et seq.; (3) DEFENDANTS all engaged in Gender Discrimination under the Florida Civil Rights Act ("FCRA"); (4) DEFENDANTS all engaged in Retaliation under the FCRA; and (5) CLH engaged in tortious interference with Plaintiff's business relationships. CLAIMANT alleges to have sustained injuries while employed with DEFENDANTS (hereinafter referred to as the "INCIDENTS").

**B.** DEFENDANTS deny any wrongdoing or unlawful acts on the part of any of their elected officials, appointed officials, agents, employees, or others for whom they could be held liable. The DEFENDANTS in good faith believe that the CLAIMANT'S claims related to or arising from her alleged employment, whether stated or unstated, are not valid ones, has contested the claims, and would continue to contest the claims, and in good faith believe there is a valid foundation for the defense of such claims. ALLIANT specifically denies it ever employed CLAIMANT, jointly or otherwise.

**C.** On May 12, 2021, CLAIMANT filed an Amended Complaint against DEFENDANTS in the Circuit Court of the 14th Judicial Circuit in and for Calhoun County, Florida, in a case styled *Mary Watson v. Blue Management Services, LLC, d/b/a Alliant Management Services;*

14

*Envision Physician Services, LLC f/k/a Emcare Physician Services, Inc.; and Calhoun-Liberty Hospital Association, Inc.,* bearing Case No. 2020 CA 64 (the "UNDERLYING ACTION").

**D.** On April 20, 2023, the PARTIES entered into a Mediation Agreement (hereinafter "MEDIATION AGREEMENT"), consenting to an outline of settlement terms that are laid out in greater detail throughout this AGREEMENT.

**E.** This AGREEMENT formally memorializes settlement terms, as detailed below.

**2. <u>Consideration</u>**

**A.** Within thirty (30) days of this AGREEMENT being signed, Released Parties shall pay CLAIMANT the sum of ONE HUNDRED FORTY-TWO THOUSAND FIVE DOLLARS AND 00/100 CENTS ($142,500.00) ("Payment"), payable as described below:

a. Alliant agrees to pay **$22,500.00** to _______.
b. Envision agrees to pay **$42,500.00** to _______.
c. CLH agrees to pay **$77,500.00** to _______.

**B.** CLAIMANT and her attorney assume responsibility for payment of any and all taxes that may be owed regarding the Payment. CLAIMANT agrees to indemnify and hold the Released Parties harmless for the amount of any taxes, penalties, or interest that may be assessed by any governmental tax authority against any of the Released Parties in connection with such governmental authority's determination that any of the Released Parties were required to but failed to withhold or report the correct amount of income or employment taxes from the Payment made to CLAIMANT.

**C.** CLAIMANT's execution of this Agreement is a condition precedent to payment of the Consideration.

**D.** Within 10 calendar days of receiving Payment, Claimant agrees to dismiss the UNDERLYING ACTION with prejudice, with each party bearing their own fees and costs.

**E.** DEFENDANTS will each cover their individual portion of cost of mediation. In addition, CLH and Envision shall equally cover CLAIMANT's entire cost of mediation.

**F.** In exchange, CLAIMANT shall release Released Parties from any and all actions, whatsoever, CLAIMANT has or may have against the Released

Parties, including but not limited to any claim(s) under:

- Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq.;
- Chapter 440 of the Florida Statutes (Workers' Compensation Act).;
- The Florida Civil Rights Act, Fla. Stat. 760 et seq.; Fla. Stat. 448;
- The Family and Medical Leave Act, 28 U.S.C. 2601 et seq.;
- The Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. 43 et seq.;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974;
- The Americans with Disabilities Act of 1990, 42 U.S.C. 12101 et seq.;
- The Fair Labor Standards Act, 29 U.S.C. 201 et seq.;
- The Age Discrimination in Employment Act, 29 U.S.C. 621 et seq.;
- The Older Workers Benefit Protection Act;
- The Equal Pay Act of 1963;
- Tortious Interference;
- The Occupational Safety and Health Act;
- State and Federal "Whistleblower" claims;
- Claim for Unpaid Wages;
- Laws, regulations, or ordinances of any country outside the United States in which Claimant performed work or services for the Released Parties;

- Any other Federal, State, or local law, regulation or ordinance; and
- Any public policy, contract, or common law claims, including any tort claims (e.g., negligent or intentional infliction of emotional distress, etc.) whether based on common law or otherwise.

This waiver and release also satisfies and bars any claim or demand for costs, fees, or other expenses, including attorneys' fees, incurred in connection with any claim.

The above listing is intended to be illustrative rather than exhaustive. CLAIMANT therefore acknowledges and agrees that this Agreement constitutes a full and final bar to any and all claims of any type that Claimant has now or in the future against the Released Parties as a result of or in connection with CLAIMANT's previous time as an employee of DEFENDANTS.

**3. <u>General Release</u>**

**A.** CLAIMANT, and her respective assigns, executors, successors, heirs, survivors and administrators, agrees to voluntarily and knowingly, fully, unconditionally, and generally release and forever discharge Released Parties, and their affiliates, predecessors, successors, parents, subsidiaries, related companies, divisions, assigns, partnerships, joint ventures, officers, directors, shareholders, representatives, members, employees, former employees, attorneys, insurers, reinsurers, and agents, separately, collectively, severally, directly, and vicariously from any and all claims and causes of action arising out of the UNDERLYING ACTION and the INCIDENTS.

**B.** Without limiting the broad intent of the foregoing, CLAIMANT understands this AGREEMENT shall release Released Parties from any and all past, present, or future liability associated with the above referenced INCIDENTS. CLAIMANT further understands that any injuries or conditions sustained in the INCIDENTS may be progressive and become worse over time. CLAIMANT further understands that the INCIDENTS may cause conditions or complications which have not yet manifested or become known. With this understanding, CLAIMANT specifically agrees that this AGREEMENT shall apply to all injuries or conditions which may arise from these INCIDENTS, whether now known or not, including any progression or worsening of presently existing conditions or injuries.

**C.** CLAIMANT knowingly and voluntarily releases and waives any and all known and unknown rights and claims which CLAIMANT has or may have against Released Parties as a result of or in connection with CLAIMANT's previous time as an employee or alleged employee of DEFENDANTS, including but not limited to any claim(s) pending in these Proceedings, or which may arise out of the subject claim, claim handling or subject matter of these Proceedings as well as all associated claims for lost wages, consortium, injuries, policy benefits, interest, costs, attorney's fees, and extra contractual claims, whether such claims or demands are based in statute, tort, contract, extra contractual theories, or any other theories in law or equity.

**D.** The above listing is intended to be illustrative rather than exhaustive. CLAIMANT therefore acknowledges and agrees that this Agreement constitutes a full and final bar to any and all claims of any type that CLAIMANT has now or in the future against Released Parties as a result of or in connection with the INCIDENTS and the UNDERLYING ACTION.

**E.** CLAIMANT understands that she is solely responsible for all costs, attorneys' fees, and expenses incurred by her and her counsel, and CLAIMANT agrees and understands that this AGREEMENT expressly waives and releases any right to recover attorneys' fees, expenses, or costs from Released Parties.

**F.** Alliant, and its respective assigns, executors, successors, heirs, survivors and administrators, agree to voluntarily and knowingly, fully, unconditionally, and generally release and forever discharge Envision and CLH, as well as their affiliates, predecessors, successors, parents, subsidiaries, related companies, divisions, assigns, partnerships, joint ventures, officers, directors, shareholders, representatives, members, employees, former employees, attorneys, insurers, reinsurers, and agents, separately, collectively, severally, directly, and vicariously from any and all claims and causes of action arising out of the INCIDENTS and the UNDERLYING ACTION.

**G.** Envision, and its respective assigns, executors, successors, heirs, survivors and administrators, agree to voluntarily and knowingly, fully, unconditionally, and generally release and forever discharge Alliant and CLH, as well as their affiliates, predecessors, successors, parents, subsidiaries, related companies, divisions, assigns, partnerships, joint ventures, officers, directors, shareholders, representatives, members, employees, former employees, attorneys, insurers, reinsurers, and agents, separately, collectively, severally, directly, and vicariously from

any and all claims and causes of action arising out of the INCIDENTS and the UNDERLYING ACTION.

**H.** CLH, and its respective assigns, executors, successors, heirs, survivors and administrators, agree to voluntarily and knowingly, fully, unconditionally, and generally release and forever discharge Envision and Alliant, as well as their affiliates, predecessors, successors, parents, subsidiaries, related companies, divisions, assigns, partnerships, joint ventures, officers, directors, shareholders, representatives, members, employees, former employees, attorneys, insurers, reinsurers, and agents, separately, collectively, severally, directly, and vicariously from any and all claims and causes of action arising out of the INCIDENTS and the UNDERLYING ACTION.

**4. No Assignment of Released Claims and Indemnity**

**A.** The PARTIES represent and warrant that as of signing this AGREEMENT, they have not assigned, transferred, or hypothecated, or purported to assign, transfer, or hypothecate, to any person, firm, corporation, association, contractor, third-party or entity any of the released claims. The PARTIES additionally represent and warrant that no other persons or entities had or have any interests or rights against one another based on or relating to the released claims.

**B.** CLAIMANT further agrees to defend, indemnify and hold Released Parties, as well as their agents and insurers harmless from any and all lawsuits, liens, claims of liens or subrogation claims filed, that could have been filed or that could later be filed as a result of persons and entities providing benefits to or on behalf of CLAIMANT arising out of the INCIDENTS and the UNDERLYING ACTION.

**5. No Admission of Liability and Not Evidence**

The PARTIES understand and agree that this AGREEMENT is a release of disputed claims and does not constitute an admission of liability as to any matter whatsoever and that the PARTIES merely intend by this AGREEMENT to avoid further litigation and buy their peace.

**6. Right to Counsel, Comprehension, and Authority to Execute**

After conferring with legal counsel to the extent they deemed expedient, the PARTIES covenant and warrant that they fully comprehend their rights and obligations under the AGREEMENT, and they have complete authority to enter into and otherwise fulfill their obligations under the AGREEMENT.

7. **Severability**

In the event any provision of this AGREEMENT is held to be unenforceable, each and all other provisions of this AGREEMENT shall remain in full force and effect.

8. **No Contra Proferentem**

The PARTIES acknowledge that this is a negotiated AGREEMENT and that the principle of contract interpretation known as *contra proferentem* is inapplicable to its construction.

9. **Entire Agreement**

All of the terms of this AGREEMENT are contractual and not merely a recital. The PARTIES further acknowledge that this AGREEMENT constitutes a full, final, and complete settlement of their differences, as described in the Background and General Release of this AGREEMENT, and supersedes and replaces any and all other written or oral exchanges, agreements, understandings, arrangements, or negotiations between them, including the language in the MEDIATION AGREEMENT. The PARTIES affirmatively state that if there are any conflicts between the AGREEMENT and prior agreements, the AGREEMENT supersedes and replaces the language in the MEDIATION AGREEMENT and this AGREEMENT represents the entire agreement between the PARTIES.

10. **Modification**

No provision of this AGREEMENT may be changed, altered, modified or waived except in writing signed by the PARTIES (or their authorized representatives), which writing shall specifically reference this AGREEMENT and indicate that the PARTIES intend to waive or modify it. The waiver by any party to this AGREEMENT or a breach of any of the provision shall not operate or be construed as a waiver of any subsequent or simultaneous breach.

11. **Fee Shifting**

The PARTIES shall be entitled to all remedies available at law or in equity for any violation of this AGREEMENT including, but not limited to, the equitable remedy of specific performance. The PARTIES agree that the prevailing party in any future litigated dispute concerning the terms or enforcement of this AGREEMENT as executed shall be entitled to reimbursement of reasonable attorneys' fees and costs.

12. **Applicable Law and Interpretation**

This AGREEMENT shall be construed and enforced according to the laws of the state of Florida, without regard to the application of conflicts of law principles. Any action to enforce this AGREEMENT shall occur in Calhoun County, Florida. If any provision of this AGREEMENT is declared illegal or unenforceable by any court of competent jurisdiction and if it cannot be modified to be enforceable, such provision shall immediately become null and void, leaving the remainder of this AGREEMENT in full force and effect.

**13. Counterpart Signatures**

This AGREEMENT may be executed in multiple counterparts, each of which is deemed to be an original, but all of which together shall constitute one and the same instrument.

**14. Medicare Considerations**

CLAIMANT will provide
Released Parties with complete, accurate, and up-to-date information regarding Medicare eligibility status.
CLAIMANT also will provide any and all information
Released Parties require to facilitate and meet its reporting obligations under 42 U.S.C. § 1395y(b)(8). Such information may include, but is not limited to:
CLAIMANT's full name, Social Security Number (SSN), Medicare Health Insurance Claim Number (HICN), gender, and date of birth.

CLAIMANT represents and warrants that she has provided
Released Parties with complete, accurate, and up-to-date information regarding
CLAIMANT's Medicare eligibility status. The parties agree that all representations and warranties made herein shall survive settlement.

The PARTIES agree that, in the event of a breach of the representations and warranties made by
CLAIMANT in the paragraphs above,
Released Parties shall be entitled to set off any remaining payments due under the terms of this agreement, as well as to the full extent of damages and other relief available at law and equity.

The PARTIES have attempted to resolve this matter in compliance with both state and federal law and believe that the settlement terms adequately consider Medicare's interest and do not reflect any attempt to shift responsibility for payment of medical expenses covered under this

settlement to Medicare pursuant to 42 U.S.C. § 1395y(b). The PARTIES acknowledge and understand that any present or future action or decision by CMS or Medicare, including actions regarding CLAIMANT's eligibility or entitlement to receive Medicare or Medicare payments, will not render this release void or ineffective, or in any way affect the finality of this settlement.

**A.** CLAIMANT agrees to satisfy from the proceeds of this settlement all liens or claims relating to the matter that is the subject of this AGREEMENT. This includes, but is not limited to, any claims or liens for any expenses, past, present, or future, from any private person, firm, corporation, insurer, or third-party payor, or from any State, its counties and municipalities, the United States government, or their agencies or subdivisions which now exist, or may in the future exist, including, but not limited to, Medicare, Medicaid, or any other governmental or public assistance programs.

**B.** CLAIMANT agrees to indemnify and hold harmless Released Parties

from any and all claims, demands, liens, subrogated interests, and causes of action of any nature or character that have been or may in the future be asserted by Medicare and/or persons or entities acting on behalf of Medicare, arising from or related to any of the allegations that are subject to this AGREEMENT.

**C.** CLAIMANT attests that she is not now eligible for or enrolled in Medicare. CLAIMANT further attests that she is not presently receiving Medicare benefits.

**15. <u>Confidentiality Agreement</u>**

**A.** Unless otherwise required by law, the PARTIES agree that the terms of the AGREEMENT are confidential. The PARTIES agree to limit disclosure of information about the settlement to tax preparation and/or legal professionals, tax authorities, health professionals, and financial advisers.

**B.** If required by law to disclose the terms of settlement beyond what is described above, any person informed of the terms of settlement shall also be informed of the confidential nature of such information and that such person(s) shall be bound by this confidentiality provision to the extent permitted by law.

**C.** Nothing in this Agreement prohibits or otherwise limits CLAIMANT from filing a charge or complaint with or participating, testifying, or assisting in

any investigation, hearing, or other proceeding before any federal, state, or local government agency or in any legislative or judicial proceeding.

**D.** The PARTIES consent to allowing injunctive relief against one another in the event this provision is violated by Released Parties or CLAIMANT.

**16. Nondisparage Agreement and Reapplication for Employment**

**A.** CLAIMANT agrees to: (1) not make any statements, or take any other actions whatsoever, to disparage, defame, sully or compromise the goodwill, name, brand or reputation of Released Parties for an indefinite period of time; and (2) not commit any other action that could likely injure, hinder or interfere with the business or business relationships of Released Parties for an indefinite period of time.

**B.** Likewise, CLH shall change CLAIMANT's termination to a voluntary resignation effective January 19, 2020.

**C.** In response to any request from a prospective employer, CLAIMANT shall be provided a neutral reference from DEFENDANTS if requested, consisting of dates of employment, position held, and pay scale as long as in accordance with applicable law on sharing information on employees with other employers. Reference requests of Envision must be directed to ____________, who will provide dates of employment, position held, and pay scale in accordance with this provision.

**D.** CLH shall not preclude CLH employees from communications with CLAIMANT, except as prohibited by the terms in the AGREEMENT.

**E.** CLAIMANT agrees that she shall not reapply for employment with CLH. Alliant and Envision both consent to not assigning or locating CLAIMANT to work at CLH in the future as well.

**F.** CLAIMANT agrees that she shall not apply or reapply for employment with Alliant. This provision does not preclude CLAIMANT from seeking employment with a hospital for which Alliant provides management services.

**G.** CLAIMANT is eligible for rehire with Envision.

**17. <u>Capacity</u>**

CLAIMANT declares, covenants, and warrants that she is over the age of eighteen (18) years old, and is suffering from no legal, mental or physical disability which would impair or disable her from executing this AGREEMENT and that there have been no representations and/or statements made by DEFENDANTS

hereto and their agents to influence her in making or executing this AGREEMENT.

**[SIGNATURES ON FOLLOWING PAGES]**

IN WITNESS WHEREOF, the PARTIES hereto execute this AGREEMENT under penalty of perjury on the dates indicated below:

MARY WATSON, MD

______________________________
Signature

________________________________
Printed Name

_______________________

Date

Under penalty of perjury:

Authorized Representative of
BLUE MANAGEMENT SERVICES, LLC
D/B/A ALLIANT MANAGEMENT
SERVICES

________________________________
Signature

_______________________________
Printed Name and Title

_____________________

Date

Under penalty of perjury:

Authorized Representative of
ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.

______________________________
Signature

______________________________
Printed Name and Title

______________________

Date

Under penalty of perjury:

Authorized Representative of
CALHOUN-LIBERTY HOSPITAL
ASSOCIATION, INC.

______________________________
Signature

______________________________
Printed Name and Title

____________________
Date

4865-2147-3631, v. 1

# EXHIBIT 3

**From:** Michael B. Kelly
**To:** Thomas Dickens
**Subject:** RE: Proposed Release Agreement RE: Watson v. Alliant, et al.
**Date:** Wednesday, May 24, 2023 12:09:18 AM

Thomas, I am out of the office tomorrow but in the rest of the week if there is a good day that works for you? Let me know and I will be happy to chat.


The Florida Law Firm
www.csklegal.com

**Michael B. Kelly**
*Partner*
Tel: 850-483-5930 | Fax: 850-438-6969
**Email: Michael.Kelly@csklegal.com**
**Cole, Scott & Kissane P.A.**
890 South Palafox Street. Suite 200
Pensacola, FL, 32502


**From:** Thomas Dickens <thomas.dickens@mattoxlaw.com>
**Sent:** Tuesday, May 16, 2023 2:55 PM
**To:** Michael B. Kelly <Michael.Kelly@csklegal.com>
**Subject:** RE: Proposed Release Agreement RE: Watson v. Alliant, et al.

**[CAUTION: EXTERNAL EMAIL]**

Hey Michael,

Do you have a few minutes to talk?

TD

**From:** Michael B. Kelly <Michael.Kelly@csklegal.com>
**Sent:** Friday, May 12, 2023 4:09 PM
**To:** Thomas Dickens <thomas.dickens@mattoxlaw.com>
**Cc:** Lisa Fountain <LFountain@sniffenlaw.com>; Mans, Lori K. (Jacksonville) <Lori.Mans@jacksonlewis.com>
**Subject:** RE: Proposed Release Agreement RE: Watson v. Alliant, et al.

Good afternoon Thomas,

Any update on my below email and your approval of the release? I appreciate your attention to this matter and I look forward to hearing from you soon.

Sincerely,

Michael Kelly

The Florida Law Firm
www.csklegal.com

**Michael B. Kelly**
*Partner*
Tel: 850-483-5930 | Fax: 850-438-6969
**Email: Michael.Kelly@csklegal.com**
**Cole, Scott & Kissane P.A.**
890 South Palafox Street. Suite 200
Pensacola, FL, 32502

---

**From:** Michael B. Kelly
**Sent:** Wednesday, April 26, 2023 4:31 PM
**To:** Thomas Dickens <thomas.dickens@mattoxlaw.com>
**Cc:** Lisa Fountain <LFountain@sniffenlaw.com>; Mans, Lori K. (Jacksonville) <Lori.Mans@jacksonlewis.com>
**Subject:** Proposed Release Agreement RE: Watson v. Alliant, et al.

Good afternoon Thomas,

Please allow this email to provide you a draft release agreement between your client and the defendants in this matter. I believe the release covers all of the issues we touched on throughout our settlement discussions and the terms in the mediation agreement. Lori and Lisa (cc'd here) have already given their consent to the language as well other than one portion where Envision needs to input on page 10 who reference requests must be made out to.

Let me know if you are okay with the language once you have had a chance to review it. If you have any issues with the release, I have provided it to you in word format so you can make any redline changes (or turn track changes on). Further, can you please provide us payment instructions and your firm's W-9 when you have a moment (highlighted in the release)? If you are okay with the language, please provide us a copy of the executed release and we will be sure to send it to our clients for signature so payment can be issued in a timely manner. If you have any questions or concerns about the release, feel free to let me know or give me a call at 850-483-5930. I appreciate your attention to this matter and I look forward to hearing from you soon.

Sincerely,

Michael Kelly

---

**From:** Thomas Dickens <thomas.dickens@mattoxlaw.com>
**Sent:** Friday, April 21, 2023 10:20 AM

**To:** Michael B. Kelly <Michael.Kelly@csklegal.com>
**Cc:** Mans, Lori K. (Jacksonville) <Lori.Mans@jacksonlewis.com>; Lisa Fountain <LFountain@sniffenlaw.com>; Laura Beth Faragasso <lb@osteenosteen.com>
**Subject:** Re: Revised Watson Agreement

**[CAUTION: EXTERNAL EMAIL]**

---

You bet and I too am appreciative of everyone's hard work to find that resolution. I'll look for the agreement later.

Sent from my iPhone

On Apr 21, 2023, at 10:32 AM, Michael B. Kelly <Michael.Kelly@csklegal.com> wrote:

Thanks to everyone for your help in getting this one over the finish line last night. If good with you all, I have started on a rough draft release and pass it around later today once completed.

The Florida Law Firm
www.csklegal.com

**Michael B. Kelly**
*Partner*
Tel: 850-483-5930 | Fax: 850-438-6969
**Email: Michael.Kelly@csklegal.com**
**Cole, Scott & Kissane P.A.**
890 South Palafox Street. Suite 200
Pensacola, FL, 32502

---

**From:** Michael B. Kelly <Michael.Kelly@csklegal.com>
**Sent:** Thursday, April 20, 2023 9:40 PM
**To:** Laura Beth Faragasso <lb@osteenosteen.com>; Mans, Lori K. (Jacksonville) <Lori.Mans@jacksonlewis.com>; Lisa Fountain <lfountain@sniffenlaw.com>; Thomas Dickens <thomas.dickens@mattoxlaw.com>
**Subject:** Revised Watson Agreement

A few minor changes that we discussed throughout mediation. Let me know if good with you all.

---

**From:** Laura Beth Faragasso <lb@osteenosteen.com>
**Date:** Thursday, April 20, 2023 at 9:31 PM
**To:** Mans, Lori K. (Jacksonville) <Lori.Mans@jacksonlewis.com>, Michael B. Kelly

<Michael.Kelly@csklegal.com>, Lisa Fountain <lfountain@sniffenlaw.com>
**Subject:** Re: proposed Watson Agreement

**[CAUTION: EXTERNAL EMAIL]**

Sorry, didn't attach. I'm coming back to you, but we have a deal at 142,500 + mediation.

***Laura Beth Faragasso***

***O'Steen & O'Steen, P.L.***

***lb@osteenosteen.com***

***2900 E. Park Avenue***

***Tallahassee, FL 32301***

***850-877-1028 [Scheduling]***

***850-212-8642 [Cell]***

***www.osteenmediation.com***

---

**From:** Laura Beth Faragasso <lb@osteenosteen.com>
**Sent:** Thursday, April 20, 2023 10:29 PM
**To:** Mans, Lori K. (Jacksonville) <Lori.Mans@jacksonlewis.com>; Michael B. Kelly <michael.kelly@csklegal.com>; Lisa Fountain <lfountain@sniffenlaw.com>
**Subject:** proposed Watson Agreement

Plaintiff and Thomas Dickens have agreed to the attached.

***Laura Beth Faragasso***

***O'Steen & O'Steen, P.L.***

***lb@osteenosteen.com***

***2900 E. Park Avenue***

***Tallahassee, FL 32301***

***850-877-1028 [Scheduling]***

***850-212-8642 [Cell]***

***www.osteenmediation.com***

# EXHIBIT 4

**From:** Thomas Dickens
**To:** Lisa Fountain
**Cc:** Kristen Diot
**Subject:** RE: Watson/Alliant
**Date:** Thursday, April 13, 2023 8:36:53 PM
**Attachments:** image001.jpg
image002.png
Answer- Blue Management Services.pdf

---

Lisa,

I understand that your position is that your client was not Plaintiff's employer. I think that conflates the assertion of employer in fact and employer as a matter of law. *Roundtree v. Tegna, Inc.*, No. 8:19-CV-2857-T-36SPF, 2020 WL 4582741, at *3 (M.D. Fla. Aug. 10, 2020) (citing *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1359–61 (11th Cir. 1994) (citing *Nat'l Labor Relations Bd. v. Browning-Ferris Indus.*, 691 F.2d 1117, 1122 (3d Cir. 1982))("[T]he joint employer concept recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the essential terms and conditions of employment"). There is no doubt that the complaint filed in this case puts each Defendant on notice as to the joint employer theory. As I stated earlier, I like to plead a concise section specifically on joint employer, but I suspect you will agree that the operative pleading is sufficient given that no Defendant here filed a motion to dismiss the joint employer theory, merely alleging in its Answer that "ALLIANT adamantly denies that it employed Plaintiff in any manner."

To be sure, I suspect you could offer up an affidavit from your client regarding joint employer status, but I also think that the court will allow me to test the assertions of your client in a corporate rep depo. With that said, I hope we can dispense with the notion that I am not allowed to question your client's representative with respect to joint employer simply because its position is that it *adamantly denies that it employed Plaintiff*.

I would offer the following revisions, omitting the strikethrough and adding the language in blue.

1. A corporate representative with sufficient knowledge of the Plaintiff's employment ~~with the Defendant~~; Object as Plaintiff was never employed by Alliant.

2. A corporate representative with sufficient knowledge of the titles, responsibilities and duties of Plaintiff and all other employees of Defendant associated with the Calhoun-Liberty Hospital; Object as Plaintiff was never employed by Alliant; the titles, responsibilities and duties of ALL other employees of Alliant is overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Response: I do not believe that this makes any presumption as to Plaintiff's employment status as you attest.

3. A corporate representative with sufficient knowledge of Defendant's sources of revenue and nature of the business Defendant is engaged in; You can ask what the nature of Alliant's business was and whether it received any revenue from the other defendants in the case for the time period of Dr. Watson's employment with CLH, but otherwise object as overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

4. A corporate representative who has, or who has spoken to the requisite individuals and/or reviewed available documents to obtain, sufficient knowledge and information available to the Company regarding the facts underlying Defendant's ~~affirmative defenses as alleged in its~~ Answer; Object as to those affirmative defenses that are purely legal defenses. My client is not a lawyer.

5. A corporate representative who has, or who has spoken to the requisite individuals and/or reviewed available documents to obtain, sufficient knowledge and information available to the Company regarding any efforts or inquiries conducted by Defendant prior to the filing of this lawsuit to determine whether its actions were compliant with any and all applicable laws; Objection as is calls for information protected by the attorney client privilege and work product doctrine; overly broad, and not reasonably calculated to lead to the discovery of admissible evidence. Response: If your assertion is that you have been involved since the inception of the complaint, then I can attempt to reword that in a way that precludes communication with you.

6. A corporate representative who has, or who has spoken to the requisite individuals and/or reviewed available documents to obtain, sufficient knowledge and information available to the Company regarding all disciplinary actions, terminations, counseling, write-ups, demotions, human resource investigations, or any other adverse employment actions considered by or taken by Defendant against Plaintiff during her employment; Object as Plaintiff was never employed by Alliant; vague time frame. Response: I am not sure how this is offensive with regard to the joint employer theory; I will agree to limit the time to her tenure at the CLH.

7. A corporate representative who has, or who has spoken to the requisite individuals and/or reviewed available documents to obtain, sufficient knowledge and information available to the Company regarding the Company's policies, handbooks, rules, and procedures (including but not limited to employee hiring, management and termination); Object as this is completely irrelevant as Plaintiff was never employed by Alliant. Response: I am not sure how to reword this as it relates very specifically to the joint employer theory.

8. 8. A corporate representative with sufficient knowledge in the manner of the storage, maintenance, and preservation of employee documents and other Company data; Object as this is completely irrelevant as Plaintiff was never employed by Alliant; overly broad in temporal scope. "other Company data" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Response: I am not sure how to reword this as it relates very specifically to the joint employer theory.

9. A corporate representative with sufficient knowledge of the timing of Plaintiff's complaint(s) to the Defendant and Defendant's employees. I will allow Mr. Kozar to testify regarding the dates Plaintiff communicated with him. Response: I am not concerned with precisely who you identify to represent the corporation as the Rule only requires you to identify someone who has, or who has spoken to the requisite individuals and/or reviewed available documents to obtain, sufficient knowledge and information.

10. A corporate representative with sufficient knowledge of the substance of Plaintiff's complaint(s) to the Defendant and Defendant's employees. I will allow Mr. Kozar to testify regarding Plaintiff's communications with him. Response: I am not concerned with precisely who you identify to represent the corporation as the Rule only requires you to identify someone who has, or who has spoken to the requisite individuals and/or reviewed available documents to obtain, sufficient knowledge and information.

I look forward finalizing my Notice and coordinating a date with you for these depositions.

Thomas

---

**From:** Lisa Fountain <LFountain@sniffenlaw.com>
**Sent:** Thursday, April 13, 2023 2:58 PM
**To:** Thomas Dickens <thomas.dickens@mattoxlaw.com>
**Cc:** Kristen Diot <kdiot@sniffenlaw.com>
**Subject:** Watson/Alliant

Please find my objections to your corporate representative designations below:

1. A corporate representative with sufficient knowledge of the Plaintiff's employment with the Defendant; Object as Plaintiff was never employed by Alliant.

2. A corporate representative with sufficient knowledge of the titles, responsibilities and duties of Plaintiff and all other employees of Defendant; Object as Plaintiff was never employed by Alliant; the titles, responsibilities and duties of ALL other employees of Alliant is overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

3. A corporate representative with sufficient knowledge of Defendant's sources of revenue and nature of the business Defendant is engaged in; You can ask what the nature of Alliant's business was and whether it received any revenue from the other defendants in the case for the time period of Dr. Watson's employment with CLH, but otherwise object as overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

4. A corporate representative who has, or who has spoken to the requisite individuals and/or reviewed available documents to obtain, sufficient knowledge and information available to the Company regarding the facts underlying Defendant's affirmative defenses as alleged in its Answer; Object as to those affirmative defenses that are purely legal defenses. My client is not a lawyer.

5. A corporate representative who has, or who has spoken to the requisite individuals and/or reviewed available documents to obtain, sufficient knowledge and information available to the Company regarding any efforts or inquiries conducted by Defendant prior to the filing of this lawsuit to determine whether its actions were compliant with any and all applicable laws; Objection as is calls for information protected by the attorney client privilege and work product doctrine; overly broad, and not reasonably calculated to lead to the discovery of admissible evidence.

6. A corporate representative who has, or who has spoken to the requisite individuals and/or reviewed available documents to obtain, sufficient knowledge and information available to the Company regarding all disciplinary actions, terminations, counseling, write-ups, demotions, human resource investigations, or any other adverse employment actions considered by or taken by Defendant against Plaintiff during her employment; Object as Plaintiff was never employed by Alliant; vague time frame

7. A corporate representative who has, or who has spoken to the requisite individuals and/or reviewed available documents to obtain, sufficient knowledge and information available to the



Company regarding the Company's policies, handbooks, rules, and procedures (including but not limited to employee hiring, management and termination); Object as this is completely irrelevant as Plaintiff was never employed by Alliant.

8. A corporate representative with sufficient knowledge in the manner of the storage, maintenance, and preservation of employee documents and other Company data; Object as this is completely irrelevant as Plaintiff was never employed by Alliant; overly broad in temporal scope. "other Company data" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

9. A corporate representative with sufficient knowledge of the timing of Plaintiff's complaint(s) to the Defendant and Defendant's employees. I will allow Mr. Kozar to testify regarding the dates Plaintiff communicated with him.

10. A corporate representative with sufficient knowledge of the substance of Plaintiff's complaint(s) to the Defendant and Defendant's employees. I will allow Mr. Kozar to testify regarding Plaintiff's communications with him.

-Lisa-

**Lisa Barclay Fountain**

TALLAHASSEE | WEST PALM BEACH | PENSACOLA

123 North Monroe Street
Tallahassee, Florida 32301
T (850) 205-1996 / F (850) 205-3004
E-mail: lfountain@sniffenlaw.com
Website: www.sniffenlaw.com

*IMPORTANT NOTICE REGARDING EMAIL COMMUNICATION*: With changes in technology, the Firm is aware that email is a common method of communication; however, please keep in mind the following: **(1)** clients should never use computers maintained or monitored by others (e.g., work; public computers) when communicating about sensitive or attorney-client matters; **(2)** incoming emails may not be read immediately, because the intended recipient may be out of the office or otherwise unavailable; if your email communication is time-sensitive, please call our office to ensure we are aware of your email; and **(3)** the Firm uses automated filters to block viruses and unwanted emails. It is possible the Firm's network may not recognize your email address and prevent your emails from being properly delivered. Please call our office if we have not responded to your email within a reasonable time or if the matter is time-sensitive.

*CONFIDENTIALITY NOTICE*: Information in this email may be protected from distribution by law, confidential, or protected from disclosure by the attorney-client privilege. It is intended only for the use of the disclosed individual or entity. If you are not the intended recipient of this communication, you are hereby notified that the law may restrict or prohibit the unintended use, copying or distribution of this communication. If you have received this email in error, please email the sender immediately upon receipt for further instruction.

*DISCLAIMER*: Pursuant to Circular 230 issued by the United States Treasury Department and relating to practice before the Internal Revenue Service, any comment or opinion in this communication relating to a federal tax issue is not intended to be used, and cannot be used, by a taxpayer for the purpose of avoiding tax-related penalties that may be imposed on the taxpayer.

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT
IN AND FOR CALHOUN COUNTY, FLORIDA**

**MARY WATSON,**

Plaintiff,

v. **Case No.: 2020 CA 64**

**BLUE MANAGEMENT SERVICES, LLC,
D/B/A ALLIANT MANAGEMENT SERVICES;
ENVISION PHYSICIAN SERVICES, LLC
F/K/A EMCARE PHYSICIAN SERVICES, INC.;
and CALHOUN-LIBERTY HOSPITAL
ASSOCIATION, INC.,**

Defendants.
_______________________________________/

**NOTICE OF APPEARANCE**

**PLEASE TAKE NOTICE** that Kristen C. Diot of Sniffen & Spellman, P.A., hereby enters her appearance as counsel of record for the Defendant, **BLUE MANAGEMENT SERVICES, LLC d/b/a ALLIANT MANAGEMENT SERVICES**. All correspondence, pleadings, notices, and other materials filed or issued in this cause should be directed to the undersigned as counsel of record at the address listed below.

Dated this 17th day of July, 2023.

Respectfully submitted,

*/s/ Kristen C. Diot*

**KRISTEN C. DIOT**
Florida Bar Number: 0118625
kcdiot@sniffenlaw.com

**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004

*Counsel for Defendant, Blue Management Services, LLC d/b/a Alliant Management Services*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of July, 2023, a true and exact copy of the foregoing was furnished via the Florida Court's E-Filing Portal to all counsel of record.

*/s/ Kristen C. Diot*
**KRISTEN C. DIOT**

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT
IN AND FOR CALHOUN COUNTY, FLORIDA**

**MARY WATSON,**

Plaintiff,

v. **Case No.: 2020 CA 64**

**BLUE MANAGEMENT SERVICES, LLC,
D/B/A ALLIANT MANAGEMENT SERVICES;
ENVISION PHYSICIAN SERVICES, LLC
F/K/A EMCARE PHYSICIAN SERVICES, INC.;
and CALHOUN-LIBERTY HOSPITAL
ASSOCIATION, INC.,**

Defendants.
_______________________________________/

**DEFENDANTS' JOINT MOTION TO ENFORCE AUTOMATIC STAY OR ALTERNATIVELY TO STAY PROCEEDINGS PURSUANT TO COURT'S INHERENT AUTHORITY**

Defendants, BLUE MANAGEMENT SERVICES, LLC D/B/A ALLIANT MANAGEMENT SERVICES ("Alliant") and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC. ("CLH"), by and through the undersigned counsel, hereby respectfully move this Court for an order enforcing the provisions of the automatic bankruptcy stay or alternatively staying these proceedings pursuant to the Court's inherent authority and staying these proceedings pending completion of Defendant, Envision Physician Services, LLC's ("Envision") pending bankruptcy proceedings.

**PROCEDURAL BACKGROUND**

1. On July 14, 2020, Plaintiff filed the instant action against the Defendants alleging claims of public and private whistleblower retaliation and discrimination and retaliation under the Florida Civil Rights Act.

2. Following various extensions of the discovery period, the Parties attended mediation on April 20, 2023, and all Parties additionally entered into a Mediation Agreement on April 20, 2023. Pursuant to the Mediation Report filed on April 24, 2023, this case was settled at mediation.

3. On May 18, 2023, Envision, filed a Notice of Suggestion of Bankruptcy for Envision Healthcare Corporation and Certain of its Affiliates and Automatic Stay of Proceedings, indicating that on May 15, 2023, Envision Healthcare Corporation and its affiliate Envision, filed voluntary petitions under chapter 11 of title 11 of the U.S. Bankruptcy Code. As included within the Notice, pursuant to section 362(a) of the U.S. Bankruptcy Code, Envision's filing of the bankruptcy petition, gave rise to an automatic stay, applicable to all entities of, in pertinent part:

> (a) the commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtors (i) that was or could have been commenced before the commencement of the Chapter 11 Cases, or (ii) to recover a claim against the Debtors that arose before the commencement of the Chapter 11 Cases

4. Thereafter, on June 16, 2023, Plaintiff's Counsel noticed a case management conference to take place on July 10, 2023. Plaintiff's notice did not indicate why the case management conference had been scheduled or what Plaintiff intended to discuss at the conference.

5. At the July 10, 2023, Case Management Conference, Plaintiff's counsel announced—for the first time—that he intended to file a Motion to Strike the Parties' settlement agreement and Notice of Settlement, because there had not been a formal "meeting of the minds" with respect to the settlement agreement terms. Because Plaintiff had neither filed the motion, nor noticed it for a hearing, the Court ultimately set the matter for an evidentiary hearing to take place

on July 27, 2023, and instructed the Parties to file any motions to be heard at the hearing by no later than July 17, 2023.

6. Alliant and CLH respectfully submit that the scheduled hearing on July 27, 2023, and any subsequent order from this Court on Plaintiff's yet-to-be-filed Motion to Strike would violate the automatic stay provisions of the U.S. Bankruptcy Code. As will be explained in more detail below, in this "unique circumstance," the automatic stay is applicable to all co-defendants because indemnification agreements between and amongst the co-defendants create an identity of interests sufficient to invoke the provisions of the automatic stay. Alternatively, Alliant and CLH contend that the Court should use its inherent authority to stay the proceedings pending the completion of Envision's bankruptcy proceedings so as to avoid prejudice to the remaining co-defendants.

7. Any inconvenience born by the Plaintiff with respect to foregoing the scheduled evidentiary hearing is entirely of Plaintiff's own making—having scheduled a case management conference in a case which had been settled and without first providing the Defendants or this Court any advance notice that Plaintiff intended to file a motion to strike the signed mediation agreement between the Parties. Had Plaintiff made her intentions clear prior to the case management conference, Alliant and CLH would have had an opportunity to further research this matter and could have raised these arguments prior to the Court scheduling the evidentiary hearing. For whatever reason, Plaintiff chose not to do so.

8. Accordingly, Alliant and CLH respectfully request this Court enter an order staying these proceedings during the pendency of Envision' s bankruptcy proceedings either by enforcing the provisions of the automatic stay or, in the alternative, pursuant to its own inherent authority.

## LEGAL ARGUMENT

As of April 20, 2023—prior to Envision's bankruptcy petition—this case was settled. Now, post-petition, Plaintiff seeks to undo the Parties' agreement and return this case to active litigation. Not only would Plaintiff's attempt to invalidate the mediation agreement result in a violation of the automatic stay provisions of the bankruptcy code, it would also result in substantial prejudice to Alliant and CLH and unnecessarily burden judicial resources. For these reasons, a stay of these proceedings (either pursuant to § 362(a) or this Court's inherent authority) is warranted.

### *A. The Scheduled Evidentiary Hearing and Plaintiff's Proposed Motion to Strike Violate the Automatic Stay*

"As a general proposition, the automatic stay provisions of § 362(a) do not operate to stay claims against non-debtor defendants." *Gulfmark Offshore, Inc. v. Bender Shipbuilding & Repair Co., Inc.*, No. 09-0249-WS-N, 2009 WL 2413664, at *1 (S.D. Ala. Aug., 3, 2009). "Nonetheless, the protections of the automatic stay have been extended to non-bankrupt codefendants in 'unusual circumstances,' such as 'when there is such identity between the debtor and the third-party defendant . . . that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'" *Id.* (quoting *Kreisler v. Goldberg*, 478 F.3d 209, 213 (4th Cir. 2007) (collecting cases)).

One such circumstance is applicable in this case. Specifically, where "'Debtors owe potential contractual and common law duties to indemnify the Non-Debtors, [such that] the interests of the Debtors and Non-Debtors in the state action are identical,'" "federal courts have extended the automatic stay's protections to non-debtors who would be entitled to indemnity from the debtor in the event of a judgment against them." *Id.* (quoting *In re Philadelphia Newspapers, LLC*, 407 B.R. 606, 2009 WL 1911785, *6 (E.D. Pa. July 2, 2009)). Indeed, in such a circumstance, "'[t]o refuse application of the statutory stay . . . would defeat the very purpose and intent of the

statute.'" *In re Stewart*, 329 B.R. 910, 915 (M.D. Ga. 2005) (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.), *cert. denied* 479 U.S. 876 (1986)).

For example, in *In re Friedman's, Inc.*, the Bankruptcy Court issued a temporary restraining order, staying pending state court litigation alleging that the defendant (the debtor's non-bankrupt president) violated a settlement agreement, misappropriated confidential information, breached a confidential relationship, and tortiously interfered with the business operations of the state-court plaintiff. 336 B.R. 896, 898 (S.D. Ga. 2005). In concluding that "unusual circumstances" existed the Bankruptcy Court explained, in pertinent part:

> [The president's] liability for her alleged acts can be imputed to [the debtor corporation's], that the actions [the president] allegedly has taken are "inextricably interwoven" with the Debtor's interests, and that judicial economy would be served if these issues were fully litigated in this Court in a single proceeding rather than running the risk of inconsistent results if the Debtor's action proceeded in this Court against [the state court plaintiff] and [the state court plaintiff's] action against [the president] proceeded in Dallas County, Texas.

*Id.*

Similar to *Friedman*, Alliant and CLH's interests are inextricably intertwined with Envision. Pursuant to the July 1, 2019 Services Agreement between Envision and CLH ("Services Agreement"), Envision:

> [S]hall indemnify and hold Hospital harmless from any and liability, loss (including attorneys' fees and costs) or damages suffered or incurred by Hospital as a result of [Envision's] failed to comply with its obligations . . . [to comply with all applicable provisions of federal, state and local statutes, rules and regulations]

Exhibit 1, Services Agreement at 9 (Section 31.A.; Section 31.B.). Additionally, pursuant to the Management Services Agreement between Alliant and CLH ("Management Agreement"), CLH:

> [A]grees to indemnify and hold harmless [Alliant], it successors and assigns, to the fullest extent permitted by law, from any against all claims for damages, losses and expenses, including but not limited to attorneys' fees, for actions, causes of action, suits, debts, sums of money, complaints or demands of any kind or description, arising out of or resulting from the operation of the Facility, provided that such

> claims, damages, losses and expenses are not caused by willful or intention misconduct, willful or intention failure to act, bad faith, gross negligence, or a reckless disregard of [Alliant] in the fulfillment of its obligations and duties under this Agreement, unless such act or omission of BMS was done or was not done at the express request or direction of the Hospital, the Board of Directors or the Facility Administrator on behalf of the Board of Directors.

Exhibit 2, Management Agreement at 16-17 (Section 10).

Taken together, these agreements make clear that Envision, is required to indemnify both Alliant and CLH should a judgment be entered against either Defendant in this case. Specifically, pursuant to the Services Agreement Envision is required to "arrange for physician or mid-level provider . . . coverage for Hospital." Exhibit 1 at 1. Plaintiff, Watson's employment with the Hospital was arranged by Envision pursuant to the Services Agreement. Accordingly, to the extent CLH incurs any liability as a result of Envision's failure to comply with Florida Statutes (as alleged in this case as violations of the Florida Public Whistleblower Act, Florida Private Whistleblower Act, and the Florida Civil Rights Act) with respect to Plaintiff's employment, Envision is required to indemnify CLH. The same is true to the extent that Alliant incurs any liability as a result of Plaintiff's employment—CLH being required to indemnify Alliant and Envision being required to indemnify CLH.

Moreover, Plaintiff's allegations in the Complaint as to each co-Defendant stem from the singular adverse employment action, for which Plaintiff alleges responsibility on the part of each co-defendant. Throughout this litigation, Plaintiff alleged that the co-Defendants were "joint employers," and consequently, that each is liable to the extent that her termination violated Florida Statutes. Because Plaintiff's claims in this case are premised wholly on her termination, an act which she alleges each of the co-Defendants were responsible for, the facts are "inextricably intertwined." For this same reason, "judicial economy would be served if [Plaintiff's claims in this case] were fully litigated . . . in a single proceeding rather than running the risk of inconsistent

results," if this action were permitted to proceed only as to the Hospital and Alliant. *In re Friedman's, Inc.*, 336 B.R. at 898-99.

Accordingly, because voiding the settlement agreement between the Parties and returning this case to active litigation, "would inevitably have an adverse impact upon the property of the [bankruptcy] estate," such actions "must be barred by the automatic stay provision." *In re Gucci*, 126 F.3d 380, 392 (2d Cir. 1997); *see In re Stewart*, 329 B.R. at 915 (observing that unusual circumstances justifying stay of proceedings against non-bankrupt codefendants may exist where third party is entitled to indemnity from debtor for any judgment entered against him); *In re National Staffing Services, LLC*, 338 B.R. 35, 37 (Bankr. N.D. Ohio 2005) (identity of interests between debtor and third party may create requisite unusual circumstances to justify staying claims against third party); *N.L.R.B. v. McDermott*, 300 B.R. 40, 43 n.7 (D. Colo. 2003) ("The automatic stay may apply to a non-debtor in special circumstances, such as where there is identity of interest between a debtor and a third party so that a judgment against a non-debtor would be binding on a debtor.").

### *B. Regardless, this Court Should Stay These Proceedings Pursuant to its Inherent Authority*

Alternatively, even if this Court were to conclude that the automatic stay did not bar further litigation of this case (which it does), this Court should nevertheless stay these proceedings pursuant to its inherent authority in order to avoid prejudice to Alliant and CLH and in the interests of judicial economy. Pointedly, allowing this employment case to proceed without participation of the entity responsible for arranging Plaintiff's employment and provision of services would significantly restrict Alliant and CLH's ability to defend their interests and would raises concerns of fairness and judicial economy.

"[R]egularly constituted courts have power to do anything that is reasonably necessary to administer justice within the scope of its jurisdiction." *Pet. of Fla. Bar*, 61 So. 2d 646, 647 (Fla. 1952). This "inherent power" extends to "control of the court's process and procedure, control of the conduct of its officers and the preservation of order and decorum with reference to its proceedings." *Id.*; *see S.Y. v. McMillan*, 563 So. 2d 807, 809 (Fla. 1st DCA 1990) ("A court has the inherent power to control the conduct of its own proceedings in order to preserve order and decorum in the courtroom, to protect the rights of parties and witnesses, and to generally further the administration of justice").

Courts have used this inherent authority to stay proceedings against non-bankrupt co-defendants, even when the automatic stay provision is otherwise inapplicable to that co-defendant. *Lanlard Toys Limited v. Toys "R" US-Dele., Inc.*, No. 3:15–cv–849–J–34PDB, 2017 WL 5256870, at *5 (M.D. Fla. Nov. 13, 2017). That is particularly true in this case where "[i]f the Court were to permit [the plaintiff] to proceed against [the Remaining Defendants] now, it would risk wasting judicial resources and inconsistent judgments against these parties." *Id.* (quoting *SCI Northbay Commerce Fund 4, LLC v. SCI Real Estate Investments*, No. 8:11–cv–31–T–24–TGW, 2011 WL 1133898, at *1 (M.D. Fla. Mar. 28, 2011) (first and third alterations in original)). As the district court explained in *Gulfmark Offshore, Inc.*:

> Such an approach would be extraordinarily inefficient, setting the stage for duplicative trials on closely related claims against closely related defendants. Much of the evidence relating to both sets of claims would be identical. Redundancies of effort on the part of litigants and the Court would be large and inevitable, and litigation costs for both sides would be increased substantially. There would be a non-trivial risk of inconsistent judgments.

2009 WL 2413664 at *3.

As explained above, proceeding in such a piecemeal fashion here would lead to the same result, because the claims against each of the Defendants, "are comprised of common questions of

law and fact more suitably resolved in a single proceeding." *Lanard Toys Limited*, 2017 WL 5256870, at *5 (internal quotation omitted). Each Defendant's liability is premised on the same facts and the same alleged adverse employment action. Plaintiff's allegations against the Defendants are "highly intertwined" to say the least. *Rodriguez v. Advantage Opco, LLC*, No. 19-60747-CIV-COHN/STRAUSS, 2021 WL 9565796, at *2 (S.D. Fla. Oct. 15, 2021) (staying proceedings against non-debtor co-defendant where "the interests of justice and judicial economy, including avoiding inconsistent results, the duplication of efforts, and the waste of judicial resources, will be promoted by granting a stay of this proceeding").

Further, there is no prejudice to the Plaintiff in staying these proceedings, pending the conclusion of Envision's bankruptcy proceedings. Indeed, in light of the potential prejudice to Alliant and CLH and the strain on judicial resources, a delay in obtaining judgment "is not a sufficiently compelling form of prejudice to outweigh the countervailing considerations set forth herein." *Lanard Toys Limited*, 2017 WL 5256870, at *5 (internal citation omitted). Conversely, "a stay of the claims against the [remaining] Defendants until such time as the automatic stay is lifted as to the claims against [Envision] would redound to [Plaintiff's] benefit, as well, in the form of increased efficiency, less duplication of effort, lower litigation costs, and less risk of inconsistent judgments." *Gulfmark Offshore, Inc.*, 2009 WL 2413664, at *3, n.7.

**WHEREFORE**, Defendants, **BLUE MANAGEMENT SERVICES, LLC D/B/A ALLIANT MANAGEMENT SERVICES** and **CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.** respectfully request the entry of an order staying these proceedings pending the conclusion of the pending bankruptcy proceedings, either pursuant to the automatic bankruptcy stay or this Court's inherent authority, and granting any further relief as this Court deems appropriate.

Respectfully submitted this 17th day of July 2023.

s/ *Michael B. Kelly*
MICHAEL B. KELLY
Florida Bar No.: 115345

COLE, SCOTT & KISSANE, P.A.
890 South Palafox Street, Suite 200
Pensacola, Florida 32502
Telephone (850) 483-5909
Facsimile (850) 438-6969
E-mail: michael.kelly@csklegal.com
E-mail: zaray.avino@csklegal.com

*Counsel for Defendant Calhoun-Liberty Hospital Association, Inc.*

*/s/ Kristen C. Diot*
**KRISTEN C. DIOT**
Florida Bar Number: 0118625
kdiot@sniffenlaw.com
**LISA B. FOUNTAIN**
Florida Bar Number: 948802
lfountain@sniffenlaw.com

**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004

*Counsel for Defendant, Blue Management Services, LLC d/b/a Alliant Management Services*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this this 17th day of July 2023, a true and exact copy of the foregoing was furnished via the Florida Court's E-Filing Portal to all counsel of record.

*/s/ Kristen C. Diot*
**KRISTEN C. DIOT**

EXHIBIT 1

EXHIBIT 3

DRAFT – FOR DISCUSSION PURPOSES ONLY

## SERVICES AGREEMENT

THIS AGREEMENT is made by and between Calhoun Liberty Hospital ("Hospital") and EmCare Physician Services, Inc. ("Contractor"). (Each of Hospital and Contractor is a "Party" to this Agreement and collectively they are the "Parties" to this Agreement.)

## PRELIMINARY STATEMENTS

A. Hospital makes health care services available to patients presenting themselves for treatment twenty-four (24) hours per day, seven (7) days per week.

B. Contractor provides administrative and professional services ("Services") to hospitals including, without limitation, arranging for physician or mid-level provider (collectively, "Clinician") coverage for Hospital.

C. Hospital desires to engage Contractor to provide Services to Hospital as set forth herein.

D. Contractor desires to provide administrative services to Hospital as set forth herein.

## AGREEMENT

In consideration of the covenants contained in this Agreement, the parties agree as follows:

1. Term. This Agreement shall become effective at 12:00 a.m. on the 1st day of July, 2019 ("Effective Date") and shall expire three (3) years thereafter ("Initial Term"); provided however, this Agreement (a) may be terminated sooner as provided below, and (b) unless sooner terminated, shall be automatically renewed for additional one (1) year periods ("Renewal Terms") upon its normal expiration date until terminated.

2. Termination. This Agreement may be terminated as follows:

A. Termination by Either Party without Cause. Either Party may terminate this Agreement by providing no less than ninety (90) days' written notice of termination to the other Party, in which case this Agreement will terminate at the end of the applicable notice period.

B. Termination by Either Party for Breach. Either Party may terminate this Agreement immediately upon written notice to the other Party: (a) if the other Party breaches any term of this Agreement and fails to cure that breach within thirty (30) days after receipt of written notice specifying the alleged breach. In addition, Hospital may terminate this Agreement immediately for Contractor's failure to promptly bar any Clinician from performing services under this Agreement, after written notice from Hospital, if that Clinician: (i) engages in conduct which materially jeopardizes the health, safety, or welfare of any person or the safety, or regular functions of the Hospital or the Services; (ii) resigns, is expelled, is suspended from the Medical Staff, is disciplined, loses clinical privileges or has his or her license to practice medicine in the state where Services are rendered (the "State") suspended or revoked; (iii) is convicted of any crime punishable as a felony; or, (iv) does not meet the qualifications required by this Agreement. Further, in the event that Hospital permits another provider to provide the exclusive Services hereunder, or Hospital provides the Services itself,



EXHIBIT
PENGAD 800-631-6989
Watson
2 gm
10|18|22

EXHIBIT 1

EXHIBIT 3



Contractor may immediately terminate this Agreement.

C. Termination by either Party in the Event of Bankruptcy. Either Party may terminate this Agreement with seven (7) days' notice upon the other Party's general assignment for the benefit of creditors, the other Party's petition for relief in bankruptcy or similar laws for the protection of debtors, upon the initiation of such proceedings against the other Party if the same are not dismissed within forty-five (45) days of service, or upon notice of a finding that the other Party is insolvent under applicable law.

D. Termination by Contractor for Hospital's Failure to Pay Compensation. In the event that Hospital fails to pay Contractor's compensation as set forth herein and fails to cure such failure within fifteen (15) days following a written notice from Contractor, Contractor may terminate this Agreement at the end of such fifteen (15) day cure period by providing notice of such termination to Hospital.

E. Immediate Termination by Either Party. Either may terminate the Agreement immediately if the other party: (i) is suspended, excluded, or debarred from participation in any Federal government payor program; or (ii) fails to maintain professional liability insurance required by this Agreement.

3. Services.

A. Services. Contractor and the Clinicians shall provide the Services set forth in **Exhibit A.**

B. Medical Records. Contractor shall require that Clinicians (i) appropriately document in the medical record the treatment provided and the instructions given each patient by a Clinician, and (ii) comply with any applicable Medical Staff rules and regulations concerning medical records.

C. Operation. Contractor shall consult with Hospital, as requested by Hospital, concerning the organization and operation of each department where Clinicians provide Services.

D. Quality Assurance and Risk Management. Contractor shall require that Clinicians participate in Hospital's Quality Assurance and Risk Management programs.

E. Government Regulation. Contractor shall require that Clinicians conform to Federal and state laws and regulations related to the provision of professional services within each department where Clinicians provide Services.

F. Compliance with Accreditation Standards. Contractor shall require that Clinicians cooperate with Hospital in its efforts to comply with all applicable standards promulgated by the Joint Commission on and any surveys conducted thereby.

G. Compliance. Contractor shall require that Clinicians participate in the corporate compliance program applicable to Contractor.

4. Conditions to Status as Contractor Clinician.

EXHIBIT 1

EXHIBIT 3

DRAFT – FOR DISCUSSION PURPOSES ONLY

A. Medical Staff Privileges. Clinicians presented by Contractor to Hospital for the purpose of providing Services in the Department (as defined in Exhibit A) shall (i) maintain appropriate licensure to provide services at Hospital, and (ii) have been granted appropriate privileges or otherwise provided with authorization by Hospital consistent with the Medical Staff bylaws of Hospital ("Bylaws"). Contractor shall perform initial interviews, review credentials and references and provide to Hospital a compilation of qualifications and other information intended to assist Hospital in determining whether to grant privileges to the candidate. Candidates identified by Contractor shall be granted Medical Staff privileges ("Staff Privileges") in accordance with the standard rules and regulations of the Medical Staff, except that neither Contractor nor any candidate shall be responsible for any fees charged by Hospital or Medical Staff in conjunction with applying for or maintaining Staff Privileges. Hospital shall be entitled to require that all medical professional candidates complete the Hospital's standard application documents including, without limitation, standard waivers and releases. Hospital agrees not to discriminate in granting privileges to qualified candidates identified by Contractor and shall use its best efforts to process all applications for Medical Staff Privileges in a timely manner. Candidates granted Staff Privileges shall receive the rights and privileges, and be subject to the responsibilities of, membership on Hospital's Medical Staff, and all Clinicians shall in all events be subject to removal from the Medical Staff, if applicable, for the reasons identified in the Bylaws. Any Clinician will lose Medical Staff membership automatically when such Clinician is no longer authorized by Contractor to serve as a Clinician pursuant to this Agreement.

B. Temporary Privileges. Hospital agrees to process promptly all applications submitted by Contractor or a Clinician candidate identified by Contractor requesting temporary privileges for such Clinician. Such application shall conform to Hospital's standard requirements.

C. Removal of Clinicians. Hospital acknowledges that the Clinician agreements may include a without cause termination provision (the "Required Notice Period"). Further, if the Clinician agreement contains a Required Notice Period, Hospital acknowledges that a request for removal of a Clinician without cause or notice will result in an interruption in Contractor's schedule and increased costs related to compensation and coverage. Accordingly, if the Clinician agreement contains a Required Notice Period, should Hospital request the removal of a Clinician, without sufficient cause outlined in a written request, or without allowing the Contractor to provide the Clinician with the Required Notice Period, Hospital shall, for ninety (90) days following removal of such Clinician, reimburse Contractor for all costs associated with (1) increased compensation, (2) increased staffing, (3) locum tenens coverage, and (4) any other expenses incurred by Contractor resulting from the removal of a Clinician. For purposes of this Section, "sufficient cause" shall include the following:

(i) Limitation, suspension or termination of Clinician's Medical Staff privileges at Hospital for any reason;

(ii) Limitation, suspension or revocation of Clinician's license to practice medicine in the State;
(iii) Limitation, suspension or revocation of Clinician's federal or state registration to prescribe or dispense controlled substances;
(iv) Failure by Clinician to comply with all applicable federal, state, or local laws and regulations;
(v) Credible accusation or conviction of Clinician for the commission of civil fraud related to health care, or a felony or other crime involving fraud or dishonesty;
(vi) Engagement of Clinician in any conduct that jeopardizes or threatens to jeopardize the health or safety of patients; or
(vii) Engagement of Clinician in any grave misconduct, gross incompetence or gross malfeasance, or a material violation of the Medical Staff Bylaws.

During the Required Notice Period following the removal of any Clinician, with or without sufficient cause, Hospital will process requests for emergency/temporary privileges in accordance with Section 4.B. within ten (10) days of Contractor submitting a completed application, to avoid any interruptions in Contractor's schedule to allow Contractor to provide uninterrupted coverage as required pursuant to this Agreement. Hospital shall further reimburse Contractor for any financial losses related to delays in processing and/or granting emergency/temporary privileges within ten (10) days of the submission of a completed application, including any loss in billable revenue.

D. Automatic Termination of Privileges. In the event any Clinician is terminated for any reason, his/her Medical Staff privileges shall be terminated automatically. All Clinicians shall, by written agreement, waive any and all due process rights regarding termination of privileges under this Section.

E. Medicare/Medicaid Exclusion. Contractor agrees to use its best efforts to assure that no Clinician has at any time been excluded from participation in any federally funded health care program including, without limitation, Medicare and Medicaid.

5. Insurance. Contractor shall arrange for each Clinician to be provided with professional liability insurance covering Clinicians while providing services at Hospital, which insurance shall have coverage limits of One Million Dollars ($1,000,000) per loss event and separate, per Clinician aggregate limits, in the amount of Three Million Dollars ($3,000,000) annually.

6. Covenants of the Hospital.

A. Operational Requirements. Hospital shall provide facility space, equipment, drugs, anesthetics, office and other supplies, utilities, janitorial services, laundry services, nursing, clerical/administrative support and any other support services reasonably necessary for the functioning of the Department to allow the Clinicians to perform services in a manner that meets all applicable standards of care as outlined in this Agreement. This shall include the direct costs and expenses associated with the utilization of a documentation system. Hospital

shall provide and/or perform all necessary maintenance in order to maintain any equipment utilized by Contractor in good operating condition in accordance with the manufacturer's specifications. Hospital shall further provide either: (i) adequate facilities within the Hospital for Contractor's installation and storage of a dedicated high speed data line; or, (ii) a secure web browser interface to enable Clinicians to access Contractor's network; and, (iii) adequate facilities within the Hospital for Contractor's installation and storage of a dedicated electronic timekeeping device to enable all of Contractor's healthcare providers to access Contractor's timekeeping system. Hospital agrees to provide to Contractor, within a reasonable time, the necessary data from its information systems and other applicable sources for Contractor to provide the services and meet any performance targets reflected in this Agreement. In addition, Hospital shall comply with the appropriate prophylactic measures that meet all applicable state and federal laws and regulations related to exposures to potentially infectious bodily fluids or other hazardous substances.

B. Policies and Procedures. Hospital agrees to provide Contractor with copies of all of the policies and procedures of Hospital applicable to each Department where Contractor will provide Services including, without limitation, Hospital's:

1. Hazardous Communication Program and applicable MSDS sheets;
2. Emergency Evacuation/Disaster Plan;
3. Other safety rules such as the use of proper personal protective equipment to protect against exposure to blood-borne pathogens; labeling and protective features of sharp containers; disposal, packaging and labeling hazardous waste; location of hand washing facilities; and location of any asbestos or other hazardous materials; and
4. Policies and procedures regarding security, workplace violence, sexual harassment, discrimination, COBRA/EMTALA and corporate compliance.

C. Monthly Call List. Hospital agrees to prepare and publish monthly a call list of Medical Staff physicians with admitting privileges who will be available to provide consultation and follow up care to patients of the Hospital.

D. Compliance with Accreditation Standards. Hospital agrees to use its best efforts to comply with all applicable standards promulgated by the Joint Commission.

E. Department Records. Hospital agrees to retain any and all medical records compiled in each department and to make such records available to Contractor upon request. Hospital acknowledges that Contractor may utilize such records for all purposes determined legitimate by Contractor including, without limitation, Quality Assurance and Risk Management programs.

F. Exclusive Nature of the Agreement. Hospital agrees that it shall not engage any person or entity other than Contractor to provide or perform the clinical and administrative services contemplated by this Agreement.

G. Patient Consent Form. In accordance with the Telephone Consumer Protection Act, Hospital shall include a provision in its patient consent forms that authorizes Hospital and all Clinicians who have provided care to the patient, along with any

billing services, collection agencies, attorneys, or other agents working on their behalf, to contact the patient on his or her cell phone and/or home phone using automatic telephone dialing systems or other computer assisted technology. Hospital shall provide Contractor with a copy of such patient consent form including the abovementioned language.

8. Compensation. Contractor shall be compensated as set forth in **Exhibit B.**

9. Assistance to Contractor. Hospital acknowledges that Contractor requires certain information to be obtained by Hospital and supplied to Contractor to enable Contractor to bill patients as provided above. Therefore, Hospital shall, at its expense, perform the functions, and provide Contractor promptly with the information, identified below:

A. Obtain medical insurance information (including photocopies of insurance cards, pre-authorizations for services and driver's licenses) for each patient/patient visit, and require all patients, and/or guarantors or other legally responsible parties to sign any forms required by medical insurers;

B. Hospital shall, on a daily basis, electronically transfer to Contractor, or its designees, patient records, including, without limitation, registration, admission, and discharge documentation as outlined in Exhibit C in a secure HL7 format on a mutually agreed upon timeline. Hospital shall also provide Contractor with a complete electronic medical record in a CCA or CCD format, including but not limited to physician and nursing notes, continuation sheets, code/trauma forms, and all appropriate patient records, in order to obtain Patient information and other documentation deemed necessary by Contractor and/or its billing company to bill for services provided by Clinicians and/or provide additional services. The Hospital shall establish the abovementioned electronic interfaces prior to the Effective Date of this Agreement to enable Contractor to capture all charges as of the first day of providing services at the Hospital. If the Hospital does not establish the required interface by the Effective Date of the Agreement, Hospital agrees that it shall pay Contractor a revenue guarantee equal to the revenue the Contractor should have received from the professional services performed by the Clinicians but did not receive due to the lack of documentation it needs to bill the patients for professional services, less any collections received by Contractor for those professional services.

C. Provide Contractor daily with an accounting of all payments received by Hospital attributable to services rendered by Clinicians. Hospital shall remit payment weekly by check to Contractor for amounts received by Hospital attributable to services rendered by Clinicians

10. Use of Information. Contractor agrees not to disclose any of the information provided to it by Hospital as identified in Section 9 above except as required by Contractor, its agents, representatives or affiliates for professional liability or risk management purposes or to allow or facilitate Contractor's billing and/or collecting for services rendered by Clinicians.

11. Relationship of Parties. The Parties agree that (a) they are independent contractors, (b) they will at all times act hereunder as independent contractors, (c) under no circumstances shall either of them construe this Agreement, or conduct itself in a manner which shall allow it to be construed, as one

EXHIBIT 1

EXHIBIT 3

DRAFT – FOR DISCUSSION PURPOSES ONLY

of agency, partnership, joint venture or employment between them, and (d) neither of them shall or may exercise direction or control over the provision of services by the other of them. Nothing in the foregoing, however, shall preclude the services rendered by Clinicians from being performed (x) in accordance with generally accepted professional standards in the medical profession, (y) in compliance with the Hospital Bylaws, and (z) consistent with applicable Hospital policies and procedures.

12. Referrals. The Parties acknowledge that none of the benefits granted to either Party under this Agreement are conditioned on any requirement that either Party or Clinicians make referrals to, be in a position to make or influence referrals to, or otherwise generate business for the other.

13. Termination Due to Legislative or Administrative Changes. In the event there is (a) a change in law or regulation (or in the application thereof) including, without limitation, changes to the Medicare and Medicaid programs, (b) a change in any medical insurer's reimbursement, or (c) a new agreement with a medical insurer by either Hospital or Contractor, any of which materially affects the reimbursement for services rendered to patients by the Clinicians, either Hospital or Contractor may submit a written proposal to change the compensation owed by Hospital to Contractor, if any, or the Clinician fee schedule. If within ninety (90) days of submitting such proposal, the Parties are unable to agree on the Administrative Fee and/or the Clinician fee schedule, either Party may terminate this Agreement upon no less than thirty (30) days' prior written notice to the other Party.

14. Government Regulations. Should any law, regulation or procedure of the government or any governmental agency, or the Parties reasonable interpretation thereof, effect a change which materially affects the ability of a Party to satisfy any provision of this Agreement, the Parties shall promptly and in good faith renegotiate the affected provision so that such provision can be satisfied in accordance with such law, regulation or procedure. If the Parties are unable, within ninety (90) days, to agree on an acceptable change to the affected provision, either Party may terminate this Agreement upon no less than thirty (30) days' prior written notice to the other Party.

15. Liaison. Contractor and Hospital shall each designate one or more liaisons to coordinate communications between them. For chart acquisition and demographic and insurance information issues, the Hospital shall designate an additional liaison representative who shall work with Contractor and its affiliates in order to maintain a sufficient flow of data to allow Contractor to bill for the services rendered by the Clinicians and other healthcare providers.

16. Incurring Liabilities. Neither Party shall have the authority to bind the other Party under any contract or agreement or incur any debts or other obligations on behalf of the other Party.

17. Confidentiality. All statistical, financial, personnel, medical records and other data relating to the business of Hospital is confidential and shall be retained in confidence by Contractor, its employees and agents; provided however, the foregoing obligation does not apply to such data, information or materials which (a) Hospital permits Contractor to release, (b) Contractor is required by law to release, or (c) Contractor requires to bill, or collect from, Hospital patients or their insurers.

18. Authority. Each of Hospital and Contractor represent and warrant that it has the right, authority and power to enter into this Agreement.

19. Changes in Bylaws. Hospital agrees to notify Contractor in a timely manner of any proposed, anticipated or actual changes to the Bylaws.

20. Governing Laws. The laws of the State, without regard to the conflicts of law principles thereof, shall govern the validity, construction, enforcement and interpretation of this Agreement.

EXHIBIT 1

EXHIBIT 3

DRAFT – FOR DISCUSSION PURPOSES ONLY

21. Entire Agreement. This Agreement embodies the entire agreement between the Parties and supersedes all prior agreements and understandings, if any, relating to the subject matter hereof, and this Agreement may be amended only by an instrument in writing executed jointly by an officer duly authorized by the board of directors of the respective Parties.

22. Binding Effect. This Agreement shall be binding upon and inure to the benefit of Contractor and Hospital, and their respective successors and assigns.

23. Assignment. This Agreement may not be assigned by Hospital without the prior written consent of Contractor. This Agreement may be assigned by Contractor to an affiliate or subsidiary of Contractor and Contractor shall be released of its obligations hereunder if the assignee agrees to be bound by all terms and conditions of this Agreement.

24. Waiver of Breach. The waiver by either Party of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by such Party.

25. Use of Words. Whenever necessary in this Agreement and where the context requires, the gender of words shall include the masculine, feminine, and/or neuter, and the number of all words shall include the singular and the plural.

26. Descriptive Headings; Preliminary Statements. The captions and headings used in this Agreement are for convenience only and do not limit or amplify the terms and provisions in this Agreement. The Preliminary Statements are incorporated into this Agreement by this reference.

27. Interpretation. Nothing in this Agreement shall be construed as authorizing Contractor to practice medicine or to direct or control the practice of medicine by any Clinician providing medical services at the Hospital.

28. Severability. If any provision of this Agreement, or the application thereof to any person or circumstance, is held to be illegal, invalid or unenforceable for any reason, such illegality, invalidity or unenforceability shall not affect any other provision of this Agreement that can be given effect in the absence of the illegal, invalid or unenforceable provision of application. To this end, all provisions of this Agreement are declared to be severable.

29. Notices. Any notice, demand, or communication required, permitted, or desired to be given under this Agreement, shall be deemed effectively given when either: (i) personally delivered; (ii) three (3) days after mailed by United States mail, certified return receipt requested; or (iii) one (1) day after dispatch by overnight courier, addressed as follows:

| | |
|---|---|
| If to Contractor: | EmCare Physician Services, Inc.<br>7700 West Sunrise Blvd.<br>Plantation, Florida 33322<br>ATTN: Legal Dept. |
| With Copy to: | Envision Healthcare<br>1 A Burton Hills Blvd.<br>Nashville, TN 37215<br>Attn: Legal Department |

EXHIBIT 1

EXHIBIT 3

DRAFT – FOR DISCUSSION PURPOSES ONLY

If to Hospital: Calhoun Liberty Hospital
20370 Burns Ave.
Blountstown, Florida 32424
ATTN: CEO

or to any other address, and to the attention of all other person(s) or officer(s) as either party may designate by written notice to the other party.

30. Government Access. Until the expiration of four years after the furnishing of services pursuant to this Agreement, Hospital and Contractor shall make available, upon written request of the Secretary of the Department of Health and Human Services, the Comptroller General of the United States, or any other duly authorized representative, this Agreement and the books, documents and records that are necessary to certify the nature and the extent of the cost of services provided pursuant to this Agreement.

31. Indemnification.

A. Notwithstanding any other provision in this Agreement, each Party agrees to comply with all applicable provisions of federal, state and local statutes, rules and regulations including, without limitation, the fraud and abuse and anti-kickback statutes. Further, each Party shall remain responsible for refunding or returning to any third party payer any and all amounts received by that Party in violation of applicable law or contract.

B. Contractor shall indemnify and hold Hospital harmless from any and all liability, loss (including attorneys' fees and costs) or damages suffered or incurred by Hospital as a result of Contractor's failure to comply with its obligations under Sections 16, 17 and 31(A) above.

C. Hospital shall indemnify and hold Contractor harmless from any and all liability, loss (including attorneys' fees and costs) or damages suffered or incurred by Contractor as a result of Hospital's failure to comply with its obligations under Sections 16 and 31(A) above.

Notwithstanding the provisions of this Section 31, each Party shall be responsible for refunding any excess amounts or overpayments which that Party received from third party payers.

32. Risk Management Obligation. Any incident known to either Party occurring in the Hospital that could result in liability to Contractor or Hospital shall be reported promptly to the other party after that party actually becomes aware of it. An incident is defined as any happening or occurrence which is not consistent with the routine operation of the Hospital or of the routine care of a particular patient.

33. Counterparts. This Agreement may be executed in multiple counterparts, each of which shall, for all purposes, be deemed an original, and all of which shall, for all purposes, constitute one and the same instrument.

34. No Third-Party Beneficiaries. Nothing in this Agreement shall be construed as conferring any benefit, either directly or indirectly, on any person or entity not a Party to this Agreement.

35. Compliance Obligations. Hospital acknowledges that Contractor and its affiliated Clinicians are subject and required to abide by its Code of Conduct and Anti-Kickback Statute policies and procedures. Hospital can access Contractor's Code of Conduct and its policies and procedures regarding the Anti-Kickback Statute at https://www.evhc.net/news-resources/partner-resources or a copy of the Code of Conduct can be provided to Hospital upon request. Each Party agrees to comply with all applicable provisions of federal, state and local statutes, rules and regulations including, without limitation, the fraud and abuse and anti-kickback statutes. Further, each Party shall remain responsible for refunding or returning to any third party payer any and all amounts received by that Party in violation of applicable law or contract.

36. Protected Health Information. The privacy and security regulations of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") contemplate that health providers and others called "covered entities" may be required to enter into certain "business associate agreements" with persons or entities if the business associate performs certain non-covered entity functions or activities that involve the use or disclosure of protected health information ("PHI") on behalf of, or provides services to, a covered entity. The provisions of this Section are intended to meet the requirements of the HIPAA for the treatment of PHI that may be disclosed by Hospital to Contractor in such capacity.

A. Definitions. Terms used, but not otherwise defined, in this Agreement shall have the same meaning as given those terms in 45 CFR 160.103 and 164.501.

B. Obligations and Activities of Contractor.

1. Contractor agrees not to use or disclose PHI other than as permitted or required by this Agreement or as required by law.

2. Contractor agrees to use appropriate safeguards to prevent use or disclosure of the PHI other than as provided for by this Agreement.

3. Contractor agrees to mitigate, to the extent practicable, any harmful effect that is known to Contractor of a use or disclosure of PHI by Contractor in violation of the requirements of this Agreement.

4. Contractor agrees to report to Hospital any use or disclosure of the PHI not provided for by this Agreement of which it becomes aware.

5. Contractor agrees to ensure that any agent, including a subcontractor, to whom it provides PHI received from, or created or received by Contractor on behalf of Hospital, agrees to the same restrictions and conditions that apply through this Agreement to Contractor with respect to such information.

6. Contractor agrees to provide access, at the request of Hospital, and in the time and manner designated by Hospital, to PHI in a Designated Record Set, to Hospital or, as directed by Hospital, to an Individual in order to meet the requirements under 45 CFR 164.524.

7. Contractor agrees to make any amendment(s) to PHI in a Designated Record Set that the Hospital directs or agrees to pursuant to 45 CFR 164.526 at the request of Hospital or an Individual, and in the time and manner designated by Hospital.

EXHIBIT 1

EXHIBIT 3

DRAFT – FOR DISCUSSION PURPOSES ONLY

8. Contractor agrees to make internal practices, books, and records, including policies and procedures and PHI, relating to the use and disclosure of PHI received from, or created or received by Contractor on behalf of, Hospital available to the Hospital, or to the Secretary, in a time and manner designated by the Hospital or the Secretary, for purposes of the Secretary determining Hospital's compliance with the Privacy Rule.

9. Contractor agrees to document such disclosures of PHI and information related to such disclosures as would be required for Hospital to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 CFR 164.528.

10. Contractor agrees to provide to Hospital or an Individual, in time and manner designated by Hospital, information collected in accordance with the sub-section above, to permit Hospital to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 CFR 164.528.

C. General Use and Disclosure Provisions. Except as otherwise limited in this Agreement, Contractor may use or disclose PHI to perform functions, activities, or services for, or on behalf of, Hospital as specified in this Agreement, provided that such use or disclosure would not violate the Privacy Rule if done by Hospital or the minimum necessary policies and procedures of the Hospital.

D. Specific Use and Disclosure Provisions.

1. Except as otherwise limited in this Agreement, Contractor may use PHI for the proper management and administration of the Contractor or to carry out the legal responsibilities of the Contractor.

2. Except as otherwise limited in this Agreement, Contractor may disclose PHI for the proper management and administration of the Contractor, provided that disclosures are required by law, or Contractor obtains reasonable assurances from the person to whom the information is disclosed that it will remain confidential and used or further disclosed only as required by law or for the purpose for which it was disclosed to the person, and the person notifies the Contractor of any instances of which it is aware in which the confidentiality of the information has been breached.

3. Except as otherwise limited in this Agreement, Contractor may use PHI to provide Data Aggregation services to Hospital as permitted by 42 CFR 164.504(e)(2)(i)(B).

4. Contractor may use PHI to report violations of law to appropriate Federal and State authorities consistent with § 164.502(j)(1).

E. Obligations of Hospital.

1. Hospital shall notify Contractor of any limitations in its notice of privacy

practices of Hospital in accordance with 45 CFR 164.520, to the extent that such limitation may affect Contractor's use or disclosure of PHI.

2. Hospital shall notify Contractor of any changes in, or revocation of, permission by Individual to use or disclose PHI, to the extent that such changes may affect Contractor's use or disclosure of PHI.

3. Hospital shall notify Contractor of any restriction to the use or disclosure of PHI that Hospital has agreed to in accordance with 45 CFR 164.522 to the extent that such restriction may affect Contractor's use or disclosure of PHI.

4. Permissible Requests by Hospital. Hospital shall not request Contractor to use or disclose PHI in any manner that would not be permissible under the Privacy Rule if done by Hospital, except in connection with Data Aggregation or management and administrative activities of Contractor otherwise permitted under this Agreement.

F. Security of Electronic Protected Health Information.

1. Security. Contractor will establish and maintain appropriate administrative, physical and technical safeguards that reasonably and appropriately protected the confidentiality, integrity and availability of electronic PHI. Contractor will follow generally accepted system security principles and the requirements of the final HIPAA rule pertaining to the security of health information ("the Security Rule," published at 45 CFR Parts 160 – 164).

2. Agents and Subcontractors. Contractor will ensure than any agent, including a subcontractor, to whom it provides electronic PHI, agrees to implement reasonable and appropriate safeguards to protect that information.

3. Security Incidents. Contractor will report any security incident of which it becomes aware to the Hospital. For purposes of this agreement, a "security incident" means the attempted or successful unauthorized access, use, disclosure, modification, or destruction of information or interference with system operations. This does not include trivial incidents that occur on a daily basis, such as scans, "pings", or unsuccessful attempts to penetrate computer networks or servers maintained by Contractor.

G. Effect of Termination. The parties acknowledge that it is not feasible for Contractor to return or destroy all PHI upon termination because of Contractor's responsibilities related to billing for Clinician services rendered at Hospital's departments. Contractor shall extend the protections of this agreement to such PHI and limit further uses and disclosures of such PHI to those purposes that make the return or destruction infeasible, for so long as Contractor maintains such PHI. Except as permitted herein, Contractor shall return or destroy all PHI received from Hospital, or created or received by Contractor on behalf of Hospital. This provision shall apply to PHI that is in the possession of

EXHIBIT 1

EXHIBIT 3

DRAFT – FOR DISCUSSION PURPOSES ONLY

subcontractors or agents of Contractor. Contractor shall retain no copies of the PHI.

H. Miscellaneous.

1. Regulatory References. A reference in this Agreement to a section in the Privacy Rule means the section as in effect or as amended.

2. Amendment. The Parties agree to take such action as is necessary to amend this Agreement from time to time as is necessary for Hospital to comply with the requirements of the Privacy Rule and the Health Insurance Portability and Accountability Act, Public Law 104-191.

3. Interpretation. Any ambiguity in this Agreement shall be resolved in favor of a meaning that permits Hospital to comply with the Privacy Rule.

37. Waiver of Jury Trial. **EACH PARTY WAIVES ALL RIGHTS TO ANY TRIAL BY JURY IN ALL LITIGATION RELATING TO OR ARISING OUT OF THIS AGREEMENT.**

IN WITNESS WHEREOF, Hospital and Contractor have executed this Agreement, in multiple counterparts, each of which shall be deemed an original, effective the day and year first above written.

**EMCARE PHYSICIAN SERVICES, INC**

**By:** [signature]

**Title:** EVP

**Date of Execution:** 5-16-18

**CALHOUN LIBERTY HOSPITAL**

**By:** [signature]

**Name and Title:** Harrell T Revell V/C

**Date of Execution:** 5-14-19

[signature]
MARK PLUMMER
5/14/18

**EXHIBIT 1**

EXHIBIT 3

DRAFT – FOR DISCUSSION PURPOSES ONLY

**EXHIBIT A**
**EM SERVICES**

1. Services to be provided by Contractor. Contractor shall provide the following administrative services to Hospital ("Administrative Services"):

A. Emergency Department Coverage. Contractor shall arrange for qualified physicians approved by Hospital to provide coverage in the Emergency Department (the "Department") twenty-four (24) hours per day, seven (7) days per week. The Parties agree that a Physician providing services exclusively in the Department shall not have the privilege of admitting or treating in-patients. Hospital shall waive any medical staff, Hospital-specific application fees, or reapportionment fees for Physicians.

B. Medical Director. Contractor shall designate a physician Clinician to be Medical Director of the Emergency Department. The Medical Director shall be responsible for managing Emergency Department issues on a day-to-day basis including, without limitation, the following:

1. Present qualified medical professionals to become staff Physicians upon approval by Hospital;
2. Coordinate Physician coverage schedule;
3. Recommend policies and procedures to Hospital concerning administration of the Emergency Department;
4. Address patient complaints involving Physicians; and
5. Act as liaison among Contractor, Physicians, members of the organized medical staff of Hospital ("Medical Staff") and administration of Hospital ("Hospital Administration").

2. Monthly Call List. Hospital agrees to prepare and publish monthly a call list of Medical Staff physicians with admitting privileges who will be available to provide consultation and follow up care to patients of the Hospital.

3. Non-Solicitation. Each party, on behalf of itself, its affiliates and each of their respective officers, directors, agents, employees, successor or assigns agree that neither party shall directly or indirectly solicit, employ, engage or otherwise permit any other person or entity to solicit, employ, engage or use in any manner whatsoever any current, future or former employee, contractor or agent employed or engaged by the other party or the other party's affiliates during the Term and for twelve (12) months after the termination or expiration of this Agreement without concurrent renewal. It is specifically understood and agreed that any breach of this provision of the Agreement by either party will result in irreparable injury to the other party, that the remedy at law alone will be an inadequate remedy for such breach and that, in addition to any other remedies in law, equity or otherwise it may have, the non-breaching party shall be entitled to enforce the specific performance of this Agreement by the breaching party in whole or in part responsible for that breach and to seek both temporary and permanent injunctive relief, without the necessity of proving actual damages or the posting of a bond, but without limitation of their rights to recover such damages.

4. Buy-Out. In the event that this Agreement is terminated, and upon written notice from the Hospital to Contractor that Hospital desires to enter into a contractual relationship with any physician(s) described in Section 4, Contractor may, in its sole discretion, elect to waive the provisions of Section A.3 of this Agreement for any or all Clinicians identified in said notice. As a condition of any and all such waivers, Contractor shall be compensated for its time and effort in recruiting and retaining said physician(s) and for the value to Contractor of the contractual relationship between Contractor and said Clinician(s). Hospital and Contractor agree that this compensation shall be Thirty Thousand Dollars ($30,000.00) per Clinician and such sum shall be paid to Contractor no later than thirty (30) days following Contractor's election to waive Section A.3. Clinicians previously employed, contracted separately or credentialed by the Hospital will not be subject to the items in Section A.3.

**EXHIBIT A.1**
**HM SERVICES**

1. Services. Contractor and the Providers shall provide the following Services:

A. Prospective Clinicians. Contractor shall identify to Hospital prospective physicians and Mid-Level Providers ("MLPs") (collectively, "Clinicians") to provide coverage in Hospital upon approval by Hospital twelve (12) hours per day and to provide on-call coverage twelve (12) hours per day, seven (7) days per week. Contractor shall provide the following staffing: Physician and Midlevel coverage as needed to cover twelve (12) hours in Hospital and twelve (12) hours on-call per day based on need. Contractor shall perform initial interviews, review credentials and references and provide to the Hospital a compilation of qualifications and other information useful to assist the Hospital in determining whether to approve Hospitalists. Hospital will extend to any approved physician ("Hospitalist") the rights, privileges and responsibilities of the Hospital's medical staff membership. All physicians presented to the Hospital as prospective Hospitalists shall have and maintain licenses to practice in the state where the services are provided. The parties agree and acknowledge that the coverage outlined above is based on an average of 12.65 patient encounters per day. Parties also acknowledge that encounter volume may change over time or patient acuity may change necessitating a change in coverage and Hospital and Contractor agree to work in good faith toward changing coverage to provide adequate Clinicians to provide satisfactory coverage.

**EXHIBIT B**
**EM COMPENSATION**

EXHIBIT 1

EXHIBIT 3

DRAFT -- FOR DISCUSSION PURPOSES ONLY

1. Contractor's Billing for Services. Hospital acknowledges the right of the Clinicians and Contractor, at their expense, to bill patients and/or their insurers for the services rendered by Clinicians pursuant to this Agreement. The Hospital shall not have any right to any such fees billed and collected for the services rendered by Clinicians.

2. Hospital's Billing for Services. Contractor acknowledges the right of Hospital, at Hospital's expense, to bill patients and/or their insurers for the use of facilities, personnel, equipment, supplies and support services provided by Hospital. Neither Contractor nor the Clinicians shall have any right to any such fees billed and collected for the use of facilities, personnel, equipment, supplies and support services provided by Hospital.

3. Administrative Fee. In recognition that the payments reasonably contemplated to be received by Contractor under Section 1 of this Exhibit B are insufficient to enable Contractor to assure the provision of services of the quality and nature sought by Hospital and that the compensation necessary to provide such services will vary depending upon the volume of patients treated by Clinicians and resultant professional fee revenue received by Contractor, Hospital agrees to pay to Contractor a monthly fee ("Administrative Fee") equal to "Total Required Net Revenue" less "Total Actual Patient Revenue". For purposes of this section, Total Required Net Revenue shall be equal to One Hundred Sixty-Two Thousand Nine Hundred Ten Dollars and Twenty Cents ($162,910.20). For purposes of this section, Total Actual Patient Revenue shall be equal to projected number of billable "ED Visits" during the month multiplied by the projected "Average Revenue per ED Visit" as reported by Contractor's billing company. Contractor shall invoice Hospital for the Administrative Fee at the end of each month, based upon projected Total Required Net Revenue and Total Actual Patient Revenue as defined above, and Hospital agrees to pay such invoices in full within thirty (30) days of receipt.

The parties acknowledge and agree that at commencement of services hereunder the parties' projections for ED Visits and Average Revenue per ED Visit are speculative. For purposes of calculating the Administrative Fee payable hereunder, during the first three (3) months of this agreement, the projected number of ED Visits shall be 34 encounters per day and the projected Average Revenue Per ED Visit shall be One Hundred Thirty-Seven Dollars and Eighty-Eight Cents ($137.88) per encounter, resulting in an initial monthly Administrative Fee, for the first three (3) months of the Agreement, equal to Nineteen Thousand Three Hundred Eighty-Nine Dollars and Fifty-Six Cents ($19,389.56) per month. At the conclusion of each three (3) month period ("Quarter") during this Agreement, the parties will calculate the Total Actual Patient Revenue and Total Required Net Revenue during that Quarter and estimate the projected annual Total Actual Patient Revenue and Total Required Net Revenue. The parties will determine the appropriate Administrative Fee payable to Contractor based on the formula set forth above, and adjust the subsequent month's Administrative Fee accordingly to reconcile overpayments or underpayments during the Quarter, with a final reconciliation conducted at the end of each twelve (12) month period during the term of the Agreement.

4. Annual Review. Upon expiration of the initial twelve (12) months of the Term and every twelve (12) months thereafter, the Parties shall (i) negotiate in good faith the Administrative Fee formula necessary to maintain compensation under this Agreement at fair market value. The annual billable patient volume from the previous year shall be used as the baseline for calculating the Administrative Fee. Contractor agrees to provide Hospital with appropriate documentation necessary to confirm all of the actual costs and actual collection rate affecting the calculation and re-negotiation of the Administrative Fee. In the event the Parties are unable to agree within thirty (30) days upon the amount of the Administrative Fee for the

ensuing twelve (12) months, either Party shall be entitled to terminate this Agreement upon no less than ninety (90) days' prior written notice.

5. Clinician Orientation Compensation. Hospital agrees to reimburse Contractor for expenses incurred as a result of Hospital-required Clinician orientation at Hospital and for training on Hospital-specific policies and systems. Contractor will invoice Hospital for such expenses.

6. Additional Compensation. In addition to the compensation set forth in this Exhibit B, Hospital has been advised that Contractor may from time to time have to pay a higher rate per hour for emergency physician coverage. Accordingly, Hospital agrees to pay Contractor an additional amount calculated to be the amount by which the actual average Emergency Physician hourly compensation paid by Contractor to Emergency Physicians for the preceding calendar month exceeds One Hundred Fifty Dollars ($150.00) per hour, provided that Hospital shall only be responsible for additional compensation up to an average of One Hundred Eighty Dollars ($180.00) per hour. Contractor shall invoice Hospital additional compensation along with the compensation set forth in this Exhibit B and Hospital agrees to pay such invoices within thirty (30) days of receipt

## EXHIBIT B.1
## HM COMPENSATION

1. Contractor's Billing for Services. Hospital acknowledges the right of the Clinicians and

EXHIBIT 1

EXHIBIT 3

DRAFT – FOR DISCUSSION PURPOSES ONLY

Contractor, at their expense, to bill patients and/or their insurers for the services rendered by Clinicians pursuant to this Agreement. The Hospital shall not have any right to any such fees billed and collected for the services rendered by Clinicians.

2. Hospital's Billing for Services. Contractor acknowledges the right of Hospital, at Hospital's expense, to bill patients and/or their insurers for the use of facilities, personnel, equipment, supplies and support services provided by Hospital. Neither Contractor nor the Clinicians shall have any right to any such fees billed and collected for the use of facilities, personnel, equipment, supplies and support services provided by Hospital.

3. Administrative Fee. In recognition that the payments reasonably contemplated to be received by Contractor under Section 1 of this Exhibit B are insufficient to enable Contractor to assure the provision of services of the quality and nature sought by Hospital and that the compensation necessary to provide such services will vary depending upon the volume of patients treated by Clinicians and resultant professional fee revenue received by Contractor, Hospital agrees to pay to Contractor a monthly fee ("Administrative Fee") equal to "Total Required Net Revenue" less "Total Actual Patient Revenue". For purposes of this section, Total Required Net Revenue shall be equal to "Total Professional Expense" (defined as Medical Director compensation, Hospitalist compensation and benefits, billing fees and collection fees, professional liability insurance expense, general and administrative expenses (defined as 10% of total required net revenue), and on-site administrative personnel compensation and benefits) divided by ninety-six percent (96%). For purposes of this section, Total Actual Patient Revenue shall be equal to projected number of billable "Patient Encounters" during the month multiplied by the projected "Average Revenue per Encounter" as reported by Contractor's billing company. The Total Professional Expense shall be based upon the factors set forth in the Financial Estimate attached hereto as Schedule A and incorporated by reference herein which shall be subject to change from time to time by mutual agreement of the Parties. Contractor shall invoice Hospital for the Administrative Fee at the end of each month, based upon projected Total Required Net Revenue and Total Actual Patient Revenue as defined above, and Hospital agrees to pay such invoices in full within thirty (30) days of receipt.

The parties acknowledge and agree that at commencement of services hereunder the parties' projections for Patient Encounters and Average Revenue Per Encounter are speculative. For purposes of calculating the Administrative Fee payable hereunder, during the first three (3) months of this agreement, the projected number of Patient Encounters shall be three hundred eighty-five (385) encounters per month and the projected Average Revenue Per Encounter shall be Ninety-Seven Dollars and Fifty-Two Cents ($97.52) per encounter, resulting in an initial monthly Administrative Fee, for the first three (3) months of the Agreement, equal to Fifty-Eight Thousand One Hundred Fifteen Dollars and Eighty-Two Cents ($58,115.82) per month. At the conclusion of each three (3) month period ("Quarter") during this Agreement, the parties will calculate the Total Actual Patient Revenue and Total Required Net Revenue during that Quarter and estimate the projected annual Total Actual Patient Revenue and Total Required Net Revenue. The parties will determine the appropriate Administrative Fee payable to Contractor based on the formula set forth above, and adjust the subsequent month's Administrative Fee accordingly to reconcile overpayments or underpayments during the Quarter, with a final reconciliation conducted at the end of each twelve (12) month period during the term of the Agreement.

4. Annual Review. Upon expiration of the initial twelve (12) months of the Term and every twelve (12) months thereafter, the Parties shall (i) negotiate in good faith the Administrative Fee formula necessary to maintain compensation under this Agreement at fair market value. The annual billable patient volume from the previous year shall be used as the baseline for calculating the Administrative Fee.

EXHIBIT 1

EXHIBIT 3

DRAFT – FOR DISCUSSION PURPOSES ONLY

Contractor agrees to provide Hospital with appropriate documentation necessary to confirm all of the actual costs and actual collection rate affecting the calculation and re-negotiation of the Administrative Fee. In the event the Parties are unable to agree within thirty (30) days upon the amount of the Administrative Fee for the ensuing twelve (12) months, either Party shall be entitled to terminate this Agreement upon no less than ninety (90) days' prior written notice.

5. Clinician Orientation Compensation. Hospital agrees to reimburse Contractor for expenses incurred as a result of Hospital-required Clinician orientation at Hospital and for training on Hospital-specific policies and systems. Contractor will invoice Hospital for such expenses.

EXHIBIT 1

EXHIBIT 3

DRAFT – FOR DISCUSSION PURPOSES ONLY

## EXHIBIT C
## GENERIC DATA FIELDS LISTING

| | | |
|---|---|---|
| **PID - Patient Identification Required** | | |
| PID | 1 | Set ID - Patient ID |
| PID | 2 | External ID |
| PID | 3 | Internal ID |
| PID | 4 | Alternate Patient ID |
| PID | 5 | Patient's Name (First, Middle, Last) |
| PID | 7 | Date of Birth |
| PID | 8 | Sex |
| PID | 10 | Race |
| PID | 11 | Patient Address |
| PID | 13 | Phone Number - Home |
| PID | 14 | Phone Number – Business |
| PID | 16 | Marital Status |
| PID | 17 | Religion |
| PID | 18 | Patient Account Number |
| PID | 19 | SSN Number |
| **PD1 - Additional Demographics** | | |
| PD1 | 4 | Patient Primary Care Clinician Name & ID Number |
| PD1 | 5 | Student Indicator |
| **NK1 - Next of Kin** | | |
| NK1 | 1 | Set ID - NK1 |
| NK1 | 2 | Name |
| NK1 | 3 | Relationship |
| NK1 | 4 | Address |
| NK1 | 5 | Phone Number |
| NK1 | 6 | Business Phone Number |
| NK1 | 14 | Marital Status |
| NK1 | 15 | Sex |
| NK1 | 16 | Date/Time of Birth |
| NK1 | 37 | Contact Person Social Sec. Number |
| **PV1 - Patient Visit** | | |
| PV1 | 1 | Set ID - PV1 |
| PV1 | 2 | Patient Class |
| PV1 | 3 | Assigned Patient Location |
| PV1 | 7 | Attending Doctor |
| PV1 | 8 | Referring Doctor |
| PV1 | 10 | Hospital Service |
| PV1 | 18 | Patient Type |

EXHIBIT 1

EXHIBIT 3

DRAFT – FOR DISCUSSION PURPOSES ONLY

| | | |
|---|---|---|
| PV1 | 19 | Visit Number |
| PV1 | 20 | Financial Class |
| PV1 | 21 | Charge Price Indicator |
| PV1 | 24 | Contract Code |
| PV1 | 25 | Contract Effective Date |
| PV1 | 26 | Contract Amount |
| PV1 | 27 | Contract Period |
| PV1 | 36 | Discharge Disposition |
| PV1 | 37 | Discharge to Location |
| PV1 | 39 | Servicing Facility |
| PV1 | 40 | Bed Status |
| PV1 | 44 | Admit Date/Time |
| PV1 | 45 | Discharge Date/Time |
| PV1 | 46 | Current Patient Balance |
| PV1 | 47 | Total Charges |
| PV1 | 48 | Total Adjustments |
| PV1 | 49 | Total Payments |
| PV1 | 52 | Other Health Care Clinician |
| **PV2 - Patient Visit - Addt Info** | | |
| PV2 | 3 | Chief Complaint |
| PV2 | 14 | Previous Admit Date |
| PV2 | 38 | Mode of Arrival |
| **GT1 - Guarantor Information** | | |
| GT1 | 1 | Set ID - GT1 |
| GT1 | 2 | Guarantor Number |
| GT1 | 3 | Guarantor Name |
| GT1 | 5 | Guarantor Address |
| GT1 | 6 | Guarantor Phone - Home |
| GT1 | 7 | Guarantor Phone - Bus. |
| GT1 | 8 | Guarantor Date of Birth |
| GT1 | 9 | Guarantor Sex |
| GT1 | 11 | Guarantor Relationship |
| GT1 | 12 | Guarantor SSN |
| GT1 | 16 | Guarantor Employer Name |
| GT1 | 17 | Guarantor Employer Addr. |
| GT1 | 18 | Guarantor Employer Phone |
| **IN1 - Insurance Information** | | |
| IN1 | 1 | Set ID - IN1 |
| IN1 | 2 | Insurance Plan ID |
| IN1 | 3 | Insurance Company ID |
| IN1 | 4 | Insurance Company Name |

EXHIBIT 1

EXHIBIT 3

DRAFT – FOR DISCUSSION PURPOSES ONLY

| | | |
|---|---|---|
| IN1 | 5 | Insurance Company Address |
| IN1 | 6 | Insurance Co. Contact Person |
| IN1 | 7 | Insurance Co. Phone Number |
| IN1 | 8 | Group Number |
| IN1 | 9 | Group Name |
| IN1 | 10 | Insured's Group Emp. ID |
| IN1 | 11 | Insured's Group Emp. Name |
| IN1 | 12 | Plan Effective Date |
| IN1 | 13 | Plan Expiration Date |
| IN1 | 14 | Authorization Information |
| IN1 | 15 | Plan Type |
| IN1 | 16 | Name of Insured |
| IN1 | 17 | Insured's Relation to Patient |
| IN1 | 18 | Insured's Date of Birth |
| IN1 | 19 | Insured's Address |
| IN1 | 28 | Pre-Admit Cert. (PAC) |
| IN1 | 35 | Company Plan Code |
| IN1 | 36 | Policy Number |
| IN1 | 37 | Policy Deductible |
| IN1 | 43 | Insured's Sex |
| IN1 | 44 | Insured's Employer Address |
| IN1 | 47 | Coverage Type |
| IN1 | 49 | Insured's ID Number |
| **IN2 - Insurance Information - Additional Information** | | |
| IN2 | 2 | Insured's Social Security # |
| IN2 | 3 | Insured's Employer Name |
| IN2 | 63 | Insured's Phone Number - Home |
| IN2 | 64 | Insured's Employer Phone |
| **EMSC Custom Defined Fields** | | |
| ZHS | 1 | Triage Time |
| ZHS | 2 | Physician Time |
| ZHS | 3 | Company Name |
| ZHS | 4 | Misc Code |

**EXHIBIT 1**

EXHIBIT 3

**FIRST AMENDMENT TO SERVICES AGREEMENT**

THIS FIRST AMENDMENT ("First Amendment") shall be effective June 1, 2019, by and between CALHOUN LIBETY HOSPITAL ("Hospital") and EMCARE PHYSICIAN SERVICES, INC., ("Contractor"). Collectively Hospital and Contractor may be referred to as "Parties."

**RECITALS**

WHEREAS, the Parties have previously entered into a Services Agreement for Contractor to provide administrative and professional services for hospital medicine coverage effective July 1, 2019, (the "Agreement").

WHEREAS, the Parties desire to now amend the Agreement as set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants herein made, the Parties agree to amend the Agreement as follows:

1. Section 1. (Term) shall be amended to change the effective date of the Agreement to June 1, 2019 with respect to provision of services pursuant to the Agreement;

2. Except as to the terms and conditions amended by this First Amendment, all of the terms and conditions of the Agreement are declared by the Parties to be in full force and effect.

IN WITNESS WHEREOF, Hospital and Contractor have executed this First Amendment, effective June 1, 2019.

**EMCARE PHYSICIAN SERVICES, INC**

By: [signature]
Andy Scoggins
Title: EVP, Attorney-in-Fact

Date of Execution: 5-31-19

**CALHOUN LIBERTY HOSPITAL**

By: Janet H Kinney
Printed Name/Title: Janet H. Kinney CEO
Date of Execution: May 22, 2019

By:
Printed Name/Title: N/A
Date of Execution:

**EXHIBIT 2**

# FIRST AMENDMENT TO HOSPITAL MANAGEMENT SERVICES AGREEMENT

**THIS FIRST AMENDMENT TO HOSPITAL MANAGEMENT SERVICES AGREEMENT** ("Amendment") is made and entered into this __ day of November, 2019, by and between **BLUE MANAGEMENT SERVICES, LLC** d/b/a Alliant Management Services, a Kentucky limited liability company ("BMS"), and **CALHOUN-LIBERTY HOSPITAL**, a Florida non-profit corporation ("Hospital").

**RECITALS:**

A. BMS and Hospital are parties to that certain Hospital Management Services Agreement dated as of September 14, 2016 (the "Agreement"), pursuant to which Hospital engaged Manager to provide hospital management services in support of the operations of Calhoun-Liberty Hospital located in Blountstown, Florida.

B. BMS and the Hospital desire to extend the term of the Agreement for an additional three (3) years, with a new expiration date of December 31, 2022, subject to the further amendments to the Agreement set forth in this Amendment.

**AGREEMENT:**

**NOW THEREFORE,** for and in consideration of the premises and the mutual promises and covenants set forth in this Amendment and the Agreement, Hospital and BMS hereby agree as follows:

1. **CAPITALIZED TERMS.** Capitalized terms used in this Amendment, unless otherwise defined herein, shall have the meanings ascribed to such terms in the Agreement.

2. **EXTENSION OF TERM OF AGREEMENT.** The parties desire to extend the term of the Agreement, dated on September 14, 2016, for three (3) additional years, as follows:

***2.1. Modification to Section 5.1*** **(TERM AND PAYMENT OF FEES)**. The first sentence of Section 5.1 of the Agreement is hereby replaced in its entirety with the following provisions:

> The term of this Agreement shall commence on the 14th day of September, 2016, and shall expire on the 31st day of December, 2022. (The period commencing September 14, 2016 through December 31, 2019 being sometimes referred to in this Agreement as the "initial term, the period commencing from January 1, 2020 through December 31, 2022 being sometimes referred to in this Agreement as the "extended term," and the initial term and extended term being sometimes referred to in this Agreement as the "term.")

***2.2. Modification to Section 7*** **(VESTED INTERESTS).** The first sentence of the second paragraph of Section 7 is hereby amended to replace the phrase "ending September 14, 2019" with the phrase "ending December 31, 2022."

3. **MODIFICATIONS TO COMPENSATION AND FEES.** The parties desire to modify the compensation and fees provisions set forth in Sections 4.1 and 4.2 of the Agreement as follows:

*3.1.* ***Modification to Section 4.1*** **(MANAGEMENT FEE)**. Effective as of January 1, 2020, the first sentence of Section 4.1 of the Agreement is hereby replaced in its entirety to read as follows: "The fee for the management services payable to BMS during the period January 1, 2020 current term of the contractual relationship shall be **Eighteen Thousand Three Hundred Six Dollars and Eighty-One cents ($18,306.81) per month**, subject to adjustment as provided below."

*3.2.* ***Omit 4.2*** **(MANAGEMENT FEES AT RISK)**. Section 4.2 of the Agreement is hereby omitted in its entirety. By reference Exhibit A is also omitted in its entirety.

4. **CONTINUATION OF BALANCE OF MANAGEMENT AGREEMENT.** Except as amended hereby, the Agreement remains unchanged and in full force and effect.

5. **BINDING EFFECT.** This Amendment shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.

6. **GOVERNING LAW.** This Amendment shall be governed by, and construed in accordance with, the laws of the State of Florida without regard to its conflict of laws rules.

[Signature Page Immediately Follows]

EXHIBIT 2

IN WITNESS WHEREOF, the parties have executed this Amendment as of the day and year first above written.

BLUE MANAGEMENT SERVICES, LLC,
d/b/a Alliant Management Services

By: ~~Marty Ollmer~~ [signature]
Title: ~~Chair~~ PRESIDENT + CEO

CALHOUN-LIBERTY HOSPITAL

By: [signature]
Title: Chairman, Hospital Board of Directors

20670113.2

**EXHIBIT 2**

# MANAGEMENT SERVICES AGREEMENT

THIS **MANAGEMENT SERVICES AGREEMENT** (the "Agreement") is made and entered into as of September 14, 2016, by and between **BLUE MANAGEMENT SERVICES, LLC**, d/b/a Alliant Management Services, a Kentucky corporation (hereinafter called "BMS"), and **CALHOUN-LIBERTY HOSPITAL**, a Florida non-profit corporation (hereinafter referred to as "Hospital").

W I T N E S S E T H:

WHEREAS, BMS is in the business of managing and providing consulting and financial services for hospitals and long-term nursing facilities; and

WHEREAS, BMS has managed CALHOUN-LIBERTY HOSPITAL located in Blountstown, FL (both hereinafter referred to as the "Facility") since March 14, 2016 pursuant to the prior Term Sheet between the parties; and

WHEREAS, Hospital desires to continue to utilize the management services provided by BMS in the operation of the Facility under the terms and conditions herein set forth;

NOW THEREFORE, in consideration of the mutual promises and covenants herein contained, Hospital and BMS hereby agree as follows:

Section 1. MANAGEMENT APPOINTMENT. Hospital hereby appoints BMS to consult with the Hospital concerning certain strategic matters, pursuant and subject to the terms and conditions set forth in this Agreement.

Section 2. DUTIES OF CALHOUN-LIBERTY HOSPITAL.

2.1 CONTROL RETAINED IN BOARD OF HOSPITAL. The Board of Directors of Hospital ("Board of Directors") shall be the governing body of the Facility and shall be responsible for the operation of the Facility and development of policies with respect to the Facility. Notwithstanding the authority granted to BMS herein, BMS and Hospital agree that Hospital, through its Board of Directors, shall at all times exercise control over the affairs of the Facility, shall establish general operating policies to be carried out by BMS under this Agreement, and shall be accountable and responsible for all medical, professional and ethical affairs of Hospital and the Facility. BMS may not on behalf of the Hospital incur any debts or other liabilities, enter into any contracts, or make any significant expenditures or final decisions without the approval of the Board of Directors. All medical and professional matters shall be the sole responsibility of the Board of Directors and the Medical Staff of the Facility; however, BMS will consult with the Hospital concerning such matters if requested to do so.

2.2 OWNERSHIP. Hospital is and shall continue to be the owner and holder of all licenses, contracts and accreditation certificates which the Hospital has or shall obtain for ownership or operation of the Facility, and shall continue to be the "provider" within the meaning of all third-party contracts for the Facility.

2.3 HOSPITAL'S RESPONSIBILITIES. The Board of Directors shall, at all times, be ultimately responsible for the governing of the Facility and for the general direction of the activities of BMS under this Agreement. A representative of BMS (Regional Administrator, Regional CFO, or the CEO of BMS) shall be entitled to receive notice of and attend all meetings of the Board of Directors, relating to the administrative activities and operating results of the Facility, other than executive sessions called for the purpose of discussing the performance of BMS. Representatives of BMS (Regional Administrator, Regional CFO, or CEO of BMS) shall be permitted to participate in all discussions of Hospital administrative affairs, but shall not have a vote on actions taken by the Board of Directors. Hospital shall request and receive recommendations regarding the administrative operations of the Facility from BMS, and shall duly consider all such recommendations concerning administrative operations at the Facility prior to adopting any operational policies affecting the administrative operations or functions of the Facility. Hospital at all times shall maintain an "effective compliance program" that substantially conforms, in pertinent part, with a model hospital compliance program(s) and model nursing facility compliance program(s) endorsed or provided by the American Hospital Association, the HHS Office of Inspector General, or the U.S. Department of Justice, or that otherwise satisfies the standards of the Federal Sentencing Guidelines.

2.4 INDEPENDENT AUDIT. Hospital will retain a qualified auditing firm to perform an independent audit each year under this Agreement. The professional fees and expenses of said independent auditor will be borne entirely by Hospital.

Section 3. DUTIES OF BMS.

3.1 BMS' RESPONSIBILITIES. Pursuant to Section 1, BMS through the on-site Facility Administrator (defined below) is charged with the responsibility to review and consult with the Facility Administrator regarding the day-to-day operations of the Facility during the term of this Agreement. The individual employed as the "Facility Administrator" shall be the chief executive officer of the Facility. BMS will provide or, at the option of the Board of Directors, BMS will assist in the recruitment of, placement of, a qualified Facility Administrator acceptable to the Board of Directors, in a full-time capacity on-site at the Facility throughout the term of this Agreement to coordinate and work with BMS in its performance of BMS' duties and obligations under this Agreement. The Facility Administrator will be an employee of BMS. All communication and directions of the administrative affairs of the Facility, under this Agreement, will be channeled by Hospital and BMS, respectively, to the other through the Facility Administrator. Hospital shall promptly deliver to BMS a copy of any resolution, directive or authorization which in any way affects the overall operations or functions of the Facility.

3.2 REPORTS. BMS shall cause to be delivered to the Board of Directors monthly oral or written reports on the financial condition of the Facility and periodic written progress reports summarizing BMS' management actions and results, or other management information as to the status and condition of the Facility and such other reports as may be reasonably requested by the Board of Directors. BMS will promptly notify the Board of Directors of any facts or circumstances arising out of the operations of the Facility that may have a material effect on operations of the financial condition of the Facility. BMS' management shall also provide reports to third-party payors required to describe this Agreement.

3.3 SPECIFIC SERVICES TO BE PROVIDED. BMS shall perform the following specific services during the term of this Agreement.

3.3.1 FULL-TIME ADMINISTRATION. BMS shall recruit an experienced, qualified, on-site Facility Administrator, but hiring of the Facility Administrator for services to be performed at the Facility shall be subject to approval by the Board of Directors. On the date hereof, the Facility Administrator will be an employee of BMS, the salary, benefits and housing expense of the Facility Administrator will also be paid by Hospital after said amounts have been disclosed to Hospital and agreed to by the Board of Directors and will be in addition to the management fee.

D. Reports on Progress – BMS, in conjunction with the Facility Administrator, will deliver to the Board of Directors a written report covering the progress toward attainment of goals/objectives of Hospital as approved in the annual Strategic Action Plan.

3.3.3 SPECIALIZED FINANCIAL CONSULTING SERVICES. BMS shall provide or shall supervise and coordinate the preparation, maintenance or provision of the following items or services for the Facility:

A. general accounting support to the CFO;

B. budget preparation assistance, including staffing standards for all major departments;

C. routine monthly analysis of financial performance;

D. assistance in establishment of third party rates and reimbursement;

E. consultation on the refinement of systems to control Hospital charges;

F. preparation of the Medicare/Medicaid cost reports; and

G. analysis of lease/purchase arrangements.

3.3.4 SPECIALIZED NURSING CONSULTING SERVICES. BMS shall develop and maintain, or shall supervise and coordinate the development and maintenance of, the following items or services for the Facility:

A. assistance in determining staffing and productivity standards;

B. assistance in refining "care systems" to improve patient care delivery, e.g., infection control, nursing assessment, and pharmacy therapeutics;

C. assistance in preparing appropriate nursing policies and procedures;

D. assistance in identifying nursing care deficiencies and recommending appropriate in-service education;

E. assistance in the departmental budgetary processes;

F. at least semi-annual nursing peer meetings; and

G. quarterly visits by nurse consultant at no charge to Hospital.

3.3.5 PRODUCTIVITY STANDARDS AND REPORTING SYSTEMS. BMS will recommend and assist in the implementation of tested and proven productivity staffing standards for all major departments of the Facility. BMS will also provide systems and staffing consultants to perform reviews and analysis on an as needed basis at no charge to Hospital.

3.3.6 SHARED PURCHASING OF SELECTED ITEMS AND ASSISTANCE IN PURCHASING OF MAJOR MOVABLE EQUIPMENT. At Hospital's request, BMS will assist Hospital in evaluating and participating in group purchasing relationships. At the option of Hospital, the Facility will be permitted to participate in the Alliant Affiliate Purchasing Program, subject to compliance with such Program's policies, procedures and membership fees.

3.3.7 SUPERVISORY TRAINING. Supervisory level personnel will have the opportunity to participate in at least two (2) management development programs per year provided or arranged by BMS.

3.3.8 THE DEVELOPMENT/ADMINISTRATION OF A FORMAL EMPLOYEE ENGAGEMENT SURVEY AND HOSPITAL IMPROVEMENT PROGRAM. BMS will administer a comprehensive survey bi-annually, designed to measure the level of engagement of employees toward various aspects of the work environment (surveys will be completed in the first or second quarter of 2017, and every other year thereafter).

3.3.10 CONTRACT REVIEW AND SPECIAL STUDIES. BMS will review all service contracts and make recommendations designed to improve service, reduce cost and, therefore, contain charge increases to patients.

3.3.11 QUALITY ASSESSMENT.

A. Hospital's and BMS' commitment to quality is a major management initiative. BMS will recommend systems for measuring and improving the quality of services in all major Facility departments.

B. BMS will make available to Hospital performance improvement training to develop Facility staff at no cost to Hospital. Hospital will be responsible for its employees' travel expenses to and from the training site.

C. BMS will provide benchmarking data to Hospital.

3.3.12 BOARD OF DIRECTORS EDUCATION. Members of the Board of Directors will have the opportunity to participate in Board educational programs. All Board educational workshops will be conducted in Louisville, Kentucky or other location selected by BMS and will be made available to all board members of BMS managed hospitals, including the Board of Directors, without additional charge. The Board educational workshops will be made available to Hospital every 12 months.

3.3.13 Legal Services. Notwithstanding anything to the contrary in this Agreement, BMS shall not be obligated to furnish legal advice.

3.4 EMPLOYEES.

3.4.1 BMS will consult with Hospital regarding the performance of Facility personnel and make recommendations in respect to the recruitment, hiring, training, promotion, assignment and discharge of Facility personnel as may be necessary for the proper operation of the Facility. Compensation and benefits at the Facility will be administered according to the compensation and employee benefits program approved by the Board of Directors.

3.4.2 BMS will provide compensation surveys and assist in annual revisions to the compensation program.

3.5 LICENSES AND ACCREDITATION. Where applicable, BMS will provide necessary services in preparing for license inspections and surveys by the Joint Commission.

EXHIBIT 2

3.6 POLICIES AND PROCEDURES. BMS will assist in the development or update of policies and procedures for Facility departments on an as-needed basis, subject to the approval of the Board of Directors.

3.7 GOVERNMENT REGULATIONS. In carrying out BMS' duties under this Agreement, BMS will use its reasonable best efforts to provide consultation and advice, and recommend policies and procedures, that enable the Facility to operate in compliance with all requirements of any statute, ordinance, law, rule, regulation or order of any governmental or regulatory body having jurisdiction in the premises. In the event of any changes in the laws, rules and/or regulations governing the operations of the Facility to the detriment of either BMS or Hospital, BMS shall make a presentation to the Board of Directors explaining such change, suggesting modifications to practices, policies and procedures, as may be needed, and the estimated costs of compliance for such change.

Section 4. COMPENSATION AND FEES.

4.1 MANAGEMENT FEE. The fee for the management services payable to BMS during the initial term of the contractual relationship shall be **Seventeen Thousand Dollars ($17,000) per month,** subject to adjustment as provided below. Payment shall be in equal monthly installments payable on the first day of each month. Annually the management fee will increase by the lesser of 3% or the annualized increase in the healthcare CPI (consumer price index).

4.2 MANAGEMENT FEES AT RISK. For each full-calendar year during the term of this Agreement, commencing with the 2017 calendar year, the parties will measure the actual performance of Hospital against targeted performance standards (each expressed as a corridor of performance) in each of four operational criteria. BMS will receive a bonus from Hospital, or BMS will surrender a portion of the Management Fees to Hospital, in any given calendar year during the term of this Agreement based on the results of such measurements. The means to determine whether a bonus will be payable by Hospital to BMS, or surrendered by BMS to Hospital, is set forth below in this Section 4.2. The total amount at risk to BMS and Hospital in each full calendar year during the term is the equivalent of two months of Management Fees for that calendar year (i.e., $34,000 is the annual total at risk as of the effective date of this Agreement) (referred to herein as the "At-Risk Amount").

A. The actual performance of Hospital in each given operational criteria shall be determined annually, commencing with the 2017 calendar year, based on operations for the full calendar year, as applicable, during the term. Each operational criteria is assigned a weighted

percentage, with BMS to receive (a) a positive weighted percentage for a given operational criteria if the Hospital's actual performance is better than the targeted performance corridor for such criteria, or (b) a negative weighted percentage for a given operational criteria if the actual performance of Hospital is worse than the targeted performance corridor for such criteria. The sum of all four weighted percentages (which may be zero or a positive or negative percentage) assigned to BMS in any given calendar year is referred to herein as the "Cumulative Weighted Percentage."

B. The table below defines each of the operational criteria and the targeted performance corridor and weighted percentage corresponding with each of such operational criteria for purposes of this Agreement. No Weighted Percentage (positive or minus) will be assigned to BMS if the actual performance falls within the targeted performance corridor for a given operational criteria. The financial and operational information used to compare actual results to targeted performance will be derived from the Hospital's audited financials and other independent sources.

| Operational Criteria | Targeted Performance Corridor | Weighted Percentage |
|---|---|---|
| Operating Income (Loss) | Within five percent (5%) of budget (over or under) as approved by the parties prior to the calendar year | ± 50% |
| Gross Days in Accounts Receivable | Within 2 days of budget (plus or minus) as approved by the parties prior to the calendar year | ± 20% |
| Patient Satisfaction Mean Score | Within 1.5% (plus or minus) the annual goal as approved by the parties prior to the calendar year | ± 15% |
| Clinical Quality Mean Score | Within 1.5% (plus or minus) annual goal as approved by the parties prior to the calendar year | ± 15% |

C. The product of (a) the Cumulative Weighted Percentage (which may be positive or negative) multiplied by (b) the At-Risk Amount will be the bonus amount (if such product is positive) to be paid to BMS or the surrender amount (if the product is negative) to be paid to Hospital under this Section 4.2. Any annual amount due to BMS by Hospital, or from BMS to Hospital, pursuant to this Section 4.2 shall be paid no later than 15 days after receipt of the audited financial statements of the Hospital for the applicable calendar year.

D. Several illustrations of the method of computation of the bonus or surrender amount, as applicable, are included in Exhibit A to this Agreement.

E. The terms of this Section 4.2 shall survive the expiration or termination of this Agreement.

4.3 COSTS EXCLUDED FROM MANAGEMENT FEE. The following costs and expenses are excluded from, and shall be paid by Hospital in addition to, the management fee:

A. For so long as the Facility Administrator is an employee of Hospital, Hospital shall pay the costs for salary, benefits and severance pay of the Facility Administrator. In the event the Facility Administrator shall be employed by BMS at any time during the term of this Agreement, then the salary, benefits and any other costs of employment of the on-site Facility Administrator employed by BMS, including but not limited to severance pay in the event Hospital requests BMS to replace the on-site Facility Administrator shall be paid by the Hospital to BMS in addition to the management fee; provided, that said costs are to be reviewed and approved by the Board of Directors. Notwithstanding the foregoing, if the on-site Facility Administrator who is employed by BMS is placed at another hospital managed by BMS, severance pay shall cease when the on-site Facility Administrator accepts such position and begins work, which shall not be unreasonably delayed.

B. Routine travel expenses of the full-time, on-site Facility Administrator incurred while conducting Hospital business, including but limited to one trip to Louisville, Kentucky per month.

C. Physician recruitment.

D. On-site Facility Administrator relocation expenses actually incurred and pre-approved by the Board of Directors.

E. Salary and benefits expenses of any Facility Administrators.

F. Data processing consultation fees.

G. Legal fees.

H. Architectural fees.

I. Specialized consulting services as approved by the Board of Directors.

4.4 DEFERRAL OF MANAGEMENT FEES. In the event that the revenues of Hospital are insufficient to pay the operating expenses of the Facility, including management fees and debt service requirements, all or such portion of the monthly installment of management fees equal to such insufficiency shall be deferred so long as such condition exists. All or such portion of any deferred management fees shall be paid by Hospital to BMS within ten (10) days after the end of the next succeeding month to the extent that revenues of Hospital in such month are sufficient to pay such operating expenses in such month, including the then current installment of the management fees and debt service requirements; provided that upon the expiration or termination of this Agreement, all deferred management fees shall be promptly paid by Hospital to BMS.

Section 5. TERM; TERMINATION

5.1 TERM AND PAYMENT OF FEES. The term of this Management Agreement shall commence on the 14th day of September, 2016, and shall expire on the 31st day of December, 2019. Upon termination of this Agreement, Hospital shall promptly pay BMS all compensation and monies then owing hereunder and BMS shall be relieved of any further obligations with respect to Hospital.

5.2 TERMINATION FOR CAUSE. Either Hospital or BMS may immediately terminate this Agreement at any time for cause (described herein below) upon written notice thereof of the other.

5.2.1 Hospital shall have cause for termination:

A. If BMS shall default in the performance of any material covenant, agreement, term or provision of this Agreement to be kept, observed or performed by BMS and such default shall continue for a period of thirty (30) days after written notice to BMS stating the specific default; or

B. If BMS shall apply for or consent to the appointment of a receiver, trustee or liquidator of BMS or of all or a substantial part of its assets, file a voluntary petition in bankruptcy or admit in writing its inability to pay its debts as they become due, make a general assignment for the benefit of creditors, file a petition or an answer seeking reorganization or arrangement with creditors, or to take advantage of any insolvency law, or if an order, judgment or decree shall be entered by a court of competent jurisdiction, on the application of a

creditor, adjudicating BMS a bankrupt or insolvent or approving a petition seeking reorganization of BMS or appointment of a receiver, trustee or liquidator of BMS of all or a substantial part of its assets.

5.2.2 BMS shall have cause for termination:

A. If Hospital shall default in the performance of any material covenant, agreement, term or provision of this Agreement to be kept, observed or performed by Hospital and such default shall continue for a period of sixty (60) days after written notice to Hospital stating the specific default; or

B. If any deferred management fee as described in Section 4.3 above shall remain unpaid for a period of ninety (90) days; or

C. If the Facility or any portion thereof shall be damaged or destroyed by fire or other casualty and if Hospital fails to make a decision to repair, restore, rebuild or replace any such damage or destruction within thirty (30) days after such fire or casualty, or shall fail to complete such work within a reasonable period of time; or

D. If Hospital shall apply for or consent to the appointment of a receiver, trustee or liquidator of Hospital or of all or a substantial part of its assets, file a voluntary petition in bankruptcy or admit in writing its inability to pay its debts as they become due, make a general assignment for the benefit of creditors, file a petition or an answer seeking reorganization or arrangement with creditors, or to take advantage of any insolvency law, or if an order, judgment or decree shall be entered by a court of competent jurisdiction, on the application of a creditor, adjudicating Hospital a bankrupt or insolvent or approving a petition seeking reorganization of Hospital or appointing a receiver, trustee or liquidator of Hospital of all or a substantial part of the assets of Hospital; or

E. If any license, permit or approval required, in the opinion of BMS, for the operation of Hospital cannot be obtained or is at any time suspended, terminated or revoked; or

F. Except as provided in Section 4.3 above, if Hospital shall fail to make any payment to BMS hereunder or to any affiliate of BMS pursuant to any agreement between Hospital and such affiliate and does not make such payment within ten (10) days after receiving written notice via certified mail, receipt requested, from BMS of such failure.

5.3 TERMINATION WITHOUT CAUSE. Either Hospital or BMS may terminate this Agreement at any time without cause by giving one hundred twenty (120) days prior written notice thereof to the other.

Section 6. RECORDS; CONFIDENTIALITY

6.1 CONFIDENTIALITY OF RECORDS. BMS will use its reasonable best efforts to protect the confidentiality of the records of the Facility and Hospital, and will comply with all applicable Federal, state and local laws and regulations relating to the records of the Facility and Hospital.

6.2 CONFIDENTIALITY OF AGREEMENT. Neither BMS nor Hospital shall distribute this Agreement, or any part thereof, to other parties unless required by law or by contractual requirements.

6.3 ACCESS TO BOOKS AND RECORDS OF SUBCONTRACTOR. Pursuant to Section 1861 (v)(1)(I) of the Social Security Act, BMS (subcontractor) agrees to make available, upon written request from the Secretary or Comptroller General, or any of their duly authorized representatives, until the expiration of four (4) years after the furnishing of services provided under this contract, the contract, books, documents and records of subcontractor that are necessary to verify the nature and extent of the contract costs which are $10,000 or more over a twelve (12) month period; and

If BMS carries out any of the duties under this contract through a subcontract with a related organization, with a value or cost of $10,000 or more over a twelve (12) month period, such subcontract shall contain a clause to the effect that until the expiration of four (4) years after the furnishing of such services pursuant to the subcontract, the related organization shall make available, upon written request from the Secretary or Comptroller General, or any of their duly authorized representatives, the subcontract, books, documents and records of such organization that are necessary to verify the nature and extent of such costs.

6.4. OWNERSHIP OF WORK PRODUCT. All operating procedures, protocols, information systems, operating data, computer data bases, reports

and other non-public proprietary business systems or information owned by BMS shall be and remain the exclusive property of BMS during and after the term(s) of this Agreement. Hospital agrees to treat such information as confidential during and after the term (s) of this Agreement and agrees to return any such information in its possession to BMS after the termination of this Agreement. At the expiration or termination of this agreement, Hospital shall be entitled to copies of all business and financial records and patient records associates with operation of the Facility.

Section 7. VESTED INTERESTS. Recognizing the scope and character of the services provided during the term of this Agreement and for the one (1) year period commencing with the date of expiration or termination hereof, BMS and Hospital shall not directly or indirectly solicit the employees of the other, or any affiliate or subsidiary of the other, or employ any such persons without the prior consent of the affected party.

Notwithstanding the foregoing, if at the end of the contract term ending September 14, 2019, Hospital elects not to renew the contract, Hospital may retain at its option the Facility Administrator if he or she is then employed by BMS, provided that Hospital pays to BMS for accrued vacation time of the Facility Administrator not to exceed 30 days and Hospital pays to BMS an additional Fifty Thousand Dollars ($50,000) to retain the Facility Administrator under such circumstances.

Section 8 BONDING OF EMPLOYEES. Hospital will furnish evidence that its Finance Department (Business Office) employees are bonded by a fidelity bond in the amount of One Hundred Thousand Dollars ($100,000).

Section 9. INSURANCE. Hospital, at its expense, will maintain or cause to be maintained with an insurer approved by BMS, which approval shall not be unreasonably withheld, comprehensive general liability and professional liability coverage against claims for bodily injury or death of persons and damage to or destruction of property, and Directors and Officers insurance, limits which shall not be less than $2,000,000 per occurrence and $4,000,000 in the aggregate. All insurance maintained pursuant to this Section shall: (a) name BMS as an additional insured; (b) provide that no cancellation thereof or material change therein shall be effective until at least ten (10) days after receipt of a written notice to such effect by BMS; and (c) be satisfactory in all respects to BMS. Promptly upon the execution of this Agreement and each year thereafter, Hospital will deliver or cause to be delivered to BMS certificates of the insurer as to the existence of all insurance policies, limitations of liability and conditions, or in lieu of such certificates, copies of originals of all such insurance policies, together with evidence that such policies are in good standing and in full force and effect.

Section 10. INDEMNIFICATION. Hospital hereby agrees to indemnify and hold harmless BMS, its successors and assigns, to the fullest extent permitted by law, from and against all claims for damages, losses and expenses, including but not limited to

attorneys' fees, for actions, causes of action, suits, debts, sums of money, complaints or demands of any kind or description, arising out of or resulting from the operation of the Facility, provided that such claims, damages, losses and expenses are not caused by willful or intentional misconduct, willful or intentional failure to act, bad faith, gross negligence, or a reckless disregard of BMS in the fulfillment of its obligations and duties under this Agreement, unless such act or omission of BMS was done or was not done at the express request or direction of Hospital, the Board of Directors or the Facility Administrator on behalf of the Board of Directors.

Section 11. ARBITRATION. Any dispute arising out of or related to this Agreement shall be settled by arbitration, which determination shall be binding on all parties for all purposes under this Agreement. In such arbitration, one arbitrator shall be appointed by Hospital, one by BMS, and a third by the two arbitrators so appointed. The arbitration shall be conducted at the Office of BMS in Louisville, Kentucky or such other place as the parties may agree, in accordance with the rules of the American Arbitration Association, except that the decision of the arbitrators shall be based solely on written submissions and oral presentations of the parties and witnesses called by them and such decision shall be rendered within 60 days of the date of the arbitration. Each of BMS and Hospital shall pay 50% of the costs and expenses of such arbitration, and each will pay its own attorneys' fees and expenses.

Section 12. MISCELLANEOUS PROVISIONS.

12.1 NOTICES. Any notice required or permitted to be given under this Agreement shall be in writing. All notices from BMS to Hospital shall be sufficient if actually delivered or sent by registered or certified United States mail to the following address:

Calhoun-Liberty Hospital
20370 NE Burns Avenue
Blountstown, FL 32424
Attention: Chair of the Board

All notices from Hospital to BMS hereunder shall be sufficient if actually delivered or sent by registered or certified United States mail to the following address:

Blue Management Services
2650 Eastpoint Parkway, Suite 200
Louisville, Kentucky 40223
Attention: Timothy L. Jarm, President

12.2 FORCE MAJEURE. BMS shall not be deemed to be in violation of this Agreement if it is prevented from performing or is hindered in its performance of any of its obligations hereunder for any reason beyond its

control, including, without limitation, strikes, shortages, lack of Hospital's financial resources, or any statute, regulation or rule of the Federal, any state or local government, or any agency thereof, now or hereafter in force.

12.3 ASSIGNMENT. Neither party shall assign this Agreement without the express written consent of the other party. Both parties agree that such consent shall not be unreasonably withheld.

12.4 RELATIONSHIP BETWEEN BMS AND HOSPITAL. No action taken by either party, or its officers, employees, or agents pursuant to this Agreement, shall be deemed to create any partnership, joint venture, association or syndicate between the parties, or shall be deemed to confer upon either party, any express or implied right or authority to create any obligation or responsibility on behalf or in the name of the other party except as expressly set forth in this Agreement. The parties to this Agreement are independent entities, contracting with each other solely for the purpose of carrying out the terms of this Agreement. Neither of the parties hereto, nor any of their respective officers, employees or agents, shall be construed to be the agent or representative of the other party hereto. Without limiting the foregoing, in no event will BMS's employees be deemed employees of Hospital, and as such shall not be entitled to any employee benefits including vacation pay, sick leave, retirement benefits, Social Security, Workers' Compensation, or disability or unemployment insurance benefits that may be provided to Hospital's employees, if any. The terms of this Section shall take precedence over any inconsistent terms in any policies, procedures, employee benefit plans, or otherwise of Hospital as presently in effect or as amended.

12.5 AMENDMENTS. No other amendments or modifications to this Agreement shall be valid and binding unless in writing and executed in the same manner as the execution of this Agreement.

12.6 GOVERNING LAW. The terms and provisions of this Agreement shall be governed by the laws of the State of Florida, without giving effect to its conflict of law principals.

12.7 ENTIRETY OF AGREEMENT. No prior stipulation, agreement or understanding, verbal or otherwise, of the parties or their agents shall be valid or enforceable unless referenced or embodied in the provisions of this Agreement.

12.8 WAIVER. The failure on the part of either party to insist in any instance upon the strict observance by the other of any provision or term of this Agreement shall not be construed as a waiver for the future of the observance of that provision or term or as a waiver of any other provision of this Agreement.

12.9 REGIONAL STAFF. **[Timothy Jarm will serve as the Regional Administrator for Hospital as long as he is an employee of BMS.]**

12.10 COUNTERPARTS. This Agreement may be executed in any number of counterparts signed by less than all of the parties hereto, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same agreement.

***[Signature Page Immediately Follows]***

**EXHIBIT 2**

IN WITNESS WHEREOF, BMS and Hospital have executed this Agreement as of the day and year first above written.

CALHOUN-LIBERTY HOSPITAL

By ______________________

Title Chairman of The Board

BLUE MANAGEMENT SERVICES, LLC
d/b/a Alliant Management Services

By ______________________
Timothy L. Jarm, President

# EXHIBIT 2

## Exhibit A

## Computation of section 4.2 Fee at Risk

| Desired Score ->> <br> Description/measurement | Higher Operating Income, lower loss <br> Operating Income (Loss) | Lower AR days <br> Gross Days in AR | Higher Mean Scores <br> Patient Satisfaction |
|---|---|---|---|
| Weight | 50% | 25% | 25% |
| Goal | **(150,000)** | **65.0** | **80** |
| Penalty Threshold criteria | Less than 5% of the YTD goal | More than 2 days in AR above goal | +1.5% or more more than goal |
| Bonus Threshold criteria | More than 5% of the YTD goal | Less than 2 days in AR below goal | -1.5% or more less than goal |
| **Risk corridor using above September 30 YTD goals:** | | | |
| MSA Penalty at score worse than ->>> | (157,500) | 67.0 | 78.8 |
| Bonus award at score at or better than ->>> | (142,500) | 63.0 | 81.2 |
| **Score awards, three examples:** | | | |
| Scenario 1 scores | 200,000 | 70 | 82 |
| Scenario 1 weighted % | | | 25% |
| Scenario 1 outcome % and award $ | 50% | $ 17,000 | |
| Scenario 2 scores | (200,000) | 62.0 | 80 |
| Scenario 2 outcome % | | | 0% |
| Scenario 2 outcome % and award $ | -25% | $ (8,500) | |
| Scenario 3 scores | (150,000) | 70 | 82 |
| Scenario 3 outcome % | 0% | | |
| Scenario 3 outcome % and award $ | 0% | $ - | |

Filing # 177701420 E-Filed 07/18/2023 04:54:26 PM

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT IN AND FOR CALHOUN COUNTY, FLORIDA**

**MARY WATSON,**

Plaintiff,

v. **Case No.: 2020 CA 64**

**BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,**

Defendants.
_______________________________________/

**DEFENDANTS' AMENDED EMERGENCY[1] JOINT MOTION TO ENFORCE AUTOMATIC STAY OR ALTERNATIVELY TO STAY PROCEEDINGS PURSUANT TO COURT'S INHERENT AUTHORITY**

Defendants, BLUE MANAGEMENT SERVICES, LLC D/B/A ALLIANT MANAGEMENT SERVICES ("Alliant") and CALHOUN-LIBERTY HOSPITAL

[1] Defendants initially filed this Motion without the benefit of having seen Plaintiff's Motion to Enforce Settlement or Alternatively to Strike the Mediation Agreement. Having had the opportunity to review Plaintiff's Motion, the Motion raises several issues which require resolution prior to the evidentiary hearing scheduled for July 27, 2023, thus necessitating the revised emergency designation. Specifically, the automatic stay prevents counsel for Envision Physician Services, LLC, from participating in the evidentiary hearing, which, in turn, prevents Defendants from introducing into at the hearing key pieces of parole evidence to supplement the terms of the Mediation Agreement. The result is substantial prejudice to both Alliant and CLH. Further necessitating the instant motion being heard on an emergency basis, as argued herein, the automatic stay is equally applicable to Alliant and CLH, and, therefore, Alliant and CLH run the risk of violating the provisions of the automatic stay should they begin preparing for the evidentiary hearing and issuing subpoenas to potential witnesses. Moreover, if the instant motion is granted and these proceedings are stayed, there will be no need to hold the evidentiary hearing. Accordingly, considering the instant motion on an emergency, expedited basis serves the dual purposes of avoiding substantial prejudice to Alliant and CLH in preparing for and defending their interests at the evidentiary hearing and conserving judicial resources.

ASSOCIATION, INC. ("CLH"), by and through the undersigned counsel, hereby respectfully move this Court for an order enforcing the provisions of the automatic bankruptcy stay or alternatively staying these proceedings pursuant to the Court's inherent authority and staying these proceedings pending completion of Defendant, Envision Physician Services, LLC's ("Envision") pending bankruptcy proceedings.

**PROCEDURAL BACKGROUND**

1. On July 14, 2020, Plaintiff filed the instant action against the Defendants alleging claims of public and private whistleblower retaliation and discrimination and retaliation under the Florida Civil Rights Act.

2. Following various extensions of the discovery period, the Parties attended mediation on April 20, 2023, and all Parties additionally entered into a Mediation Agreement on April 20, 2023. Pursuant to the Mediation Report filed on April 24, 2023, this case was settled at mediation.

3. On May 18, 2023, Envision, filed a Notice of Suggestion of Bankruptcy for Envision Healthcare Corporation and Certain of its Affiliates and Automatic Stay of Proceedings, indicating that on May 15, 2023, Envision Healthcare Corporation and its affiliate Envision, filed voluntary petitions under chapter 11 of title 11 of the U.S. Bankruptcy Code. As included within the Notice, pursuant to section 362(a) of the U.S. Bankruptcy Code, Envision's filing of the bankruptcy petition, gave rise to an automatic stay, applicable to all entities of, in pertinent part:

> (a) the commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtors (i) that was or could have been commenced before the commencement of the Chapter 11 Cases, or (ii) to recover a claim against the Debtors that arose before the commencement of the Chapter 11 Cases

4. Thereafter, on June 16, 2023, Plaintiff's Counsel noticed a case management conference to take place on July 10, 2023. Plaintiff's notice did not indicate why the case management conference had been scheduled or what Plaintiff intended to discuss at the conference.

5. At the July 10, 2023, Case Management Conference, Plaintiff's counsel announced—for the first time—that he intended to file a Motion to Strike the Parties' settlement agreement and Notice of Settlement, because there had not been a formal "meeting of the minds" with respect to the settlement agreement terms. Because Plaintiff had neither filed the motion, nor noticed it for a hearing, the Court ultimately set the matter for an evidentiary hearing to take place on July 27, 2023, and instructed the Parties to file any motions to be heard at the hearing by no later than July 17, 2023.

6. Alliant and CLH respectfully submit that the scheduled hearing on July 27, 2023, and any subsequent order from this Court on Plaintiff's yet-to-be-filed Motion to Strike would violate the automatic stay provisions of the U.S. Bankruptcy Code. As will be explained in more detail below, in this "unique circumstance," the automatic stay is applicable to all co-defendants because indemnification agreements between and amongst the co-defendants create an identity of interests sufficient to invoke the provisions of the automatic stay. Alternatively, Alliant and CLH contend that the Court should use its inherent authority to stay the proceedings pending the completion of Envision's bankruptcy proceedings so as to avoid prejudice to the remaining co-defendants.

7. Any inconvenience born by the Plaintiff with respect to foregoing the scheduled evidentiary hearing is entirely of Plaintiff's own making—having scheduled a case management conference in a case which had been settled and without first providing the Defendants or this

Court any advance notice that Plaintiff intended to file a motion to strike the signed mediation agreement between the Parties. Had Plaintiff made her intentions clear prior to the case management conference, Alliant and CLH would have had an opportunity to further research this matter and could have raised these arguments prior to the Court scheduling the evidentiary hearing. For whatever reason, Plaintiff chose not to do so.

8. Accordingly, Alliant and CLH respectfully request this Court enter an order staying these proceedings during the pendency of Envision' s bankruptcy proceedings either by enforcing the provisions of the automatic stay or, in the alternative, pursuant to its own inherent authority.

## LEGAL ARGUMENT

As of April 20, 2023—prior to Envision's bankruptcy petition—this case was settled. Now, post-petition, Plaintiff seeks to undo the Parties' agreement and return this case to active litigation. Not only would Plaintiff's attempt to invalidate the mediation agreement result in a violation of the automatic stay provisions of the bankruptcy code, it would also result in substantial prejudice to Alliant and CLH and unnecessarily burden judicial resources. For these reasons, a stay of these proceedings (either pursuant to § 362(a) or this Court's inherent authority) is warranted.

### *A. The Scheduled Evidentiary Hearing and Plaintiff's Proposed Motion to Strike Violate the Automatic Stay*

"As a general proposition, the automatic stay provisions of § 362(a) do not operate to stay claims against non-debtor defendants." *Gulfmark Offshore, Inc. v. Bender Shipbuilding & Repair Co., Inc.*, No. 09-0249-WS-N, 2009 WL 2413664, at *1 (S.D. Ala. Aug., 3, 2009). "Nonetheless, the protections of the automatic stay have been extended to non-bankrupt codefendants in 'unusual circumstances,' such as 'when there is such identity between the debtor and the third-party defendant . . . that a judgment against the third-party defendant will in effect be a judgment or

finding against the debtor.'" *Id.* (quoting *Kreisler v. Goldberg*, 478 F.3d 209, 213 (4th Cir. 2007) (collecting cases)).

One such circumstance is applicable in this case. Specifically, where "'Debtors owe potential contractual and common law duties to indemnify the Non-Debtors, [such that] the interests of the Debtors and Non-Debtors in the state action are identical,'" "federal courts have extended the automatic stay's protections to non-debtors who would be entitled to indemnity from the debtor in the event of a judgment against them." *Id.* (quoting *In re Philadelphia Newspapers, LLC*, 407 B.R. 606, 2009 WL 1911785, *6 (E.D. Pa. July 2, 2009)). Indeed, in such a circumstance, "'[t]o refuse application of the statutory stay . . . would defeat the very purpose and intent of the statute.'" *In re Stewart*, 329 B.R. 910, 915 (M.D. Ga. 2005) (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.), *cert. denied* 479 U.S. 876 (1986)).

For example, in *In re Friedman's, Inc.*, the Bankruptcy Court issued a temporary restraining order, staying pending state court litigation alleging that the defendant (the debtor's non-bankrupt president) violated a settlement agreement, misappropriated confidential information, breached a confidential relationship, and tortiously interfered with the business operations of the state-court plaintiff. 336 B.R. 896, 898 (S.D. Ga. 2005). In concluding that "unusual circumstances" existed the Bankruptcy Court explained, in pertinent part:

> [The president's] liability for her alleged acts can be imputed to [the debtor corporation's], that the actions [the president] allegedly has taken are "inextricably interwoven" with the Debtor's interests, and that judicial economy would be served if these issues were fully litigated in this Court in a single proceeding rather than running the risk of inconsistent results if the Debtor's action proceeded in this Court against [the state court plaintiff] and [the state court plaintiff's] action against [the president] proceeded in Dallas County, Texas.

*Id.*

Similar to *Friedman*, Alliant and CLH's interests are inextricably intertwined with Envision. Pursuant to the July 1, 2019 Services Agreement between Envision and CLH ("Services Agreement"), Envision:

> [S]hall indemnify and hold Hospital harmless from any and liability, loss (including attorneys' fees and costs) or damages suffered or incurred by Hospital as a result of [Envision's] failed to comply with its obligations . . . [to comply with all applicable provisions of federal, state and local statutes, rules and regulations]

Exhibit 1, Services Agreement at 9 (Section 31.A.; Section 31.B.). Additionally, pursuant to the Management Services Agreement between Alliant and CLH ("Management Agreement"), CLH:

> [A]grees to indemnify and hold harmless [Alliant], it successors and assigns, to the fullest extent permitted by law, from any against all claims for damages, losses and expenses, including but not limited to attorneys' fees, for actions, causes of action, suits, debts, sums of money, complaints or demands of any kind or description, arising out of or resulting from the operation of the Facility, provided that such claims, damages, losses and expenses are not caused by willful or intention misconduct, willful or intention failure to act, bad faith, gross negligence, or a reckless disregard of [Alliant] in the fulfillment of its obligations and duties under this Agreement, unless such act or omission of BMS was done or was not done at the express request or direction of the Hospital, the Board of Directors or the Facility Administrator on behalf of the Board of Directors.

Exhibit 2, Management Agreement at 16-17 (Section 10).

Taken together, these agreements make clear that Envision, is required to indemnify both Alliant and CLH should a judgment be entered against either Defendant in this case. Specifically, pursuant to the Services Agreement Envision is required to "arrange for physician or mid-level provider . . . coverage for Hospital." Exhibit 1 at 1. Plaintiff, Watson's employment with the Hospital was arranged by Envision pursuant to the Services Agreement. Accordingly, to the extent CLH incurs any liability as a result of Envision's failure to comply with Florida Statutes (as alleged in this case as violations of the Florida Public Whistleblower Act, Florida Private Whistleblower Act, and the Florida Civil Rights Act) with respect to Plaintiff's employment, Envision is required to indemnify CLH. The same is true to the extent that Alliant incurs any liability as a result of

Plaintiff's employment—CLH being required to indemnify Alliant and Envision being required to indemnify CLH.

Moreover, Plaintiff's allegations in the Complaint as to each co-Defendant stem from the singular adverse employment action, for which Plaintiff alleges responsibility on the part of each co-defendant. Throughout this litigation, Plaintiff alleged that the co-Defendants were "joint employers," and consequently, that each is liable to the extent that her termination violated Florida Statutes. Because Plaintiff's claims in this case are premised wholly on her termination, an act which she alleges each of the co-Defendants were responsible for, the facts are "inextricably intertwined." For this same reason, "judicial economy would be served if [Plaintiff's claims in this case] were fully litigated . . . in a single proceeding rather than running the risk of inconsistent results," if this action were permitted to proceed only as to the Hospital and Alliant. *In re Friedman's, Inc.*, 336 B.R. at 898-99.

Accordingly, because voiding the settlement agreement between the Parties and returning this case to active litigation, "would inevitably have an adverse impact upon the property of the [bankruptcy] estate," such actions "must be barred by the automatic stay provision." *In re Gucci*, 126 F.3d 380, 392 (2d Cir. 1997); *see In re Stewart*, 329 B.R. at 915 (observing that unusual circumstances justifying stay of proceedings against non-bankrupt codefendants may exist where third party is entitled to indemnity from debtor for any judgment entered against him); *In re National Staffing Services, LLC*, 338 B.R. 35, 37 (Bankr. N.D. Ohio 2005) (identity of interests between debtor and third party may create requisite unusual circumstances to justify staying claims against third party); *N.L.R.B. v. McDermott*, 300 B.R. 40, 43 n.7 (D. Colo. 2003) ("The automatic stay may apply to a non-debtor in special circumstances, such as where there is identity of interest

between a debtor and a third party so that a judgment against a non-debtor would be binding on a debtor.").

### *B. Regardless, this Court Should Stay These Proceedings Pursuant to its Inherent Authority*

Alternatively, even if this Court were to conclude that the automatic stay did not bar further litigation of this case (which it does), this Court should nevertheless stay these proceedings pursuant to its inherent authority in order to avoid prejudice to Alliant and CLH and in the interests of judicial economy. Pointedly, allowing this employment case to proceed without participation of the entity responsible for arranging Plaintiff's employment and provision of services would significantly restrict Alliant and CLH's ability to defend their interests and would raises concerns of fairness and judicial economy.

"[R]egularly constituted courts have power to do anything that is reasonably necessary to administer justice within the scope of its jurisdiction." *Pet. of Fla. Bar*, 61 So. 2d 646, 647 (Fla. 1952). This "inherent power" extends to "control of the court's process and procedure, control of the conduct of its officers and the preservation of order and decorum with reference to its proceedings." *Id.*; *see S.Y. v. McMillan*, 563 So. 2d 807, 809 (Fla. 1st DCA 1990) ("A court has the inherent power to control the conduct of its own proceedings in order to preserve order and decorum in the courtroom, to protect the rights of parties and witnesses, and to generally further the administration of justice").

Courts have used this inherent authority to stay proceedings against non-bankrupt co-defendants, even when the automatic stay provision is otherwise inapplicable to that co-defendant. *Lanlard Toys Limited v. Toys "R" US-Dele., Inc.*, No. 3:15–cv–849–J–34PDB, 2017 WL 5256870, at *5 (M.D. Fla. Nov. 13, 2017). That is particularly true in this case where "[i]f the Court were to permit [the plaintiff] to proceed against [the Remaining Defendants] now, it would

risk wasting judicial resources and inconsistent judgments against these parties." *Id.* (quoting *SCI Northbay Commerce Fund 4, LLC v. SCI Real Estate Investments*, No. 8:11–cv–31–T–24–TGW, 2011 WL 1133898, at *1 (M.D. Fla. Mar. 28, 2011) (first and third alterations in original)). As the district court explained in *Gulfmark Offshore, Inc.*:

> Such an approach would be extraordinarily inefficient, setting the stage for duplicative trials on closely related claims against closely related defendants. Much of the evidence relating to both sets of claims would be identical. Redundancies of effort on the part of litigants and the Court would be large and inevitable, and litigation costs for both sides would be increased substantially. There would be a non-trivial risk of inconsistent judgments.

2009 WL 2413664 at *3.

As explained above, proceeding in such a piecemeal fashion here would lead to the same result, because the claims against each of the Defendants, "are comprised of common questions of law and fact more suitably resolved in a single proceeding." *Lanard Toys Limited*, 2017 WL 5256870, at *5 (internal quotation omitted). Each Defendant's liability is premised on the same facts and the same alleged adverse employment action. Plaintiff's allegations against the Defendants are "highly intertwined" to say the least. *Rodriguez v. Advantage Opco, LLC*, No. 19-60747-CIV-COHN/STRAUSS, 2021 WL 9565796, at *2 (S.D. Fla. Oct. 15, 2021) (staying proceedings against non-debtor co-defendant where "the interests of justice and judicial economy, including avoiding inconsistent results, the duplication of efforts, and the waste of judicial resources, will be promoted by granting a stay of this proceeding").

Further, there is no prejudice to the Plaintiff in staying these proceedings, pending the conclusion of Envision's bankruptcy proceedings. Indeed, in light of the potential prejudice to Alliant and CLH and the strain on judicial resources, a delay in obtaining judgment "is not a sufficiently compelling form of prejudice to outweigh the countervailing considerations set forth herein." *Lanard Toys Limited*, 2017 WL 5256870, at *5 (internal citation omitted). Conversely, "a

stay of the claims against the [remaining] Defendants until such time as the automatic stay is lifted as to the claims against [Envision] would redound to [Plaintiff's] benefit, as well, in the form of increased efficiency, less duplication of effort, lower litigation costs, and less risk of inconsistent judgments." *Gulfmark Offshore, Inc.*, 2009 WL 2413664, at *3, n.7.

**WHEREFORE**, Defendants, **BLUE MANAGEMENT SERVICES, LLC D/B/A ALLIANT MANAGEMENT SERVICES** and **CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.** respectfully request the entry of an order staying these proceedings pending the conclusion of the pending bankruptcy proceedings, either pursuant to the automatic bankruptcy stay or this Court's inherent authority, and granting any further relief as this Court deems appropriate.

Respectfully submitted this 18th day of July 2023.

s/ *Michael B. Kelly*
MICHAEL B. KELLY
Florida Bar No.: 115345

COLE, SCOTT & KISSANE, P.A.
890 South Palafox Street, Suite 200
Pensacola, Florida 32502
Telephone (850) 483-5909
Facsimile (850) 438-6969
E-mail: michael.kelly@csklegal.com
E-mail: zaray.avino@csklegal.com

*Counsel for Defendant Calhoun-Liberty Hospital Association, Inc.*

*/s/ Kristen C. Diot*
**KRISTEN C. DIOT**
Florida Bar Number: 0118625
kdiot@sniffenlaw.com
**LISA B. FOUNTAIN**
Florida Bar Number: 948802
lfountain@sniffenlaw.com

**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004

*Counsel for Defendant, Blue Management Services, LLC d/b/a Alliant Management Services*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this this 18th day of July 2023, a true and exact copy of the foregoing was furnished via the Florida Court's E-Filing Portal to all counsel of record.

*/s/ Kristen C. Diot*
**KRISTEN C. DIOT**

EXHIBIT 1

EXHIBIT 3

DRAFT – FOR DISCUSSION PURPOSES ONLY

# SERVICES AGREEMENT

THIS AGREEMENT is made by and between Calhoun Liberty Hospital ("Hospital") and EmCare Physician Services, Inc. ("Contractor"). (Each of Hospital and Contractor is a "Party" to this Agreement and collectively they are the "Parties" to this Agreement.)

## PRELIMINARY STATEMENTS

A. Hospital makes health care services available to patients presenting themselves for treatment twenty-four (24) hours per day, seven (7) days per week.

B. Contractor provides administrative and professional services ("Services") to hospitals including, without limitation, arranging for physician or mid-level provider (collectively, "Clinician") coverage for Hospital.

C. Hospital desires to engage Contractor to provide Services to Hospital as set forth herein.

D. Contractor desires to provide administrative services to Hospital as set forth herein.

## AGREEMENT

In consideration of the covenants contained in this Agreement, the parties agree as follows:

1. Term. This Agreement shall become effective at 12:00 a.m. on the 1st day of July, 2019 ("Effective Date") and shall expire three (3) years thereafter ("Initial Term"); provided however, this Agreement (a) may be terminated sooner as provided below, and (b) unless sooner terminated, shall be automatically renewed for additional one (1) year periods ("Renewal Terms") upon its normal expiration date until terminated.

2. Termination. This Agreement may be terminated as follows:

A. Termination by Either Party without Cause. Either Party may terminate this Agreement by providing no less than ninety (90) days' written notice of termination to the other Party, in which case this Agreement will terminate at the end of the applicable notice period.

B. Termination by Either Party for Breach. Either Party may terminate this Agreement immediately upon written notice to the other Party: (a) if the other Party breaches any term of this Agreement and fails to cure that breach within thirty (30) days after receipt of written notice specifying the alleged breach. In addition, Hospital may terminate this Agreement immediately for Contractor's failure to promptly bar any Clinician from performing services under this Agreement, after written notice from Hospital, if that Clinician: (i) engages in conduct which materially jeopardizes the health, safety, or welfare of any person or the safety, or regular functions of the Hospital or the Services; (ii) resigns, is expelled, is suspended from the Medical Staff, is disciplined, loses clinical privileges or has his or her license to practice medicine in the state where Services are rendered (the "State") suspended or revoked; (iii) is convicted of any crime punishable as a felony; or, (iv) does not meet the qualifications required by this Agreement. Further, in the event that Hospital permits another provider to provide the exclusive Services hereunder, or Hospital provides the Services itself,



EXHIBIT
PENGAD 800-631-6989
Watson
2
10/18/22

Contractor may immediately terminate this Agreement.

C. Termination by either Party in the Event of Bankruptcy. Either Party may terminate this Agreement with seven (7) days' notice upon the other Party's general assignment for the benefit of creditors, the other Party's petition for relief in bankruptcy or similar laws for the protection of debtors, upon the initiation of such proceedings against the other Party if the same are not dismissed within forty-five (45) days of service, or upon notice of a finding that the other Party is insolvent under applicable law.

D. Termination by Contractor for Hospital's Failure to Pay Compensation. In the event that Hospital fails to pay Contractor's compensation as set forth herein and fails to cure such failure within fifteen (15) days following a written notice from Contractor, Contractor may terminate this Agreement at the end of such fifteen (15) day cure period by providing notice of such termination to Hospital.

E. Immediate Termination by Either Party. Either may terminate the Agreement immediately if the other party: (i) is suspended, excluded, or debarred from participation in any Federal government payor program; or (ii) fails to maintain professional liability insurance required by this Agreement.

3. Services.

A. Services. Contractor and the Clinicians shall provide the Services set forth in **Exhibit A.**

B. Medical Records. Contractor shall require that Clinicians (i) appropriately document in the medical record the treatment provided and the instructions given each patient by a Clinician, and (ii) comply with any applicable Medical Staff rules and regulations concerning medical records.

C. Operation. Contractor shall consult with Hospital, as requested by Hospital, concerning the organization and operation of each department where Clinicians provide Services.

D. Quality Assurance and Risk Management. Contractor shall require that Clinicians participate in Hospital's Quality Assurance and Risk Management programs.

E. Government Regulation. Contractor shall require that Clinicians conform to Federal and state laws and regulations related to the provision of professional services within each department where Clinicians provide Services.

F. Compliance with Accreditation Standards. Contractor shall require that Clinicians cooperate with Hospital in its efforts to comply with all applicable standards promulgated by the Joint Commission on and any surveys conducted thereby.

G. Compliance. Contractor shall require that Clinicians participate in the corporate compliance program applicable to Contractor.

4. Conditions to Status as Contractor Clinician.

A. Medical Staff Privileges. Clinicians presented by Contractor to Hospital for the purpose of providing Services in the Department (as defined in Exhibit A) shall (i) maintain appropriate licensure to provide services at Hospital, and (ii) have been granted appropriate privileges or otherwise provided with authorization by Hospital consistent with the Medical Staff bylaws of Hospital ("Bylaws"). Contractor shall perform initial interviews, review credentials and references and provide to Hospital a compilation of qualifications and other information intended to assist Hospital in determining whether to grant privileges to the candidate. Candidates identified by Contractor shall be granted Medical Staff privileges ("Staff Privileges") in accordance with the standard rules and regulations of the Medical Staff, except that neither Contractor nor any candidate shall be responsible for any fees charged by Hospital or Medical Staff in conjunction with applying for or maintaining Staff Privileges. Hospital shall be entitled to require that all medical professional candidates complete the Hospital's standard application documents including, without limitation, standard waivers and releases. Hospital agrees not to discriminate in granting privileges to qualified candidates identified by Contractor and shall use its best efforts to process all applications for Medical Staff Privileges in a timely manner. Candidates granted Staff Privileges shall receive the rights and privileges, and be subject to the responsibilities of, membership on Hospital's Medical Staff, and all Clinicians shall in all events be subject to removal from the Medical Staff, if applicable, for the reasons identified in the Bylaws. Any Clinician will lose Medical Staff membership automatically when such Clinician is no longer authorized by Contractor to serve as a Clinician pursuant to this Agreement.

B. Temporary Privileges. Hospital agrees to process promptly all applications submitted by Contractor or a Clinician candidate identified by Contractor requesting temporary privileges for such Clinician. Such application shall conform to Hospital's standard requirements.

C. Removal of Clinicians. Hospital acknowledges that the Clinician agreements may include a without cause termination provision (the "Required Notice Period"). Further, if the Clinician agreement contains a Required Notice Period, Hospital acknowledges that a request for removal of a Clinician without cause or notice will result in an interruption in Contractor's schedule and increased costs related to compensation and coverage. Accordingly, if the Clinician agreement contains a Required Notice Period, should Hospital request the removal of a Clinician, without sufficient cause outlined in a written request, or without allowing the Contractor to provide the Clinician with the Required Notice Period, Hospital shall, for ninety (90) days following removal of such Clinician, reimburse Contractor for all costs associated with (1) increased compensation, (2) increased staffing, (3) locum tenens coverage, and (4) any other expenses incurred by Contractor resulting from the removal of a Clinician. For purposes of this Section, "sufficient cause" shall include the following:

(i) Limitation, suspension or termination of Clinician's Medical Staff privileges at Hospital for any reason;

(ii) Limitation, suspension or revocation of Clinician's license to practice medicine in the State;
(iii) Limitation, suspension or revocation of Clinician's federal or state registration to prescribe or dispense controlled substances;
(iv) Failure by Clinician to comply with all applicable federal, state, or local laws and regulations;
(v) Credible accusation or conviction of Clinician for the commission of civil fraud related to health care, or a felony or other crime involving fraud or dishonesty;
(vi) Engagement of Clinician in any conduct that jeopardizes or threatens to jeopardize the health or safety of patients; or
(vii) Engagement of Clinician in any grave misconduct, gross incompetence or gross malfeasance, or a material violation of the Medical Staff Bylaws.

During the Required Notice Period following the removal of any Clinician, with or without sufficient cause, Hospital will process requests for emergency/temporary privileges in accordance with Section 4.B. within ten (10) days of Contractor submitting a completed application, to avoid any interruptions in Contractor's schedule to allow Contractor to provide uninterrupted coverage as required pursuant to this Agreement. Hospital shall further reimburse Contractor for any financial losses related to delays in processing and/or granting emergency/temporary privileges within ten (10) days of the submission of a completed application, including any loss in billable revenue.

D. Automatic Termination of Privileges. In the event any Clinician is terminated for any reason, his/her Medical Staff privileges shall be terminated automatically. All Clinicians shall, by written agreement, waive any and all due process rights regarding termination of privileges under this Section.

E. Medicare/Medicaid Exclusion. Contractor agrees to use its best efforts to assure that no Clinician has at any time been excluded from participation in any federally funded health care program including, without limitation, Medicare and Medicaid.

5. Insurance. Contractor shall arrange for each Clinician to be provided with professional liability insurance covering Clinicians while providing services at Hospital, which insurance shall have coverage limits of One Million Dollars ($1,000,000) per loss event and separate, per Clinician aggregate limits, in the amount of Three Million Dollars ($3,000,000) annually.

6. Covenants of the Hospital.

A. Operational Requirements. Hospital shall provide facility space, equipment, drugs, anesthetics, office and other supplies, utilities, janitorial services, laundry services, nursing, clerical/administrative support and any other support services reasonably necessary for the functioning of the Department to allow the Clinicians to perform services in a manner that meets all applicable standards of care as outlined in this Agreement. This shall include the direct costs and expenses associated with the utilization of a documentation system. Hospital

shall provide and/or perform all necessary maintenance in order to maintain any equipment utilized by Contractor in good operating condition in accordance with the manufacturer's specifications. Hospital shall further provide either: (i) adequate facilities within the Hospital for Contractor's installation and storage of a dedicated high speed data line; or, (ii) a secure web browser interface to enable Clinicians to access Contractor's network; and, (iii) adequate facilities within the Hospital for Contractor's installation and storage of a dedicated electronic timekeeping device to enable all of Contractor's healthcare providers to access Contractor's timekeeping system. Hospital agrees to provide to Contractor, within a reasonable time, the necessary data from its information systems and other applicable sources for Contractor to provide the services and meet any performance targets reflected in this Agreement. In addition, Hospital shall comply with the appropriate prophylactic measures that meet all applicable state and federal laws and regulations related to exposures to potentially infectious bodily fluids or other hazardous substances.

B. Policies and Procedures. Hospital agrees to provide Contractor with copies of all of the policies and procedures of Hospital applicable to each Department where Contractor will provide Services including, without limitation, Hospital's:

1. Hazardous Communication Program and applicable MSDS sheets;
2. Emergency Evacuation/Disaster Plan;
3. Other safety rules such as the use of proper personal protective equipment to protect against exposure to blood-borne pathogens; labeling and protective features of sharp containers; disposal, packaging and labeling hazardous waste; location of hand washing facilities; and location of any asbestos or other hazardous materials; and
4. Policies and procedures regarding security, workplace violence, sexual harassment, discrimination, COBRA/EMTALA and corporate compliance.

C. Monthly Call List. Hospital agrees to prepare and publish monthly a call list of Medical Staff physicians with admitting privileges who will be available to provide consultation and follow up care to patients of the Hospital.

D. Compliance with Accreditation Standards. Hospital agrees to use its best efforts to comply with all applicable standards promulgated by the Joint Commission.

E. Department Records. Hospital agrees to retain any and all medical records compiled in each department and to make such records available to Contractor upon request. Hospital acknowledges that Contractor may utilize such records for all purposes determined legitimate by Contractor including, without limitation, Quality Assurance and Risk Management programs.

F. Exclusive Nature of the Agreement. Hospital agrees that it shall not engage any person or entity other than Contractor to provide or perform the clinical and administrative services contemplated by this Agreement.

G. Patient Consent Form. In accordance with the Telephone Consumer Protection Act, Hospital shall include a provision in its patient consent forms that authorizes Hospital and all Clinicians who have provided care to the patient, along with any

billing services, collection agencies, attorneys, or other agents working on their behalf, to contact the patient on his or her cell phone and/or home phone using automatic telephone dialing systems or other computer assisted technology. Hospital shall provide Contractor with a copy of such patient consent form including the abovementioned language.

8. Compensation. Contractor shall be compensated as set forth in **Exhibit B.**

9. Assistance to Contractor. Hospital acknowledges that Contractor requires certain information to be obtained by Hospital and supplied to Contractor to enable Contractor to bill patients as provided above. Therefore, Hospital shall, at its expense, perform the functions, and provide Contractor promptly with the information, identified below:

A. Obtain medical insurance information (including photocopies of insurance cards, pre-authorizations for services and driver's licenses) for each patient/patient visit, and require all patients, and/or guarantors or other legally responsible parties to sign any forms required by medical insurers;

B. Hospital shall, on a daily basis, electronically transfer to Contractor, or its designees, patient records, including, without limitation, registration, admission, and discharge documentation as outlined in Exhibit C in a secure HL7 format on a mutually agreed upon timeline. Hospital shall also provide Contractor with a complete electronic medical record in a CCA or CCD format, including but not limited to physician and nursing notes, continuation sheets, code/trauma forms, and all appropriate patient records, in order to obtain Patient information and other documentation deemed necessary by Contractor and/or its billing company to bill for services provided by Clinicians and/or provide additional services. The Hospital shall establish the abovementioned electronic interfaces prior to the Effective Date of this Agreement to enable Contractor to capture all charges as of the first day of providing services at the Hospital. If the Hospital does not establish the required interface by the Effective Date of the Agreement, Hospital agrees that it shall pay Contractor a revenue guarantee equal to the revenue the Contractor should have received from the professional services performed by the Clinicians but did not receive due to the lack of documentation it needs to bill the patients for professional services, less any collections received by Contractor for those professional services.

C. Provide Contractor daily with an accounting of all payments received by Hospital attributable to services rendered by Clinicians. Hospital shall remit payment weekly by check to Contractor for amounts received by Hospital attributable to services rendered by Clinicians

10. Use of Information. Contractor agrees not to disclose any of the information provided to it by Hospital as identified in Section 9 above except as required by Contractor, its agents, representatives or affiliates for professional liability or risk management purposes or to allow or facilitate Contractor's billing and/or collecting for services rendered by Clinicians.

11. Relationship of Parties. The Parties agree that (a) they are independent contractors, (b) they will at all times act hereunder as independent contractors, (c) under no circumstances shall either of them construe this Agreement, or conduct itself in a manner which shall allow it to be construed, as one

**EXHIBIT 1**

EXHIBIT 3

DRAFT – FOR DISCUSSION PURPOSES ONLY

of agency, partnership, joint venture or employment between them, and (d) neither of them shall or may exercise direction or control over the provision of services by the other of them. Nothing in the foregoing, however, shall preclude the services rendered by Clinicians from being performed (x) in accordance with generally accepted professional standards in the medical profession, (y) in compliance with the Hospital Bylaws, and (z) consistent with applicable Hospital policies and procedures.

12. Referrals. The Parties acknowledge that none of the benefits granted to either Party under this Agreement are conditioned on any requirement that either Party or Clinicians make referrals to, be in a position to make or influence referrals to, or otherwise generate business for the other.

13. Termination Due to Legislative or Administrative Changes. In the event there is (a) a change in law or regulation (or in the application thereof) including, without limitation, changes to the Medicare and Medicaid programs, (b) a change in any medical insurer's reimbursement, or (c) a new agreement with a medical insurer by either Hospital or Contractor, any of which materially affects the reimbursement for services rendered to patients by the Clinicians, either Hospital or Contractor may submit a written proposal to change the compensation owed by Hospital to Contractor, if any, or the Clinician fee schedule. If within ninety (90) days of submitting such proposal, the Parties are unable to agree on the Administrative Fee and/or the Clinician fee schedule, either Party may terminate this Agreement upon no less than thirty (30) days' prior written notice to the other Party.

14. Government Regulations. Should any law, regulation or procedure of the government or any governmental agency, or the Parties reasonable interpretation thereof, effect a change which materially affects the ability of a Party to satisfy any provision of this Agreement, the Parties shall promptly and in good faith renegotiate the affected provision so that such provision can be satisfied in accordance with such law, regulation or procedure. If the Parties are unable, within ninety (90) days, to agree on an acceptable change to the affected provision, either Party may terminate this Agreement upon no less than thirty (30) days' prior written notice to the other Party.

15. Liaison. Contractor and Hospital shall each designate one or more liaisons to coordinate communications between them. For chart acquisition and demographic and insurance information issues, the Hospital shall designate an additional liaison representative who shall work with Contractor and its affiliates in order to maintain a sufficient flow of data to allow Contractor to bill for the services rendered by the Clinicians and other healthcare providers.

16. Incurring Liabilities. Neither Party shall have the authority to bind the other Party under any contract or agreement or incur any debts or other obligations on behalf of the other Party.

17. Confidentiality. All statistical, financial, personnel, medical records and other data relating to the business of Hospital is confidential and shall be retained in confidence by Contractor, its employees and agents; provided however, the foregoing obligation does not apply to such data, information or materials which (a) Hospital permits Contractor to release, (b) Contractor is required by law to release, or (c) Contractor requires to bill, or collect from, Hospital patients or their insurers.

18. Authority. Each of Hospital and Contractor represent and warrant that it has the right, authority and power to enter into this Agreement.

19. Changes in Bylaws. Hospital agrees to notify Contractor in a timely manner of any proposed, anticipated or actual changes to the Bylaws.

20. Governing Laws. The laws of the State, without regard to the conflicts of law principles thereof, shall govern the validity, construction, enforcement and interpretation of this Agreement.

EXHIBIT 1

EXHIBIT 3

DRAFT – FOR DISCUSSION PURPOSES ONLY

21. Entire Agreement. This Agreement embodies the entire agreement between the Parties and supersedes all prior agreements and understandings, if any, relating to the subject matter hereof, and this Agreement may be amended only by an instrument in writing executed jointly by an officer duly authorized by the board of directors of the respective Parties.

22. Binding Effect. This Agreement shall be binding upon and inure to the benefit of Contractor and Hospital, and their respective successors and assigns.

23. Assignment. This Agreement may not be assigned by Hospital without the prior written consent of Contractor. This Agreement may be assigned by Contractor to an affiliate or subsidiary of Contractor and Contractor shall be released of its obligations hereunder if the assignee agrees to be bound by all terms and conditions of this Agreement.

24. Waiver of Breach. The waiver by either Party of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by such Party.

25. Use of Words. Whenever necessary in this Agreement and where the context requires, the gender of words shall include the masculine, feminine, and/or neuter, and the number of all words shall include the singular and the plural.

26. Descriptive Headings; Preliminary Statements. The captions and headings used in this Agreement are for convenience only and do not limit or amplify the terms and provisions in this Agreement. The Preliminary Statements are incorporated into this Agreement by this reference.

27. Interpretation. Nothing in this Agreement shall be construed as authorizing Contractor to practice medicine or to direct or control the practice of medicine by any Clinician providing medical services at the Hospital.

28. Severability. If any provision of this Agreement, or the application thereof to any person or circumstance, is held to be illegal, invalid or unenforceable for any reason, such illegality, invalidity or unenforceability shall not affect any other provision of this Agreement that can be given effect in the absence of the illegal, invalid or unenforceable provision of application. To this end, all provisions of this Agreement are declared to be severable.

29. Notices. Any notice, demand, or communication required, permitted, or desired to be given under this Agreement, shall be deemed effectively given when either: (i) personally delivered; (ii) three (3) days after mailed by United States mail, certified return receipt requested; or (iii) one (1) day after dispatch by overnight courier, addressed as follows:

| | |
|---|---|
| If to Contractor: | EmCare Physician Services, Inc.<br>7700 West Sunrise Blvd.<br>Plantation, Florida 33322<br>ATTN: Legal Dept. |
| With Copy to: | Envision Healthcare<br>1 A Burton Hills Blvd.<br>Nashville, TN 37215<br>Attn: Legal Department |

If to Hospital: Calhoun Liberty Hospital
20370 Burns Ave.
Blountstown, Florida 32424
ATTN: CEO

or to any other address, and to the attention of all other person(s) or officer(s) as either party may designate by written notice to the other party.

30. Government Access. Until the expiration of four years after the furnishing of services pursuant to this Agreement, Hospital and Contractor shall make available, upon written request of the Secretary of the Department of Health and Human Services, the Comptroller General of the United States, or any other duly authorized representative, this Agreement and the books, documents and records that are necessary to certify the nature and the extent of the cost of services provided pursuant to this Agreement.

31. Indemnification.

A. Notwithstanding any other provision in this Agreement, each Party agrees to comply with all applicable provisions of federal, state and local statutes, rules and regulations including, without limitation, the fraud and abuse and anti-kickback statutes. Further, each Party shall remain responsible for refunding or returning to any third party payer any and all amounts received by that Party in violation of applicable law or contract.

B. Contractor shall indemnify and hold Hospital harmless from any and all liability, loss (including attorneys' fees and costs) or damages suffered or incurred by Hospital as a result of Contractor's failure to comply with its obligations under Sections 16, 17 and 31(A) above.

C. Hospital shall indemnify and hold Contractor harmless from any and all liability, loss (including attorneys' fees and costs) or damages suffered or incurred by Contractor as a result of Hospital's failure to comply with its obligations under Sections 16 and 31(A) above.

Notwithstanding the provisions of this Section 31, each Party shall be responsible for refunding any excess amounts or overpayments which that Party received from third party payers.

32. Risk Management Obligation. Any incident known to either Party occurring in the Hospital that could result in liability to Contractor or Hospital shall be reported promptly to the other party after that party actually becomes aware of it. An incident is defined as any happening or occurrence which is not consistent with the routine operation of the Hospital or of the routine care of a particular patient.

33. Counterparts. This Agreement may be executed in multiple counterparts, each of which shall, for all purposes, be deemed an original, and all of which shall, for all purposes, constitute one and the same instrument.

34. No Third-Party Beneficiaries. Nothing in this Agreement shall be construed as conferring any benefit, either directly or indirectly, on any person or entity not a Party to this Agreement.

35. Compliance Obligations. Hospital acknowledges that Contractor and its affiliated Clinicians are subject and required to abide by its Code of Conduct and Anti-Kickback Statute policies and procedures. Hospital can access Contractor's Code of Conduct and its policies and procedures regarding the Anti-Kickback Statute at https://www.evhc.net/news-resources/partner-resources or a copy of the Code of Conduct can be provided to Hospital upon request. Each Party agrees to comply with all applicable provisions of federal, state and local statutes, rules and regulations including, without limitation, the fraud and abuse and anti-kickback statutes. Further, each Party shall remain responsible for refunding or returning to any third party payer any and all amounts received by that Party in violation of applicable law or contract.

36. Protected Health Information. The privacy and security regulations of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") contemplate that health providers and others called "covered entities" may be required to enter into certain "business associate agreements" with persons or entities if the business associate performs certain non-covered entity functions or activities that involve the use or disclosure of protected health information ("PHI") on behalf of, or provides services to, a covered entity. The provisions of this Section are intended to meet the requirements of the HIPAA for the treatment of PHI that may be disclosed by Hospital to Contractor in such capacity.

A. Definitions. Terms used, but not otherwise defined, in this Agreement shall have the same meaning as given those terms in 45 CFR 160.103 and 164.501.

B. Obligations and Activities of Contractor.

1. Contractor agrees not to use or disclose PHI other than as permitted or required by this Agreement or as required by law.

2. Contractor agrees to use appropriate safeguards to prevent use or disclosure of the PHI other than as provided for by this Agreement.

3. Contractor agrees to mitigate, to the extent practicable, any harmful effect that is known to Contractor of a use or disclosure of PHI by Contractor in violation of the requirements of this Agreement.

4. Contractor agrees to report to Hospital any use or disclosure of the PHI not provided for by this Agreement of which it becomes aware.

5. Contractor agrees to ensure that any agent, including a subcontractor, to whom it provides PHI received from, or created or received by Contractor on behalf of Hospital, agrees to the same restrictions and conditions that apply through this Agreement to Contractor with respect to such information.

6. Contractor agrees to provide access, at the request of Hospital, and in the time and manner designated by Hospital, to PHI in a Designated Record Set, to Hospital or, as directed by Hospital, to an Individual in order to meet the requirements under 45 CFR 164.524.

7. Contractor agrees to make any amendment(s) to PHI in a Designated Record Set that the Hospital directs or agrees to pursuant to 45 CFR 164.526 at the request of Hospital or an Individual, and in the time and manner designated by Hospital.

EXHIBIT 1

EXHIBIT 3



8. Contractor agrees to make internal practices, books, and records, including policies and procedures and PHI, relating to the use and disclosure of PHI received from, or created or received by Contractor on behalf of, Hospital available to the Hospital, or to the Secretary, in a time and manner designated by the Hospital or the Secretary, for purposes of the Secretary determining Hospital's compliance with the Privacy Rule.

9. Contractor agrees to document such disclosures of PHI and information related to such disclosures as would be required for Hospital to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 CFR 164.528.

10. Contractor agrees to provide to Hospital or an Individual, in time and manner designated by Hospital, information collected in accordance with the sub-section above, to permit Hospital to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 CFR 164.528.

C. General Use and Disclosure Provisions. Except as otherwise limited in this Agreement, Contractor may use or disclose PHI to perform functions, activities, or services for, or on behalf of, Hospital as specified in this Agreement, provided that such use or disclosure would not violate the Privacy Rule if done by Hospital or the minimum necessary policies and procedures of the Hospital.

D. Specific Use and Disclosure Provisions.

1. Except as otherwise limited in this Agreement, Contractor may use PHI for the proper management and administration of the Contractor or to carry out the legal responsibilities of the Contractor.

2. Except as otherwise limited in this Agreement, Contractor may disclose PHI for the proper management and administration of the Contractor, provided that disclosures are required by law, or Contractor obtains reasonable assurances from the person to whom the information is disclosed that it will remain confidential and used or further disclosed only as required by law or for the purpose for which it was disclosed to the person, and the person notifies the Contractor of any instances of which it is aware in which the confidentiality of the information has been breached.

3. Except as otherwise limited in this Agreement, Contractor may use PHI to provide Data Aggregation services to Hospital as permitted by 42 CFR 164.504(e)(2)(i)(B).

4. Contractor may use PHI to report violations of law to appropriate Federal and State authorities consistent with § 164.502(j)(1).

E. Obligations of Hospital.

1. Hospital shall notify Contractor of any limitations in its notice of privacy

practices of Hospital in accordance with 45 CFR 164.520, to the extent that such limitation may affect Contractor's use or disclosure of PHI.

2. Hospital shall notify Contractor of any changes in, or revocation of, permission by Individual to use or disclose PHI, to the extent that such changes may affect Contractor's use or disclosure of PHI.

3. Hospital shall notify Contractor of any restriction to the use or disclosure of PHI that Hospital has agreed to in accordance with 45 CFR 164.522 to the extent that such restriction may affect Contractor's use or disclosure of PHI.

4. Permissible Requests by Hospital. Hospital shall not request Contractor to use or disclose PHI in any manner that would not be permissible under the Privacy Rule if done by Hospital, except in connection with Data Aggregation or management and administrative activities of Contractor otherwise permitted under this Agreement.

F. Security of Electronic Protected Health Information.

1. Security. Contractor will establish and maintain appropriate administrative, physical and technical safeguards that reasonably and appropriately protected the confidentiality, integrity and availability of electronic PHI. Contractor will follow generally accepted system security principles and the requirements of the final HIPAA rule pertaining to the security of health information ("the Security Rule," published at 45 CFR Parts 160 – 164).

2. Agents and Subcontractors. Contractor will ensure than any agent, including a subcontractor, to whom it provides electronic PHI, agrees to implement reasonable and appropriate safeguards to protect that information.

3. Security Incidents. Contractor will report any security incident of which it becomes aware to the Hospital. For purposes of this agreement, a "security incident" means the attempted or successful unauthorized access, use, disclosure, modification, or destruction of information or interference with system operations. This does not include trivial incidents that occur on a daily basis, such as scans, "pings", or unsuccessful attempts to penetrate computer networks or servers maintained by Contractor.

G. Effect of Termination. The parties acknowledge that it is not feasible for Contractor to return or destroy all PHI upon termination because of Contractor's responsibilities related to billing for Clinician services rendered at Hospital's departments. Contractor shall extend the protections of this agreement to such PHI and limit further uses and disclosures of such PHI to those purposes that make the return or destruction infeasible, for so long as Contractor maintains such PHI. Except as permitted herein, Contractor shall return or destroy all PHI received from Hospital, or created or received by Contractor on behalf of Hospital. This provision shall apply to PHI that is in the possession of

EXHIBIT 1

EXHIBIT 3

DRAFT – FOR DISCUSSION PURPOSES ONLY

subcontractors or agents of Contractor. Contractor shall retain no copies of the PHI.

H. Miscellaneous.

1. Regulatory References. A reference in this Agreement to a section in the Privacy Rule means the section as in effect or as amended.

2. Amendment. The Parties agree to take such action as is necessary to amend this Agreement from time to time as is necessary for Hospital to comply with the requirements of the Privacy Rule and the Health Insurance Portability and Accountability Act, Public Law 104-191.

3. Interpretation. Any ambiguity in this Agreement shall be resolved in favor of a meaning that permits Hospital to comply with the Privacy Rule.

37. Waiver of Jury Trial. **EACH PARTY WAIVES ALL RIGHTS TO ANY TRIAL BY JURY IN ALL LITIGATION RELATING TO OR ARISING OUT OF THIS AGREEMENT.**

IN WITNESS WHEREOF, Hospital and Contractor have executed this Agreement, in multiple counterparts, each of which shall be deemed an original, effective the day and year first above written.

**EMCARE PHYSICIAN SERVICES, INC**

By: [signature]
Title: EVP

Date of Execution: 5-16-18

**CALHOUN LIBERTY HOSPITAL**

By: [signature]

Name and Title: Harrell T Revell V/C

Date of Execution: 5-14-19

[signature]
MARK PLUMMER
5/14/18

EXHIBIT 1

EXHIBIT 3

DRAFT – FOR DISCUSSION PURPOSES ONLY

# EXHIBIT A
# EM SERVICES

1. Services to be provided by Contractor. Contractor shall provide the following administrative services to Hospital ("Administrative Services"):

A. Emergency Department Coverage. Contractor shall arrange for qualified physicians approved by Hospital to provide coverage in the Emergency Department (the "Department") twenty-four (24) hours per day, seven (7) days per week. The Parties agree that a Physician providing services exclusively in the Department shall not have the privilege of admitting or treating in-patients. Hospital shall waive any medical staff, Hospital-specific application fees, or reapportionment fees for Physicians.

B. Medical Director. Contractor shall designate a physician Clinician to be Medical Director of the Emergency Department. The Medical Director shall be responsible for managing Emergency Department issues on a day-to-day basis including, without limitation, the following:

1. Present qualified medical professionals to become staff Physicians upon approval by Hospital;
2. Coordinate Physician coverage schedule;
3. Recommend policies and procedures to Hospital concerning administration of the Emergency Department;
4. Address patient complaints involving Physicians; and
5. Act as liaison among Contractor, Physicians, members of the organized medical staff of Hospital ("Medical Staff") and administration of Hospital ("Hospital Administration").

2. Monthly Call List. Hospital agrees to prepare and publish monthly a call list of Medical Staff physicians with admitting privileges who will be available to provide consultation and follow up care to patients of the Hospital.

3. Non-Solicitation. Each party, on behalf of itself, its affiliates and each of their respective officers, directors, agents, employees, successor or assigns agree that neither party shall directly or indirectly solicit, employ, engage or otherwise permit any other person or entity to solicit, employ, engage or use in any manner whatsoever any current, future or former employee, contractor or agent employed or engaged by the other party or the other party's affiliates during the Term and for twelve (12) months after the termination or expiration of this Agreement without concurrent renewal. It is specifically understood and agreed that any breach of this provision of the Agreement by either party will result in irreparable injury to the other party, that the remedy at law alone will be an inadequate remedy for such breach and that, in addition to any other remedies in law, equity or otherwise it may have, the non-breaching party shall be entitled to enforce the specific performance of this Agreement by the breaching party in whole or in part responsible for that breach and to seek both temporary and permanent injunctive relief, without the necessity of proving actual damages or the posting of a bond, but without limitation of their rights to recover such damages.

4. Buy-Out. In the event that this Agreement is terminated, and upon written notice from the Hospital to Contractor that Hospital desires to enter into a contractual relationship with any physician(s) described in Section 4, Contractor may, in its sole discretion, elect to waive the provisions of Section A.3 of this Agreement for any or all Clinicians identified in said notice. As a condition of any and all such waivers, Contractor shall be compensated for its time and effort in recruiting and retaining said physician(s) and for the value to Contractor of the contractual relationship between Contractor and said Clinician(s). Hospital and Contractor agree that this compensation shall be Thirty Thousand Dollars ($30,000.00) per Clinician and such sum shall be paid to Contractor no later than thirty (30) days following Contractor's election to waive Section A.3. Clinicians previously employed, contracted separately or credentialed by the Hospital will not be subject to the items in Section A.3.

**EXHIBIT A.1**
**HM SERVICES**

EXHIBIT 1

EXHIBIT 3

DRAFT – FOR DISCUSSION PURPOSES ONLY

1. Services. Contractor and the Providers shall provide the following Services:

A. Prospective Clinicians. Contractor shall identify to Hospital prospective physicians and Mid-Level Providers ("MLPs") (collectively, "Clinicians") to provide coverage in Hospital upon approval by Hospital twelve (12) hours per day and to provide on-call coverage twelve (12) hours per day, seven (7) days per week. Contractor shall provide the following staffing: Physician and Midlevel coverage as needed to cover twelve (12) hours in Hospital and twelve (12) hours on-call per day based on need. Contractor shall perform initial interviews, review credentials and references and provide to the Hospital a compilation of qualifications and other information useful to assist the Hospital in determining whether to approve Hospitalists. Hospital will extend to any approved physician ("Hospitalist") the rights, privileges and responsibilities of the Hospital's medical staff membership. All physicians presented to the Hospital as prospective Hospitalists shall have and maintain licenses to practice in the state where the services are provided. The parties agree and acknowledge that the coverage outlined above is based on an average of 12.65 patient encounters per day. Parties also acknowledge that encounter volume may change over time or patient acuity may change necessitating a change in coverage and Hospital and Contractor agree to work in good faith toward changing coverage to provide adequate Clinicians to provide satisfactory coverage.

**EXHIBIT B**
**EM COMPENSATION**

EXHIBIT 1

EXHIBIT 3

DRAFT -- FOR DISCUSSION PURPOSES ONLY

1. Contractor's Billing for Services. Hospital acknowledges the right of the Clinicians and Contractor, at their expense, to bill patients and/or their insurers for the services rendered by Clinicians pursuant to this Agreement. The Hospital shall not have any right to any such fees billed and collected for the services rendered by Clinicians.

2. Hospital's Billing for Services. Contractor acknowledges the right of Hospital, at Hospital's expense, to bill patients and/or their insurers for the use of facilities, personnel, equipment, supplies and support services provided by Hospital. Neither Contractor nor the Clinicians shall have any right to any such fees billed and collected for the use of facilities, personnel, equipment, supplies and support services provided by Hospital.

3. Administrative Fee. In recognition that the payments reasonably contemplated to be received by Contractor under Section 1 of this Exhibit B are insufficient to enable Contractor to assure the provision of services of the quality and nature sought by Hospital and that the compensation necessary to provide such services will vary depending upon the volume of patients treated by Clinicians and resultant professional fee revenue received by Contractor, Hospital agrees to pay to Contractor a monthly fee ("Administrative Fee") equal to "Total Required Net Revenue" less "Total Actual Patient Revenue". For purposes of this section, Total Required Net Revenue shall be equal to One Hundred Sixty-Two Thousand Nine Hundred Ten Dollars and Twenty Cents ($162,910.20). For purposes of this section, Total Actual Patient Revenue shall be equal to projected number of billable "ED Visits" during the month multiplied by the projected "Average Revenue per ED Visit" as reported by Contractor's billing company. Contractor shall invoice Hospital for the Administrative Fee at the end of each month, based upon projected Total Required Net Revenue and Total Actual Patient Revenue as defined above, and Hospital agrees to pay such invoices in full within thirty (30) days of receipt.

The parties acknowledge and agree that at commencement of services hereunder the parties' projections for ED Visits and Average Revenue per ED Visit are speculative. For purposes of calculating the Administrative Fee payable hereunder, during the first three (3) months of this agreement, the projected number of ED Visits shall be 34 encounters per day and the projected Average Revenue Per ED Visit shall be One Hundred Thirty-Seven Dollars and Eighty-Eight Cents ($137.88) per encounter, resulting in an initial monthly Administrative Fee, for the first three (3) months of the Agreement, equal to Nineteen Thousand Three Hundred Eighty-Nine Dollars and Fifty-Six Cents ($19,389.56) per month. At the conclusion of each three (3) month period ("Quarter") during this Agreement, the parties will calculate the Total Actual Patient Revenue and Total Required Net Revenue during that Quarter and estimate the projected annual Total Actual Patient Revenue and Total Required Net Revenue. The parties will determine the appropriate Administrative Fee payable to Contractor based on the formula set forth above, and adjust the subsequent month's Administrative Fee accordingly to reconcile overpayments or underpayments during the Quarter, with a final reconciliation conducted at the end of each twelve (12) month period during the term of the Agreement.

4. Annual Review. Upon expiration of the initial twelve (12) months of the Term and every twelve (12) months thereafter, the Parties shall (i) negotiate in good faith the Administrative Fee formula necessary to maintain compensation under this Agreement at fair market value. The annual billable patient volume from the previous year shall be used as the baseline for calculating the Administrative Fee. Contractor agrees to provide Hospital with appropriate documentation necessary to confirm all of the actual costs and actual collection rate affecting the calculation and re-negotiation of the Administrative Fee. In the event the Parties are unable to agree within thirty (30) days upon the amount of the Administrative Fee for the

ensuing twelve (12) months, either Party shall be entitled to terminate this Agreement upon no less than ninety (90) days' prior written notice.

5. Clinician Orientation Compensation. Hospital agrees to reimburse Contractor for expenses incurred as a result of Hospital-required Clinician orientation at Hospital and for training on Hospital-specific policies and systems. Contractor will invoice Hospital for such expenses.

6. Additional Compensation. In addition to the compensation set forth in this Exhibit B, Hospital has been advised that Contractor may from time to time have to pay a higher rate per hour for emergency physician coverage. Accordingly, Hospital agrees to pay Contractor an additional amount calculated to be the amount by which the actual average Emergency Physician hourly compensation paid by Contractor to Emergency Physicians for the preceding calendar month exceeds One Hundred Fifty Dollars ($150.00) per hour, provided that Hospital shall only be responsible for additional compensation up to an average of One Hundred Eighty Dollars ($180.00) per hour. Contractor shall invoice Hospital additional compensation along with the compensation set forth in this Exhibit B and Hospital agrees to pay such invoices within thirty (30) days of receipt

**EXHIBIT B.1**
**HM COMPENSATION**

1. Contractor's Billing for Services. Hospital acknowledges the right of the Clinicians and

Contractor, at their expense, to bill patients and/or their insurers for the services rendered by Clinicians pursuant to this Agreement. The Hospital shall not have any right to any such fees billed and collected for the services rendered by Clinicians.

2. Hospital's Billing for Services. Contractor acknowledges the right of Hospital, at Hospital's expense, to bill patients and/or their insurers for the use of facilities, personnel, equipment, supplies and support services provided by Hospital. Neither Contractor nor the Clinicians shall have any right to any such fees billed and collected for the use of facilities, personnel, equipment, supplies and support services provided by Hospital.

3. Administrative Fee. In recognition that the payments reasonably contemplated to be received by Contractor under Section 1 of this Exhibit B are insufficient to enable Contractor to assure the provision of services of the quality and nature sought by Hospital and that the compensation necessary to provide such services will vary depending upon the volume of patients treated by Clinicians and resultant professional fee revenue received by Contractor, Hospital agrees to pay to Contractor a monthly fee ("Administrative Fee") equal to "Total Required Net Revenue" less "Total Actual Patient Revenue". For purposes of this section, Total Required Net Revenue shall be equal to "Total Professional Expense" (defined as Medical Director compensation, Hospitalist compensation and benefits, billing fees and collection fees, professional liability insurance expense, general and administrative expenses (defined as 10% of total required net revenue), and on-site administrative personnel compensation and benefits) divided by ninety-six percent (96%). For purposes of this section, Total Actual Patient Revenue shall be equal to projected number of billable "Patient Encounters" during the month multiplied by the projected "Average Revenue per Encounter" as reported by Contractor's billing company. The Total Professional Expense shall be based upon the factors set forth in the Financial Estimate attached hereto as Schedule A and incorporated by reference herein which shall be subject to change from time to time by mutual agreement of the Parties. Contractor shall invoice Hospital for the Administrative Fee at the end of each month, based upon projected Total Required Net Revenue and Total Actual Patient Revenue as defined above, and Hospital agrees to pay such invoices in full within thirty (30) days of receipt.

The parties acknowledge and agree that at commencement of services hereunder the parties' projections for Patient Encounters and Average Revenue Per Encounter are speculative. For purposes of calculating the Administrative Fee payable hereunder, during the first three (3) months of this agreement, the projected number of Patient Encounters shall be three hundred eighty-five (385) encounters per month and the projected Average Revenue Per Encounter shall be Ninety-Seven Dollars and Fifty-Two Cents ($97.52) per encounter, resulting in an initial monthly Administrative Fee, for the first three (3) months of the Agreement, equal to Fifty-Eight Thousand One Hundred Fifteen Dollars and Eighty-Two Cents ($58,115.82) per month. At the conclusion of each three (3) month period ("Quarter") during this Agreement, the parties will calculate the Total Actual Patient Revenue and Total Required Net Revenue during that Quarter and estimate the projected annual Total Actual Patient Revenue and Total Required Net Revenue. The parties will determine the appropriate Administrative Fee payable to Contractor based on the formula set forth above, and adjust the subsequent month's Administrative Fee accordingly to reconcile overpayments or underpayments during the Quarter, with a final reconciliation conducted at the end of each twelve (12) month period during the term of the Agreement.

4. Annual Review. Upon expiration of the initial twelve (12) months of the Term and every twelve (12) months thereafter, the Parties shall (i) negotiate in good faith the Administrative Fee formula necessary to maintain compensation under this Agreement at fair market value. The annual billable patient volume from the previous year shall be used as the baseline for calculating the Administrative Fee.

Contractor agrees to provide Hospital with appropriate documentation necessary to confirm all of the actual costs and actual collection rate affecting the calculation and re-negotiation of the Administrative Fee. In the event the Parties are unable to agree within thirty (30) days upon the amount of the Administrative Fee for the ensuing twelve (12) months, either Party shall be entitled to terminate this Agreement upon no less than ninety (90) days' prior written notice.

5. Clinician Orientation Compensation. Hospital agrees to reimburse Contractor for expenses incurred as a result of Hospital-required Clinician orientation at Hospital and for training on Hospital-specific policies and systems. Contractor will invoice Hospital for such expenses.

EXHIBIT 1

EXHIBIT 3

DRAFT – FOR DISCUSSION PURPOSES ONLY

**EXHIBIT C**
**GENERIC DATA FIELDS LISTING**

| | | |
|---|---|---|
| **PID - Patient Identification Required** | | |
| PID | 1 | Set ID - Patient ID |
| PID | 2 | External ID |
| PID | 3 | Internal ID |
| PID | 4 | Alternate Patient ID |
| PID | 5 | Patient's Name (First, Middle, Last) |
| PID | 7 | Date of Birth |
| PID | 8 | Sex |
| PID | 10 | Race |
| PID | 11 | Patient Address |
| PID | 13 | Phone Number - Home |
| PID | 14 | Phone Number – Business |
| PID | 16 | Marital Status |
| PID | 17 | Religion |
| PID | 18 | Patient Account Number |
| PID | 19 | SSN Number |
| **PD1 - Additional Demographics** | | |
| PD1 | 4 | Patient Primary Care Clinician Name & ID Number |
| PD1 | 5 | Student Indicator |
| **NK1 - Next of Kin** | | |
| NK1 | 1 | Set ID - NK1 |
| NK1 | 2 | Name |
| NK1 | 3 | Relationship |
| NK1 | 4 | Address |
| NK1 | 5 | Phone Number |
| NK1 | 6 | Business Phone Number |
| NK1 | 14 | Marital Status |
| NK1 | 15 | Sex |
| NK1 | 16 | Date/Time of Birth |
| NK1 | 37 | Contact Person Social Sec. Number |
| **PV1 - Patient Visit** | | |
| PV1 | 1 | Set ID - PV1 |
| PV1 | 2 | Patient Class |
| PV1 | 3 | Assigned Patient Location |
| PV1 | 7 | Attending Doctor |
| PV1 | 8 | Referring Doctor |
| PV1 | 10 | Hospital Service |
| PV1 | 18 | Patient Type |

EXHIBIT 1

EXHIBIT 3

DRAFT – FOR DISCUSSION PURPOSES ONLY

| | | |
|---|---|---|
| PV1 | 19 | Visit Number |
| PV1 | 20 | Financial Class |
| PV1 | 21 | Charge Price Indicator |
| PV1 | 24 | Contract Code |
| PV1 | 25 | Contract Effective Date |
| PV1 | 26 | Contract Amount |
| PV1 | 27 | Contract Period |
| PV1 | 36 | Discharge Disposition |
| PV1 | 37 | Discharge to Location |
| PV1 | 39 | Servicing Facility |
| PV1 | 40 | Bed Status |
| PV1 | 44 | Admit Date/Time |
| PV1 | 45 | Discharge Date/Time |
| PV1 | 46 | Current Patient Balance |
| PV1 | 47 | Total Charges |
| PV1 | 48 | Total Adjustments |
| PV1 | 49 | Total Payments |
| PV1 | 52 | Other Health Care Clinician |
| **PV2 - Patient Visit - Addt Info** | | |
| PV2 | 3 | Chief Complaint |
| PV2 | 14 | Previous Admit Date |
| PV2 | 38 | Mode of Arrival |
| **GT1 - Guarantor Information** | | |
| GT1 | 1 | Set ID - GT1 |
| GT1 | 2 | Guarantor Number |
| GT1 | 3 | Guarantor Name |
| GT1 | 5 | Guarantor Address |
| GT1 | 6 | Guarantor Phone - Home |
| GT1 | 7 | Guarantor Phone - Bus. |
| GT1 | 8 | Guarantor Date of Birth |
| GT1 | 9 | Guarantor Sex |
| GT1 | 11 | Guarantor Relationship |
| GT1 | 12 | Guarantor SSN |
| GT1 | 16 | Guarantor Employer Name |
| GT1 | 17 | Guarantor Employer Addr. |
| GT1 | 18 | Guarantor Employer Phone |
| **IN1 - Insurance Information** | | |
| IN1 | 1 | Set ID - IN1 |
| IN1 | 2 | Insurance Plan ID |
| IN1 | 3 | Insurance Company ID |
| IN1 | 4 | Insurance Company Name |

EXHIBIT 1

EXHIBIT 3

DRAFT -- FOR DISCUSSION PURPOSES ONLY

| | | |
|---|---|---|
| IN1 | 5 | Insurance Company Address |
| IN1 | 6 | Insurance Co. Contact Person |
| IN1 | 7 | Insurance Co. Phone Number |
| IN1 | 8 | Group Number |
| IN1 | 9 | Group Name |
| IN1 | 10 | Insured's Group Emp. ID |
| IN1 | 11 | Insured's Group Emp. Name |
| IN1 | 12 | Plan Effective Date |
| IN1 | 13 | Plan Expiration Date |
| IN1 | 14 | Authorization Information |
| IN1 | 15 | Plan Type |
| IN1 | 16 | Name of Insured |
| IN1 | 17 | Insured's Relation to Patient |
| IN1 | 18 | Insured's Date of Birth |
| IN1 | 19 | Insured's Address |
| IN1 | 28 | Pre-Admit Cert. (PAC) |
| IN1 | 35 | Company Plan Code |
| IN1 | 36 | Policy Number |
| IN1 | 37 | Policy Deductible |
| IN1 | 43 | Insured's Sex |
| IN1 | 44 | Insured's Employer Address |
| IN1 | 47 | Coverage Type |
| IN1 | 49 | Insured's ID Number |
| **IN2 - Insurance Information - Additional Information** | | |
| IN2 | 2 | Insured's Social Security # |
| IN2 | 3 | Insured's Employer Name |
| IN2 | 63 | Insured's Phone Number - Home |
| IN2 | 64 | Insured's Employer Phone |
| **EMSC Custom Defined Fields** | | |
| ZHS | 1 | Triage Time |
| ZHS | 2 | Physician Time |
| ZHS | 3 | Company Name |
| ZHS | 4 | Misc Code |

**EXHIBIT 1**

EXHIBIT 3

**FIRST AMENDMENT TO SERVICES AGREEMENT**

THIS FIRST AMENDMENT ("First Amendment") shall be effective June 1, 2019, by and between CALHOUN LIBETY HOSPITAL ("Hospital") and EMCARE PHYSICIAN SERVICES, INC., ("Contractor"). Collectively Hospital and Contractor may be referred to as "Parties."

**RECITALS**

WHEREAS, the Parties have previously entered into a Services Agreement for Contractor to provide administrative and professional services for hospital medicine coverage effective July 1, 2019, (the "Agreement").

WHEREAS, the Parties desire to now amend the Agreement as set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants herein made, the Parties agree to amend the Agreement as follows:

1. Section 1. (Term) shall be amended to change the effective date of the Agreement to June 1, 2019 with respect to provision of services pursuant to the Agreement;

2. Except as to the terms and conditions amended by this First Amendment, all of the terms and conditions of the Agreement are declared by the Parties to be in full force and effect.

IN WITNESS WHEREOF, Hospital and Contractor have executed this First Amendment, effective June 1, 2019.

**EMCARE PHYSICIAN SERVICES, INC**

By: [signature]
Andy Scoggins
Title: EVP, Attorney-in-Fact

Date of Execution: 5-31-19

**CALHOUN LIBERTY HOSPITAL**

By: Janet H. Kinney
Printed Name/Title: Janet H. Kinney CEO
Date of Execution: May 22, 2019

By:
Printed Name/Title: N/A
Date of Execution:

# FIRST AMENDMENT TO HOSPITAL MANAGEMENT SERVICES AGREEMENT

**THIS FIRST AMENDMENT TO HOSPITAL MANAGEMENT SERVICES AGREEMENT** ("Amendment") is made and entered into this __ day of November, 2019, by and between **BLUE MANAGEMENT SERVICES, LLC** d/b/a Alliant Management Services, a Kentucky limited liability company ("BMS"), and **CALHOUN-LIBERTY HOSPITAL**, a Florida non-profit corporation ("Hospital").

**RECITALS:**

A. BMS and Hospital are parties to that certain Hospital Management Services Agreement dated as of September 14, 2016 (the "Agreement"), pursuant to which Hospital engaged Manager to provide hospital management services in support of the operations of Calhoun-Liberty Hospital located in Blountstown, Florida.

B. BMS and the Hospital desire to extend the term of the Agreement for an additional three (3) years, with a new expiration date of December 31, 2022, subject to the further amendments to the Agreement set forth in this Amendment.

**AGREEMENT:**

**NOW THEREFORE,** for and in consideration of the premises and the mutual promises and covenants set forth in this Amendment and the Agreement, Hospital and BMS hereby agree as follows:

**1. CAPITALIZED TERMS.** Capitalized terms used in this Amendment, unless otherwise defined herein, shall have the meanings ascribed to such terms in the Agreement.

**2. EXTENSION OF TERM OF AGREEMENT.** The parties desire to extend the term of the Agreement, dated on September 14, 2016, for three (3) additional years, as follows:

***2.1. Modification to Section 5.1*** (**TERM AND PAYMENT OF FEES**). The first sentence of Section 5.1 of the Agreement is hereby replaced in its entirety with the following provisions:

> The term of this Agreement shall commence on the 14th day of September, 2016, and shall expire on the 31st day of December, 2022. (The period commencing September 14, 2016 through December 31, 2019 being sometimes referred to in this Agreement as the "initial term, the period commencing from January 1, 2020 through December 31, 2022 being sometimes referred to in this Agreement as the "extended term," and the initial term and extended term being sometimes referred to in this Agreement as the "term.")

***2.2. Modification to Section 7*** **(VESTED INTERESTS).** The first sentence of the second paragraph of Section 7 is hereby amended to replace the phrase "ending September 14, 2019" with the phrase "ending December 31, 2022."

3. **MODIFICATIONS TO COMPENSATION AND FEES.** The parties desire to modify the compensation and fees provisions set forth in Sections 4.1 and 4.2 of the Agreement as follows:

*3.1.* ***Modification to Section 4.1*** **(MANAGEMENT FEE)**. Effective as of January 1, 2020, the first sentence of Section 4.1 of the Agreement is hereby replaced in its entirety to read as follows: "The fee for the management services payable to BMS during the period January 1, 2020 current term of the contractual relationship shall be **Eighteen Thousand Three Hundred Six Dollars and Eighty-One cents ($18,306.81) per month**, subject to adjustment as provided below."

*3.2.* ***Omit 4.2*** **(MANAGEMENT FEES AT RISK)**. Section 4.2 of the Agreement is hereby omitted in its entirety. By reference Exhibit A is also omitted in its entirety.

4. **CONTINUATION OF BALANCE OF MANAGEMENT AGREEMENT.** Except as amended hereby, the Agreement remains unchanged and in full force and effect.

5. **BINDING EFFECT.** This Amendment shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.

6. **GOVERNING LAW.** This Amendment shall be governed by, and construed in accordance with, the laws of the State of Florida without regard to its conflict of laws rules.

[Signature Page Immediately Follows]

**EXHIBIT 2**

IN WITNESS WHEREOF, the parties have executed this Amendment as of the day and year first above written.

**BLUE MANAGEMENT SERVICES, LLC,**
d/b/a Alliant Management Services

By: ~~[signature]~~ [signature]

Title: ~~Chair~~ PRESIDENT+CEO

**CALHOUN-LIBERTY HOSPITAL**

By: [signature]

Title: Chairman, Hospital Board of Directors

20670113.2

EXHIBIT 2

# MANAGEMENT SERVICES AGREEMENT

THIS **MANAGEMENT SERVICES AGREEMENT** (the "Agreement") is made and entered into as of September 14, 2016, by and between **BLUE MANAGEMENT SERVICES, LLC**, d/b/a Alliant Management Services, a Kentucky corporation (hereinafter called "BMS"), and **CALHOUN-LIBERTY HOSPITAL**, a Florida non-profit corporation (hereinafter referred to as "Hospital").

W I T N E S S E T H:

WHEREAS, BMS is in the business of managing and providing consulting and financial services for hospitals and long-term nursing facilities; and

WHEREAS, BMS has managed CALHOUN-LIBERTY HOSPITAL located in Blountstown, FL (both hereinafter referred to as the "Facility") since March 14, 2016 pursuant to the prior Term Sheet between the parties; and

WHEREAS, Hospital desires to continue to utilize the management services provided by BMS in the operation of the Facility under the terms and conditions herein set forth;

NOW THEREFORE, in consideration of the mutual promises and covenants herein contained, Hospital and BMS hereby agree as follows:

Section 1. MANAGEMENT APPOINTMENT. Hospital hereby appoints BMS to consult with the Hospital concerning certain strategic matters, pursuant and subject to the terms and conditions set forth in this Agreement.

Section 2. DUTIES OF CALHOUN-LIBERTY HOSPITAL.

2.1 CONTROL RETAINED IN BOARD OF HOSPITAL. The Board of Directors of Hospital ("Board of Directors") shall be the governing body of the Facility and shall be responsible for the operation of the Facility and development of policies with respect to the Facility. Notwithstanding the authority granted to BMS herein, BMS and Hospital agree that Hospital, through its Board of Directors, shall at all times exercise control over the affairs of the Facility, shall establish general operating policies to be carried out by BMS under this Agreement, and shall be accountable and responsible for all medical, professional and ethical affairs of Hospital and the Facility. BMS may not on behalf of the Hospital incur any debts or other liabilities, enter into any contracts, or make any significant expenditures or final decisions without the approval of the Board of Directors. All medical and professional matters shall be the sole responsibility of the Board of Directors and the Medical Staff of the Facility; however, BMS will consult with the Hospital concerning such matters if requested to do so.

2.2 OWNERSHIP. Hospital is and shall continue to be the owner and holder of all licenses, contracts and accreditation certificates which the Hospital has or shall obtain for ownership or operation of the Facility, and shall continue to be the "provider" within the meaning of all third-party contracts for the Facility.

2.3 HOSPITAL'S RESPONSIBILITIES. The Board of Directors shall, at all times, be ultimately responsible for the governing of the Facility and for the general direction of the activities of BMS under this Agreement. A representative of BMS (Regional Administrator, Regional CFO, or the CEO of BMS) shall be entitled to receive notice of and attend all meetings of the Board of Directors, relating to the administrative activities and operating results of the Facility, other than executive sessions called for the purpose of discussing the performance of BMS. Representatives of BMS (Regional Administrator, Regional CFO, or CEO of BMS) shall be permitted to participate in all discussions of Hospital administrative affairs, but shall not have a vote on actions taken by the Board of Directors. Hospital shall request and receive recommendations regarding the administrative operations of the Facility from BMS, and shall duly consider all such recommendations concerning administrative operations at the Facility prior to adopting any operational policies affecting the administrative operations or functions of the Facility. Hospital at all times shall maintain an "effective compliance program" that substantially conforms, in pertinent part, with a model hospital compliance program(s) and model nursing facility compliance program(s) endorsed or provided by the American Hospital Association, the HHS Office of Inspector General, or the U.S. Department of Justice, or that otherwise satisfies the standards of the Federal Sentencing Guidelines.

2.4 INDEPENDENT AUDIT. Hospital will retain a qualified auditing firm to perform an independent audit each year under this Agreement. The professional fees and expenses of said independent auditor will be borne entirely by Hospital.

Section 3. DUTIES OF BMS.

3.1 BMS' RESPONSIBILITIES. Pursuant to Section 1, BMS through the on-site Facility Administrator (defined below) is charged with the responsibility to review and consult with the Facility Administrator regarding the day-to-day operations of the Facility during the term of this Agreement. The individual employed as the "Facility Administrator" shall be the chief executive officer of the Facility. BMS will provide or, at the option of the Board of Directors, BMS will assist in the recruitment of, placement of, a qualified Facility Administrator acceptable to the Board of Directors, in a full-time capacity on-site at the Facility throughout the term of this Agreement to coordinate and work with BMS in its performance of BMS' duties and obligations under this Agreement. The Facility Administrator will be an employee of BMS. All communication and directions of the administrative affairs of the Facility, under this Agreement, will be channeled by Hospital and BMS, respectively, to the other through the Facility Administrator. Hospital shall promptly deliver to BMS a copy of any resolution, directive or authorization which in any way affects the overall operations or functions of the Facility.

3.2 REPORTS. BMS shall cause to be delivered to the Board of Directors monthly oral or written reports on the financial condition of the Facility and periodic written progress reports summarizing BMS' management actions and results, or other management information as to the status and condition of the Facility and such other reports as may be reasonably requested by the Board of Directors. BMS will promptly notify the Board of Directors of any facts or circumstances arising out of the operations of the Facility that may have a material effect on operations of the financial condition of the Facility. BMS' management shall also provide reports to third-party payors required to describe this Agreement.

3.3 SPECIFIC SERVICES TO BE PROVIDED. BMS shall perform the following specific services during the term of this Agreement.

3.3.1 FULL-TIME ADMINISTRATION. BMS shall recruit an experienced, qualified, on-site Facility Administrator, but hiring of the Facility Administrator for services to be performed at the Facility shall be subject to approval by the Board of Directors. On the date hereof, the Facility Administrator will be an employee of BMS, the salary, benefits and housing expense of the Facility Administrator will also be paid by Hospital after said amounts have been disclosed to Hospital and agreed to by the Board of Directors and will be in addition to the management fee.

D. Reports on Progress – BMS, in conjunction with the Facility Administrator, will deliver to the Board of Directors a written report covering the progress toward attainment of goals/objectives of Hospital as approved in the annual Strategic Action Plan.

3.3.3 SPECIALIZED FINANCIAL CONSULTING SERVICES. BMS shall provide or shall supervise and coordinate the preparation, maintenance or provision of the following items or services for the Facility:

A. general accounting support to the CFO;

B. budget preparation assistance, including staffing standards for all major departments;

C. routine monthly analysis of financial performance;

D. assistance in establishment of third party rates and reimbursement;

E. consultation on the refinement of systems to control Hospital charges;

F. preparation of the Medicare/Medicaid cost reports; and

G. analysis of lease/purchase arrangements.

3.3.4 SPECIALIZED NURSING CONSULTING SERVICES. BMS shall develop and maintain, or shall supervise and coordinate the development and maintenance of, the following items or services for the Facility:

A. assistance in determining staffing and productivity standards;

B. assistance in refining "care systems" to improve patient care delivery, e.g., infection control, nursing assessment, and pharmacy therapeutics;

C. assistance in preparing appropriate nursing policies and procedures;

D. assistance in identifying nursing care deficiencies and recommending appropriate in-service education;

E. assistance in the departmental budgetary processes;

F. at least semi-annual nursing peer meetings; and

G. quarterly visits by nurse consultant at no charge to Hospital.

3.3.5 PRODUCTIVITY STANDARDS AND REPORTING SYSTEMS. BMS will recommend and assist in the implementation of tested and proven productivity staffing standards for all major departments of the Facility. BMS will also provide systems and staffing consultants to perform reviews and analysis on an as needed basis at no charge to Hospital.

3.3.6 SHARED PURCHASING OF SELECTED ITEMS AND ASSISTANCE IN PURCHASING OF MAJOR MOVABLE EQUIPMENT. At Hospital's request, BMS will assist Hospital in evaluating and participating in group purchasing relationships. At the option of Hospital, the Facility will be permitted to participate in the Alliant Affiliate Purchasing Program, subject to compliance with such Program's policies, procedures and membership fees.

3.3.7 SUPERVISORY TRAINING. Supervisory level personnel will have the opportunity to participate in at least two (2) management development programs per year provided or arranged by BMS.

3.3.8 THE DEVELOPMENT/ADMINISTRATION OF A FORMAL EMPLOYEE ENGAGEMENT SURVEY AND HOSPITAL IMPROVEMENT PROGRAM. BMS will administer a comprehensive survey bi-annually, designed to measure the level of engagement of employees toward various aspects of the work environment (surveys will be completed in the first or second quarter of 2017, and every other year thereafter).

3.3.10 CONTRACT REVIEW AND SPECIAL STUDIES. BMS will review all service contracts and make recommendations designed to improve service, reduce cost and, therefore, contain charge increases to patients.

3.3.11 QUALITY ASSESSMENT.

A. Hospital's and BMS' commitment to quality is a major management initiative. BMS will recommend systems for measuring and improving the quality of services in all major Facility departments.

B. BMS will make available to Hospital performance improvement training to develop Facility staff at no cost to Hospital. Hospital will be responsible for its employees' travel expenses to and from the training site.

C. BMS will provide benchmarking data to Hospital.

3.3.12 BOARD OF DIRECTORS EDUCATION. Members of the Board of Directors will have the opportunity to participate in Board educational programs. All Board educational workshops will be conducted in Louisville, Kentucky or other location selected by BMS and will be made available to all board members of BMS managed hospitals, including the Board of Directors, without additional charge. The Board educational workshops will be made available to Hospital every 12 months.

3.3.13 Legal Services. Notwithstanding anything to the contrary in this Agreement, BMS shall not be obligated to furnish legal advice.

3.4 EMPLOYEES.

3.4.1 BMS will consult with Hospital regarding the performance of Facility personnel and make recommendations in respect to the recruitment, hiring, training, promotion, assignment and discharge of Facility personnel as may be necessary for the proper operation of the Facility. Compensation and benefits at the Facility will be administered according to the compensation and employee benefits program approved by the Board of Directors.

3.4.2 BMS will provide compensation surveys and assist in annual revisions to the compensation program.

3.5 LICENSES AND ACCREDITATION. Where applicable, BMS will provide necessary services in preparing for license inspections and surveys by the Joint Commission.

3.6 POLICIES AND PROCEDURES. BMS will assist in the development or update of policies and procedures for Facility departments on an as-needed basis, subject to the approval of the Board of Directors.

3.7 GOVERNMENT REGULATIONS. In carrying out BMS' duties under this Agreement, BMS will use its reasonable best efforts to provide consultation and advice, and recommend policies and procedures, that enable the Facility to operate in compliance with all requirements of any statute, ordinance, law, rule, regulation or order of any governmental or regulatory body having jurisdiction in the premises. In the event of any changes in the laws, rules and/or regulations governing the operations of the Facility to the detriment of either BMS or Hospital, BMS shall make a presentation to the Board of Directors explaining such change, suggesting modifications to practices, policies and procedures, as may be needed, and the estimated costs of compliance for such change.

Section 4. COMPENSATION AND FEES.

4.1 MANAGEMENT FEE. The fee for the management services payable to BMS during the initial term of the contractual relationship shall be **Seventeen Thousand Dollars ($17,000) per month,** subject to adjustment as provided below. Payment shall be in equal monthly installments payable on the first day of each month. Annually the management fee will increase by the lesser of 3% or the annualized increase in the healthcare CPI (consumer price index).

4.2 MANAGEMENT FEES AT RISK. For each full-calendar year during the term of this Agreement, commencing with the 2017 calendar year, the parties will measure the actual performance of Hospital against targeted performance standards (each expressed as a corridor of performance) in each of four operational criteria. BMS will receive a bonus from Hospital, or BMS will surrender a portion of the Management Fees to Hospital, in any given calendar year during the term of this Agreement based on the results of such measurements. The means to determine whether a bonus will be payable by Hospital to BMS, or surrendered by BMS to Hospital, is set forth below in this Section 4.2. The total amount at risk to BMS and Hospital in each full calendar year during the term is the equivalent of two months of Management Fees for that calendar year (i.e., $34,000 is the annual total at risk as of the effective date of this Agreement) (referred to herein as the "At-Risk Amount").

A. The actual performance of Hospital in each given operational criteria shall be determined annually, commencing with the 2017 calendar year, based on operations for the full calendar year, as applicable, during the term. Each operational criteria is assigned a weighted

percentage, with BMS to receive (a) a positive weighted percentage for a given operational criteria if the Hospital's actual performance is better than the targeted performance corridor for such criteria, or (b) a negative weighted percentage for a given operational criteria if the actual performance of Hospital is worse than the targeted performance corridor for such criteria. The sum of all four weighted percentages (which may be zero or a positive or negative percentage) assigned to BMS in any given calendar year is referred to herein as the "Cumulative Weighted Percentage."

B. The table below defines each of the operational criteria and the targeted performance corridor and weighted percentage corresponding with each of such operational criteria for purposes of this Agreement. No Weighted Percentage (positive or minus) will be assigned to BMS if the actual performance falls within the targeted performance corridor for a given operational criteria. The financial and operational information used to compare actual results to targeted performance will be derived from the Hospital's audited financials and other independent sources.

| Operational Criteria | Targeted Performance Corridor | Weighted Percentage |
|---|---|---|
| Operating Income (Loss) | Within five percent (5%) of budget (over or under) as approved by the parties prior to the calendar year | ± 50% |
| Gross Days in Accounts Receivable | Within 2 days of budget (plus or minus) as approved by the parties prior to the calendar year | ± 20% |
| Patient Satisfaction Mean Score | Within 1.5% (plus or minus) the annual goal as approved by the parties prior to the calendar year | ± 15% |
| Clinical Quality Mean Score | Within 1.5% (plus or minus) annual goal as approved by the parties prior to the calendar year | ± 15% |

C. The product of (a) the Cumulative Weighted Percentage (which may be positive or negative) multiplied by (b) the At-Risk Amount will be the bonus amount (if such product is positive) to be paid to BMS or the surrender amount (if the product is negative) to be paid to Hospital under this Section 4.2. Any annual amount due to BMS by Hospital, or from BMS to Hospital, pursuant to this Section 4.2 shall be paid no later than 15 days after receipt of the audited financial statements of the Hospital for the applicable calendar year.

D. Several illustrations of the method of computation of the bonus or surrender amount, as applicable, are included in Exhibit A to this Agreement.

E. The terms of this Section 4.2 shall survive the expiration or termination of this Agreement.

4.3 COSTS EXCLUDED FROM MANAGEMENT FEE. The following costs and expenses are excluded from, and shall be paid by Hospital in addition to, the management fee:

A. For so long as the Facility Administrator is an employee of Hospital, Hospital shall pay the costs for salary, benefits and severance pay of the Facility Administrator. In the event the Facility Administrator shall be employed by BMS at any time during the term of this Agreement, then the salary, benefits and any other costs of employment of the on-site Facility Administrator employed by BMS, including but not limited to severance pay in the event Hospital requests BMS to replace the on-site Facility Administrator shall be paid by the Hospital to BMS in addition to the management fee; provided, that said costs are to be reviewed and approved by the Board of Directors. Notwithstanding the foregoing, if the on-site Facility Administrator who is employed by BMS is placed at another hospital managed by BMS, severance pay shall cease when the on-site Facility Administrator accepts such position and begins work, which shall not be unreasonably delayed.

B. Routine travel expenses of the full-time, on-site Facility Administrator incurred while conducting Hospital business, including but limited to one trip to Louisville, Kentucky per month.

C. Physician recruitment.

D. On-site Facility Administrator relocation expenses actually incurred and pre-approved by the Board of Directors.

E. Salary and benefits expenses of any Facility Administrators.

F. Data processing consultation fees.

G. Legal fees.

H. Architectural fees.

I. Specialized consulting services as approved by the Board of Directors.

4.4 DEFERRAL OF MANAGEMENT FEES. In the event that the revenues of Hospital are insufficient to pay the operating expenses of the Facility, including management fees and debt service requirements, all or such portion of the monthly installment of management fees equal to such insufficiency shall be deferred so long as such condition exists. All or such portion of any deferred management fees shall be paid by Hospital to BMS within ten (10) days after the end of the next succeeding month to the extent that revenues of Hospital in such month are sufficient to pay such operating expenses in such month, including the then current installment of the management fees and debt service requirements; provided that upon the expiration or termination of this Agreement, all deferred management fees shall be promptly paid by Hospital to BMS.

Section 5. TERM; TERMINATION

5.1 TERM AND PAYMENT OF FEES. The term of this Management Agreement shall commence on the 14th day of September, 2016, and shall expire on the 31st day of December, 2019. Upon termination of this Agreement, Hospital shall promptly pay BMS all compensation and monies then owing hereunder and BMS shall be relieved of any further obligations with respect to Hospital.

5.2 TERMINATION FOR CAUSE. Either Hospital or BMS may immediately terminate this Agreement at any time for cause (described herein below) upon written notice thereof of the other.

5.2.1 Hospital shall have cause for termination:

A. If BMS shall default in the performance of any material covenant, agreement, term or provision of this Agreement to be kept, observed or performed by BMS and such default shall continue for a period of thirty (30) days after written notice to BMS stating the specific default; or

B. If BMS shall apply for or consent to the appointment of a receiver, trustee or liquidator of BMS or of all or a substantial part of its assets, file a voluntary petition in bankruptcy or admit in writing its inability to pay its debts as they become due, make a general assignment for the benefit of creditors, file a petition or an answer seeking reorganization or arrangement with creditors, or to take advantage of any insolvency law, or if an order, judgment or decree shall be entered by a court of competent jurisdiction, on the application of a

creditor, adjudicating BMS a bankrupt or insolvent or approving a petition seeking reorganization of BMS or appointment of a receiver, trustee or liquidator of BMS of all or a substantial part of its assets.

5.2.2 BMS shall have cause for termination:

A. If Hospital shall default in the performance of any material covenant, agreement, term or provision of this Agreement to be kept, observed or performed by Hospital and such default shall continue for a period of sixty (60) days after written notice to Hospital stating the specific default; or

B. If any deferred management fee as described in Section 4.3 above shall remain unpaid for a period of ninety (90) days; or

C. If the Facility or any portion thereof shall be damaged or destroyed by fire or other casualty and if Hospital fails to make a decision to repair, restore, rebuild or replace any such damage or destruction within thirty (30) days after such fire or casualty, or shall fail to complete such work within a reasonable period of time; or

D. If Hospital shall apply for or consent to the appointment of a receiver, trustee or liquidator of Hospital or of all or a substantial part of its assets, file a voluntary petition in bankruptcy or admit in writing its inability to pay its debts as they become due, make a general assignment for the benefit of creditors, file a petition or an answer seeking reorganization or arrangement with creditors, or to take advantage of any insolvency law, or if an order, judgment or decree shall be entered by a court of competent jurisdiction, on the application of a creditor, adjudicating Hospital a bankrupt or insolvent or approving a petition seeking reorganization of Hospital or appointing a receiver, trustee or liquidator of Hospital of all or a substantial part of the assets of Hospital; or

E. If any license, permit or approval required, in the opinion of BMS, for the operation of Hospital cannot be obtained or is at any time suspended, terminated or revoked; or

F. Except as provided in Section 4.3 above, if Hospital shall fail to make any payment to BMS hereunder or to any affiliate of BMS pursuant to any agreement between Hospital and such affiliate and does not make such payment within ten (10) days after receiving written notice via certified mail, receipt requested, from BMS of such failure.

5.3 TERMINATION WITHOUT CAUSE. Either Hospital or BMS may terminate this Agreement at any time without cause by giving one hundred twenty (120) days prior written notice thereof to the other.

Section 6. RECORDS; CONFIDENTIALITY

6.1 CONFIDENTIALITY OF RECORDS. BMS will use its reasonable best efforts to protect the confidentiality of the records of the Facility and Hospital, and will comply with all applicable Federal, state and local laws and regulations relating to the records of the Facility and Hospital.

6.2 CONFIDENTIALITY OF AGREEMENT. Neither BMS nor Hospital shall distribute this Agreement, or any part thereof, to other parties unless required by law or by contractual requirements.

6.3 ACCESS TO BOOKS AND RECORDS OF SUBCONTRACTOR. Pursuant to Section 1861 (v)(1)(I) of the Social Security Act, BMS (subcontractor) agrees to make available, upon written request from the Secretary or Comptroller General, or any of their duly authorized representatives, until the expiration of four (4) years after the furnishing of services provided under this contract, the contract, books, documents and records of subcontractor that are necessary to verify the nature and extent of the contract costs which are $10,000 or more over a twelve (12) month period; and

If BMS carries out any of the duties under this contract through a subcontract with a related organization, with a value or cost of $10,000 or more over a twelve (12) month period, such subcontract shall contain a clause to the effect that until the expiration of four (4) years after the furnishing of such services pursuant to the subcontract, the related organization shall make available, upon written request from the Secretary or Comptroller General, or any of their duly authorized representatives, the subcontract, books, documents and records of such organization that are necessary to verify the nature and extent of such costs.

6.4. OWNERSHIP OF WORK PRODUCT. All operating procedures, protocols, information systems, operating data, computer data bases, reports

and other non-public proprietary business systems or information owned by BMS shall be and remain the exclusive property of BMS during and after the term(s) of this Agreement. Hospital agrees to treat such information as confidential during and after the term (s) of this Agreement and agrees to return any such information in its possession to BMS after the termination of this Agreement. At the expiration or termination of this agreement, Hospital shall be entitled to copies of all business and financial records and patient records associates with operation of the Facility.

Section 7. VESTED INTERESTS. Recognizing the scope and character of the services provided during the term of this Agreement and for the one (1) year period commencing with the date of expiration or termination hereof, BMS and Hospital shall not directly or indirectly solicit the employees of the other, or any affiliate or subsidiary of the other, or employ any such persons without the prior consent of the affected party.

Notwithstanding the foregoing, if at the end of the contract term ending September 14, 2019, Hospital elects not to renew the contract, Hospital may retain at its option the Facility Administrator if he or she is then employed by BMS, provided that Hospital pays to BMS for accrued vacation time of the Facility Administrator not to exceed 30 days and Hospital pays to BMS an additional Fifty Thousand Dollars ($50,000) to retain the Facility Administrator under such circumstances.

Section 8 BONDING OF EMPLOYEES. Hospital will furnish evidence that its Finance Department (Business Office) employees are bonded by a fidelity bond in the amount of One Hundred Thousand Dollars ($100,000).

Section 9. INSURANCE. Hospital, at its expense, will maintain or cause to be maintained with an insurer approved by BMS, which approval shall not be unreasonably withheld, comprehensive general liability and professional liability coverage against claims for bodily injury or death of persons and damage to or destruction of property, and Directors and Officers insurance, limits which shall not be less than $2,000,000 per occurrence and $4,000,000 in the aggregate. All insurance maintained pursuant to this Section shall: (a) name BMS as an additional insured; (b) provide that no cancellation thereof or material change therein shall be effective until at least ten (10) days after receipt of a written notice to such effect by BMS; and (c) be satisfactory in all respects to BMS. Promptly upon the execution of this Agreement and each year thereafter, Hospital will deliver or cause to be delivered to BMS certificates of the insurer as to the existence of all insurance policies, limitations of liability and conditions, or in lieu of such certificates, copies of originals of all such insurance policies, together with evidence that such policies are in good standing and in full force and effect.

Section 10. INDEMNIFICATION. Hospital hereby agrees to indemnify and hold harmless BMS, its successors and assigns, to the fullest extent permitted by law, from and against all claims for damages, losses and expenses, including but not limited to

attorneys' fees, for actions, causes of action, suits, debts, sums of money, complaints or demands of any kind or description, arising out of or resulting from the operation of the Facility, provided that such claims, damages, losses and expenses are not caused by willful or intentional misconduct, willful or intentional failure to act, bad faith, gross negligence, or a reckless disregard of BMS in the fulfillment of its obligations and duties under this Agreement, unless such act or omission of BMS was done or was not done at the express request or direction of Hospital, the Board of Directors or the Facility Administrator on behalf of the Board of Directors.

Section 11. ARBITRATION. Any dispute arising out of or related to this Agreement shall be settled by arbitration, which determination shall be binding on all parties for all purposes under this Agreement. In such arbitration, one arbitrator shall be appointed by Hospital, one by BMS, and a third by the two arbitrators so appointed. The arbitration shall be conducted at the Office of BMS in Louisville, Kentucky or such other place as the parties may agree, in accordance with the rules of the American Arbitration Association, except that the decision of the arbitrators shall be based solely on written submissions and oral presentations of the parties and witnesses called by them and such decision shall be rendered within 60 days of the date of the arbitration. Each of BMS and Hospital shall pay 50% of the costs and expenses of such arbitration, and each will pay its own attorneys' fees and expenses.

Section 12. MISCELLANEOUS PROVISIONS.

12.1 NOTICES. Any notice required or permitted to be given under this Agreement shall be in writing. All notices from BMS to Hospital shall be sufficient if actually delivered or sent by registered or certified United States mail to the following address:

Calhoun-Liberty Hospital
20370 NE Burns Avenue
Blountstown, FL 32424
Attention: Chair of the Board

All notices from Hospital to BMS hereunder shall be sufficient if actually delivered or sent by registered or certified United States mail to the following address:

Blue Management Services
2650 Eastpoint Parkway, Suite 200
Louisville, Kentucky 40223
Attention: Timothy L. Jarm, President

12.2 FORCE MAJEURE. BMS shall not be deemed to be in violation of this Agreement if it is prevented from performing or is hindered in its performance of any of its obligations hereunder for any reason beyond its

control, including, without limitation, strikes, shortages, lack of Hospital's financial resources, or any statute, regulation or rule of the Federal, any state or local government, or any agency thereof, now or hereafter in force.

12.3 ASSIGNMENT. Neither party shall assign this Agreement without the express written consent of the other party. Both parties agree that such consent shall not be unreasonably withheld.

12.4 RELATIONSHIP BETWEEN BMS AND HOSPITAL. No action taken by either party, or its officers, employees, or agents pursuant to this Agreement, shall be deemed to create any partnership, joint venture, association or syndicate between the parties, or shall be deemed to confer upon either party, any express or implied right or authority to create any obligation or responsibility on behalf or in the name of the other party except as expressly set forth in this Agreement. The parties to this Agreement are independent entities, contracting with each other solely for the purpose of carrying out the terms of this Agreement. Neither of the parties hereto, nor any of their respective officers, employees or agents, shall be construed to be the agent or representative of the other party hereto. Without limiting the foregoing, in no event will BMS's employees be deemed employees of Hospital, and as such shall not be entitled to any employee benefits including vacation pay, sick leave, retirement benefits, Social Security, Workers' Compensation, or disability or unemployment insurance benefits that may be provided to Hospital's employees, if any. The terms of this Section shall take precedence over any inconsistent terms in any policies, procedures, employee benefit plans, or otherwise of Hospital as presently in effect or as amended.

12.5 AMENDMENTS. No other amendments or modifications to this Agreement shall be valid and binding unless in writing and executed in the same manner as the execution of this Agreement.

12.6 GOVERNING LAW. The terms and provisions of this Agreement shall be governed by the laws of the State of Florida, without giving effect to its conflict of law principals.

12.7 ENTIRETY OF AGREEMENT. No prior stipulation, agreement or understanding, verbal or otherwise, of the parties or their agents shall be valid or enforceable unless referenced or embodied in the provisions of this Agreement.

12.8 WAIVER. The failure on the part of either party to insist in any instance upon the strict observance by the other of any provision or term of this Agreement shall not be construed as a waiver for the future of the observance of that provision or term or as a waiver of any other provision of this Agreement.

12.9 REGIONAL STAFF. **[Timothy Jarm will serve as the Regional Administrator for Hospital as long as he is an employee of BMS.]**

12.10 COUNTERPARTS. This Agreement may be executed in any number of counterparts signed by less than all of the parties hereto, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same agreement.

***[Signature Page Immediately Follows]***

**EXHIBIT 2**

IN WITNESS WHEREOF, BMS and Hospital have executed this Agreement as of the day and year first above written.

CALHOUN-LIBERTY HOSPITAL

By [signature]

Title Chairman of The Board

BLUE MANAGEMENT SERVICES, LLC
d/b/a Alliant Management Services

By [signature]
Timothy L. Jarm, President

EXHIBIT 2

# Exhibit A

## Computation of section 4.2 Fee at Risk

| Desired Score ->> Description/measurement | Higher Operating Income, lower loss Operating Income (Loss) | Lower AR days Gross Days in AR | Higher Mean Scores Patient Satisfaction |
|---|---|---|---|
| Weight | 50% | 25% | 25% |
| Goal | **(150,000)** | **65.0** | **80** |
| Penalty Threshold criteria | Less than 5% of the YTD goal | More than 2 days in AR above goal | +1.5% or more more than goal |
| Bonus Threshold criteria | More than 5% of the YTD goal | Less than 2 days in AR below goal | -1.5% or more less than goal |
| **Risk corridor using above September 30 YTD goals:** | | | |
| MSA Penalty at score worse than ->>> | (157,500) | 67.0 | 78.8 |
| Bonus award at score at or better than ->>> | (142,500) | 63.0 | 81.2 |
| | | | |
| **Score awards, three examples:** | | | |
| Scenario 1 scores | 200,000 | 70 | 82 |
| Scenario 1 weighted % | [redacted] | [redacted] | 25% |
| Scenario 1 outcome % and award $ | 50% | $ 17,000 | |
| Scenario 2 scores | (200,000) | 62.0 | 80 |
| Scenario 2 outcome % | [redacted] | [redacted] | 0% |
| Scenario 2 outcome % and award $ | -25% | $ (8,500) | |
| Scenario 3 scores | (150,000) | 70 | 82 |
| Scenario 3 outcome % | 0% | [redacted] | [redacted] |
| Scenario 3 outcome % and award $ | 0% | $ - | |

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT**
**IN AND FOR CALHOUN COUNTY, FLORIDA**

**MARY WATSON,**

Plaintiff,

v. **Case No.: 2020 CA 64**

**BLUE MANAGEMENT SERVICES, LLC,**
**D/B/A ALLIANT MANAGEMENT SERVICES;**
**ENVISION PHYSICIAN SERVICES, LLC**
**F/K/A EMCARE PHYSICIAN SERVICES, INC.;**
**and CALHOUN-LIBERTY HOSPITAL**
**ASSOCIATION, INC.,**

Defendants.
_____________________________________________/

**NOTICE OF HEARING**

PLEASE TAKE NOTICE that on **Friday, July 21, 2023**, beginning at **1:00 p.m. CST** or as soon thereafter as can be heard, a Hearing on Defendants' Amended Emergency Joint Motion to Enforce Automatic Stay or Alternatively to Stay Proceedings Pursuant to Court's Inherent Authority has been set before the Honorable Brandon Young, Circuit Judge. This Hearing will be conducted via Zoom, with the instructions as follows:

Join Zoom Meeting
https://zoom.us/j/5865139458

Meeting ID: 586 513 9458

Thirty (30) minutes have been reserved.

PLEASE GOVERN YOURSELF ACCORDINGLY.

## AMERICANS WITH DISABILITIES ACT

**In accordance with the Americans with Disabilities Act (ADA), persons in need of a special accommodation to participate in this proceeding shall, within a reasonable time before any proceeding, contact Counsel for Defendant.**

Dated this 19th day of July 2023.

s/ *Michael B. Kelly*
MICHAEL B. KELLY
Florida Bar No.: 115345

COLE, SCOTT & KISSANE, P.A.
890 South Palafox Street, Suite 200
Pensacola, Florida 32502
Telephone (850) 483-5909
Facsimile (850) 438-6969
E-mail: michael.kelly@csklegal.com
E-mail: zaray.avino@csklegal.com

*Counsel for Defendant Calhoun-Liberty Hospital Association, Inc.*

*/s/ Kristen C. Diot*
**KRISTEN C. DIOT**
Florida Bar Number: 0118625
kdiot@sniffenlaw.com
**LISA B. FOUNTAIN**
Florida Bar Number: 948802
lfountain@sniffenlaw.com

**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004

*Counsel for Defendant, Blue Management Services, LLC d/b/a Alliant Management Services*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished this 19th day of July 2023, through the Court's E-Service portal to Plaintiff's counsel of record.

*/s/ Kristen C. Diot*
**KRISTEN C. DIOT**

Filing # 177905322 E-Filed 07/20/2023 04:59:14 PM

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT
IN AND FOR CALHOUN COUNTY, FLORIDA**

**MARY WATSON,**

**Plaintiff,**

**v.** **CASE NO.: 2020-CA-000064**

**BLUE MANAGEMENT SERVICES, LLC d/b/a ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC f/k/a EMCARE PHYSICIAN SERVICES INC.; AND CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,**

**Defendants.**
_______________________________________/

**PLAINTIFF'S AMENDED[1] MOTION TO ENFORCE SETTLEMENT**

Plaintiff, MARY WATSON, through her counsel, files this Motion to Enforce Settlement as follows:

**PROCEDURAL BACKGROUND**

1. Plaintiff filed the instant action on July 14, 2020, therein pleading the three named Defendants as a joint employer [D.E. 2]. On May 12, 2021, Plaintiff filed her Amended Complaint wherein she alleged further actions by the Defendants as a joint employer [D.E. 29].

2. After conducting some discovery, to include two separate depositions of Plaintiff [D.E. 43, 56], the parties proceeded to mediation on April 20, 2023. The mediation completed with

[1] Amended to withdraw Plaintiff's Motion to Strike in order to cure defect complained about in Defendants' Amended Emergency Joint Motion To Enforce Automatic Stay Or Alternatively To Stay Proceedings Pursuant To Court's Inherent Authority.

the parties executing a Mediation Agreement. Ex. 1.

3. The Mediation Agreement requires the joint employer to remit payment in the amount of $142,500.00 to settle all claims. Ex. 1 at ¶1. The Mediation Agreement requires Plaintiff to "execute complete releases" which would be prepared by Defendants' counsel. Ex. 1 at ¶2. The Mediation Agreement requires payment be made to the Plaintiff prior to Plaintiff dismissing the action with prejudice. Ex. 1 at ¶7.

4. On April 26, 2023, Defendants' counsel, Michael Kelly forwarded a copy of the proposed Mutual Release Agreement for, inter alia, the undersigned to "make any redline changes" for consideration. Ex. 2, Ex. 3. On May 12, 2023, Mr. Kelly sent a message to the undersigned inquiring about the progress on the Mutual Release Agreement. Ex. 3. On May 16, 2023, the undersigned responded to Mr. Kelly's message requesting a time to talk about the terms of the Mutual Release Agreement. Ex. 3. On May 18, 2023, Defendant Envision Healthcare Corporation filed its Notice of Suggestion of Bankruptcy [D.E. 86]. On May 24, 2023, Mr. Kelly responded to the undersigned's request regarding the opportunity to speak on the telephone about the settlement in this matter. Ex. 3.

5. To date, Plaintiff has not been paid and cannot dismiss the claim.

## MEMORANDUM OF LAW

### Joint Employer

Plaintiff properly pled the joint employer status of the named Defendants in this case.[2] *Roundtree v. Tegna, Inc.*, 2020 WL 4582741, at *3 (M.D. Fla. Aug. 10, 2020) (citing *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1359–61 (11th Cir. 1994) (citing *Nat'l Labor Relations*

[2] See Ex. 4 recapitulating the communication between Plaintiff's counsel and Defendants' counsel, Lisa Fountain, and noting that Defendant did not object to Plaintiff's assertion of the joint employer status through proper motion, but instead "denie(d) that it employed Plaintiff" in its answer.

*Bd. v. Browning-Ferris Indus.*, 691 F.2d 1117, 1122 (3d Cir. 1982))("[T]he joint employer concept recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the essential terms and conditions of employment"). Here, prior to proceeding to mediation, Plaintiff alerted the Defendants of her intent to conduct the deposition of the corporate representative(s) in order to discern facts relating to joint employer. Ex. 4. The parties entered the Mediation Agreement soon thereafter and prior to that discovery matter was completed. Ex. 1.

**Motion to Enforce the Settlement Agreement**

Settlement agreements are to be interpreted and governed by the law of contracts. *See Tullis and Associates v. Benge*, 473 So.2d 1384, 1386 (Fla. 1st DCA 1985), relying on *Gaines v. Nortrust Realty*, 422 So.2d 1037 (Fla. 3rd DCA 1982) ("settlement agreements are to be interpreted and governed by the law of contracts"). Under Florida law applicable to the enforcement of settlement agreements, "'[t]he making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs–not on the parties having meant the same thing but on their having said the same thing.'" *Robbie v. City of Miami*, 469 So.2d 1384, 1385 (Fla. 1985), excerpting and following *Blackhawk Heating v. Data Lease*, 302 So.2d 404 (Fla. 1974).

Further, Florida law is clear that a writing signed by the party against whom enforcement is sought is not required in order for a settlement agreement to be held enforceable. In *Robbie*, in which the Florida Supreme Court reversed the District Court of Appeal and reinstated the decision of the trial court holding a settlement agreement enforceable, as at bar, the settlement agreement was memorialized only in "a proposed settlement." Id. at 1386. Here, there is more than a mere

proposed settlement—the parties did, in fact, settle for an amount plainly articulated in the terms of the contract. See Ex. 1 at ¶1.

Most importantly, based on a finding that a settlement agreement was reached as of the parties' attendance at mediation in which the joint employer Defendants accepted the terms of the agreement, under Florida law there is "no legal bar to its enforcement by specific performance." *Tullis*, 473 So.2d at 1386-1387. The Plaintiff simply requires the full complement of the settlement amount and cannot dismiss the action until such payment is made.

The above does not purport to assume there are no issues for this Honorable Court to consider. To be sure, the two key issues facing the court are the formation of an enforceable agreement, and the terms thereof. As to the former, the law is clear that "[t]o compel enforcement of a settlement agreement, its terms must be sufficiently specific and mutually agreed upon as to every essential element." *U.S. v. Navolio*, 2008 WL 3200217, *3 (M.D.Fla. 2008), relying on *BP products of North America v. Oakridge*, 469 F.Supp.2d 1128 (M.D.Fla. 2007), in turn citing *Tullis*, *supra*. There can be no question that the parties legally remaining in this action agree that a settlement has been made as the Defendants filed their Notice of Settlement [D.E. 88] thereby admitting as much. The disagreement, however, lies in determining from whom remuneration is to be derived and resolution of such issue involves consideration of the essential elements of the agreement.

In considering agreement "as to every essential element" in its 1985 decision in *Tullis*, the appellate court had before it an agreement in which "Tullis says that the definition of 'prudent operating expenses' is an essential element and its being undefined is fatal to the agreement's enforceability." *Tullis*, 473 So.2d at 1386. The court disagreed, affirming "the trial judge's construction of the agreement." Id.

That same year, the Florida Supreme Court addressed the "essential terms" issue at some length in *Robbie*, applying a commonsense approach to the required agreement thereto, as follows:

> Due to the professional football players' strike in 1982, the Miami Dolphins did not play the contracted number of games in the city-owned Orange Bowl. The City of Miami sued to collect rent for the games not played and received a summary judgment on the issue of liability. Trial was set to determine the amount of damages, but prior to trial the parties reached a proposed settlement, and the trial was cancelled. Documents were prepared, but a discord arose between the parties as to a provision in the settlement. The parties agreed, basically, that the Dolphins will play an extra game in both 1985 and 1986, but, if either extra game is not played "for any reason" the Dolphins will pay $30,000 per game. The original contract excuses the Dolphins from the rent obligation if any of the nine scheduled games are not played due to an "Act of God."
>
> ***
>
> Settlements, of course, are governed by the rules for interpretation of contracts... Additionally, settlements are highly favored and will be enforced whenever possible...
>
> In the case sub judice the disagreement over the application of the Act of God provision to the tenth game was a mere contingency. It was not, as the district court below determined, an essential element of the contract. The essential terms of the settlement are, as Judge Jorgenson correctly states in his dissent to the district court's decision, that two extra games will be played or $30,000 per unplayed game will be due; the Dolphins will increase their public liability insurance; and the Dolphins will defend certain third party claims against the city. As to these terms there was no disagreement. All the documents prepared and the transcripts of the city commission meeting are in accord on the essential elements. Therefore, under *Blackhawk*, the parties have said the same thing as to the essential elements, and the settlement should be enforced.

*Robbie*, 469 So.2d at 1385-1386. Likewise, at bar, the parties reached agreement as to all essential terms of the settlement prior to the Envision bankruptcy notice which was after the parties had already solidified their agreement. If the parties had determined that an essential element of the agreement related to delineation of who pays what, most assuredly that would have made it into

the agreement prior to execution. It did not and therefore, the remaining parties are required to pay the amount articulated at the conclusion of mediation.

Turning to non-essential terms, once again basic Florida contract law governs. The Eleventh Circuit applied such law in *Schwartz*, opining as follows:

> Nor is the court to add to a settlement terms that were not contemplated by the parties... The court's role is to determine the intention of the parties from the language of the agreement, the apparent objects to be accomplished, other provisions in the agreement that cast light on the question, and the circumstances prevailing at the time of the agreement.
>
> Schwartz challenged the district court's finding that in his settlement with defendants, Schwartz "agreed he no longer suffered from any disparity in pay." He argues that the agreement was only a compromise to settle *past* claims and that in no way did he agree that it established salary parity or that, by signing it, he agreed to waive his rank, years in rank or any other benefits of employment...
>
> The intent of the parties in entering the settlement agreement was clearly to end the litigation with regard to the issues then in dispute and to preclude any further suits on those issues or any matters related to Schwartz' employment at FSU *prior* to July 1, 1980. The settlement agreement says nothing, however, about waiving claims of discrimination arising after July 1, 1980... It is not for a court to read terms into the settlement agreement that are not explicitly stated... Schwartz is correct that the settlement agreement did not constitute a waiver of his future Equal Pay Act or Title VII claims.
>
> There was no specific statement in the settlement agreement that at the time of the agreement Schwartz' salary had been made equal or was equal. . ..

*Schwartz*, 807 F.2d at 905-906, relying on *Florida Education Association v. Atkinson*, 481 F.2d 662 (5th Cir. 1973), authoritative in the Eleventh Circuit, and *J&S Coin v. Gottlieb*, 362 So.2d 38 (Fla. 3rd DCA 1978), italics in original; *see Atkinson*, 481 F.2d at 663, relying on *Southwest E&T v. American Enka*, 463 F.2d 1165 (5th Cir. 1972), authoritative in the Eleventh Circuit ("A court may not add terms to a settlement which were not in the contemplation of the parties"); *J&S*

*Coin*, 362 So.2d at 39-40, relying on *Bornstein v. Somerson*, 341 So.2d 1043 (Fla. 2nd DCA 1977) and *Bal Harbour v. Greenleaf*, 274 So.2d 13 (Fla. 3rd DCA 1973) ("As a general rule, it is the duty of the court to determine the intention of the parties from the language used, apparent objects to be accomplished, other provisions in the agreement which might shed light on the question, and the surrounding circumstances at the time the agreement was entered into").

Likewise, at bar, in enforcing the Agreement, terms not addressed by the parties cannot be added after the fact.

In *Carpaneda v. Quayside*, 2010 WL 2881383, *2 (S.D. Fla 2010), the exact same issue raised herein was addressed by the Court which held:

> "The parties mutually assented to the terms set forth in the Mediation Settlement Agreement... They agreed that the terms of the settlement would remain confidential and the plaintiffs would execute a general release in favor of the defendant. "If an offer is accepted without conditions, and without varying its terms, and the acceptance is communicated to the other party without unreasonable delay, a contract arises, from which neither party "can withdraw at its pleasure." *Am. Appraisal Assoc., Inc. v. Am. Appraisals, Inc.,* 531 F.Supp.2d 1353, 1358 (S.D.Fla.2008) (citing *Kendel v. Pontious,* 261 So.2d 167, 169 (Fla.1972) (citing Restatement of Contracts, § 64)). The Mediation Settlement Agreement incorporated all of the essential terms for enforcement of the settlement.
>
> "The defendants characterize the Mediation Settlement Agreement as a 'term sheet' and argue that there were two material terms of the parties' proposed settlement that remained outstanding, namely the covenant not to sue and the confidentiality provisions. Although the defendants now contend that liquidated damages for violations of the covenant not to sue and the confidentiality provisions are essential, missing contract terms, <u>the proposed provisions are ancillary to the settlement agreement</u>. *See Sands,* 2009 WL 2730469 at *4 (finding the proposed confidentiality provision is not an essential term of the settlement agreement because it is directed to the manner in which the agreement would be implemented and its exclusion does not bar enforcement of the agreement); *Miles v. Nw. Mut. Life Ins. Co.,* 2009 WL 5213874 at *3 (M.D.Fla. Dec.21, 2009) (holding that the fact that 'the confidentiality and non-disparagement terms of the agreement were not fully expounded is immaterial' because these terms only speak to how the agreement will be implemented); *Stempel v. Stempel,* 633 So.2d 26, 26–27 (Fla. 4th DCA 1994) (finding that a mediation agreement was enforceable even though it was a mere bare-bones agreement and one party urged that other terms should have been included). If the parties wanted to agree to include liquidated damages for

> violations of the general release and confidentiality provisions, they could have. The Mediation Settlement Agreement, however, is silent on the issue of damages in the event of breach.
>
> "The undersigned finds that the parties entered into a full and final settlement agreement as to definite and essential terms. The settlement agreement requires the parties to keep the terms of the settlement confidential and requires the plaintiffs to execute general releases in favor of the defendant. Under Florida law, settlement agreements are highly favored and will be enforced whenever possible. *See Robbie,*469 So.2d at 1385. The **liquidated damages** provisions that the defendant attempted to include after the fact in the covenant not to sue and confidentiality provisions of the **Mediation** Settlement **Agreement** are additional, non-essential terms that cannot undermine the validity and enforcement of the **Mediation** Settlement **Agreement**. The undersigned RECOMMENDS that the Plaintiff's Motion to Compel enforcement of the settlement agreement... should be GRANTED."

[Emphasis added].

The parties reached agreement and the remaining Defendants cannot recant the agreement at this late date, regardless of the legal inability of one of the Defendants to pay. The Court should order the remaining Defendants, Calhoun Liberty Hospital and Alliant Management Services, to remit payment in full as considered under the terms of the Mediation Agreement. Most assuredly, had the Mediation Agreement in question actually contained a term delineating who pays what, those remaining Defendants not subject to a bankruptcy stay would be moving this Honorable Court to enforce the terms therein. They are not so moving, nor will they so move. This Honorable Court must enforce the contract terms against those entities still legally obliged to comply with the terms.

Respectfully submitted,

/s/ Thomas L. Dickens, III
Thomas L. Dickens, III [FBN 063867]
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P.A.
203 N. Gadsden Street
Tallahassee, Florida 32301

(850) 383-4800 (telephone)
(850) 383-4801 (facsimile)

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with the Clerk via the Florida Courts e-Filing Portal only this 20th day of July 2023, which will send Notification of Electronic Filing to all counsel of record.

*/s/* Thomas L. Dickens, III
Thomas L. Dickens, III

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT IN AND FOR CALHOUN COUNTY, FLORIDA

MARY WATSON,

Plaintiff,

vs.

CASE NO.: 20-CA-64

BLUE MANAGEMENT SERVICES, LLC. D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC. F/K/A EMCARE PHYSICIANSERVICES, INC.; AND CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.

Defendants.

______________________________/

**MEDIATION AGREEMENT**

The parties to the above referenced cause submitted their issues to mediation and agree as follows:

1. Defendants, BLUE MANAGEMENT SERVICES, LLC. D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC. F/K/A EMCARE PHYSICIANSERVICES, INC.; AND CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC., agree to pay to Plaintiff, MARY WATSON, ONE HUNDRED FORTY- TWO THOUSAND FIVE HUNDRED DOLLARS ($142,500.00) for a full and complete settlement of all matters.

2. Plaintiff shall execute complete releases to be prepared by counsel for Defendants and approved by counsel for Plaintiff.



PLAINTIFF'S EXHIBIT
1

3. Plaintiff agrees that she shall not, in the future, apply for employment with Defendant Alliant. This does not preclude Plaintiff from seeking employment as a medical doctor with a hospital for which Alliant provides management services, and in such event, Alliant will maintain a neutral position regarding Plaintiff's employment.

4. Defendant Calhoun-Liberty Hospital shall change Plaintiff's termination to a voluntary resignation dated January 19, 2020, and shall provide a neutral job reference to any inquiring, prospective employers consisting of rate of pay and dates worked only. Plaintiff shall not be precluded from communication with current or former CLH employees, except as prohibited by the mediation privilege of confidentiality.

5. Plaintiff agrees that she shall not, in the future, apply for employment with Defendant Calhoun-Liberty Hospital.

6. Plaintiff is eligible for rehire with Defendant Envision, and Defendant Envision will provide a neutral job reference to any inquiring, prospective employers.

7. Upon payment in paragraph 1. above, Plaintiff shall dismiss this action with prejudice.

8. Defendants CLH and Envision shall equally divide the Plaintiff's portion of mediator's fees.

9. Each party shall be responsible for their own costs and attorney's fees. Defendants will execute a mutual general release between and among the co-defendants.

10. The parties fully understand the terms of this Mediation Agreement, and they are freely and voluntarily entering into it with the full participation of their counsel.

DATED this 20th day of April, 2023.

BLUE MANAGEMENT SERVICES, LLC. D/B/A ALLIANT MANAGEMENT SERVICES; Defendant

DocuSigned by:
15BED36488D74FB...
MARY WATSON, MD, Plaintiff

DocuSigned by:
By Michael Kozar
2DE5D4C5E951404...
Michael Kozar
As its CEO

DocuSigned by:
Thomas L. Dickens, III
4D45C6ACF3614E9...
THOMAS L. DICKENS, III, Esquire
Attorney for Plaintiff

DocuSigned by:
Lisa Fountain
E01832CA162F40B...
LISA FOUNTAIN, Esquire
Attorney for Defendant

ENVISION PHYSICIAN SERVICES, LLC. F/K/A EMCARE PHYSICIANSERVICES, INC.; Defendant

DocuSigned by:
By Mark Hirschberg
1D620EE3A0B4D5C...
Mark Hirschberg
As its Authorized Representative

DocuSigned by:
Lori K. Mans
2CEBD6D835B64BB...
LORI MANS, Esquire
Attorney for Envision Physician Services, LLC

CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC., Defendant

DocuSigned by:
By Chris Jepsen
31DA35C47FD9409...
Chris Jepsen
As its CEO

DocuSigned by:
Michael Kelly
5DD3FB113BA5463...
MICHAEL KELLY, Esquire
Attorney for Calhoun-Liberty Hospital

# MUTUAL SETTLEMENT AND RELEASE AGREEMENT

This Mutual Settlement and Release Agreement ("AGREEMENT") is made and entered into as the Effective Date (defined herein), by and between **MARY WATSON** (hereinafter referred to as "Claimant") and **BLUE MANAGEMENT SERVICES, LLC D/B/A ALLIANT MANAGEMENT SERVICES** (hereinafter "Alliant"), **ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.** (hereinafter "Envision"), **CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.** (hereinafter "CLH"). The "Released Parties" include Claimant, Alliant, Envision, CLH, and any of their past, present and future parent companies, owners, managers, subsidiaries, franchisers, affiliates, related companies, partnerships, officers, directors, employees, agents, attorneys, representatives, successors, assigns, insurers, reinsurers, and insureds, whomsoever, in any capacity (hereinafter referred to jointly or severally as the "Released Parties"). The parties to this AGREEMENT are collectively referred to as the "PARTIES."

## 1. Background

**A.** CLAIMANT alleges she was formerly employed by Alliant, Envision, and CLH (hereinafter collectively referred to as "DEFENDANTS"). CLAIMANT has alleged the following against DEFENDANTS: (1) CLH engaged in public whistleblower retaliation under Fla. Stat. §112.3187, et seq.; (2) DEFENDANTS all engaged in private whistleblower retaliation under Fla. Stat. §448.101, et seq.; (3) DEFENDANTS all engaged in Gender Discrimination under the Florida Civil Rights Act ("FCRA"); (4) DEFENDANTS all engaged in Retaliation under the FCRA; and (5) CLH engaged in tortious interference with Plaintiff's business relationships. CLAIMANT alleges to have sustained injuries while employed with DEFENDANTS (hereinafter referred to as the "INCIDENTS").

**B.** DEFENDANTS deny any wrongdoing or unlawful acts on the part of any of their elected officials, appointed officials, agents, employees, or others for whom they could be held liable. The DEFENDANTS in good faith believe that the CLAIMANT'S claims related to or arising from her alleged employment, whether stated or unstated, are not valid ones, has contested the claims, and would continue to contest the claims, and in good faith believe there is a valid foundation for the defense of such claims. ALLIANT specifically denies it ever employed CLAIMANT, jointly or otherwise.

**C.** On May 12, 2021, CLAIMANT filed an Amended Complaint against DEFENDANTS in the Circuit Court of the 14th Judicial Circuit in and for Calhoun County, Florida, in a case styled *Mary Watson v. Blue Management Services, LLC, d/b/a Alliant Management Services;*



PLAINTIFF'S EXHIBIT
2

*Envision Physician Services, LLC f/k/a Emcare Physician Services, Inc.; and Calhoun-Liberty Hospital Association, Inc.,* bearing Case No. 2020 CA 64 (the "UNDERLYING ACTION").

**D.** On April 20, 2023, the PARTIES entered into a Mediation Agreement (hereinafter "MEDIATION AGREEMENT"), consenting to an outline of settlement terms that are laid out in greater detail throughout this AGREEMENT.

**E.** This AGREEMENT formally memorializes settlement terms, as detailed below.

**2. <u>Consideration</u>**

**A.** Within thirty (30) days of this AGREEMENT being signed, Released Parties shall pay CLAIMANT the sum of ONE HUNDRED FORTY-TWO THOUSAND FIVE DOLLARS AND 00/100 CENTS ($142,500.00) ("Payment"), payable as described below:

a. Alliant agrees to pay **$22,500.00** to ______.
b. Envision agrees to pay **$42,500.00** to ______.
c. CLH agrees to pay **$77,500.00** to ______.

**B.** CLAIMANT and her attorney assume responsibility for payment of any and all taxes that may be owed regarding the Payment. CLAIMANT agrees to indemnify and hold the Released Parties harmless for the amount of any taxes, penalties, or interest that may be assessed by any governmental tax authority against any of the Released Parties in connection with such governmental authority's determination that any of the Released Parties were required to but failed to withhold or report the correct amount of income or employment taxes from the Payment made to CLAIMANT.

**C.** CLAIMANT's execution of this Agreement is a condition precedent to payment of the Consideration.

**D.** Within 10 calendar days of receiving Payment, Claimant agrees to dismiss the UNDERLYING ACTION with prejudice, with each party bearing their own fees and costs.

**E.** DEFENDANTS will each cover their individual portion of cost of mediation. In addition, CLH and Envision shall equally cover CLAIMANT's entire cost of mediation.

**F.** In exchange, CLAIMANT shall release Released Parties from any and all actions, whatsoever, CLAIMANT has or may have against the Released Parties, including but not limited to any claim(s) under:

- Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq.;
- Chapter 440 of the Florida Statutes (Workers' Compensation Act).;
- The Florida Civil Rights Act, Fla. Stat. 760 et seq.; Fla. Stat. 448;
- The Family and Medical Leave Act, 28 U.S.C. 2601 et seq.;
- The Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. 43 et seq.;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974;
- The Americans with Disabilities Act of 1990, 42 U.S.C. 12101 et seq.;
- The Fair Labor Standards Act, 29 U.S.C. 201 et seq.;
- The Age Discrimination in Employment Act, 29 U.S.C. 621 et seq.;
- The Older Workers Benefit Protection Act;
- The Equal Pay Act of 1963;
- Tortious Interference;
- The Occupational Safety and Health Act;
- State and Federal "Whistleblower" claims;
- Claim for Unpaid Wages;
- Laws, regulations, or ordinances of any country outside the United States in which Claimant performed work or services for the Released Parties;
- Any other Federal, State, or local law, regulation or ordinance; and
- Any public policy, contract, or common law claims, including any tort claims (e.g., negligent or intentional infliction of emotional distress, etc.) whether based on common law or otherwise.

This waiver and release also satisfies and bars any claim or demand for costs, fees, or other expenses, including attorneys' fees, incurred in connection with any claim.

The above listing is intended to be illustrative rather than exhaustive. CLAIMANT therefore acknowledges and agrees that this Agreement constitutes a full and final bar to any and all claims of any type that Claimant has now or in the future against the Released Parties as a result of or in connection with CLAIMANT's previous time as an employee of DEFENDANTS.

**3. <u>General Release</u>**

**A.** CLAIMANT, and her respective assigns, executors, successors, heirs, survivors and administrators, agrees to voluntarily and knowingly, fully, unconditionally, and generally release and forever discharge Released Parties, and their affiliates, predecessors, successors, parents, subsidiaries, related companies, divisions, assigns, partnerships, joint ventures, officers, directors, shareholders, representatives, members, employees, former employees, attorneys, insurers, reinsurers, and agents, separately, collectively, severally, directly, and vicariously from any and all claims and causes of action arising out of the UNDERLYING ACTION and the INCIDENTS.

**B.** Without limiting the broad intent of the foregoing, CLAIMANT understands this AGREEMENT shall release Released Parties from any and all past, present, or future liability associated with the above referenced INCIDENTS. CLAIMANT further understands that any injuries or conditions sustained in the INCIDENTS may be progressive and become worse over time. CLAIMANT further understands that the INCIDENTS may cause conditions or complications which have not yet manifested or become known. With this understanding, CLAIMANT specifically agrees that this AGREEMENT shall apply to all injuries or conditions which may arise from these INCIDENTS, whether now known or not, including any progression or worsening of presently existing conditions or injuries.

**C.** CLAIMANT knowingly and voluntarily releases and waives any and all known and unknown rights and claims which CLAIMANT has or may have against Released Parties as a result of or in connection with CLAIMANT's previous time as an employee or alleged employee of DEFENDANTS, including but not limited to any claim(s) pending in these Proceedings, or which may arise out of the subject claim, claim handling or subject matter of these Proceedings as well as all associated claims for lost wages, consortium, injuries, policy benefits, interest, costs, attorney's fees, and extra contractual claims, whether such claims or demands are based in statute, tort, contract, extra contractual theories, or any other theories in law or equity.

**D.** The above listing is intended to be illustrative rather than exhaustive. CLAIMANT therefore acknowledges and agrees that this Agreement constitutes a full and final bar to any and all claims of any type that CLAIMANT has now or in the future against Released Parties as a result of or in connection with the INCIDENTS and the UNDERLYING ACTION.

**E.** CLAIMANT understands that she is solely responsible for all costs, attorneys' fees, and expenses incurred by her and her counsel, and CLAIMANT agrees and understands that this AGREEMENT expressly waives and releases any right to recover attorneys' fees, expenses, or costs from Released Parties.

**F.** Alliant, and its respective assigns, executors, successors, heirs, survivors and administrators, agree to voluntarily and knowingly, fully, unconditionally, and generally release and forever discharge Envision and CLH, as well as their affiliates, predecessors, successors, parents, subsidiaries, related companies, divisions, assigns, partnerships, joint ventures, officers, directors, shareholders, representatives, members, employees, former employees, attorneys, insurers, reinsurers, and agents, separately, collectively, severally, directly, and vicariously from any and all claims and causes of action arising out of the INCIDENTS and the UNDERLYING ACTION.

**G.** Envision, and its respective assigns, executors, successors, heirs, survivors and administrators, agree to voluntarily and knowingly, fully, unconditionally, and generally release and forever discharge Alliant and CLH, as well as their affiliates, predecessors, successors, parents, subsidiaries, related companies, divisions, assigns, partnerships, joint ventures, officers, directors, shareholders, representatives, members, employees, former employees, attorneys, insurers, reinsurers, and agents, separately, collectively, severally, directly, and vicariously from any and all claims and causes of action arising out of the INCIDENTS and the UNDERLYING ACTION.

**H.** CLH, and its respective assigns, executors, successors, heirs, survivors and administrators, agree to voluntarily and knowingly, fully, unconditionally, and generally release and forever discharge Envision and Alliant, as well as their affiliates, predecessors, successors, parents, subsidiaries, related companies, divisions, assigns, partnerships, joint ventures, officers, directors, shareholders, representatives, members, employees, former employees, attorneys, insurers, reinsurers, and agents, separately, collectively, severally, directly, and vicariously from any and all claims and causes of action arising out of the INCIDENTS and the UNDERLYING ACTION.

**4. No Assignment of Released Claims and Indemnity**

**A.** The PARTIES represent and warrant that as of signing this AGREEMENT, they have not assigned, transferred, or hypothecated, or purported to assign, transfer, or hypothecate, to any person, firm, corporation, association, contractor, third-party or entity any of the released claims. The PARTIES additionally represent and warrant that no other persons or entities had or have any interests or rights against one another based on or relating to the released claims.

**B.** CLAIMANT further agrees to defend, indemnify and hold Released Parties, as well as their agents and insurers harmless from any and all lawsuits, liens, claims of liens or subrogation claims filed, that could have been filed or that could later be filed as a result of persons and entities providing benefits to or on behalf of CLAIMANT arising out of the INCIDENTS and the UNDERLYING ACTION.

**5. No Admission of Liability and Not Evidence**

The PARTIES understand and agree that this AGREEMENT is a release of disputed claims and does not constitute an admission of liability as to any matter whatsoever and that the PARTIES merely intend by this AGREEMENT to avoid further litigation and buy their peace.

**6. Right to Counsel, Comprehension, and Authority to Execute**

After conferring with legal counsel to the extent they deemed expedient, the PARTIES covenant and warrant that they fully comprehend their rights and obligations under the AGREEMENT, and they have complete authority to enter into and otherwise fulfill their obligations under the AGREEMENT.

**7. Severability**

In the event any provision of this AGREEMENT is held to be unenforceable, each and all other provisions of this AGREEMENT shall remain in full force and effect.

**8. No Contra Proferentem**

The PARTIES acknowledge that this is a negotiated AGREEMENT and that the principle of contract interpretation known as *contra proferentem* is inapplicable to its construction.

**9. Entire Agreement**

All of the terms of this AGREEMENT are contractual and not merely a recital. The PARTIES further acknowledge that this AGREEMENT constitutes a full, final, and complete settlement of their differences, as described in the Background and General Release of this AGREEMENT, and supersedes and replaces any and all other written or oral exchanges, agreements, understandings, arrangements, or negotiations between them, including the language in the MEDIATION AGREEMENT. The PARTIES affirmatively state that if there are any conflicts between the AGREEMENT and prior agreements, the AGREEMENT supersedes and replaces the language in the MEDIATION AGREEMENT and this AGREEMENT represents the entire agreement between the PARTIES.

**10. Modification**

No provision of this AGREEMENT may be changed, altered, modified or waived except in writing signed by the PARTIES (or their authorized representatives), which writing shall specifically reference this AGREEMENT and indicate that the PARTIES intend to waive or modify it. The waiver by any party to this AGREEMENT or a breach of any of the provision shall not operate or be construed as a waiver of any subsequent or simultaneous breach.

**11. Fee Shifting**

The PARTIES shall be entitled to all remedies available at law or in equity for any violation of this AGREEMENT including, but not limited to, the equitable remedy of specific performance. The PARTIES agree that the prevailing party in any future litigated dispute concerning the terms or enforcement of this AGREEMENT as executed shall be entitled to reimbursement of reasonable attorneys' fees and costs.

**12. Applicable Law and Interpretation**

This AGREEMENT shall be construed and enforced according to the laws of the state of Florida, without regard to the application of conflicts of law principles. Any action to enforce this AGREEMENT shall occur in Calhoun County, Florida. If any provision of this AGREEMENT is declared illegal or unenforceable by any court of competent jurisdiction and if it cannot be modified to be enforceable, such provision shall immediately become null and void, leaving the remainder of this AGREEMENT in full force and effect.

**13. Counterpart Signatures**

This AGREEMENT may be executed in multiple counterparts, each of which is deemed to be an original, but all of which together shall constitute one and the same instrument.

**14. Medicare Considerations**

**A.** CLAIMANT will provide Released Parties with complete, accurate, and up-to-date information regarding Medicare eligibility status. CLAIMANT also will provide any and all information Released Parties require to facilitate and meet its reporting obligations under 42 U.S.C. § 1395y(b)(8). Such information may include, but is not limited to: CLAIMANT's full name, Social Security Number (SSN), Medicare Health Insurance Claim Number (HICN), gender, and date of birth.

**B.** CLAIMANT represents and warrants that she has provided Released Parties with complete, accurate, and up-to-date information regarding CLAIMANT's Medicare eligibility status. The parties agree that all representations and warranties made herein shall survive settlement.

**C.** The PARTIES agree that, in the event of a breach of the representations and warranties made by CLAIMANT in the paragraphs above, Released Parties shall be entitled to set off any remaining payments due under the terms of this agreement, as well as to the full extent of damages and other relief available at law and equity.

**D.** The PARTIES have attempted to resolve this matter in compliance with both state and federal law and believe that the settlement terms adequately consider Medicare's interest and do not reflect any attempt to shift responsibility for payment of medical expenses covered under this settlement to Medicare pursuant to 42 U.S.C. § 1395y(b). The PARTIES acknowledge and understand that any present or future action or decision by CMS or Medicare, including actions regarding CLAIMANT's eligibility or entitlement to receive Medicare or Medicare payments, will not render this release void or ineffective, or in any way affect the finality of this settlement.

**E.** CLAIMANT agrees to satisfy from the proceeds of this settlement all liens or claims relating to the matter that is the subject of this AGREEMENT. This includes, but is not limited to, any claims or liens for any expenses, past, present, or future, from any private person, firm, corporation, insurer, or third-party payor, or from any State, its counties and municipalities, the United States government, or their agencies or subdivisions which now exist, or may in the future exist, including, but not limited to, Medicare, Medicaid, or any other governmental or public assistance programs.

**F.** CLAIMANT agrees to indemnify and hold harmless Released Parties from any and all claims, demands, liens, subrogated interests, and causes of action of any nature or character that have been or may in the

future be asserted by Medicare and/or persons or entities acting on behalf of Medicare, arising from or related to any of the allegations that are subject to this AGREEMENT.

**G.** CLAIMANT attests that she is not now eligible for or enrolled in Medicare. CLAIMANT further attests that she is not presently receiving Medicare benefits.

**15. Confidentiality Agreement**

**A.** Unless otherwise required by law, the PARTIES agree that the terms of the AGREEMENT are confidential. The PARTIES agree to limit disclosure of information about the settlement to tax preparation and/or legal professionals, tax authorities, health professionals, and financial advisers.

**B.** If required by law to disclose the terms of settlement beyond what is described above, any person informed of the terms of settlement shall also be informed of the confidential nature of such information and that such person(s) shall be bound by this confidentiality provision to the extent permitted by law.

**C.** Nothing in this Agreement prohibits or otherwise limits CLAIMANT from filing a charge or complaint with or participating, testifying, or assisting in any investigation, hearing, or other proceeding before any federal, state, or local government agency or in any legislative or judicial proceeding.

**D.** The PARTIES consent to allowing injunctive relief against one another in the event this provision is violated by Released Parties or CLAIMANT.

**16. Nondisparage Agreement and Reapplication for Employment**

**A.** CLAIMANT agrees to: (1) not make any statements, or take any other actions whatsoever, to disparage, defame, sully or compromise the goodwill, name, brand or reputation of Released Parties for an indefinite period of time; and (2) not commit any other action that could likely injure, hinder or interfere with the business or business relationships of Released Parties for an indefinite period of time.

**B.** Likewise, CLH shall change CLAIMANT's termination to a voluntary resignation effective January 19, 2020.

**C.** In response to any request from a prospective employer, CLAIMANT shall be provided a neutral reference from DEFENDANTS if requested, consisting of dates of employment, position held, and pay scale as long

as in accordance with applicable law on sharing information on employees with other employers. Reference requests of Envision must be directed to ____________, who will provide dates of employment, position held, and pay scale in accordance with this provision.

**D.** CLH shall not preclude CLH employees from communications with CLAIMANT, except as prohibited by the terms in the AGREEMENT.

**E.** CLAIMANT agrees that she shall not reapply for employment with CLH. Alliant and Envision both consent to not assigning or locating CLAIMANT to work at CLH in the future as well.

**F.** CLAIMANT agrees that she shall not apply or reapply for employment with Alliant. This provision does not preclude CLAIMANT from seeking employment with a hospital for which Alliant provides management services.

**G.** CLAIMANT is eligible for rehire with Envision.

**17. <u>Capacity</u>**

CLAIMANT declares, covenants, and warrants that she is over the age of eighteen (18) years old, and is suffering from no legal, mental or physical disability which would impair or disable her from executing this AGREEMENT and that there have been no representations and/or statements made by DEFENDANTS hereto and their agents to influence her in making or executing this AGREEMENT.

**[SIGNATURES ON FOLLOWING PAGES]**

IN WITNESS WHEREOF, the PARTIES hereto execute this AGREEMENT under penalty of perjury on the dates indicated below:

MARY WATSON, MD

______________________________
Signature

________________________________
Printed Name

_______________________
Date

Under penalty of perjury:

Authorized Representative of
BLUE MANAGEMENT SERVICES, LLC
D/B/A ALLIANT MANAGEMENT
SERVICES

________________________________
Signature

_______________________________
Printed Name and Title

_____________________
Date

Under penalty of perjury:

Authorized Representative of
ENVISION PHYSICIAN SERVICES,
LLC F/K/A EMCARE PHYSICIAN
SERVICES, INC.

______________________________
Signature

______________________________
Printed Name and Title

____________________
Date

Under penalty of perjury:

Authorized Representative of
CALHOUN-LIBERTY HOSPITAL
ASSOCIATION, INC.

________________________________
Signature

________________________________
Printed Name and Title

______________________
Date

4865-2147-3631, v. 1

**Linette Williams**

| | |
|---|---|
| **From:** | Michael B. Kelly <Michael.Kelly@csklegal.com> |
| **Sent:** | Wednesday, May 24, 2023 12:09 AM |
| **To:** | Thomas Dickens |
| **Subject:** | RE: Proposed Release Agreement RE: Watson v. Alliant, et al. |

Thomas, I am out of the office tomorrow but in the rest of the week if there is a good day that works for you? Let me know and I will be happy to chat.

The Florida Law Firm
www.csklegal.com

**Michael B. Kelly**
*Partner*
Tel: 850-483-5930 | Fax: 850-438-6969
**Email: Michael.Kelly@csklegal.com**
**Cole, Scott & Kissane P.A.**
890 South Palafox Street. Suite 200
Pensacola, FL, 32502

---

**From:** Thomas Dickens <thomas.dickens@mattoxlaw.com>
**Sent:** Tuesday, May 16, 2023 2:55 PM
**To:** Michael B. Kelly <Michael.Kelly@csklegal.com>
**Subject:** RE: Proposed Release Agreement RE: Watson v. Alliant, et al.

**[CAUTION: EXTERNAL EMAIL]**

---

Hey Michael,

Do you have a few minutes to talk?

TD

---

**From:** Michael B. Kelly <Michael.Kelly@csklegal.com>
**Sent:** Friday, May 12, 2023 4:09 PM
**To:** Thomas Dickens <thomas.dickens@mattoxlaw.com>
**Cc:** Lisa Fountain <LFountain@sniffenlaw.com>; Mans, Lori K. (Jacksonville) <Lori.Mans@jacksonlewis.com>
**Subject:** RE: Proposed Release Agreement RE: Watson v. Alliant, et al.

Good afternoon Thomas,

Any update on my below email and your approval of the release? I appreciate your attention to this matter and I look forward to hearing from you soon.

Sincerely,

Michael Kelly

PLAINTIFF'S
EXHIBIT
3

The Florida Law Firm
www.csklegal.com

**Michael B. Kelly**
*Partner*
Tel: 850-483-5930 | Fax: 850-438-6969
**Email: Michael.Kelly@csklegal.com**

**Cole, Scott & Kissane P.A.**
890 South Palafox Street. Suite 200
Pensacola, FL, 32502

---

**From:** Michael B. Kelly
**Sent:** Wednesday, April 26, 2023 4:31 PM
**To:** Thomas Dickens <thomas.dickens@mattoxlaw.com>
**Cc:** Lisa Fountain <LFountain@sniffenlaw.com>; Mans, Lori K. (Jacksonville) <Lori.Mans@jacksonlewis.com>
**Subject:** Proposed Release Agreement RE: Watson v. Alliant, et al.

Good afternoon Thomas,

Please allow this email to provide you a draft release agreement between your client and the defendants in this matter. I believe the release covers all of the issues we touched on throughout our settlement discussions and the terms in the mediation agreement. Lori and Lisa (cc'd here) have already given their consent to the language as well other than one portion where Envision needs to input on page 10 who reference requests must be made out to.

Let me know if you are okay with the language once you have had a chance to review it. If you have any issues with the release, I have provided it to you in word format so you can make any redline changes (or turn track changes on). Further, can you please provide us payment instructions and your firm's W-9 when you have a moment (highlighted in the release)? If you are okay with the language, please provide us a copy of the executed release and we will be sure to send it to our clients for signature so payment can be issued in a timely manner. If you have any questions or concerns about the release, feel free to let me know or give me a call at 850-483-5930. I appreciate your attention to this matter and I look forward to hearing from you soon.

Sincerely,

Michael Kelly

---

**From:** Thomas Dickens <thomas.dickens@mattoxlaw.com>
**Sent:** Friday, April 21, 2023 10:20 AM
**To:** Michael B. Kelly <Michael.Kelly@csklegal.com>
**Cc:** Mans, Lori K. (Jacksonville) <Lori.Mans@jacksonlewis.com>; Lisa Fountain <LFountain@sniffenlaw.com>; Laura Beth Faragasso <lb@osteenosteen.com>
**Subject:** Re: Revised Watson Agreement

**[CAUTION: EXTERNAL EMAIL]**

---

You bet and I too am appreciative of everyone's hard work to find that resolution. I'll look for the agreement later.

Sent from my iPhone

On Apr 21, 2023, at 10:32 AM, Michael B. Kelly <Michael.Kelly@csklegal.com> wrote:

Thanks to everyone for your help in getting this one over the finish line last night. If good with you all, I have started on a rough draft release and pass it around later today once completed.

The Florida Law Firm
www.csklegal.com

**Michael B. Kelly**
*Partner*
Tel: 850-483-5930 | Fax: 850-438-6969
**Email: Michael.Kelly@csklegal.com**
**Cole, Scott & Kissane P.A.**
890 South Palafox Street. Suite 200
Pensacola, FL, 32502

**From:** Michael B. Kelly <Michael.Kelly@csklegal.com>
**Sent:** Thursday, April 20, 2023 9:40 PM
**To:** Laura Beth Faragasso <lb@osteenosteen.com>; Mans, Lori K. (Jacksonville) <Lori.Mans@jacksonlewis.com>; Lisa Fountain <lfountain@sniffenlaw.com>; Thomas Dickens <thomas.dickens@mattoxlaw.com>
**Subject:** Revised Watson Agreement

A few minor changes that we discussed throughout mediation. Let me know if good with you all.

**From:** Laura Beth Faragasso <lb@osteenosteen.com>
**Date:** Thursday, April 20, 2023 at 9:31 PM
**To:** Mans, Lori K. (Jacksonville) <Lori.Mans@jacksonlewis.com>, Michael B. Kelly <Michael.Kelly@csklegal.com>, Lisa Fountain <lfountain@sniffenlaw.com>
**Subject:** Re: proposed Watson Agreement

**[CAUTION: EXTERNAL EMAIL]**

Sorry, didn't attach.  I'm coming back to you, but we have a deal at 142,500 + mediation.

***Laura Beth Faragasso***

***O'Steen & O'Steen, P.L.***

***lb@osteenosteen.com***

***2900 E. Park Avenue***

***Tallahassee, FL 32301***

***850-877-1028 [Scheduling]***

***850-212-8642 [Cell]***

***www.osteenmediation.com***

---

**From:** Laura Beth Faragasso <lb@osteenosteen.com>
**Sent:** Thursday, April 20, 2023 10:29 PM
**To:** Mans, Lori K. (Jacksonville) <Lori.Mans@jacksonlewis.com>; Michael B. Kelly <michael.kelly@csklegal.com>; Lisa Fountain <lfountain@sniffenlaw.com>
**Subject:** proposed Watson Agreement

Plaintiff and Thomas Dickens have agreed to the attached.

***Laura Beth Faragasso***

***O'Steen & O'Steen, P.L.***

***lb@osteenosteen.com***

***2900 E. Park Avenue***

***Tallahassee, FL 32301***

***850-877-1028 [Scheduling]***

***850-212-8642 [Cell]***

***www.osteenmediation.com***

## Linette Williams

**From:** Thomas Dickens
**Sent:** Thursday, April 13, 2023 8:37 PM
**To:** Lisa Fountain
**Cc:** Kristen Diot
**Subject:** RE: Watson/Alliant
**Attachments:** Answer- Blue Management Services.pdf

Lisa,

I understand that your position is that your client was not Plaintiff's employer. I think that conflates the assertion of employer in fact and employer as a matter of law. *Roundtree v. Tegna, Inc.*, No. 8:19-CV-2857-T-36SPF, 2020 WL 4582741, at *3 (M.D. Fla. Aug. 10, 2020) (citing *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1359–61 (11th Cir. 1994) (citing *Nat'l Labor Relations Bd. v. Browning-Ferris Indus.*, 691 F.2d 1117, 1122 (3d Cir. 1982))("[T]he joint employer concept recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the essential terms and conditions of employment"). There is no doubt that the complaint filed in this case puts each Defendant on notice as to the joint employer theory. As I stated earlier, I like to plead a concise section specifically on joint employer, but I suspect you will agree that the operative pleading is sufficient given that no Defendant here filed a motion to dismiss the joint employer theory, merely alleging in its Answer that "ALLIANT adamantly denies that it employed Plaintiff in any manner."

To be sure, I suspect you could offer up an affidavit from your client regarding joint employer status, but I also think that the court will allow me to test the assertions of your client in a corporate rep depo. With that said, I hope we can dispense with the notion that I am not allowed to question your client's representative with respect to joint employer simply because its position is that it *adamantly denies that it employed Plaintiff*.

I would offer the following revisions, omitting the strikethrough and adding the language in blue.

1. A corporate representative with sufficient knowledge of the Plaintiff's employment ~~with the Defendant~~; Object as Plaintiff was never employed by Alliant.

2. A corporate representative with sufficient knowledge of the titles, responsibilities and duties of Plaintiff and all other employees of Defendant associated with the Calhoun-Liberty Hospital; Object as Plaintiff was never employed by Alliant; the titles, responsibilities and duties of ALL other employees of Alliant is overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Response: I do not believe that this makes any presumption as to Plaintiff's employment status as you attest.

3. A corporate representative with sufficient knowledge of Defendant's sources of revenue and nature of the business Defendant is engaged in; You can ask what the nature of Alliant's business was and whether it received any revenue from the other defendants in the case for the time period of Dr. Watson's employment with CLH, but otherwise object as overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

4. A corporate representative who has, or who has spoken to the requisite individuals and/or reviewed available documents to obtain, sufficient knowledge and information available to the Company regarding the facts underlying Defendant's ~~affirmative defenses as alleged in its~~ Answer; Object as to those affirmative defenses that are purely legal defenses. My client is not a lawyer.

5. A corporate representative who has, or who has spoken to the requisite individuals and/or reviewed available documents to obtain, sufficient knowledge and information available to the Company regarding any efforts or inquiries



PLAINTIFF'S EXHIBIT 4

conducted by Defendant prior to the filing of this lawsuit to determine whether its actions were compliant with any and all applicable laws; Objection as is calls for information protected by the attorney client privilege and work product doctrine; overly broad, and not reasonably calculated to lead to the discovery of admissible evidence. Response: If your assertion is that you have been involved since the inception of the complaint, then I can attempt to reword that in a way that precludes communication with you.

6. A corporate representative who has, or who has spoken to the requisite individuals and/or reviewed available documents to obtain, sufficient knowledge and information available to the Company regarding all disciplinary actions, terminations, counseling, write-ups, demotions, human resource investigations, or any other adverse employment actions considered by or taken by Defendant against Plaintiff during her employment; Object as Plaintiff was never employed by Alliant; vague time frame. Response: I am not sure how this is offensive with regard to the joint employer theory; I will agree to limit the time to her tenure at the CLH.

7. A corporate representative who has, or who has spoken to the requisite individuals and/or reviewed available documents to obtain, sufficient knowledge and information available to the Company regarding the Company's policies, handbooks, rules, and procedures (including but not limited to employee hiring, management and termination); Object as this is completely irrelevant as Plaintiff was never employed by Alliant. Response: I am not sure how to reword this as it relates very specifically to the joint employer theory.

8. 8. A corporate representative with sufficient knowledge in the manner of the storage, maintenance, and preservation of employee documents and other Company data; Object as this is completely irrelevant as Plaintiff was never employed by Alliant; overly broad in temporal scope. "other Company data" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Response: I am not sure how to reword this as it relates very specifically to the joint employer theory.

9. A corporate representative with sufficient knowledge of the timing of Plaintiff's complaint(s) to the Defendant and Defendant's employees. I will allow Mr. Kozar to testify regarding the dates Plaintiff communicated with him. Response: I am not concerned with precisely who you identify to represent the corporation as the Rule only requires you to identify someone who has, or who has spoken to the requisite individuals and/or reviewed available documents to obtain, sufficient knowledge and information.

10. A corporate representative with sufficient knowledge of the substance of Plaintiff's complaint(s) to the Defendant and Defendant's employees. I will allow Mr. Kozar to testify regarding Plaintiff's communications with him. Response: I am not concerned with precisely who you identify to represent the corporation as the Rule only requires you to identify someone who has, or who has spoken to the requisite individuals and/or reviewed available documents to obtain, sufficient knowledge and information.

I look forward finalizing my Notice and coordinating a date with you for these depositions.

Thomas

---

**From:** Lisa Fountain <LFountain@sniffenlaw.com>
**Sent:** Thursday, April 13, 2023 2:58 PM
**To:** Thomas Dickens <thomas.dickens@mattoxlaw.com>
**Cc:** Kristen Diot <kdiot@sniffenlaw.com>
**Subject:** Watson/Alliant

Please find my objections to your corporate representative designations below:

1. A corporate representative with sufficient knowledge of the Plaintiff's employment with the Defendant; Object as Plaintiff was never employed by Alliant.

2. A corporate representative with sufficient knowledge of the titles, responsibilities and duties of Plaintiff and all other employees of Defendant; Object as Plaintiff was never employed by Alliant; the titles, responsibilities and duties of ALL other employees of Alliant is overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

3. A corporate representative with sufficient knowledge of Defendant's sources of revenue and nature of the business Defendant is engaged in; You can ask what the nature of Alliant's business was and whether it received any revenue from the other defendants in the case for the time period of Dr. Watson's employment with CLH, but otherwise object as overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

4. A corporate representative who has, or who has spoken to the requisite individuals and/or reviewed available documents to obtain, sufficient knowledge and information available to the Company regarding the facts underlying Defendant's affirmative defenses as alleged in its Answer; Object as to those affirmative defenses that are purely legal defenses. My client is not a lawyer.

5. A corporate representative who has, or who has spoken to the requisite individuals and/or reviewed available documents to obtain, sufficient knowledge and information available to the Company regarding any efforts or inquiries conducted by Defendant prior to the filing of this lawsuit to determine whether its actions were compliant with any and all applicable laws; Objection as is calls for information protected by the attorney client privilege and work product doctrine; overly broad, and not reasonably calculated to lead to the discovery of admissible evidence.

6. A corporate representative who has, or who has spoken to the requisite individuals and/or reviewed available documents to obtain, sufficient knowledge and information available to the Company regarding all disciplinary actions, terminations, counseling, write-ups, demotions, human resource investigations, or any other adverse employment actions considered by or taken by Defendant against Plaintiff during her employment; Object as Plaintiff was never employed by Alliant; vague time frame

7. A corporate representative who has, or who has spoken to the requisite individuals and/or reviewed available documents to obtain, sufficient knowledge and information available to the

Company regarding the Company's policies, handbooks, rules, and procedures (including but not limited to employee hiring, management and termination); Object as this is completely irrelevant as Plaintiff was never employed by Alliant.

8. 8. A corporate representative with sufficient knowledge in the manner of the storage, maintenance, and preservation of employee documents and other Company data; Object as this is completely irrelevant as Plaintiff was never employed by Alliant; overly broad in temporal scope. "other Company data" is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

9. A corporate representative with sufficient knowledge of the timing of Plaintiff's complaint(s) to the Defendant and Defendant's employees. I will allow Mr. Kozar to testify regarding the dates Plaintiff communicated with him.

10. A corporate representative with sufficient knowledge of the substance of Plaintiff's complaint(s) to the Defendant and Defendant's employees. I will allow Mr. Kozar to testify regarding Plaintiff's communications with him.

-Lisa-

**Lisa Barclay Fountain**

SNIFFEN & SPELLMAN, P.A.

TALLAHASSEE | WEST PALM BEACH | PENSACOLA

123 North Monroe Street
Tallahassee, Florida 32301
T (850) 205-1996 / F (850) 205-3004
E-mail: lfountain@sniffenlaw.com
Website: www.sniffenlaw.com

Martindale Hubbell
AV PREEMINENT
Peer Rated for Highest Level of Professional Excellence 2023

*IMPORTANT NOTICE REGARDING EMAIL COMMUNICATION*: With changes in technology, the Firm is aware that email is a common method of communication; however, please keep in mind the following: **(1)** clients should never use computers maintained or monitored by others (e.g., work; public computers) when communicating about sensitive or attorney-client matters; **(2)** incoming emails may not be read immediately, because the intended recipient may be out of the office or otherwise unavailable; if your email communication is time-sensitive, please call our office to ensure we are aware of your email; and **(3)** the Firm uses automated filters to block viruses and unwanted emails. It is possible the Firm's network may not recognize your email address and prevent your emails from being properly delivered. Please call our office if we have not responded to your email within a reasonable time or if the matter is time-sensitive.

*CONFIDENTIALITY NOTICE*: Information in this email may be protected from distribution by law, confidential, or protected from disclosure by the attorney-client privilege. It is intended only for the use of the disclosed individual or entity. If you are not the intended recipient of this communication, you are hereby notified that the law may restrict or prohibit the unintended use, copying or distribution of this communication. If you have received this email in error, please email the sender immediately upon receipt for further instruction.

*DISCLAIMER*: Pursuant to Circular 230 issued by the United States Treasury Department and relating to practice before the Internal Revenue Service, any comment or opinion in this communication relating to a federal tax issue is not intended to be used, and cannot be used, by a taxpayer for the purpose of avoiding tax-related penalties that may be imposed on the taxpayer.

Case 5:23-cv-00202-MW-MJF Document 1-3 Filed 07/27/23 Page 412 of 455

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT IN AND FOR CALHOUN COUNTY, FLORIDA

MARY WATSON,

Plaintiff,

vs. CASE NO.: 20-CA-64

BLUE MANAGEMENT SERVICES, LLC. D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC. F/K/A EMCARE PHYSICIANSERVICES, INC.; AND CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.

Defendants.

_______________________________/

**MEDIATOR'S MOTION TO QUASH, AND OBJECTION TO, SUBPOENA TO COMPEL TESTIMONY**

Mediator, Laura Beth Faragasso, moves to quash and objects to Plaintiff's subpoena to compel her testimony in this matter, and states:

1. The undersigned is a Florida Supreme Court-certified circuit and appellate mediator and is affiliated with O'Steen & O'Steen, P.L., in Tallahassee, Florida.

2. On April 20, 2023, the undersigned served as the mediator for the court-ordered mediation in this action.

3. The mediation resulted in the execution of a mediation agreement between and among the parties. A true copy of the mediation agreement is attached as Exhibit 1 to Plaintiff's Motion to Enforce Settlement Or Alternatively Plaintiff's Motion to Strike Mediation Agreement, filed herein on July 17, 2023.

4. On July 21, 2023, Plaintiff served the undersigned with a subpoena to appear by Zoom and to testify at a hearing to be held in this matter on July 27, 2023, at 1:00 EST. A true copy of the subpoena is attached hereto as **Exhibit A**.

5. On information and belief, undersigned will be asked to testify about confidential communications which occurred during the April 20, 2023, mediation. The disclosure of such confidential communications is, or may be, prohibited by Rule 10.360, Florida Rules for Certified and Court-Appointed Mediators, and the Florida Mediation and Confidentiality Act, Fla. Stats. §§44.401 - 44.406 ("the Act").

6. Advisory opinions governing mediator conduct are issued by the Florida Supreme Court's Mediator Ethics Advisory Committee ("MEAC")[1]. MQAP 99-012 provides the following regarding a mediator's obligations in the event of a subpoena such as the one served to undersigned: "A mediator should not voluntarily testify in court regarding information learned in a mediation. However, if all parties waive their confidentiality privilege, a mediator may testify. If the court issues an order for the mediator to testify, the mediator should follow the court order." This opinion has recently been reaffirmed by MEAC 2021-005, as follows:

> The MEAC reaffirms the positions it has taken in MQAP Opinions 96-005 and 99-012, that a mediator should not voluntarily testify in court regarding information learned in mediation unless the parties waive confidentiality, or the communications fall within the exceptions of Florida Statutes 44.405. If the court issues an order for the mediator to testify, the mediator should either file a protective order or notify the judge that the mediator is statutorily required to maintain confidentiality of mediation communications and if the mediator is further instructed or ordered to testify then the MEAC believes the better approach would be to follow the court order.

7. Rule 10.360(a) provides that "A mediator shall maintain confidentiality of all information revealed during mediation except where disclosure is required or permitted by law or

[1] MEAC's predecessor was the Mediator Qualifications Advisory Panel ("MQAP").

is agreed to by all parties." In turn, the pertinent portions of the Act restrict the disclosure of confidential mediation communications as follows:

> **44.405 Confidentiality; privilege; exceptions.—**
> (1) Except as provided in this section, all mediation communications shall be confidential. A mediation participant shall not disclose a mediation communication to a person other than another mediation participant or a participant's counsel.
>
> (2) A mediation party has a privilege to refuse to testify and to prevent any other person from testifying in a subsequent proceeding regarding mediation communications.
>
> (4)(a) Notwithstanding subsections (1) and (2), there is no confidentiality or privilege attached to a signed written agreement reached during a mediation, unless the parties agree otherwise, or for any mediation communication:
>
> 1. For which the confidentiality or privilege against disclosure has been waived by all parties; [or]
>
> 5. Offered for the limited purpose of establishing or refuting legally recognized grounds for voiding or reforming a settlement agreement reached during a mediation.

8. As of the date of this objection, neither the confidentiality of the mediation communications nor the privilege against disclosure of same has been waived by all parties. Further, it is unclear to the undersigned whether her testimony is solicited for the purpose of "establishing or refuting legally recognized grounds for voiding or reforming a settlement agreement."

9. Accordingly, while undersigned will comply with the subpoena's directive to attend the July 27, 2023, hearing, it is undersigned's ethical and statutory obligation to assert and maintain the privilege against non-disclosure of confidential mediation communications.

WHEREFORE, the Mediator objects to Plaintiff's subpoena to the extent that it requires her disclosure of confidential mediation communications and moves the Court to quash the subpoena to the extent that is requires such testimony.

Respectfully submitted this 24th day of July, 2023.

/s/ *Laura Beth Faragasso*

Laura Beth Faragasso
Fla. Bar No. 064604
O'Steen & O'Steen, P.L.
2900 E. Park Avenue
Tallahassee, FL 32301
850-877-1028
lb@osteenosteen.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing objection has been furnished to all counsel of record via the Florida Court's E-Filing Portal this 24th day of July, 2023

/s/ *Laura Beth Faragasso*
**LAURA BETH FARAGASSO**

Exhibit A

**IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT**
**IN AND FOR CALHOUN COUNTY, FLORIDA**

**MARY WATSON,**

**Plaintiff,**

**v.** **CASE NO.: 20-CA-64**

**BLUE MANAGEMENT SERVICES, LLC.**
**D/B/A ALLIANT MANAGEMENT SERVICES;**
**ENVISION PHYSICIAN SERVICES, LLC.**
**F/K/A EMCARE PHYSICIANSERVICES, INC.;**
**and CALHOUN-LIBERTY HOSPITAL**
**ASSOCIATION, INC.,**

**Defendants.**

_________________________________________/

**SUBPOENA TO APPEAR AND TESTIFY**
**AT A HEARING IN A CIVIL ACTION**

TO: **Laura Beth Faragasso**
**2900 East Park Ave.**
**Tallahassee, FL 32301**

YOU ARE HEREBY COMMANDED to appear before the honorable Judge William S. Henry via Zoom Video Conference. Join Zoom Meeting https://zoom.us/j/5865139458 The meeting ID is: 586 513 9458. You will need to be at a location of your choosing that has internet access and a computer with a camera on July 27, 2023 @ 1:00 P.M. ET to give sworn testimony in the above-styled case.

Please note that you may not be called for testimony at precisely this time. However, this subpoena requires you to appear at the stated date and time and to remain available until you are called as a witness or released by the undersigned or the court.

This Hearing will be taken by oral examination before an officer duly authorized by law to take depositions, and are being taken for the purposes of discovery, for use at trial, or both, or for such other purposes as are permitted under the applicable and governing rules.

You are subpoenaed to appear by the following attorneys and unless excused from this subpoena by these attorneys or the Court, you shall respond to this subpoena as directed. If you fail to appear, you may be held in contempt of court.

DATED this 21st day of July 2023.

_________________________________
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P.A.
203 North Gadsden Street

Tallahassee, Florida 32301
(850) 383-4800 (telephone)
*ATTORNEY FOR PLAINTIFF*

If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact:

THE OFFICES OF
Marie A. Mattox
203 N Gadsden St
Tallahassee, FL 32301
850-383-4800

at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days.

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR CALHOUN COUNTY, FLORIDA

CASE NO.: 2020 CA 000064

MARY WATSON,

Plaintiff,

v.

BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,

Defendants.
_______________________________/

**DEFENDANTS' JOINT RESPONSE TO PLAINTIFF'S AMENDED MOTION TO ENFORCE SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

Defendants, CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC. (hereinafter "Hospital" or "Defendant"), and BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES (hereinafter "Alliant") by and through their undersigned counsel, hereby file this response to Plaintiff's Amended Motion to Enforce Settlement, and move this Court for an Order to deny Plaintiff's Amended Motion to Enforce Settlement, and states in support the following[1]:

[1] Nothing in this response is intended to waive Defendants' assertion that this case must be stayed pending the bankruptcy proceedings of Envision. It remains the Defendants' position that given the indemnity agreements between and among the three defendants, their interests are inextricably intertwined as to result in an automatic stay relating to all three defendants.

**PROCEDURAL BACKGROUND**

1. On July 14, 2020, Plaintiff filed the instant action alleging claims of public and private whistleblower retaliation and discrimination and retaliation under the Florida Civil Rights Act against the Defendants.
2. The Parties attended mediation on April 20, 2023 and all Parties entered into a Mediation Agreement on the same day.[2]
3. Pursuant to the Mediation Agreement, payment was to be distributed as follows:

> Defendants, BLUE MANAGEMENT SERVICES, LLC. D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC. F/K/A EMCARE PHYSICIANSERVICES, INC.; AND CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC., agree to pay to Plaintiff, MARY WATSON, ONE HUNDRED FORTY- TWO THOUSAND FIVE HUNDRED DOLLARS ($142,500.00) for a full and complete settlement of all matters.[3]

4. Prior to the Mediation Agreement being executed, Defendants agreed that the payment breakdown for the full $142,500 would be as follows:
   - BLUE MANAGEMENT SERVICES, LLC. D/B/A ALLIANT MANAGEMENT SERVICES (hereinafter "Alliant") would pay **$22,500;**
   - ENVISION PHYSICIAN SERVICES, LLC. F/K/A EMCARE PHYSICIAN SERVICES, INC. (hereinafter "Envision") would pay **$42,500;** and
   - Hospital would pay **$77,500**.[4]
5. At no time did any of the Defendants agree to joint and several liability for the settlement funds. Neither Alliant nor the Hospital ever agreed to pay more than

[2] *See* Mediation Agreement, ¶ 1, Attached as Exhibit 1.
[3] *Id*.
[4] *See* April 20, 2023, Correspondence from Lori Mans to Undersigned Counsel, attached as Exhibit 2.

the amounts reflected in the April 20, 2023, correspondence between defense counsel and the mediator.

6. No further specifics are provided on payment in the Mediation Agreement.

7. However, prior to the Mediation Agreement being executed, communications occurred among all parties (including Plaintiff's counsel) that there would be additional specifics of the settlement terms in the release that would be subsequently prepared.[5] Specifically, counsel for Envision stated the following in an email:

> Envision's neutral reference will also include dates of employment, positions held, and rate of pay. *If you prefer that this information be included in the Release Agreement instead of amending the mediator's agreement this evening we are absolutely fine with that*. [6]

8. On May 18, 2023, Envision filed a Notice of Suggestion of Bankruptcy for Envision Healthcare Corporation and Certain of its Affiliates and Automatic Stay of Proceedings, indicating that on May 15, 2023, Envision Healthcare Corporation and its affiliate Envision, filed voluntary petitions under chapter 11 of title 11 of the U.S. Bankruptcy Code.

9. As included within the Notice, pursuant to section 362(a) of the U.S. Bankruptcy Code, Envision's filing of the bankruptcy petition, gave rise to an automatic stay, applicable to Envision.

10. On July 27, 2023, Plaintiff filed a Motion to Enforce Settlement or Alternatively Plaintiff's Motion to Strike Mediation Agreement (hereinafter "Motion to

---

[5] *See* April 20, 2023, Correspondence from Lori Mans to All Counsel, attached as Exhibit 3.

[6] *Id.* (emphasis added).

Enforce”), seeking to enforce the terms of the Mediation Agreement or strike the Mediation Agreement altogether.

11. On July 18, 2023, Hospital and Alliant filed a Joint Emergency Motion to Enforce Automatic Stay or Alternatively to Stay Proceedings Pursuant to Court’s Inherent Authority (“Emergency Motion to Stay”).

12. On July 20, 2023, Plaintiff filed an Amended Motion to Enforce Settlement (hereinafter “Amended Motion to Enforce”), to withdraw Plaintiff’s Motion to Strike. Of note, the Amended Motion to Enforce seeks to collect the entire sum of the settlement from Alliant and Hospital, despite the fact that the Defendants never agreed to be anything other than severally liable for the settlement amount.

13. On July 21, 2023, a hearing was held on the Emergency Motion to Stay, and the Court held its ruling in abeyance. The Court stated it would take the arguments under advisement at the upcoming July 27, 2023 evidentiary hearing (hereinafter “Evidentiary Hearing”).

14. While both the Hospital and Alliant continue to take the position that any further actions by this Court would violate the automatic stay provisions of the U.S. Bankruptcy Code, this response to Plaintiff’s Amended Motion to Enforce is filed in an abundance of caution.

**WHEREFORE**, Defendants, CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC. and BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES respectfully request the entry of an order:

i. denying Plaintiff's Motion to Enforce and staying these proceedings pending the conclusion of the bankruptcy proceedings; or in the alternative,

ii. finding that the Defendants are severally liable and enforcing the terms of the Mediation Agreement with the amounts agreed upon by Defendants with Alliant paying $22,500 and the Hospital paying $77,500; or in the alternative,

iii. rescinding the Mediation Agreement and staying these proceedings pending the conclusion of the bankruptcy proceedings.

## MEMORANDUM OF LAW

### I. Motion to Enforce Standard

In Florida, settlement agreements are governed by contract law.[7] The party seeking to enforce a settlement agreement has the burden of showing "assent by the opposing party and [establishing] that there was a meeting of the minds or mutual or reciprocal assent to certain definite propositions."[8] To be enforceable, a settlement agreement must be "sufficiently specific and mutually agreeable on every essential agreement."[9] A contract results if the acceptance of an offer is absolute and unconditional, and identical with the terms of the offer.[10] As one court put it,

> The making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs - not on

---

[7] *Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985); *Vital Pharm., Inc. v. S.A.N. Nutrition Corp*., 06-60646-CIV-COHN, 2007 WL 1655421, at *6 (S.D. Fla. June 6, 2007) ("Basic contract law applies to determine whether a settlement agreement is enforceable....").

[8] *Ribich v. Evergreen Sales & Serv., Inc.,* 784 So. 2d 1201, 1202 (Fla. 2d DCA 2001); *see also Vital Pharms*., 2007 WL 1655421, at *6.

[9] *Vital Pharms*., 2007 WL 1655421, at *6 (internal citation omitted).

[10] *Ribich*, 784 So. 2d at 1202; *Giovo v. McDonald*, 791 So. 2d 38, 40 (Fla. 2d DCA 2001) (what is an "essential term" of a contract differs according to the circumstances, but it must include the terms specified in an offer in order to make a contract).

> the parties having meant the same thing but on their having said the same thing. [11]

A finding that the parties reached a meeting of the minds must be supported by competent substantial evidence.[12] Execution of an agreement is not a condition precedent to a settlement agreement but is rather a mere procedural formality.[13]

## II. Bankruptcy Impacts Payment of All Parties and a Stay Must be Enforced

In addition to the arguments raised by Hospital and Alliant in the Emergency Motion to Stay, the Mediation Agreement itself also provides a strong position why the stay should apply. Here, the Mediation Agreement provides that all three Defendants "agree to pay to Plaintiff" $142,500 (hereinafter "Settlement Amount").[14] It also states the following terms:

> 2. Plaintiff shall execute complete releases to be prepared by counsel for Defendants and approved by counsel for Plaintiff. [15]
>
> …
>
> 8. Defendants CLH and Envision *shall equally* divide the Plaintiff's portion of mediator's fees.[16]

Plaintiff is being selective in what portions of the Mediation Agreement should be enforced and only wanting enforcement of terms when it benefits them. With Envision in bankruptcy proceedings, Hospital cannot be expected to fully cover Plaintiff's portion of

---

[11] *Robbie*, 469 So. 2d at 1385 (internal citation omitted).
[12] *Cheverie v. Geisser*, 783 So. 2d 1115, 1119 (Fla. 4th DCA 2001).
[13] *Id.*; *Skrtich v. Thornton*, Case No. 3:99-CV-742-J-25HTS, 2003 WL 24845555, at *2 (M.D. Fla. March 28, 2003) ("Oral settlement agreements are enforceable under both federal and Florida law."); *Boyko v. Ilardi*, 613 So. 2d 103, 104 (Fla. 3rd DCA 1993).
[14] *See* Mediation Agreement, ¶ 1.
[15] *Id.* at ¶ 2.
[16] *Id.* at ¶ 8 (emphasis added).

mediator's fees as it was specifically agreed upon that Hospital and Envision would equally divide this portion. There is no ambiguity in this provision. Plaintiff cannot ask for Alliant and Hospital to "remit payment in full as considered under the terms of the Mediation Agreement…"[17] but then want the terms of the Mediation Agreement to not be enforced when it comes to their portion of mediator's fees being covered by Envision. There is clearly ambiguity in the Mediation Agreement concerning the payment breakdown Defendants are required to pay for the Settlement Amount. However, there is no ambiguity when it comes to the breakdown of Plaintiff's mediator fees being paid.

Plaintiff is looking to have her cake and eat it too with the bankruptcy impacting all parties. Pointedly, allowing any payment of terms under the Mediation Agreement without participation of Envision would raise concerns of fairness and judicial economy with Envision agreeing to explicitly make certain payments to cover the costs of mediation for Plaintiff explicitly laid out in the Mediation Agreement.

## III. If a Stay is not Found, Defendants are Severally Liable for Payments Related to the Mediation Agreement

Plaintiff's Amended Motion to Enforce asserts that the Mediation Agreement must be enforced, and that both the Hospital and Alliant are responsible for the entire Settlement Amount. While the Hospital and Alliant agree that the Mediation Agreement should be enforced, Plaintiff is mistaken as to how payments should occur all three Defendants are severally, not jointly, liable for any payments made.

[17] *See* Amended Motion to Enforce.

Under Florida law, a contract is to be interpreted from examination of the whole contract and not from separate phrases and paragraphs.[18] Courts are to interpret contracts, and therefore settlement agreements, in ways that honor the entire contract over ways that rely on negation of some of the contractual provisions.[19] As such, any ambiguity within a contract should be interpreted in favor of "upholding the purpose of the agreement and giving effect to every term in the agreement."[20] When a settlement agreement is ambiguous, parties may introduce parol evidence to determine the true meaning of the contract.[21] Extrinsic evidence is admissible when the parties to a contract offer different interpretations of the contract's meaning.[22] In addition, the "use of different language in different contractual provisions strongly implies that a different meaning was intended."[23]

Here, payment of the Settlement Amount should be distributed among all 3 Defendants, not just Alliant and Hospital, because the Mediation Agreement itself clearly indicates that the intent of the parties was for the Defendants to be severally liable.

*i. The Additional Terms in the Mediation Agreement Establish Apportionment of Payments*

---

[18] *Cali v. Meadowbrook Lakes View Condominium Ass'n B Inc.*, 59 So. 3d 363, 367 (Fla. 4th DCA 2011) (citing *Deeb v. Field*, 311 So.2d 736, 737 (Fla. 3d DCA 1975)).
[19] *Socas v. Northwestern Mut. Life Ins. Co.*, 829 F. Supp 2d 1262, 1266 (S.D. Fla 2011) (applying Florida Law) (citing *Inter–Active Servs., Inc. v. Heathrow Master Ass'n, Inc.*, 721 So.2d 433, 435 (Fla.Dist.Ct.App.1998)).
[20] *City of Homestead v. Johnson*, 760 So. 2d 80, 83 (Fla. 2000).
[21] *Colucci v. Kar Kare Automotive Group, Inc.*, 918 So. 2d 431 (Fla. 4th DCA 2006).
[22] *AT&T Wireless Services of Florida, Inc. v. WCI Communities, Inc.* 932 So 2d 251 at 255 (Fla. 4th DCA 2005).
[23] *Fowler,* 89 So. 3d at 1048.

As mentioned above, a contract must be interpreted in its entirety rather than sentence by sentence.[24] The Mediation Agreement includes a term that defines the several liability of the Hospital and Envision to pay Plaintiff's mediator fees, but is silent on the payment breakdown for the Settlement Amount. Due to the silence regarding the payment breakdown for the Settlement Amount, this Court should look to the mediator payment breakdown in the same agreement to show the true meaning of the Defendant… that payments were apportioned to be broken down for each Defendant. If Defendants planned on paying the Settlement Amount equally amongst themselves or through some other method, this would have been clearly delineated as it was in paragraph 8 of the Mediation Agreement. Plaintiff is attempting to have this Court disregard the carveout in paragraph 8 where a payment breakdown is clearly discussed, but enforce the terms of paragraph 1 equally between the Hospital and Alliant. A different meaning for payment of the Settlement Amount was clearly intended, as evidenced from the communications between the Defendants and the language in the Mediation Agreement itself.[25] This is very similar to *Gowni v. Makar*, where the 5th DCA held:

> Although the first portion of the parties' agreement could be read as providing for joint liability, the meaning of a contract is not to be gathered from any one phrase or paragraph, but from a general view of the writing as a whole, with all of its parts being compared and construed, each with reference to the others. *E.g., Lalow v. Codomo*, 101 So.2d 390 (Fla.1958); *Specialized Machinery Transport, Inc. v. Westphal*, 872 So.2d 424 (Fla. 5th DCA 2004). Taken as a whole, it is clear that the contract made Gowni individually liable only for his half of the overall debt.[26]

---

[24] *See Meadowbrook Lakes*, 59 So. 3d 367.

[25] *Aleman v. Gervas*, 314 So. 3d 350, 353 (Fla. 3d DCA 2020) ("to accept Aleman's interpretation of the contract, that the parties intended to impose individual liability on one another for the payment of funds due to Raymond, would run afoul of basic contract interpretation principles. The parties used different language where they specifically intended to impose individual liability, which 'strongly implies that a different meaning was intended' where they omitted such language.").

[26] 940 So. 2d 1226, 1229–30 (Fla. 5th DCA 2006).


**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 890 SOUTH PALAFOX STREET, SUITE 200 - PENSACOLA, FLORIDA 32502 - (850) 483-5900 (850) 438-6969 FAX

To accept Plaintiff's interpretation of the Mediation Agreement, that Alliant and the Hospital are supposed to step in for Envision and cover their amount owed, would run afoul of basic contract interpretation principles. The parties used different language where they specifically intended to impose splitting of payments equally among other entities, which "strongly implies that a different meaning was intended" where they omitted such language. [27] The sentence in paragraph 8 of the Mediation Agreement makes clear that the parties knew how to draft a provision imposing a payment being split among the Defendants where they intended it.

*ii. If this Court finds the Mediation Agreement Terms Ambiguous, Parol Evidence Also Establishes Apportionment of Payments*

If this Court finds that the Mediation Agreement is not clear as to the payment breakdown of the Settlement Amount, any and all parol evidence also establishes apportionment of payments among the Defendants. Essential terms of a contract can be supplemented and explained when an agreement contains a latent ambiguity.[28] A latent ambiguity is one that arises where the language of a contract suggests a single meaning, but extrinsic facts create a necessity for interpreting the contract among more meanings.[29]

Here, the parties' intentional failure to include such essential terms as a payment breakdown of the Settlement Amount in the Mediation Agreement is evident by its

---

[27] *Fowler,* 89 So. 3d at 1048.
[28] *Provident Bank v. Taylor Creek Enterprises, LLC*, No. 3:09cv36-MCR/EMT, 2010 WL 298300 at *3, *4 (N.D. Fla. 2010) (applying Florida law).
[29] *Mac-Gray Services, Inc. v. Savannah Associates of Sarasota, LLC*, 915 So. 2d 657, 659 (Fla. 2d DCA 2005) (citing *Ace Elec. Supply Co. v. Terra Nova Elec., Inc.*, 288 So.2d 544, 547 (Fla. 1st DCA 1974).

wording. As such, parol evidence can be introduced to supplement, but not contradict, its terms.[30] The parol evidence to be introduced here is an April 20, 2023 email exchange between counsel for Defendants and the Mediator that was sent out prior to the execution of the Mediation Agreement.[31] Within that email, the Defendants agreed to be severally liable for different amounts to be paid to Plaintiff with Alliant agreeing to pay $22,500, Envision agreeing to pay $42,500 and Hospital agreeing to pay $77,500.[32] As discussed, this breakdown was discussed before the Mediation Agreement was signed, and therefore is permitted as parol evidence. This breakdown and its agreement by all Defendants were communicated to the mediator during mediation as well.

Once there is an understanding that defendants are to be severally liable for set amounts of a judgment or settlement, then a plaintiff cannot seek to collect any outstanding balance from all defendants, but rather may only do so from the defendant that has failed to pay.[33] In *Bowers*, the multiple defendants agreed amongst themselves and with the plaintiff that only one of the defendants would be responsible for payment of a settlement agreement. After that defendant failed to pay the full amount, the plaintiff brought a motion for sanctions, which was granted, and then sought to collect from all defendants.[34] The court ruled that the plaintiff could only collect from the sole defendant

---

[30] *See Allapattah Services, Inc. v. Exxon Corp.*, 62 F. Supp. 2d 1300 at 1303 (S.D. Fla. 1999) (applying Florida law) (holding that a contract does not only include the language used, but also includes the bargain of the parties as found in the contract language or implications from other circumstances).
[31] *See* April 20, 2023 Correspondence from Lori Mans to Undersigned Counsel.
[32] *Id*.
[33] *SOS Resource Services, Inc. v. Bowers*, CASE NO. 14-22789-Civ-TORRES, 2016 WL 11481277 at *2-*4 (S.D. Fla. 2016) (applying Florida law).
[34] *Id* at *2.

who did not pay.[35] Here, Plaintiff is attempting to collect more from the Hospital and Alliant than what was agreed upon. Neither the Hospital nor Alliant ever agreed to settle the case and pay one penny more than the amounts reflected in Ms. Mans' April 20, 2023 email. There is a complete absence of evidence that the parties ever discussed or agreed to the notion of holding each defendant jointly and severally liable for the other defendant's obligations.

For the reasons outlined above, the Hospital and Alliant ask this Court to enforce the terms of the Mediation Agreement with Alliant paying $22,500 and the Hospital paying $77,500.[36] The Hospital and Alliant should not be punished for Envision's bankruptcy and be required to pay anything beyond the agreed upon breakdown would unduly prejudice the non-bankrupt Defendants.

**IV. In The Alternative, the Mediation Agreement Must Be Rescinded Because There Was Not a Manifestation of Mutual Assent.**

In the event this Court finds that a stay is not proper and that Alliant and Hospital are required to pay Envisions portion of the Settlement Amount, the Hospital and Alliant seek rescission of the Mediation Agreement as there was no mutual assent between the parties. To form a valid contract, a party must show offer, acceptance, consideration, and sufficient specification of essential terms.[37] One necessary element of acceptance is a manifestation of mutual assent.[38] There is no manifestation of mutual assent if the parties

---

[35] *Id* at *3, *4
[36] *Id*.
[37] *Rauch, Weaver, Norfleet, Kurtz & Co., Inc v. AJP Pine Island Warehouses, Inc.*, 313 So. 3d 625, 630 (Fla. 4th DCA 2021).
[38] *Visdion Palm Springs, LLLP v. Michael Anthony Co.*, 272 So. 3d 441, 444 (Fla. 3d DCA 2019).

attach different meanings to their manifestations and neither party knows nor has reason to know the meaning attached by the other.[39]

When a settlement agreement lacks an essential term, then it will not be enforced.[40] For a settlement agreement to create a binding agreement, all essential terms must be contained within the agreement.[41] In *Nichols*, the 1st DCA held that disagreement in the language of whether an indemnification clause would be allowed to be included in a release indicated a failure to reach an agreement of an essential term of the contract, and as such there was no binding agreement.[42] A disagreement on the terms of a release is akin to a disagreement on the terms of a payment breakdown. This comparison shows that a payment breakdown must be considered an essential element of the contract. Because the Mediation Agreement does not contain that essential term, there was never a valid meeting of the minds, and therefore no binding contract.

The situation at bar is also analogous to the classic law school case of *Raffles v Wichelhaus*, in which the two parties agreed to buy and sell a shipment of cotton that was arriving on the ship the Peerless. Unbeknownst to the parties, there were multiple ships named Peerless and each party ascribed a different meaning to the Peerless within the agreement, which was grounds for rescission of the contract. That case accentuates the

---

[39] *Reheiser v. Terminix Intern. Co., Ltd. Partnership*, No. 5:05cv263-RS-MD., 2006 WL 1653444 at *2 (N.D. Fla. June 7, 2006) (applying Florida law) (citing Restatement (Second) of Contracts § 20(1)).
[40] *Suggsv. Defranco's Inc*, 626 So. 2d 1100 (Fla. 1st DCA 1993).
[41] *Nichols v. Hartford Ins. Co. of the Midwest*, 834 So. 2d 217, 219 (Fla. 1st DCA 2002).
[42] *Id.* at 220

legal concept that when parties mutually misunderstand an essential term of the contract, there is not a meeting of the minds.[43]

In this case, the Defendants "agree[d] to pay" the Plaintiff the Settlement Amount. Plaintiff appears to now be ascribing joint liability to that contract language, while the Defendants' position is that the Settlement Amounts are agreed upon through a detailed payment breakdown and through several liability. It should also be noted again that Plaintiff is attempting to ascribe joint liability to the Settlement Amount, but does not mention the issues surrounding who is covering Plaintiff's portion of the mediator's fees (even though it is clearly delineated that it is equal between Hospital and Envision). This is a mutual misunderstanding of an essential term of the Mediation Agreement. Neither party knew or had reason to know of the meaning ascribed by the other as Plaintiff never asked for clarity on who was paying what. Thus, there is no mutual assent. As such, there is no binding contract.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 25th day of July, 2023, a true and correct copy of the foregoing was filed with the Clerk of Calhoun County by using the Florida Courts e-Filing Portal, which will send an automatic e-mail message to all parties registered with the e-Filing Portal system.

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant Calhoun-Liberty Hospital Association, Inc.*

---

[43] *See also Truly Nolen, Inc. v. Atlas Moving & Storage Warehouses, Inc.*, 125 So. 2d 903 (Fla. 3d DCA 1961).

890 South Palafox Street, Suite 200
Pensacola, Florida 32502
Telephone: (850) 483-5909
Facsimile: (850) 438-6969
E-mail: michael.kelly@csklegal.com
E-mail: zaray.avino@csklegal.com

By: s/ Michael B. Kelly
MICHAEL B. KELLY
Florida Bar No.: 115345

1085.0944-00/28159638

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT IN AND FOR CALHOUN COUNTY, FLORIDA

MARY WATSON,

Plaintiff,

vs. CASE NO.: 20-CA-64

BLUE MANAGEMENT SERVICES, LLC. D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC. F/K/A EMCARE PHYSICIANSERVICES, INC.; AND CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.

Defendants.

______________________________/

**MEDIATION AGREEMENT**

The parties to the above referenced cause submitted their issues to mediation and agree as follows:

1. Defendants, BLUE MANAGEMENT SERVICES, LLC. D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC. F/K/A EMCARE PHYSICIANSERVICES, INC.; AND CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC., agree to pay to Plaintiff, MARY WATSON, ONE HUNDRED FORTY- TWO THOUSAND FIVE HUNDRED DOLLARS ($142,500.00) for a full and complete settlement of all matters.

2. Plaintiff shall execute complete releases to be prepared by counsel for Defendants and approved by counsel for Plaintiff.

3. Plaintiff agrees that she shall not, in the future, apply for employment with Defendant Alliant. This does not preclude Plaintiff from seeking employment as a medical doctor with a hospital for which Alliant provides management services, and in such event, Alliant will maintain a neutral position regarding Plaintiff's employment.

4. Defendant Calhoun-Liberty Hospital shall change Plaintiff's termination to a voluntary resignation dated January 19, 2020, and shall provide a neutral job reference to any inquiring, prospective employers consisting of rate of pay and dates worked only. Plaintiff shall not be precluded from communication with current or former CLH employees, except as prohibited by the mediation privilege of confidentiality.

5. Plaintiff agrees that she shall not, in the future, apply for employment with Defendant Calhoun-Liberty Hospital.

6. Plaintiff is eligible for rehire with Defendant Envision, and Defendant Envision will provide a neutral job reference to any inquiring, prospective employers.

7. Upon payment in paragraph 1. above, Plaintiff shall dismiss this action with prejudice.

8. Defendants CLH and Envision shall equally divide the Plaintiff's portion of mediator's fees.

9. Each party shall be responsible for their own costs and attorney's fees. Defendants will execute a mutual general release between and among the co-defendants.

10. The parties fully understand the terms of this Mediation Agreement, and they are freely and voluntarily entering into it with the full participation of their counsel.

DATED this 20th day of April, 2023.

BLUE MANAGEMENT SERVICES, LLC. D/B/A ALLIANT MANAGEMENT SERVICES; Defendant

DocuSigned by:

By: Michael Kozar
Michael Kozar
As its CEO

DocuSigned by:

MARY WATSON, MD, Plaintiff

DocuSigned by:

Thomas L. Dickens, III
THOMAS L. DICKENS, III, Esquire
Attorney for Plaintiff

DocuSigned by:

Lisa Fountain
LISA FOUNTAIN, Esquire
Attorney for Defendant

ENVISION PHYSICIAN SERVICES, LLC. F/K/A EMCARE PHYSICIANSERVICES, INC.; Defendant

DocuSigned by:

By: Mark Hirschberg
Mark Hirschberg
As its Authorized Representative

DocuSigned by:

Lori K. Mans
LORI MANS, Esquire
Attorney for Envision Physician Services, LLC

CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC., Defendant

DocuSigned by:

By: Chris Jepsen
Chris Jepsen
As its CEO

DocuSigned by:

Michael Kelly
MICHAEL KELLY, Esquire
Attorney for Calhoun-Liberty Hospital

EXHIBIT "2"

**Zaray R. Aviñó**

| | |
|---|---|
| **From:** | Laura Beth Faragasso <lb@osteenosteen.com> |
| **Sent:** | Thursday, April 20, 2023 9:52 PM |
| **To:** | Michael B. Kelly; Lisa Fountain; Mans, Lori K. (Jacksonville) |
| **Subject:** | Re: proposed Watson Agreement |

**[CAUTION: EXTERNAL EMAIL]**

Wonderful. Thomas signed off on Mike's changes, so stand by for the docusign in about 5 to 10 minutes.

***Laura Beth Faragasso***
***O'Steen & O'Steen, P.L.***
***lb@osteenosteen.com***
***2900 E. Park Avenue***
***Tallahassee, FL 32301***
***850-877-1028 [Scheduling]***
***850-212-8642 [Cell]***
***www.osteenmediation.com***

**From:** Michael B. Kelly <Michael.Kelly@csklegal.com>
**Sent:** Thursday, April 20, 2023 10:50 PM
**To:** Lisa Fountain <LFountain@sniffenlaw.com>; Mans, Lori K. (Jacksonville) <Lori.Mans@jacksonlewis.com>; Laura Beth Faragasso <lb@osteenosteen.com>
**Subject:** Re: proposed Watson Agreement

We are good with that as well.

The Florida Law Firm
**www.csklegal.com**

**Michael B. Kelly**
*Partner*
Tel: 850-483-5930 | Fax: 850-438-6969
**Email: Michael.Kelly@csklegal.com**
**Cole, Scott & Kissane P.A.**
890 South Palafox Street. Suite 200
Pensacola, FL, 32502

**From:** Lisa Fountain <LFountain@sniffenlaw.com>
**Date:** Thursday, April 20, 2023 at 9:48 PM
**To:** Mans, Lori K. (Jacksonville) <Lori.Mans@jacksonlewis.com>, Laura Beth Faragasso <lb@osteenosteen.com>, Michael B. Kelly <Michael.Kelly@csklegal.com>
**Subject:** RE: proposed Watson Agreement

**[CAUTION: EXTERNAL EMAIL]**

Yes. As long as there is also a mutual general release among the co-defendants as well, we are good with the agreement.

-Lisa-

**Lisa Barclay Fountain**

SNIFFEN & SPELLMAN, P.A.
TALLAHASSEE | WEST PALM BEACH | PENSACOLA

123 North Monroe Street
Tallahassee, Florida 32301
T (850) 205-1996 / F (850) 205-3004
E-mail: lfountain@sniffenlaw.com
Website: www.sniffenlaw.com

Martindale-Hubbell
AV PREEMINENT
Peer Rated for Highest Level of Professional Excellence 2023

*IMPORTANT NOTICE REGARDING EMAIL COMMUNICATION*: With changes in technology, the Firm is aware that email is a common method of communication; however, please keep in mind the following: **(1)** clients should never use computers maintained or monitored by others (e.g., work; public computers) when communicating about sensitive or attorney-client matters; **(2)** incoming emails may not be read immediately, because the intended recipient may be out of the office or otherwise unavailable; if your email communication is time-sensitive, please call our office to ensure we are aware of your email; and **(3)** the Firm uses automated filters to block viruses and unwanted emails. It is possible the Firm's network may not recognize your email address and prevent your emails from being properly delivered. Please call our office if we have not responded to your email within a reasonable time or if the matter is time-sensitive.
*CONFIDENTIALITY NOTICE*: Information in this email may be protected from distribution by law, confidential, or protected from disclosure by the attorney-client privilege. It is intended only for the use of the disclosed individual or entity. If you are not the intended recipient of this communication, you are hereby notified that the law may restrict or prohibit the unintended use, copying or distribution of this communication. If you have received this email in error, please email the sender immediately upon receipt for further instruction.

*DISCLAIMER*: Pursuant to Circular 230 issued by the United States Treasury Department and relating to practice before the Internal Revenue Service, any comment or opinion in this communication relating to a federal tax issue is not intended to be used, and cannot be used, by a taxpayer for the purpose of avoiding tax-related penalties that may be imposed on the taxpayer.

---

**From:** Mans, Lori K. (Jacksonville) <Lori.Mans@jacksonlewis.com>
**Sent:** Thursday, April 20, 2023 10:46 PM
**To:** Laura Beth Faragasso <lb@osteenosteen.com>; Michael B. Kelly <michael.kelly@csklegal.com>; Lisa Fountain <LFountain@sniffenlaw.com>
**Subject:** RE: proposed Watson Agreement

Thank you. We are fine with the proposed Agreement with that correction.

Also, although this language does not need to be added to the Agreement with Plaintiff, this will confirm that the Defendants agree to contribute to the settlement payment the following amounts:

- Blue Management Services, LLC dba Alliant Management Services $22,500
- Envision Physician Services, LLC fka Emcare Physician Services, Inc. $42,500
- Calhoun-Liberty Hospital Association, Inc. $77,500

Additionally, Envision Physician Services, LLC and Calhoun Liberty Hospital Association, Inc. will each pay 50% of Plaintiff's portion of the mediation costs.

Defendants further agree to execute a mutual general release as a condition of the above contributions to the settlement.

**Lori K. Mans**
Attorney at Law

**Jackson Lewis P.C.**
501 Riverside Avenue. Suite 902
Jacksonville, FL 32202
Direct: (904) 661-5811 | Main: (904) 638-2655
Lori.Mans@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Laura Beth Faragasso <lb@osteenosteen.com>
**Sent:** Thursday, April 20, 2023 10:36 PM
**To:** Mans, Lori K. (Jacksonville) <Lori.Mans@jacksonlewis.com>; Michael B. Kelly <michael.kelly@csklegal.com>; Lisa Fountain <lfountain@sniffenlaw.com>
**Subject:** Re: proposed Watson Agreement

As Lisa just pointed out, it is 142,500, NOT an extra 3 zeros. I have corrected that!

***Laura Beth Faragasso***
***O'Steen & O'Steen, P.L.***
***lb@osteenosteen.com***
***2900 E. Park Avenue***
***Tallahassee, FL 32301***
***850-877-1028 [Scheduling]***
***850-212-8642 [Cell]***
***www.osteenmediation.com***

---

**From:** Laura Beth Faragasso <lb@osteenosteen.com>
**Sent:** Thursday, April 20, 2023 10:31 PM
**To:** Mans, Lori K. (Jacksonville) <Lori.Mans@jacksonlewis.com>; Michael B. Kelly <michael.kelly@csklegal.com>; Lisa Fountain <lfountain@sniffenlaw.com>
**Subject:** Re: proposed Watson Agreement

Sorry, didn't attach. I'm coming back to you, but we have a deal at 142,500 + mediation.

***Laura Beth Faragasso***
***O'Steen & O'Steen, P.L.***
***lb@osteenosteen.com***
***2900 E. Park Avenue***
***Tallahassee, FL 32301***
***850-877-1028 [Scheduling]***
***850-212-8642 [Cell]***

***www.osteenmediation.com***

---

**From:** Laura Beth Faragasso <lb@osteenosteen.com>
**Sent:** Thursday, April 20, 2023 10:29 PM
**To:** Mans, Lori K. (Jacksonville) <Lori.Mans@jacksonlewis.com>; Michael B. Kelly <michael.kelly@csklegal.com>; Lisa Fountain <lfountain@sniffenlaw.com>
**Subject:** proposed Watson Agreement

Plaintiff and Thomas Dickens have agreed to the attached.

***Laura Beth Faragasso***
***O'Steen & O'Steen, P.L.***
***lb@osteenosteen.com***
***2900 E. Park Avenue***
***Tallahassee, FL 32301***
***850-877-1028 [Scheduling]***
***850-212-8642 [Cell]***
***www.osteenmediation.com***

---

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

**Zaray R. Aviñó**

---

**From:** Mans, Lori K. (Jacksonville) <Lori.Mans@jacksonlewis.com>
**Sent:** Thursday, April 20, 2023 9:54 PM
**To:** Michael B. Kelly; Laura Beth Faragasso; Lisa Fountain; Thomas Dickens
**Subject:** RE: Revised Watson Agreement

**[CAUTION: EXTERNAL EMAIL]**

---

Envision's neutral reference will also include dates of employment, positions held, and rate of pay. If you prefer that this information be included in the Release Agreement instead of amending the mediator's agreement this evening we are absolutely fine with that.

Thank you.

**Lori K. Mans**
Attorney at Law

**Jackson Lewis P.C.**
501 Riverside Avenue. Suite 902
Jacksonville, FL 32202
Direct: (904) 661-5811 | Main: (904) 638-2655
Lori.Mans@jacksonlewis.com | www.jacksonlewis.com

---

**From:** Michael B. Kelly <Michael.Kelly@csklegal.com>
**Sent:** Thursday, April 20, 2023 10:40 PM
**To:** Laura Beth Faragasso <lb@osteenosteen.com>; Mans, Lori K. (Jacksonville) <Lori.Mans@jacksonlewis.com>; Lisa Fountain <lfountain@sniffenlaw.com>; Thomas Dickens <thomas.dickens@mattoxlaw.com>
**Subject:** Revised Watson Agreement

A few minor changes that we discussed throughout mediation. Let me know if good with you all.

The Florida Law Firm
www.csklegal.com

**Michael B. Kelly**
*Partner*
Tel: 850-483-5930 | Fax: 850-438-6969
**Email: Michael.Kelly@csklegal.com**

**Cole, Scott & Kissane P.A.**
890 South Palafox Street. Suite 200
Pensacola, FL, 32502

---

**From:** Laura Beth Faragasso <lb@osteenosteen.com>
**Date:** Thursday, April 20, 2023 at 9:31 PM

**To:** Mans, Lori K. (Jacksonville) <Lori.Mans@jacksonlewis.com>, Michael B. Kelly <Michael.Kelly@csklegal.com>, Lisa Fountain <lfountain@sniffenlaw.com>
**Subject:** Re: proposed Watson Agreement

**[CAUTION: EXTERNAL EMAIL]**

---

Sorry, didn't attach. I'm coming back to you, but we have a deal at 142,500 + mediation.

***Laura Beth Faragasso***

***O'Steen & O'Steen, P.L.***

***lb@osteenosteen.com***

***2900 E. Park Avenue***

***Tallahassee, FL 32301***

***850-877-1028 [Scheduling]***

***850-212-8642 [Cell]***

***www.osteenmediation.com***

---

**From:** Laura Beth Faragasso <lb@osteenosteen.com>
**Sent:** Thursday, April 20, 2023 10:29 PM
**To:** Mans, Lori K. (Jacksonville) <Lori.Mans@jacksonlewis.com>; Michael B. Kelly <michael.kelly@csklegal.com>; Lisa Fountain <lfountain@sniffenlaw.com>
**Subject:** proposed Watson Agreement

Plaintiff and Thomas Dickens have agreed to the attached.

***Laura Beth Faragasso***

***O'Steen & O'Steen, P.L.***

***lb@osteenosteen.com***

***2900 E. Park Avenue***

***Tallahassee, FL 32301***

***850-877-1028 [Scheduling]***

***850-212-8642 [Cell]***

***www.osteenmediation.com***

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR CALHOUN COUNTY, FLORIDA

CASE NO.: 2020 CA 000064

MARY WATSON,

Plaintiff,

v.

BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,

Defendants.
_________________________________/

**DEFENDANT, CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.'S WITNESS AND EXHIBIT LIST FOR EVIDENTIARY HEARING ON PLAINTIFF'S AMENDED MOTION TO ENFORCE SETTLEMENT CURRENTLY SET FOR JULY 27, 2023**

Defendant, Calhoun-Liberty Hospital Association, Inc. (hereinafter "CLH" or Defendant), by and through the undersigned counsel, hereby submits its list of witnesses expected to be called to testify in person in this case and exhibits to be relied upon at the July 27, 2023 evidentiary hearing on Plaintiff's Amended Motion to Enforce Settlement ("Amended Motion to Enforce") as follows:

**A. WITNESS LIST**

1. Corporate Designee for CLH
   c/o Cole, Scott & Kissane, P.A.
   890 South Palafox Street, Suite 200
   Pensacola, FL 32502

2. Laura Beth Faragasso,
   Mediator
   O'Steen & O'Steen, P.L.
   2900 E. Park Avenue
   Tallahassee, FL 32301

3. Plaintiff, Mary Watson
   c/o Marie A. Mattox, P.A.
   203 North Gadsden Street
   Tallahassee, FL 32301

4. Any and all individuals and/or entities identified by and listed on Plaintiff's Witness List.

5. Any and all individuals and/or entities identified by and listed on the Witness List of Defendant, BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES (hereinafter "Alliant").

6. Any witnesses necessary to authenticate and admit the exhibits to be offered by the parties and to explain any terms in said exhibits.

7. Any records custodians of any documents used as exhibits in this matter.

8. Defendant reserves the right to amend this Witness List.

## B. <u>EXHIBIT LIST</u>

1. Any and all documents produced by Plaintiff with the Amended Motion to Enforce, or any additional filing with the Court, including any and all exhibits or attachments to said documents.

2. The Mediation Agreement entered into on April 20, 2023.

3. Any and all documents produced by Defendants with any response to the Amended Motion to Enforce, or any additional filing with the Court, including any and all exhibits or attachments to said documents.

4. Any and all documents produced by any party in response to discovery requests.

5. Any and all reports, exhibits, illustrations, drawings, research, animations and/or any document used or generated by anyone listed to testify at the hearing on this matter.

6. Any and all exhibits listed on Plaintiff's Exhibit List not previously noted by Defendant.

7. All applicable statutes, ordinances, codes, rules and regulations.

8. All additional exhibits which continuing discovery may disclose.

9. Blow ups or enlargement of any exhibits listed.

10. Any documents produced by non-parties.

11. Defendant reserves the right to amend this exhibit list with any documents obtained through discovery.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 25th day of July, 2023, a true and correct copy of the foregoing was filed with the Clerk of Calhoun County by using the Florida Courts e-Filing Portal, which will send an automatic e-mail message to all parties registered with the e-Filing Portal system.

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant Calhoun-Liberty Hospital Association, Inc.*
890 South Palafox Street, Suite 200
Pensacola, Florida 32502
Telephone: (850) 483-5909
Facsimile: (850) 438-6969
E-mail: michael.kelly@csklegal.com
E-mail: zaray.avino@csklegal.com

By: s/ Michael B. Kelly
MICHAEL B. KELLY
Florida Bar No.: 115345

1085.0944-00/28159638

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT, IN AND FOR CALHOUN COUNTY, FLORIDA

CASE NO.: 2020 CA 000064

MARY WATSON,

Plaintiff,

v.

BLUE MANAGEMENT SERVICES, LLC, D/B/A ALLIANT MANAGEMENT SERVICES; ENVISION PHYSICIAN SERVICES, LLC F/K/A EMCARE PHYSICIAN SERVICES, INC.; and CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.,

Defendants.
_________________________________/

**DEFENDANT, CALHOUN-LIBERTY HOSPITAL ASSOCIATION, INC.'S NOTICE OF FILING SUPPLEMENTAL AUTHORITY IN SUPPORT OF DEFENDANTS' JOINT REPOSE TO PLAINTIFF'S AMENDED MOTION TO ENFORCE SETTLEMENT**

Defendant, Calhoun-Liberty Hospital Association, Inc. (hereinafter "CLH") (hereinafter "CLH" or "Defendant"), by and through the undersigned counsel, hereby files this Notice of Supplemental Authority in Support of Defendants' Joint Response to Plaintiff's Amended Motion to Enforce Settlement.

1. Alexander Saeedy & Alexander Gladstone, *KKR's Envision Weighs Handing Control to Creditors in a Bankruptcy*, The Wall Street Journal, April 19, 2023, https://www.wsj.com/articles/kkrs-envision-weighs-handing-control-to-creditors-in-a-bankruptcy-30d5ed25#:~:text=Physician%2Dstaffing%20company%20Envision%20Healthcare,wou

ld%20cede%20equity%20to%20creditors&text=KKR%20%26%20Co.'s%20Envision,people%20familiar%20with%20the%20matter.[1]

2. Alexander Saeedy, *KKR's Envision Healthcare in Talks With Lenders as It Misses Earnings Deadline -- Update*, The Wall Street Journal, April 5, 2023, https://www.wsj.com/articles/kkrs-envision-healthcare-in-talks-with-lenders-as-it-misses-earnings-deadline-3b8a6ab9.[2]

3. Geert De Lombaerde, *Moody's: Envision Healthcare Faces High Probability of Bankruptcy or Restructuring*, Healthcare Innovation, September 26, 2022, https://www.hcinnovationgroup.com/finance-revenue-cycle/article/21281965/moodys-envision-healthcare-faces-high-probability-of-bankruptcy-or-restructuring.[3]

Copies of which are attached hereto and incorporated herein by reference, insofar as they pertain to the matters pending before this Court.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 26th day of July, 2023, a true and correct copy of the foregoing was filed with the Clerk of Calhoun County by using the Florida Courts e-Filing Portal, which will send an automatic e-mail message to all parties registered with the e-Filing Portal system.

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant Calhoun-Liberty Hospital Association, Inc.*

[1] Attached as Exhibit 1.
[2] Attached as Exhibit 2.
[3] Attached as Exhibit 3.



**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 890 SOUTH PALAFOX STREET, SUITE 200 - PENSACOLA, FLORIDA 32502 - (850) 483-5900 (850) 438-6969 FAX

890 South Palafox Street, Suite 200
Pensacola, Florida 32502
Telephone (850) 483-5909
Facsimile (850) 438-6969
E-mail: michael.kelly@csklegal.com
E-mail: zaray.avino@csklegal.com

By: s/ Michael B. Kelly
MICHAEL B. KELLY
Florida Bar No.: 115345

1085.0944-00/21287966

# KKR's Envision Weighs Handing Control to Creditors in a Bankruptcy -- Update

ProQuest document link

## FULL TEXT

By Alexander Saeedy and Alexander Gladstone

KKR &Co.'s Envision Healthcare Corp. is exploring a chapter 11 bankruptcy that would give control of the struggling physician-staffing company to its creditors, according to people familiar with the matter.

Envision is in negotiations with some of its lenders about a restructuring that could result in KKR, its private-equity owner, writing down its stake, these people said. KKR bought Envision Healthcare in 2018 for around $10 billion, including debt, making it one of the firm's biggest healthcare investments.

Large creditors to Envision have been signing nondisclosure agreements to gain access to the company's financial details and discuss a recapitalization, the people said. Some proposals include transactions where lenders would swap debt for equity, diluting or wiping out KKR's equity stake in the process, they said.

Envision could file for chapter 11 protection as part of the recapitalization efforts, although it is possible that the company will be able to complete the transactions out-of-court and avoid filing for bankruptcy, the people familiar with the matter said.

The Nashville, Tenn.-based company missed a roughly $40 million interest payment due Saturday under some of its unsecured bonds, the people said, kicking off a grace period that could trigger a default if Envision fails to pay within 30 days.

Envision and KKR declined to comment.

Difficulties for the staffing company include a high debt burden and continuing regulatory pressures, according to an S&P Global Ratings report published last year. Envision's business took a hit from declining emergency-room visits during the Covid-19 pandemic and the company has struggled with contract battles against UnitedHealth Group Inc. after it was cut out of the insurer's network.

Envision faces around $700 million in annual cash interest expenses, according to the people familiar with the matter, who added that its outsourced-physician unit notched a roughly $40 million loss for the 12 months ended Sept. 30.

The company missed a March 31 deadline to report its fourth-quarter financial results, triggering a technical default under its loans, The Wall Street Journal previously reported.

One source of financial stress is an intercompany loan from Envision's ambulatory-services unit, AmSurg Corp., to the core Envision business that comes due at the end of April, according to the people familiar. AmSurg made up roughly half the company's total revenue as of 2021.

Last year, Envision raised more funds secured against AmSurg and managed to cut roughly $600 million in debt after moving its AmSurg assets out of some creditors' reach to secure new loans.

Current trading prices of Envision's debt securities imply that KKR's stake in the company might be worthless, the people familiar with the matter said. Many of Envision's bonds and loans are trading at less than 20 cents on the dollar, according to market-data platform Solve Advisors Inc., a sign that investors expect to get back only a fraction of what they invested in the company.

Write to Alexander Saeedy at alexander.saeedy@wsj.com and Alexander Gladstone at alexander.gladstone@wsj.com

(END)
April 19, 2023 16:00 ET (20:00 GMT)

## DETAILS

| | |
|---|---|
| **Subject:** | Workforce planning; Bankruptcy; Loans; Debt restructuring; Equity stake |
| **Business indexing term:** | Subject: Workforce planning Bankruptcy Loans Debt restructuring Equity stake; Corporation: Envision Healthcare |
| **Company / organization:** | Name: Envision Healthcare; NAICS: 621493, 621910 |
| **Publication title:** | Dow Jones Institutional News; New York |
| **Publication year:** | 2023 |
| **Publication date:** | Apr 19, 2023 |
| **Publisher:** | Dow Jones &Company Inc. |
| **Place of publication:** | New York |
| **Country of publication:** | United States, New York |
| **Publication subject:** | Business And Economics |
| **Source type:** | Wire Feed |
| **Language of publication:** | English |
| **Document type:** | News |
| **ProQuest document ID:** | 2803170034 |
| **Document URL:** | https://login.ezproxy.lib.uwf.edu/login?url=https://www.proquest.com/wire-feeds/kkrs-envision-weighs-handing-control-creditors/docview/2803170034/se-2?accountid=14787 |
| **Copyright:** | Copyright Dow Jones &Company Inc. Apr 19, 2023 |
| **Full text availability:** | This publication may be subject to restrictions within certain markets, including corporations, non-profits, government institutions, and public libraries. In those cases records will be visible to users, but not full text. |
| **Last updated:** | 2023-04-20 |
| **Database:** | ABI/INFORM Collection,ProQuest Central |

## LINKS

Find Full Text

Database copyright © 2023 ProQuest LLC. All rights reserved.

Terms and Conditions Contact ProQuest

# KKR's Envision Healthcare in Talks With Lenders as It Misses Earnings Deadline -- Update

ProQuest document link

## FULL TEXT

By Alexander Saeedy

KKR &Co.'s Envision Healthcare Corp. is in negotiations with some of its creditors after missing a March deadline to report its quarterly financials, according to people familiar with the matter.

The Nashville, Tenn.-based physician-staffing company missed the March 31 deadline to report its fourth-quarter financials, triggering a technical default under the company's loans that it has 10 business days to cure, the people said.

Envision, a physician-staffing firm and one of KKR's biggest healthcare investments, has signed nondisclosure agreements with a subset of its first-lien lenders represented by law firm Gibson Dunn &Crutcher LLP, the people said. Gibson Dunn &Crutcher didn't respond to a request for comment.

KKR, which bought Envision for $6 billion in 2018, declined to comment. Envision also declined to comment. The company contracts with hospitals to provide them with an array of medical professionals and has struggled since the Covid-19 pandemic started and patients tried to avoid going to the hospital for nonemergency care.

Representatives of Envision's law firm Kirkland &Ellis LLP didn't respond to requests for comment, and financial adviser PJT Partners Inc. also declined to comment.

The company's most recent earnings report for the quarter ended Sept. 30 showed revenue dropped 13% year-over-year to $1.6 billion, the people familiar said. Some of the company's bonds and loans are currently trading as low as 15 cents on the dollar, according to market data provider Solve, a sign that investors aren't expecting to get paid back in full.

Envision's move to sign nondisclosure agreements with lenders opens a path to another round of debt fundraising for the healthcare company, people familiar with the matter said. In May, Envision moved an estimated $2.5 billion in collateral backed by its AmSurg business away from many of its existing lenders as part of a $2.6 billion recapitalization involving asset managers Centerbridge Partners LP and Angelo Gordon &Co.

Lenders that were excluded from last year's deal organized with Kasowitz Benson &Torres LLP to assess their legal rights. However, Envision was able to pick off some of that group's members by offering them participation rights and better terms for a subsequent refinancing that didn't initially include all lenders, the people said.

Other distressed businesses have engaged in similar asset-shifting maneuvers in recent years to increase their borrowing capacity, often at some creditors' expense.

Write to Alexander Saeedy at alexander.saeedy@wsj.com

(END)

April 05, 2023 12:30 ET (16:30 GMT)

## DETAILS

| | |
|---|---|
| **Subject:** | Workforce planning; Law firms |

| | |
|---|---|
| **Business indexing term:** | Subject: Workforce planning Law firms; Corporation: Envision Healthcare; Industry: 54111 : Offices of Lawyers |
| **Company / organization:** | Name: Envision Healthcare; NAICS: 621493, 621910 |
| **Classification:** | 54111: Offices of Lawyers |
| **Publication title:** | Dow Jones Institutional News; New York |
| **Publication year:** | 2023 |
| **Publication date:** | Apr 5, 2023 |
| **Publisher:** | Dow Jones &Company Inc. |
| **Place of publication:** | New York |
| **Country of publication:** | United States, New York |
| **Publication subject:** | Business And Economics |
| **Source type:** | Wire Feed |
| **Language of publication:** | English |
| **Document type:** | News |
| **ProQuest document ID:** | 2795904945 |
| **Document URL:** | https://login.ezproxy.lib.uwf.edu/login?url=https://www.proquest.com/wire-feeds/kkrs-envision-healthcare-talks-with-lenders-as/docview/2795904945/se-2?accountid=14787 |
| **Copyright:** | Copyright Dow Jones &Company Inc. Apr 5, 2023 |
| **Full text availability:** | This publication may be subject to restrictions within certain markets, including corporations, non-profits, government institutions, and public libraries. In those cases records will be visible to users, but not full text. |
| **Last updated:** | 2023-04-06 |
| **Database:** | ABI/INFORM Collection,ProQuest Central |

## LINKS

Find Full Text

Database copyright © 2023 ProQuest LLC. All rights reserved.

Terms and Conditions Contact ProQuest

PEOPLE. PROCESS. TECHNOLOGY TRANSFORMATION.

FINANCE/REVENUE CYCLE

# Moody's: Envision Healthcare Faces High Probability of Bankruptcy or Restructuring

In downgrading the physician services and surgery center company's debt, analysts say they expect it will deplete its cash by the end of next year.

Geert De Lombaerde

Analysts at Moody's Investors Service have downgraded the debt of Envision Healthcare Corp., saying the physician services and surgery center management company faces such severe cost pressures that it is on pace to run out of cash by the end of 2023 and may need to file for protection from its creditors or otherwise restructure its finances.

In a note to investors last week, Moody's researchers said they consider a series of financial moves made by Nashville-based Envision's leaders in April and July to be distressed debt exchanges that require a downgrade of a number of the company's ratings. Moody's new C rating for Envision as a whole is the lowest on the firm's scale and is commensurate with "little prospect for recovery of principal and interest."

Moody's said Envision – which employs about 25,000 clinicians, runs more than 250 ASCs and has annual revenues of about $7 billion – is struggling with declining volumes and higher labor costs while also facing the prospect that rising interest rates will nearly double its financing costs. On top of that, analysts said

the company's tussle with insurance titan UnitedHealth looks likely to leave it outside United's network for the foreseeable future.

Representatives of Envision did not respond to a request for comment on Moody's commentary. The company has been owned by KKR since 2018, when the private equity firm valued it at nearly $10 billion when including its debt at the time.

"Continuing business pressures and increased interest expense will cause Envision's free cash flow to be significantly negative in 2022 and beyond," Moody's analysts wrote. "As a result, Envision faces rising refinancing risk as [its asset-based lending] facility is expiring in October of 2023. While Envision had about $1.4 billion of cash at June 30, 2022, Moody's forecasts that Envision will deplete its cash by the end of 2023."

A looming financing crush isn't a prospect for Envision alone: In a recent conversation with *Healthcare Innovation*, Randy Notes of consulting firm Impact Advisors said many healthcare organizations are facing "pressures on margin from everywhere" and that it's not unusual for health system CFOs to be eyeing cost cuts equivalent to 10 percent of net patient service revenues.

---

**Source URL:** https://www.hcinnovationgroup.com/finance-revenue-cycle/article/21281965/moodys-envision-healthcare-faces-high-probability-of-bankruptcy-or-restructuring